DAVID W. MÁRQUEZ
ATTORNEY GENERAL

Venable Vermont, Jr.
Assistant Attorney General
Office of the Attorney General
1031 W. 4th Ave., Suite 200
Anchorage, Alaska  99501
Telephone: (907) 269-5190
Fax: (907) 258-0760
Email: TWC_EFC@law.state.ak.us

Attorney for Trooper Jake Covey, Trooper Patrick Nelson

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| DON M. KUBANYI, JIMMY KUBANYI, AILEEN WELTON, ELIZABETH TUZROYLUK, DORIS KUBANYI, VICTOR KUBANYI, BOBBY KUBANYI, ARLETTE KUBANYI, and BRIAN BAGGETT,<br><br>        Plaintiff(s),<br><br>vs.<br><br>GOLDEN VALLEY ELECTRIC ASSOCIATION, DAVE CRUZ, individually and d/b/a/CRUZ CONSTRUCTION, BLACK & VECH CORPORATION, JAKE COVEY and PATRICK NELSON,<br><br>        Defendants. | Case No. 4:04-cv-0026-RRB<br><br>**AFFIDAVIT OF JACOB COVEY** |

STATE OF ALASKA         )
                        ) ss
THIRD JUDICIAL DISTRICT )

    1.    My name is Jacob Covey.  I am a named defendant in this lawsuit.  I make this

Exhibit D
Page 1 of 7

affidavit based upon my personal knowledge of the matters related below.

  2.  I am an Alaska State Trooper and have been so for over seven years. I am currently assigned to the Talkeetna post. In March, 2003, I was assigned to the trooper post in Cantwell.

  3.  On March 1, 2003 I was involved in the arrest of Don Kubanyi at Seven Mile Lake, on the Rex Trail. I was wearing a tape recorder as part of my normal trooper-issued gear. I activated it during the investigation I was conducting with Dave Cruz and his construction workers, and during the confrontation and arrest of Don Kubanyi. I have listened carefully to the tape and the following is an accurate transcription of the arrest of Don Kubanyi, to the best of my ability:

| | |
|---|---|
| Unknown: | Here comes your guy now. |
| Unknown: | Yeah that's him all right. |
| AST Covey: | State Troopers – stay right there – stop movin' – hold your hands out to the side…turn around… |
| Don K.: | What the fuck for? |
| AST Covey: | Turn around. |
| Don K.: | Ah fuck you! |
| Don K.: | What are you guys…shoot me - |
| AST Covey: | Lay down on the ground for me. |
| Don K.: | Fuck you! |
| AST Covey: | Lay down on the ground! |
| Don K.: | I ain't lyin on the ground! |
| AST Covey: | Lay down on the ground…you're under arrest. |
| Don K.: | Fuck you! |
| AST Nelson: | You're under arrest! |
| AST Nelson: | Lay down or you will be controlled with 10,000 volts of electricity Lay down! |
| Don K.: | Why? |
| AST Nelson: | I'm going to ask you one more time…lay down! |
| Don K.: | Why? Tell me why. Tell me why. Just tell me why [clicking of Taser] |

> AST Nelson: Get on the ground!  Get on the ground!
> Don K.: Fuck you!
> AST Nelson: Get on the ground!  Get on the ground!
> [struggle sounds – Taser sound]
> Don K.: Hey…why the fuck…ow – God damn…ah…ah…ah…
> AST Nelson: Stop resisting! [Taser sounds]
> Don K.: I'm done, I'm done, I'm done!  I'm done, I'm done…ah…ah…ah…ah…[Taser sounds] I'm done!  What's wrong here…what's wrong [heavy breathing] what is the problem?
> AST Nelson: You got a couple more counts on you too buddy – you got assault on a peace officer now too. [first cuff sounds] Keep your head down on the fuckin ground!  You're not going to move another fuckin muscle!
> Don K.: Ok I'm not, I'm not.
> AST Covey: Bend your arms…[second cuff sounds] Stand up!
> Don K.: Help me [breathing heavy]
> AST Nelson: Stand up!
> Don K.: Okay!
> AST to AST: You okay – yeah
> Don K.: My eyes are hurtin', okay?
> AST Nelson: Yep your eyes are gonna hurt…not going to stop hurting either…
> Don K.: Okay [breathing]
> Don K.: My eyes are hurtin' okay? [walk to car]
> AST Nelson: Stay right where you're at.
> Don K.: My eyes hurt; okay?
> AST Nelson: Stay where you're at.

4. I have timed portions of the tape using an ordinary wrist watch.  From "Here comes your guy now" to the sound of the first cuff going on Kubanyi takes about 1 minute 43 seconds; the second cuff is heard going on about 12 seconds later.  From the initial discharge of the Taser by Trooper Nelson to the first cuffing sound is about 51 seconds; from that first Taser discharge to the last Taser discharge is about 27 seconds.

