Borgeson & Burns, PC
100 Cushman Street, Suite 311
Fairbanks, AK 99701
(907) 452-1666
(907) 456-5055 – facsimile

RECEIVED
MAY 10 2006
CLERK, U.S. DISTRICT COURT
FAIRBANKS, ALASKA

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

Don M. Kubanyi, Jimmy Kubanyi, )
Aileen Welton, Elizabeth Tuzroyluk )
Doris Kubanyi, Victor Kubanyi, )
Bobby Kubanyi, Arlette Kubanyi and, )
Brian Baggett, )
 )
                Plaintiffs, )
 )
vs. )
 )
Golden Valley Electric Association, )
Dave Cruz, individually and d/b/a )
Cruz Construction, Black & Veatch )
Corporation, Jake Covey and )
Patrick Nelson, )
 )
                Defendants. )
_____ )

Case No. F04-0026 CIV

## GVEA's MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

### Introduction

Golden Valley Electric Association, Inc (GVEA) was the owner of the Northern Intertie Project (Project). In 2001, GVEA awarded the construction contract for the Project to Global Power and Communication, Inc., who independently hired Cruz Construction as a subcontractor to build the ice road necessary for the completion of

the Project. The general rule in Alaska is that an employer of an independent contractor is not responsible for torts committed by the contractor. The relationship between an owner and an independent subcontractor hired by the contractor is even more remote. Therefore, the owner, in this case GVEA, is not liable for any torts committed by the employees of Cruz Construction, Inc., which was hired by the contractor, Global Power and Communications, LLC (Global). GVEA should be dismissed with prejudice as a defendant in this matter.

## Facts

The incident which is the subject of this lawsuit occurred on or about March 1, 2003, involving several Cruz Construction, Inc. workers and Don Kubanyi. Mr. Kubanyi allegedly saw the Cruz workers trespass onto the Kubanyi family property. Don Kubanyi was intoxicated and threatened to shoot members of the crew. The Troopers were called to the scene. Upon their arrival, the Troopers requested that Mr. Kubanyi show his hands in order to determine whether he had access to a weapon. He was uncooperative and refused to show his hands. Don Kubanyi continued to be belligerent towards the officers and ran from them. The Troopers pursued him and the Plaintiff, Don Kubanyui, punched Trooper Nelson in the face. He continued resisting the Troopers' attempts to arrest him until the Troopers were forced to use a Taser and pepper spray to subdue an out of control Don Kubanyi.

Prior to the alleged trespass, in late 2001, GVEA entered into Contract NI-8 with Global Power/City Electric Joint Venture, LLC ("Global") for construction of the

Northern Intertie Project across the Tanana Flats.[1] The contract was for a fixed-price to be paid by GVEA to Global. Global was free to choose the means and methods of completing the work—the price paid by GVEA to Global would be the same, regardless of the means and methods used by Global.

The contract allowed Global to hire sub-contractors of its own choosing to aid in completion of the work. Global hired Cruz Construction, Inc. as a subcontractor to construct the ice road necessary to enable Global to construct the Northern Intertie Project. Global Power & Communications, LLC and Cruz Construction, Inc signed an Agreement Subcontract on December 3, 2001.[2] GVEA did not enter into a contract with Cruz Construction and did not direct or control the activities of Cruz Construction, Inc. or their work near Seven-Mile Lake

In preparation for construction of the Northern Intertie Project[3], GVEA obtained the necessary Land Use and Water Use permits. A Land Use Permit (Serial Number 415854) was issued by the State of Alaska, Department of Natural Resources, Division of Land in March of 1999 [4] "for the purpose of authorizing early entry for construction and survey of a Public Utility Right-of-Way Permit for utility purposes."[5] In July 1999, a Right-of-Way Grant/Temporary Use Permit (Serial

---

[1] A true and correct copy of Contract NI-8 is attached hereto as Exhibit "A."
[2] A true and correct copy of Agreement Subcontract is attached as Exhibit "B"
[3] The Northern Intertie Project was a 96-mile, 230-kilovolt transmission line between Fairbanks and GVEA's Healy facilities. The intent of this project was to bring additional power into the Interior by adding a second line and power source from the Anchorage and Susitna power plants.
[4] A true and correct copy of the Land Use Permit is attached hereto as Exhibit "C."
[5] See Exhibit C, page 1.

Number FF-091732) was issued by the United States Department of the Interior, Bureau of Land Management.[6] In January 2002, a Temporary Water Use Authorization was issued from the Alaska Department of Natural Resources, Water Resources Section (No. TWUP A2001-118).[7] This Authorization provided for the extraction of water from Seven-Mile Lake that would be used in the construction and maintenance of the ice road as part of the Northern Intertie Project. Other than obtaining the permits necessary for the project, Golden Valley Electric Association, Inc, had nothing to do with the alleged trespass which took place on the Kubanyi family property on March 1, 2003.