5. I carried a single canister of department-issued pepper spray.  During the struggle with Don Kubanyi, I discharged a 1-2 second spray of the pepper spray on

Kubanyi's face from no more than 2 to 3 feet away, while kneeling on one knee. It was effective in getting Don Kubanyi to submit to the arrest that Trooper Nelson and I were making. This was the only discharge of pepper spray during this incident. The canister sprays a fog of pepper spray that has its best effect at 2 to 3 feet.

6. The sequence of verbal commands that I used with Don Kubanyi at the beginning of the confrontation is taught to us in trooper training. These commands allow us to investigate the level of threat that a subject poses, and, hopefully, to control and minimize that threat. The command to show the hands allows me to see if the subject holds a weapon. The command to turn around makes the subject face away from me, so that he has a harder time assaulting me as I approach, and so that I can control him better as I reach him. The command to lie on the ground also gives me better control, and immobilizes the subject to a certain degree. Maintaining verbal engagement with the subject allows me to better assess threat, intent, hostility, and intoxication, and keeps him occupied and talking while I approach.

7. In my training as a trooper – both at the initial Academy and in subsequent refresher courses – I have been taught the "use of force continuum," which is a scale of increasing use of force that is appropriate for troopers to use. From least force to most force this continuum at the time of this incident was as follows: presence; verbal command and control; soft (open) hand techniques; Taser and pepper spray; hard (clenched fist) techniques; baton; and firearm.

8. As my tape reflects, Don Kubanyi refused to comply with my verbal

commands. There was too much distance between us to use soft hand techniques, and the threat level was too high. Kubanyi had made a threat to shoot someone earlier; he was intoxicated then and clearly was now; a weapon had been seen on a snow machine with him earlier; he came out of darkness; he was clearly hostile and uncooperative. Given the level of threat that he represented, both to Nelson and to me, and to the construction workers present, it was appropriate for Nelson to attempt to control him with the Taser, and for me to use pepper spray when the Taser in the contact mode failed to work. This escalation in the use of force, moving from verbal commands to Taser and pepper spray, was both appropriate under the circumstances and in accordance with training and policy of the Alaska State Troopers. Both the Taser and pepper spray are non-lethal force; they cause only temporary irritation and incapacity.

9. My initial approach of Kubanyi with a drawn handgun in the low guard position was also appropriate and in compliance with training and policy. Kubanyi represented an unknown threat and my first priority was to assess and neutralize it, without getting myself or any of the others hurt. At no time was the handgun pointed at Kubanyi; it was never discharged.

10. Just a few minutes after we had Don Kubanyi in handcuffs, and while we were placing him in a patrol vehicle, one of the construction workers said that someone else was coming across the lake. I did not know who it was or what threat he represented, so I went out to meet him using the same techniques and commands as I had with Kubanyi. I had my handgun drawn and held in the low guard position. My tape recorder was running and the

following represents a true and accurate transcription of my confrontation with that person, who turned out to Brian Baggett:

| | |
|---|---|
| AST Covey: | State Troopers…Get on your knees…Put your hands over your head…What's your name? |
| B.B.: | Brian Baggett…I have another buddy over there too…Nate (indecipherable) |
| AST Covey: | How much you had to drink tonight? |
| B.B.: | Maybe 3 beers…We were out here calming all this down, believe me…We talked to the guys, you know?...They already told you, I'm sure, it wasn't me…That's my brother-in-law… |
| AST Covey: | Okay…I'm just going to pat you down also okay?...You don't have anything on you that's going to poke me do you ? |
| B.B.: | Nope. |
| AST Covey: | Who else is over at the house? |
| B.B.: | My buddy Nate. |
| AST Covey: | Would you stand up for me, please?...What's the problem tonight? |
| B.B.: | They're crossing our property, supposedly.  All they have is a map of it. [discussion ensues regarding map and earlier conversation with Don Kubanyi] |

11.     Mr. Baggett complied with my commands.  After he identified himself, he got on his knees, with his hands in the air, and I approached him and patted him down.  I did so again as he got up.  He was cooperative in every way and I quickly determined that he did not represent a threat to any of us.  The time lapse from "State Troopers" to "What's the problem tonight?" was about 1 minute 5 seconds.

12.     Mr. Baggett was never arrested, nor was he detained any longer than the sequence represented in ¶¶ 10 and 11.  I never used any physical force on him at all; I patted him down with his consent and cooperation.  When this was over, he and I joined Trooper

Exhibit D
Page 6 of 7

Nelson and the construction workers over by the vehicles, where we had a discussion of the trespass problem.

13. My use of force in this incident was appropriate to the goal – to neutralize and arrest Don Kubanyi – and it ended when the threat from Don Kubanyi ended. My use of force throughout this incident was consistent with my training from the Alaska State Troopers, and with trooper policy.

Date: _____                                                         Jacob Covey

SUBSCRIBED AND SWORN to before me this \_\_\_\_ day of _____, 2006.

Notary Public in and for Alaska
My commission expires: _____