### Standard of Review

FRCP 56(c) authorizes the district court to enter summary judgment when the motion papers, affidavits, and other evidence submitted to the court show that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. As discussed in the case of <u>Randall v. City of Fairbanks,</u> 352 F.2d 1028, 1033 (2005):

> "<u>Rule 56 of the Federal Rules of Civil Procedure</u> provides that summary judgment should be granted if there is no genuine dispute as to material facts and if the moving party is entitled to judgment as a matter of law. The moving party has the burden of showing that there is no genuine dispute as to material fact. [FN39] The moving party need not present evidence; it needs only point out the lack of any genuine dispute as to material fact. [FN40] Once the moving party has met this burden, the nonmoving party must set forth evidence of specific facts showing the existence of a genuine issue for trial. [FN41] All evidence presented by the non-movant must be believed for purposes of

---

[6] A true and correct copy is attached hereto as Exhibit "D."
[7] A true and correct copy of which is attached hereto as Exhibit "E."

GVEA's MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
Kubanyi, et al. v. GVEA, et al.
Case No.: F04-0026 CIV
Page 4 of 12

summary judgment, and all justifiable inferences must be drawn in favor of the non-movant. [FN42] However, the nonmoving party may not rest upon mere allegations or denials, but must show that there is sufficient evidence supporting the claimed factual dispute to require a fact-finder to resolve the parties' differing versions of the truth at trial.

> FN39.  Celotex Corp. v. Catrett, 477 U.S.317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1968).
>
> FN40.  Id. at 323-25, 106 S.Ct. 2548.
>
> FN41.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49, 106 S.Ct. 2505, 91 L.ED.2d 202 (1986).
> FN42.  Id. at 255, 106 S.Ct. 2505."

## Discussion

In 2001, GVEA solicited bids from construction contractors to construct the Northern Intertie Project. Global submitted the lowest bid and GVEA entered into a contract with Global. Global was an independent contractor and was able to choose the method and means of completing the project. The contract between Global and GVEA, attached as Exhibit A, clearly states in Article IV – Particular Undertakings of the Bidder, Section 1 (f) that control of the project was given to Global:

> f. "The Project, from the commencement of work to completion, or to such earlier date or dates when the Owner may take possession and control in whole or in part as hereinafter provided **shall be under the charge and control of the Bidder** and during such period of control by the Bidder all risks in connection with the construction of the Project and the materials to be used therein shall be borne by the Bidder. The Bidder shall make good and fully repair all injuries and damages to the Project or any portion thereof under the control of the Bidder by reason of any Act of God or other casualty or cause whether or not the same shall have occurred by reason of the Bidder's negligence." (emphasis added)

The contract allowed Global to hire subcontractors to assist with performing the construction of the project. However, the subcontractors were to be Global's responsibility. The contract in Article VI section 8 Nonassignment of Contract states that:

> "If the Bidder, with the consent of the Owner, and any Surety or Sureties on the Contractor's Bond or Bonds, shall enter into a subcontract with any subcontractor for performance of any part of this Contract, the Bidder shall be as fully responsible to the Owner and the Government for the acts and omissions of such subcontractor and of persons employed by such subcontractor as the Bidder would be for its own acts and omissions and those of persons directly employed by it."

The contract further states in Article IV paragraph (f) (ii) that:

> "To the maximum extent permitted by law, Bidder shall defend, indemnify and hold harmless Owner and Owner's directors, officers, and employees from all liens and claims filed or asserted against Owner and Owner's directors, officers, and employees from all liens and claims filed or asserted against Owner, its directors, officers, and employees, or Owner's property or facilities, for services performed or materials or equipment furnished by Bidder, its subcontractors and suppliers of any tier and from all losses, demands, and causes of action arising out of any such lien or claim."

The Supreme Court of Alaska, in the case of <u>Matanuska Electric Association, Inc v. Johnson</u>, 386 P.2d 698 (Alaska 1963), held that generally an employer of an independent contractor is not liable for its torts:

> "The general rule is that the employer of an independent contractor is not responsible for the negligence of the contractor. This rule is said to be based on the fact that the employer of an independent contractor has no control over the prosecution of the work and that it would be unjust to hold him liable for the torts of another whom he cannot direct."

<u>Id.</u> page 699

Global entered into an agreement subcontract with Cruz Construction, Inc. which is attached as Exhibit B. While the Alaska cases have not dealt specifically with a trespass committed by a subcontractor, other states including Nebraska and Maine have applied the same general rule in trespass situations where the trespass was not authorized as part of the contract, was not a natural result of the work or was not somehow directed:

> "Where trespass is committed by an independent contractor, the other party to the contract is not liable unless such other party controls the work or authorizes a specific act." Crnkovich v. Scaletta, 277 N.W.2d 416 at page 417.

This rule is again applied to a trespass situation in the case of Bonk v. McPherson, 605 A.2d 74:

> "As a general rule, there is no vicarious liability upon the employer of an independent contractor. Prosser & Keeton, *The Law of Torts* § 71 at 509 (5th ed. 1984) (citing *Restatement (Second) of Torts* §§409-429 (1965)). 'Since an agent who is not a servant is not subject to any rights of control by his employer over the details of his physical conduct, the responsibility ordinarily rests upon the agent alone, and the principal is not liable for the torts he may commit.' Prosser & Keeton, *supra* § 70 at 508."
> Id. at page 78

The contract paragraphs quoted above clearly show that Global was an independent contractor and that Global was given control of the project. Therefore, under the general rule, GVEA would not be liable for torts committed by Global or by its independent subcontractors. In paragraph 17 of their amended complaint, the Plaintiffs incorrectly state that:

> "Subsequent thereto, GVEA, with the assistance of Black and Veatch, entered into a contract or purchase of services from Cruz Construction

for the construction and maintenance of ice bridges and roads along the Rex Trail."

GVEA was not Cruz Construction's employer and did not enter into a contract or purchase services from Cruz Construction

The only connection that the plaintiffs can show between GVEA and the activities near Seven Mile Lake is that GVEA obtained the land use and water permits necessary to construct the Northern Intertie Project. However, as discussed in the case of <u>Lamberjack v. Ohio Department of Natural Resources</u>, 99 Ohio Misc.2d 22, 714 N.E.2d 482 (Ohio Ct.Cl. 1999), obtaining the permits does not make GVEA liable for trespass.

In <u>Lamberjack</u>, a property owner sued the Ohio Department of Natural Resources ("DNR") for trespass. The Court of Claims held;

> . . .[L]iability cannot be imposed upon [DNR] for trespass. There was no evidence that any of [DNR's] employees operated the drag line that allegedly entered Lamberjack's side of the channel . . . . Lamberjack's claim is based solely on [DNR's] participate in the process of securing the dredging permit and contracting with the other marina owners to repair the dike. Comment j of Section 148 states in part:
>
> *j. Causing entry of a third person.* If, by any act of his, the actor intentionally causes a third person to enter land, he is as fully liable as though he himself enters. Thus, if the actor has commanded or requested a third person to enter land in the possession of another, the actor is responsible for the third person's entry if it be a trespass. This is an application of the general principle that one who intentionally causes

> another to do an act is under the same liability as though he himself does the act in question.
>
> The dredging permit issued by the Army Corps of Engineers did not authorize the marina owners to cross Lamberjack's property line in performing the dike repair. In fact, the document provides that "[i]ssuance of this permit does not grant you any property rights or exclusive privileges, nor does it authorize any injury to the property or rights of others." Similarly, the contract between the marina owners and [DNR] did not authorize the marina owners or their contractors to cross Lamberjack's property line in performing the dike repair. The language of the contract simply grants the marina owners access across [DNR's] property. Moreover, the contractor that performed the dredging and dike repair was hired by the marina owners, not [DNR].
>
> Based on the totality of the evidence admitted at trial, the court finds that [DNR's] involvement in the events which led to the trespass, if any, is simply too remote to justify the imposition of liability upon [DNR]. The evidence does not support the inference that [DNR] intended or even anticipated that a trespass would occur as a result of the dredging and dike repair. Under the circumstances, [DNR] cannot be liable to Lamberjack for trespass.[8]

Similarly, in this matter, GVEA's involvement in the events which led to the trespass, is simply too remote to justify the imposition of liability upon GVEA. The permit did not authorize Cruz Construction, Inc.'s employees to enter onto the Kubanyi property. GVEA did not intend or even anticipate that a trespass would occur on the Kubanyi property and did not instruct or direct the actions of Cruz

---

[8] Lamberjack, 714 N.E.2d at 485.

Construction employees when they entered the Kubanyi property adjacent to Seven-Mile Lake.[9]

In a final attempt to connect GVEA to the trespass, the plaintiffs state in paragraph 21 of their amended complaint that:

> "On information and belief, access across 'The Property' reduced construction costs associated with the performance of the maintenance and construction of ice roads desired by GVEA"

In fact, GVEA was not in a position to gain any economic benefit from the alleged trespass. As stated in paragraph 15 of Gregory Wyman's affidavit attached as Exhibit "F":

> "GVEA's contracts with Global, NI-8 and NI-9, were RUS unit bid contracts in which unit prices were fixed. Therefore, Global's and/or the Cruz Defendants' means and methods for constructing the ice roads/bridges were strictly within the control of Global and /or the Cruz Defendants and any "reduced construction costs associated with the performance of the maintenance and construction of [the] ice roads" would have benefited Global and/or the Cruz Defendants, not GVEA, and, therefore, there was no "economic advantage" to GVEA from the alleged trespass actions of the Cruz Defendants."

## Conclusion

Plaintiffs allege in their Complaint that the trespass onto their property was done by Dave Cruz and "several Cruz Construction workers."[10] Cruz Construction, Inc is an independent subcontractor hired by Global Power & Communications, LLC (Global) to build the ice road necessary for it to construct the Northern Intertie Project.

---

[9] See G. Wyman Aff.
[10] See, Plaintiffs' Amended Complaint, paragraphs 24 to 38, at pages 6 - 8, dated February 28, 2005.

GVEA did not have any contracts with Dave Cruz and/or Cruz Construction and did not control or direct the work of the Cruz Defendants at Seven-Mile Lake nor did GVEA provide assistance or encouragement to Dave Cruz and/or Cruz Construction towards his/its alleged trespass onto the Kubanyi property.[11] A trespass unto the Kubanyi property was not a necessary part of the work done by Cruz Construction and was never authorized or ratified by GVEA. GVEA was not in a position to gain any economic advantage as a result of the alleged trespass. In short, GVEA had nothing to do with the activities of March 2003 that occurred at or near the Kubanyi allotment. For these reasons, and those outlined above, GVEA should be dismissed with prejudice as a defendant in this matter and awarded its full fees and costs for having been wrongfully named as a defendant in this litigation.[12]

DATED this 10th day of May, 2006, at Fairbanks, Alaska.

BORGESON & BURNS, PC
Attorney(s) for Defendant, GVEA

By: _____
Cory R. Borgeson
ABA # 8405009

---

[11] See, G. Wyman Aff. (Exhibit "F") at ¶¶ 6, 9, 13 and 14.
[12] See e.g., DeNardo v. Johnstone, 772 F.Supp. 462 (D. Alaska 1991) and 104 A.L.R. Fed. 14, "Right of Defendant in Civil Rights Case to Receive Award of Attorney's Fees Under Civil Rights Attorney's Fees Awards Act of 1976 (42 U.S.C.A. §1988)."

<u>CERTIFICATE OF SERVICE</u>
I hereby certify that on the 10th day of May, 2006,
a true and correct copy of the foregoing document was
provided to the following attorneys/parties of record:

☒ Mail ☐ Hand Delivery ☐ Courier ☐ Telefax

Michael J. Walleri
Law Offices of Michael J. Walleri
330 Wendell Street, Suite E
Fairbanks, AK 99701

☒ Mail ☐ Hand Delivery ☐ Courier ☐ Telefax

Daniel T. Quinn
Richmond & Quinn
360 K Street, Suite 200
Anchorage, AK 99501-2028

☒ Mail ☐ Hand Delivery ☐ Courier ☐ Telefax

Christine Tavares
Eric P. Gillett
Preg O'Donnell & Gillett PLLC
1800 Ninth Avenue, Suite 1500
Seattle, WA 98101-1340

☒ Mail ☐ Hand Delivery ☐ Courier ☐ Telefax

Venable Vermont, Jr.
Assistant Attorney General
Department of Law
1031 West Fourth Avenue, Suite 200
Anchorage, AK 99501

By: _/s/ Karen Day_
         Legal Secretary

**GVEA's MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**
Kubanyi, et al. v. GVEA, et al.
Case No.: F04-0026 CIV
Page 12 of 12

# Exhibits to GVEA's Memorandum in Support of Motion for Summary Judgment

Kubanyi, et al. v. GVEA, et al.
F04-0026 CIV

| EXHIBIT | DESCRIPTION |
|---|---|
| A | Contract NI-8 between GVEA and Global |
| B | Subcontract Agreement between Global and Cruz Construction |
| C | Land Use Permit (Serial Number 415854) |
| D | Right-of-Way Grant/Ternporary Use Permit (Serial Number FF-091732) |
| E | Temporary Water Use Authorization (No. TWUP A2001-118) |
| F | Affidavit of Gregory E. Wyman, P.E. |