Michael J. Walleri
Law Offices of Michael J. Walleri
330 Wendell Street, Suite E
Fairbanks, Alaska 99701
(907) 452-4716
(907) 452-4725 (Facsimile)
Attorney for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| DON M. KUBANYI, JIMMY KUBANYI, AILEEN WELTON, ELIZABETH TUZROYLUK, DORIS KUBANYI, VICTOR KUBANYI, BOBBY KUBANYI, ARLETTE KUBANYI, and BRIAN BAGGETT, <br><br> Plaintiff(s), <br><br> vs. <br><br> GOLDEN VALLEY ELECTRIC ASSOCIATION, DAVE CRUZ, individually and d/b/a/ CRUZ CONSTRUCTION, BLACK & VECH CORPORATION, JAKE COVEY AND PATRICK NELSON, <br> Defendants. | **MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND PARTIAL SUMMARY JUDGMENT AND IN SUPPORT OF PLAINTIFF'S MOTION CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT.** |

Case No. FO4-0026

This case is a trespass and §1983 action against Golden Valley Electric

Association (GVEA) , Dave Cruz, Cruz Construction, Black & Vetch Corporation,

Alaska State Troopers Jake Covey and Patrick Nelson.  Plaintiffs' claims arise out of

Michael J. Walleri
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

the construction of the Interior Alaska Electrical Intertie by GVEA and events occurring in the spring of 2002 and 2003.  The plaintiffs, (hereinafter collectively referred to as the "Kubanyi Family" opposes motions for summary judgment filed by the Defendants  and has filed a cross motion for partial summary judgment.

## I.    BACKGROUND

### a.  The Native Allotment and Its Boundaries.

The Plaintiffs in this action are comprised of the Kubanyi family, who are the adult children and heirs of Nora Kubanyi,[1] an Alaska Native who applied for and received a Native allotment surrounding the south end of Seven Mile Lake located approximately nine (9) miles southeasterly of Anderson, Alaska.[2] Ms. Kubanyi and her family had used the allotment since August 18, 1963.[3]  As of 1977, the Kubanyi's had cleared and improved a substantial portion of the allotment building cabins, outhouses, meat caches and two airstrips on the allotment.[4]  The allotment was

---

[1] The children and heirs of Nora Kubanyi are Don M. Kubanyi, Jimmy Kubanyi, Aileen Welton, Elizabeth Tuzroyluk, Doris Kubanyi, Victor Kubanyi, Bobby Kubanyi, Arlette Kubanyi.  Brian Baggett is the husband of Doris Kubanyi.  Ownership and status of land as Native allotment are admitted by all Defendants. See Def. Answers, Para. 18; See also admission in statement of facts by B&V, Cruz, and GVEA contained in Defendants motions for summary judgment.

[2] B&V (Black and Vetch) Exhibit 1, p. 1 (Certificate of Native Allotment); Cruz Ex. 1 On November 22, 1971, the Bureau of Indian Affairs filed a Native Allotment Application and evidence of use and occupation on behalf   of Ms. Nora Kubanyi.

[3] B&V Ex. 2, p. 19.

[4] Id., at p. 20

Michael J. Walleri
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

surveyed on June 17, 1992.[5] The allotment was approved on September 21 1992.[6]
The certificate of allotment was issued on December 9, 1992.[7] As a result, the
Kubanyi children each own 1/8th undivided interest in the allotment.

The allotment boundaries are not described by metes and bounds in the
Certificate of Allotment; rather the Certificate of Allotment provides a legal
description of the land as "U.S. Survey 9954."[8] The survey located and surveyed the
meanders of the mean high water mark of the lake; hence the allotment boundary
along the lakeshore is a definite and surveyed boundary.

Of critical importance to this case is the fact that the U.S. Department of the
Interior reserved an easement through the allotment for the Rex to Bonnifield Trail
(i.e. "Rex Trail")  As originally surveyed, the Rex Trail was located as entering and
exiting the Kubanyi allotment in a west to east orientation, and meandering on and
off the allotment substantially south of Seven Mile Lake.[9]  It should be noted that
the original survey clearly indicates that the trail did not intersect or otherwise

---

[5] Id, at 21  Defendants omitted a copy of the actual survey.  See Plt. Ex. 1 (U.S. Survey No. 9954)
[6] B&V Ex. 2, p. 21
[7] Cruz Ex. 1; B& V Ex. 1
[8] Cruz Ex. 1; B& V Ex. 1
[9] Plt Ex. 1.

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

provide access to the lake.[10]  The BLM September 21 1992 decision approving the

allotment reserved "The continued right of public access along the non-exclusive use

Rex to Bonnifield Trail not to exceed 25 feet"[11] On October 23, 1992, the BLM

amended its prior decision expanding the trail easement to 50 feet.[12]  The

modification occurred based in part upon the acknowledgement by the Kubanyi's

that the prior use of the trail had been 50 feet.[13]  Hence, the Kubanyi family has

always acknowledged that the Rex Trail transects the allotment and that it should be

fifty feet wide.   The Allotment Certificate was amended to finally provide

> The continued right of public access along the non-exclusive use Rex to
> Bonnifield Trail not to exceed 50 feet[14]

It should be noted that nothing in the certificate or other land documents reserves

any public access to Seven Mile Lake from the South.  The allotment does not wholly

encompass the Seven Mile Lake. Rather, the allotment only surrounds the southern

portion of the lake.[15]  The northern end of the lake is bordered by public lands.


On March 28, 2006, Eric Stalke, a license surveyor employed by Tanana

Chiefs Conference, conducted a field survey to locate the Rex trail as established

---

[10] Id.
[11] B&V Ex. 2, p. 21
[12] Id, at 1-2
[13] Id.
[14] Cruz Ex. 1; B& V Ex. 1
[15] Plt. Ex. 1

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

near the south end of Seven Mile Lake. The survey and report is attached.[16]  The

report includes two aerial maps of the Kubanyi allotment dated August 19, 1998 and

May 17, 2002. The aerial maps clearly show the location of the Rex trail on these

dates.  Additionally, Stalke overlaid the survey boundaries of the Kubanyi allotment

(including the meander line of the U.S. Survey), the Rex trail meanders contained in

the U.S. Survey, and the measured mean high water mark determined on March 3,

2006.  Finally, the report includes a Detail Drawing showing the surveyed location of

the Rex Trail (50 foot right of way) and the ordinary high water mark of the lake on

March 28, 2006.


The Stalke Report clarifies a couple of things.  Most importantly, the report

clarifies that there is a tree line separating the Rex Trail and Seven Mile Lake.  There

is a break in the tree line near the extreme southwest corner of the lake.  Finally, at

that tree line break, the distance from the most northern edge of the Rex Trail's fifty

(50) foot right-of-way and the lake's current ordinary high water mark is 43.7 feet.

The distance between the right of way and the surveyed meander in US Survey 9954

is substantially greater.   As a result, it is very clear that the Rex Trail does not

intersect with the lake, and that a person located on that portion of the Rex Trail

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

---

[16] Plt. Ex. 2

*Kubanyi v. GVEA* Case No. F04-0026
Plaintiffs' Initial Witness List

traversing the Kubanyi Allotment must leave the fifty-foot right of way and cross the Kubanyi allotment in order to access Seven Mile Lake. It is also clear that that there is public access to the north end of the lake through public lands.

The allotment is posted with No Trespassing/Private Property signs.[17] Indeed, one such sign is actually posted along the north side of the Rex Trail right of way at the tree line break at the southwest corner of the lake.[18]

### b. Cruz Trespass of the Kubanyi Allotment.

As GVEA and Cruz both allege in their motions, GVEA was constructing an electrical intertie in the vicinity of the Kubanyi Allotment and the Rex Trail.   Cruz construction is a heavy snow and ice road contractor.[19]  GVEA contracted with Cruz Construction to clear right of way for the Intertie in 2002.[20]  Additionally, Cruz subcontracted from Global Power and Communications for construction and maintenance of 78 miles of ice road for the project.[21]

---

[17] Ex. 4 (D. Kubanyi Affidavit); Plt. Ex.5 ( W. Walters Depo) 25:6- 26:8
[18] Id., See photos
[19] Plt. Ex. 3 (D.Cruz Depo.) 6: 2-3
[20] Id., at 6:15-21
[21] Id.

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

Prior to any construction, Don Kubanyi attended the public planning and scooping hearings conducted by GVEA. At the Anderson meeting, which was attended by Greg Wyman, the project superintendent for GVEA, and Don Kubanyi provided GVEA a map and pictures showing the location of the Kubanyi family's allotment in relationship to the planned route.[22] Later, in preparation for the ice road construction, Wayne Walters, a former Nenana policeman hired as a safety officer on the GVEA project, met with Don Kubanyi and advised him that the construction project planned to pump water from Seven Mile Lake.[23] In that conversation, Don Kubanyi objected to the plan and advised Walters that they would be trespassing on the families Native Allotment.[24] Kubanyi expressed the desire to have a job on the project.[25] Walters reported this to his supervisor at Global Power[26] and to Dave Cruz. Cruz advised Walters that the government had given them permission to take water from the lake.[27]

Cruz admits that he was very much aware that the land in the area was the Kubanyi allotment as early as 1999, because in an early construction plan, Cruz had

---

[22] Plt. Ex. 4, at para 12
[23] Plt. Ex. 5 (W. Walters Depo) at 13:5-19; 39:1-5; 52:20-22
[24] Id. 13: 5-19
[25] Id.
[26] Id. 14:7-8; 16: 19-22
[27] Id. 54:16- 55:8

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

negotiated with Victor Kubanyi to locate a construction camp on the Kubanyi

allotment.[28]  Cruz admits that his construction crews constructed an ice shack on the

lake to pump water out of the lake in both 2002 and 2003. [29]  Cruz was using the

water to build and maintain the ice roads for the intertie project.  Cruz accessed the

lake from the Rex Trail at the tree line break at the southwest corner of Seven Mile

Lake on the Kubanyi allotment.[30]   Cruz would drive water trucks out on the lake,

load the trucks with water by pumping water from the lake onto the trucks at the ice

shack, and drive the trucks off the lake back onto the Rex Trail.[31]  The water was

used to construct an ice road along the Rex Trail and the Intertie, and hence the

trucks were hauling water from Seven Mile Lake to the intersection of the Rex Trail

and the Intertie right of way.[32]  Seven Mile Lake was six miles (via the Rex Trail) to

the Intertie Right of Way.[33]  Seven Mile Lake was the closest water source to the

intersection of the Rex Trail and the Intertie right of way.[34]

---

[28] Plt. Ex. 3 (D.Cruz Depo.)., at 13:7-17
[29] Id, at 15:15 to 16:18; 19:13-14; 21:5
[30] Id. 15:15 to 16:18.  See also 62:17-22. Cruz testified that he didn't need to cut any trees to access the lake. As demonstrated in the aerial photos contained in the Stalke Report, the tree line break at the southwestern corner of Seven Mile Lake is the only point where a person may directly access Seven Mile Lake off the Rex Trail without cutting trees.  See also Plt. Ex. 4 (D. Kubanyi Depo) para. 18-22.
[31] Plt. Ex. 3 (D.Cruz Depo.)., at 26:3; 27: 3-6
[32] Id., 27: 3-6
[33] Id., 45:6 to 46:7
[34] Id.

Michael J. Walleri
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

In light of the Stalke survey, the admissions in Mr. Cruz Depositions, the affidavit of Don Kubanyi, and the absence of any contravening evidence, it is very clear that Cruz's operations were crossing 43.7 feet of the Kubanyi allotment that separated Seven Mile Lake from the Rex Trail, and that Cruz was using the Kubanyi allotment for economic purposes in furtherance of his contract on the GVEA project; i.e. to cheaply obtain water for building the ice road.

Cruz does not assert that he had a permit from the Buruea of Indian Affairs nor consent from any member of the Kubanyi family to use the Native allotment.[35] The only thing that Cruz had was a Temporary Water Use Permit from the State of Alaska to "GVEA and its contractors"[36] and a Land Use Permit issued by the State of Alaska to GVEA.[37] Additionally, GVEA was operating under a Right of Way permit issued under Title V of the Federal Land Management and Policy Act, [FLPMA] [43 USC 1761].[38] Neither permit gave Cruz authority to enter upon a Native allotment or private lands. Indeed, the permits specifically stated as much.

---

[35] Ex. 4 (D. Kubanyi Affidavit); See also Plt. Ex. 3 (D.Cruz Depo.) 56:10-24
[36] Cruz Ex. 5
[37] Cruz Ex. 6
[38] GVEA Ex. D

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

The Water permit required the permittee to comply with all applicable laws[39] and

stated

> This authorization does not authorize the permittee to enter upon any lands
> until proper rights-of-way, easements, or permission documents from the
> appropriate landowner have been obtained.[40]

The State land permit allowed entry onto <u>state lands</u> within the Intertie right of way.

It did not allow entry or use of state lands outside the State right of way, nor does it

allow entry or use of Native allotments or private lands.[41]  Interestingly, the permit

is issued to GVEA and is non-transferable.[42]  The permit does not authorize Cruz

construction to do anything.


Despite the fact that Mr. Cruz was told by Mr. Walters that he was

trespassing on the Kubanyi allotment, Mr. Cruz claims that he was unaware that he

was crossing a Native Allotment. However, he also admits that there were plenty of

surveyors on the project, and that he never did a location of the Rex Trail right of

way to determine whether he had legal access to Seven Mile Lake.[43]  There is no

---

[39] Cruz Ex. 5, para 2
[40] Id. at para. 7
[41] Cruz Ex. 6
[42] Id., at p. 2
[43] Plt. Ex. 3 (D. Cruz Depo) 47:3-21

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

question that the Cruz activity was an un-consented crossing of the Kubanyi allotment.

### c.    The Events of March 1, 2003.

Mr. Don Kubanyi's principal place of residence is located on the Kubanyi allotment. On March 1, 2003, Don Kubanyi was in Fairbanks preparing to compete in the Winter Ice Competition.[44] On that same day, he returned to his home to get an electric chainsaw needed for the ice sculpture competition.  He arrived at the allotment at approximately 2:00 pm, and noticed that Cruz Construction had established a water pumping station on Seven Mile Lake, and was preparing to pump water.  He approached the workers and advised them that they were trespassing upon his allotment, and I asked to talk to whoever was in charge. The workers told him that they had a right to be on the allotment and indicated that they would call Dave Cruz, the owner of Cruz Construction to discuss the matter with him. Kubanyi returned to his cabin and waited for Mr. Cruz.  A few minutes later, Dave Cruz arrived in his truck.  At that time, Don Kubanyi told Cruz that Cruz was trespassing on a Native allotment; i.e. that the Kubanyi's owned a strip of land

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

[44] Ex. 4 (D. Kubanyi Affidavit) Unless otherwise noted, the following statement of facts is supported by Don Kubanyi's affidavit.

*Kubanyi v. GVEA* Case No. F04-0026
Plaintiffs' Initial Witness List

between the Rex Trail and Seven Mile Lake that Cruz was crossing.[45]  Cruz offered

to loan Kubanyi's a loader and operator to do some dirt work on the allotment in

exchange for permission to cross the allotment. Kubanyi advised Cruz that he would

have to talk to his family about that offer. Cruz gave Kubanyi his card to call him

after I talked to my family.   During all this time, Kubanyi was not armed nor was he

intoxicated.


Later that evening, at approximately 5:30 pm, equipment started moving on

the lake, and making loud noises.  Don Kubanyi attempted to call Cruz at the

number he had been given, but there was no answer.  Kubanyi got on his

snowmachine and drove to Rochester's Lodge, at the intersection of the Rex Trail

and Parks Highway.  People at Rochester's told Kubanyi that Cruz had left for

Fairbanks.   Kubanyi returned home and once again told the Cruz Construction

workers to stop crossing the property.   At some point in the evening, Kubanyi

pointed out the private property signs to the workers.[46]  Work continued, and the

operation continued to make noise.  Kubanyi could not sleep because of the noise of

the heavy equipment. Kubanyi went out again to tell the workers to stop crossing

---

[45] Kubanyi told Cruz that there was open access to the lake on the north side of the lake. Mr. Cruz mistakenly told Kubanyi that they were on the north side of the lake.   I advised him that he was "bullshitting" me and that he "didn't know north from south". Dave Cruz pulled out a map from a clip board in his truck to demonstrate that he was on the south side, but I did not want to see it. Id.
[46] Nelson & Covey Ex. 3 (D. Kubanyi Depo.) at 92:18-19

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

the allotment.  Again they told him that they had all the right to cross the allotment. At this time, Kubanyi told them that he would shoot out their tires if they kept working through the night.[47]  While Kubanyi was intoxicated at this time, he was not armed with any weapon.  The construction workers told him that they were going to call the Troopers. At this point, Kubanyi welcomed the idea of the troopers coming, assuming that they would stop the trespass. About an hour later, the Alaska State Troopers arrived, and Kubanyi went out to meet the troopers.

The responding troopers had been told by Cruz and three of his workers that Kubanyi was alleging that Cruz was trespassing on Kubanyi land.[48]  The troopers were not interested in the trespass issue.[49]  Rather, they focused upon the false allegation by Cruz and his workers that Kubanyi had threatened to shoot them.[50]  At no time did the Troopers question whether the white workers were telling the truth, or whether the Native land owner might be within his rights.  However, the workers told the Troopers that Kubanyi was not armed when he made his threat.  When

---

[47] Nelson & Covey Ex. 3 (D. Kubanyi Depo.) at 90:1-6
[48] Plt. Ex. 7(Covey Depo) 22:8-13; Plt. Ex. 6 (Nelson Depo) 34:4-9;  At the Trooper S.J. Memo at 3, the Troopers argue that Cruz reported to them that there was a "land issue." That is gross understatement by opposing Counsel.  To both Tpr. Nelson and Covey's credit, they clearly testified at their deposition that they were aware that Kubanyi was alleging that Cruz and his workers were trespassing on Kubanyi land, but were not concerned about it. They were concerned about the allegation of threatened violence.
[49] Id.
[50] Id. Plt. Ex. 6 (Nelson Depo) 18:8-23

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

Kubanyi came out of his cabin to talk to the Troopers, Trooper Covey drew his

weapon. While it was late night, the area was "lit up" by 2,000 Watt Quartz lights.[51]

Kubanyi was unarmed, and clearly visible.[52]  At this point, the tape of the arrest as

recorded by the troopers and the trooper testimony is pretty clear as to the events.

Covey's affidavit indicates that Kubanyi refused to comply with Covey's

command.[53] However, that is inconsistent with Covey's deposition, which indicates

that when Covey ordered Kubanyi to stop advancing toward him, Kubanyi

complied.[54]  Indeed, Kubanyi started to back up.[55]  As the transcript of the tape

indicates, the only command that Mr. Kubanyi refused to comply with was Covey's

command to lie down on the ground, which was the frozen lake.  Kubanyi

responded, "I ain't lying on the ground".[56]  Indeed, despite Mr. Kubanyi's

intoxicated state, he asked very appropriate questions: 1) in response to the

command "to stop movin," Kubanyi stopped and asked "What the fuck for?"; 2) in

response to the final command to "lay down" on the ice, Kubanyi asked "Why, Tell

me why. Tell me why, Just tell me why".  It was at this point that Covey discharged

the Tazer on Mr. Kubanyi.   A reasonable juror could easily find that Mr. Kubanyi

---

[51] Plt. Ex. 3 (D.Cruz Depo.)., at 31:18-32:20
[52] Plt. Ex. 4 (D. Kubanyi Aff't)
[53] Nelson & Covey Ex. D (Covey Aff't) at para 8
[54] Plt. Ex. 7(Covey Depo) 23:19;
[55] Plt. Ex.6 (Nelson Depo) 46:2
[56] Covey & Nelson Ex. D, p. 2 para 3

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

was not threatening the Troopers or the construction workers, but was trying to find

out why the Troopers, who had drawn guns, and Tazers  and Pepper spray at ready,

were demanding that he lay down on the frozen lake.  Aside from these facts, there

are a number of additionally disturbing elements of the incident.


The Troopers were fully aware that a land owner could make a civil arrest of

a person for trespassing on posted land, and were actually trained in how to assist

landowners in conducting civil arrests for trespassing on posted lands.[57] The

Troopers were fully aware that Kubanyi was alleging trespass against Cruz.[58]   The

troopers were aware that posting land is legally significant in trespass

enforcement.[59]  The troopers never bothered to look to see that the property was

posted.[60] The Troopers assert that they were concerned about avoiding violence;

however, they never considered suggesting to Cruz to withdraw his people and

equipment from the Allotment and sort out the civil legal issues in the morning.[61]

Indeed, the only violence that occurred that night was the violence perpetrated by

the Troopers upon Don Kubanyi.

---

[57] Plt. Ex. 7(Covey Depo) 9:24-10; 15-17
[58] Plt. Ex. 7(Covey Depo) 22:8-13; Plt. Ex. 6 (Nelson Depo) 34:4-9;
[59] Plt. Ex. 7(Covey Depo) 9:24-10
[60] Id., at 21: 21-24
[61] Id.,at 27:21 — 28:8

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

Moreover, there is no question that in reporting the matter to the Troopers, Cruz personnel used racial epitaphs: e.g. claiming "Indians were out there getting wild".[62] It is undisputed that Kubanyi was not armed with a weapon at any point in the night,[63] and that the area was highly lit by industrial lights so that Kubanyi was clearly visible.[64] It is also undisputed that Kubanyi never attacked anybody.[65] According to Trooper Covey, Kubanyi did not actually commit a crime; he was arrested for merely telling the Troopers to "Fuck off".[66] The Troopers attacked Kubanyi, not the other way around. Most importantly, there is no dispute that after Kubanyi surrendered --- yelling "I'm done, I'm done" --- the troopers continued to taze him.[67]   Finally, after the arrest, Mr. Baggett, Mr. Kubanyi's brother in law, approached the troopers.   At this point, Officer Covey had Mr. Baggett kneel in the snow and frisked him.[68] The troopers did not ask Mr. Baggett, who is white, to lie in the snow. After he got up, Bagget informed Covey that there was a dispute about Cruz trespassing, but Covey did not investigate the trespass complaint.[69]

---

[62] Id., 28: 18-22  The Kubanyi's are Innupiat Eskimon; not Indian.
[63] Supra.
[64] Supa.
[65]
[66] Id., 29:9-24
[67] See Trooper Memo, at 6
[68] Id., at 9
[69] Plt. Ex. 7(Covey Depo) 38:22-39:8

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

Conveniently, opposing counsel omits the remainder of the taped

conversation between Trooper Covey and Bagget.   The conversation continued

between Covey and Bagget as follows:

> TROOPER COVEY:  (inaudible) Well, here's the deal. These guys are going to
>     be working out here.  They got the contract to do it; they got the
>     license to do it; and they got the right-of-way to be on the public
>     easement; they got all the paperwork.  If you really want to see it, we
>     can show that to  you.
> MR. BAGGET:  Yeah, I wouldn't mind looking at it.
> TROOPER COVEY:  We can do that.
> MR. BAGGET:  I don't want to be a big problem
> (inaudible)
> TROOPER COVEY:  (inaudible) that's fine.  Let's go and  they'll be more than
>     happy to show it to you.
> UNIDENTIFIED VOICE:  (presumably Covey) Are we going to have any
>     more problems with people over there?
> UNIDENTIFIED VOICE:   (presumably Bagget) No, you will not.  (inaudible)
> UNIDENTIFIED VOICE:  (presumably Covey)  Because I don't want to have
>     to come back out here.
> UNIDENTIFIED VOICE:  (presumably Bagget)  I understand.

In essence, Covey statement to Bagget that the Kubanyi's  had better not

cause any more trouble for the Intertie workers, clearly evinces the purpose of the

Trooper's mission—to facilitate the construction project.[70]  Finally, as discussed

below, Covey and Nelson lacked any jurisdiction to stop a Native allotment owner

engaged in self-help to stop a trespass.[71]

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

---

[70] Plt. Ex. 8

[71] See discussion below. *Heffle v. State, 633  P.2d 264 (Alaska 1981)*

There is little question that Covey and Nelson failed to act as impartial law enforcement officers. Rather, they intervened into a trespass matter, assumed that the white contractors had a right to be on the land, used physical force to restrain the Native allotment owner who rightly objected to the trespass, and threatened the remaining Kubanyi family members to continue to allow the ongoing trespass. Covey and Nelson actively used their authority and color of law to aid and abet, through the use of physical force, the trespass being committed by Cruz, et. al. More importantly, the only crime that the Troopers witnessed that night was Criminal Trespass in the Second Degree by the Cruz workers.[72]

### d. Procedural Background.

This action was brought upon complaint filed October 4, 2004, and an amended complaint filed February 8, 2005. The amended complaint contains two counts: Trespass (Count I) and 42 USC 1983 (Count II). In answering the complaint, Cruz filed a third party complaint against Global Power and Communications, which has not entered an appearance or filed an answer in this case.

---

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

[72] AS 11.46.330.

Currently before the court are four (4) motions for summary judgment and partial summary judgment filed by the Defendants: Black and Vetch (B&V) (April 5, 2006);[73]  Covey and Nelson (May  5, 2006);[74] Cruz (May 9, 2006);[75] GVEA (May 10, 2006).[76]  Black and Vetch joined on the Cruz motion (June 1, 2006)[77]

B&V argues, as to the trespass claim, that they were an independent contractor hired by GVEA to perform engineering services on the Intertie project. B&V further argues that none of their employees physically trespassed upon the Kubanyi allotment, and that vicarious liability may not be imputed to them because they had no contractual relationship with Cruz Construction nor exercised any functional control over Cruz.  B&V argue that the §1983 claim fails for want of proof.

Covey and Nelson's motion relates only to the excessive force component of the §1983 claim. Covey and Nelson's motion does not address the deprivation of property rights component of the §1983 claim.  Covey and Nelson argue that they did not use excessive force against either Kubanyi or Bagget, or, in the alternative, that they possess qualified immunity.

---

[73] Docket No. 57
[74] Docket No. 72
[75] Docket No. 74
[76] Docket No. 75
[77] Docket No. 78

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

Cruz assumes that there is a factual dispute about whether a trespass

occurred (i.e. whether the Rex Trail easement extends into the lake) and assumes for

the purpose of the motion that a trespass did occur.  Rather, Cruz asserts that the

trespass was unintentional and there is no damage to the allotment.  Hence, Cruz

seeks partial summary judgment that Cruz is only liable for nominal or no damages.

As with Covey and Nelson, Cruz's motion relates only to the excessive force

component of the §1983 claim, and claims that Cruz employees neither acted under

color of law, nor participated in Kubanyi's arrest.


GVEA's motion only addresses the trespass issue, and argues Cruz was an

independent contractor, and that GVEA had no liability as a result.  GVEA does not

address the 1983 issue.


The Kubanyi's have filed a cross motion for partial summary judgment

contemporaneous with their opposition to the Defendants' various motions seeking

determinations that

1)  the right of way for the Rex Trail does not provide direct legal public

access to Seven Mile Lake.

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

2)  Cruz is liable for trespassed upon the Kubanyi Allotment during the spring of 2002 and 2003.

3)  Cruz's 2002 and/or 2003 trespasses were intentional or grossly negligent.

4)  GVEA is liable for the 2002 and/or 2003 trespasses. that Black and Vetch is liable for the 2002 and/or 2003 trespasses.

5)  Nelson and Covey are liable under §1983.

6)  Cruz et. al. are liable under §1983, and

7)  GVEA is liable under §1983.

## II.    STANDARD FOR SUMMARY JUDGMENT

" A party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may … move with or without supporting affidavits for summary judgment in the party's favor upon all or any part thereof."[78] Summary judgment is also available to a party defending a claim.[79] Summary judgment is appropriate if the Court finds that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits… show that

---

[78] *See* FRCP 56(a)
[79] *See* FRCP 56(b)

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[80]

A dispute over a material fact exists if the evidence would allow a reasonable fact-finder to return a verdict for the non-moving party.[81]  "(T)he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.[82]  The non-moving party may defeat judgment by producing sufficient specific facts to establish that there is a genuine issue of material fact for trial.[83]  However, mere allegations of factual dispute, without more, will not defeat an otherwise proper motion.[84]

### III.    THE REX TRAIL DOES NOT PROVIDE LEGAL ACCESS TO SEVEN MILE LAKE

The first element of Kubanyi's motion for partial summary judgment presents a critical and fundamental issue that must first be resolved before all other issues in

---

[80] *See* FRCP 56(c)
[81] *See Anderson v Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)
[82] *Anderson v Liberty Lobby, Inc.*, 477 U.S., at 247-248
[83] *Celotex Corp. v Catrett*, 477 U.S. 317, 322 (1986).
[84] *Provenz v Miller*, 102 F.3d 1478, 1489-90 (9th Cir., 1996);  *Angel v Seattle-First Nat.'l Bank*, 653 F.2d 1293, 1299 (9th Cir. 1981).

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

the case: i.e. whether the right-of-way for the Rex Trail provides direct legal access to Seven Mile Lake.  Alternatively stated, do portions of the Kubanyi allotment outside the Rex Trail right-of-way lay between the Rex Trail right of way, and Seven Mile Lake?  This is Kubanyis principal contention and the resolution of all remaining issues raised in the pending motions hinge, to one degree or the other, on the resolution of this principal issue.  While the Defendants challenge the idea that Cruz left the Rex Trail Right-of-way, such arguments are nothing more that a mere alleged factual dispute, that by itself will not defeat Kubanyi's motion for summary judgment under the principles of *Anderson v Liberty Lobby, Inc.,* . [85]  Defendant's are not in the possession of any evidence that would suggest that the Rex Trail right of way abuts either to the littoral boundary of U.S. Survey 9954 or to the lake's  mean high water mark.

The burden of proof on this issue is governed by a federal statute that clearly places the burden of proof as to the boundaries upon the Cruz, GVEA, B&V and Nelson and Covey.  The statute provides

> In all trials about the right of property in which an Indian may be a party on one side, and a white person on the other, the burden of proof shall rest upon

Michael J. Walleri
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

---

[85] *Anderson v Liberty Lobby, Inc.,* 477 U.S., at 247-248.

the white person, whenever the Indian shall make out a presumption of title in himself from the fact of previous possession or ownership.[86]

The U.S. Supreme Court has had occasion to consider this statute, holding that  (1) once the Indian made out his *prima facie* case of prior title or possession, the non-Indian shoulders the burden of persuasion as well as the burden of producing evidence; (2) the statute applies to individuals persons, (3) and that the term "white person" includes corporations, as well as individual persons.[87]  Applying this statute to the present case, it is clear that once the Kubanyi's establish a *prima facie* case of title, the individuals and corporations who challenge the Kubanyi's property right, shoulder the burden of producing evidence and the burden of persuasion that the Rex Trail public easement extends and intersects with the public waters[88] of Seven Mile Lake.

The Kubanyi's meet their obligation of establishing a prima facie case by merely showing evidence of title that incorporates within its legal description the

---

[86] 25 USC § 194.

[87] *Wilson v. Omaha Indian Tribe, 442 U.S. 653 (1979)* The Court also held that the statute does not apply to the States.

[88] There is no question that the lake proper – i.e. the waters below the mean high water mark – are outside the confines of the Kubanyi allotment and are public waters to which the Defendants had a right to use without Kubanyi permission.

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

land in question.[89]  There is no question that the Kubanyi allotment, as described by

US Survey 9954 includes the area at issue.[90]

The Defendants do not have any evidence that the right-of-way intersects the

public waters of the lake.  Cruz admitted that they did not undertake a location of

the boundary of the easement prior to their entry upon the land.[91]  Upon

information and believe, to this day, the Defendants have not undertaken a location

survey of the Rex Trail and the allotment boundaries.  They are unable to present

any evidence as to the location of the Rex Trail and allotment boundaries.  As a

consequence, they are unable to meet their burden of proof on this issue, and the

Court must find that the Rex Trail does not intersect with the public

But the evidence offered by the Kubanyis goes far beyond the presentation of

a *prima facie* case of title. Rather the Kubanyis have produced a location survey of

both the Rex Trail easement and the allotment boundaries, which clearly establish

that the easement does not intersect with the public waters of the lake, and, at a

---

[89] Id, at 669.  The Court rejected the argument that the Indians must make a proof of the boundary, i.e. the merits of the issue in controversy.  The court held that "Section 194 is triggered once the [Indian] makes out a prima facie case of … title to the particular *area* under dispute." (emphasis in original)
[90] Plt. Ex. 2 (Stalke Report)
[91] Plt. Ex. 3 (D. Cruz Depo) 47:3-21

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

minimum,[92] the lake boundary is 43.7 feet from the Rex Trail easement, and that the

intervening land is contained within the Kubanyi allotment.[93]  More importantly to

this motion, however, the Defendants are unable to produce evidence of sufficient

quality to suggest that there is a genuine issue of material fact in dispute on this

---

[92] There are several "red herring" issues that might surface in response to Plaintiff's motion for partial summary judgment on this issue.  These include questions about the location of the easement (i.e. its location in 1992, or the present day location), whether surveyed allotment/lake boundary applies or whether the erosion of the lakeshore should be considered, and if so, whether federal or state law controls.  While these issues are very interesting, they are largely irrelevant because the conclusion of the Stalke report is based upon an assumption of facts most favorable to the Defendants.

For example, the trail has moved, however, the location mapped by Stalke as of 2006 is the most favorable to the Defendants.  The trail location contained in the original survey (Plt. No. 1) locates the trail as meandering across the southern allotment boundary, and substantially south of its present (2006) location.  Similarly, the 1998 aerial photo contained in the Stalke Report (Plt. Ex. 2) shows that the trail had "moved" north, closer to the lake, however, more southerly than its present location.  The Stalke location of the trail reflects the present (2006) location of the trail, which is at its most northern location – i.e. closest to the lake.  The 2006 location, however, would mean that the northern most boundary of the fifty-foot easement is still 47 feet from the lake.  Thus, the prior evidence clearly demonstrates that the trail location is at least 47 feet from the lake, regardless of which trail location is used.

Alternatively, it would appear that the lake has eroded the lake shoreline, however, once again the mean high water mark of located by Stalke as of 2006  is most favorable to the Defendants.  The original allotment surveyed boundary clearly locates the mean high water mark in 1992 as farther north --- and hence further from the Rex Trail -- than the 2006 location.   Defendants may argue that the allotment/lake boundary has moved south of its original location, which is true, however, its 2006 location is clearly 47 feet from the northern most location of Rex Trail easement boundary.

Finally, there is always a question in boundary cases as to whether state or federal law should apply in considering accretion and erosion issues.  Federal law governs questions regarding the construction of a federal land patent and "the quantum of the premises which it conveys," including title disputes arising out of the gradual accretion of land. *De Boer v. United States, 653 F.2d 1313 (9th Cir. 1981)*   The land in question is subject to a federal certificate of allotment.  Clearly, Federal law applies.  However, whether federal or state law applies, the result is the same in that Alaska law and federal law on accretion are in accord. *State, Dept. of Natural Resources v. Pankratz,* 538 P.2d 984, 989, 994(Alaska 1975).  That is to say, that the accretion or errosion of lakeshore lands both inure to the benefit or loss of the adjacent land holder.  *Banks v. Ogden, 69 U.S. 57 (1864); Compare Pankratz,* 538 P.2d 984, 989, 994(Alaska 1975)

[93] Plt. Ex. 2 (Stalke Report)

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

issue. The Court should grant summary judgment and hold that the right-of-way for the Rex Trail does not provide direct legal access to Seven Mile Lake, and that the Kubanyi Allotment lands lie between the north boundary of the Rex Trail easement and the Kubanyi/Seven Mile Lake boundary.

## IV.    COUNT I – THE TRESPASS CLAIMS

### a.    Trespass Generally

All property owners, including Indian allottees, possess a common law right to prevent trespasses upon their land.[94] Trespass is an unauthorized intrusion or invasion of another's land. [95] Trespass liability may result from an actor's intentional or negligent conduct.[96] According to traditional trespass rules, it is also not a requirement for liability that the trespasser know that the trespass is being committed; trespasses resulting from ignorance, mistake[97] or inadvertence are still

---

[94]CJS 2d, Inidans § 81 (Indians may sue for trespass to their lands); *State v. Arnariak, 941 P.2d 154, 164 (Alaska, 1997) (Shortell,  dissenting)* In *Poafpybitty v. Skelly Oil Co., 390 U.S. 365, 88 S.Ct. 982, 19 L.Ed.2d 1238 (1968)* the Court held that individual Comanche Indians had standing to sue defendant oil company for breach of an oil and gas lease on their allotments. The Court noted that the power of the United States to sue upon a violation of the lease did not diminish the right of the individual Indian to maintain an action to protect that lease.

[95] *Parks Hiway Enters., LLC v. CEM Leasing, Inc., 995 P.2d 657, 664 (Alaska 2000); citing Brown Jug, Inc. v. International Bhd. of Teamsters, 688 P.2d 932, 938 (Alaska 1984)*

[96] *Parks Hiway Enters., LLC v. CEM Leasing, Inc., supra:, Restatement (Second) of Torts §§ 163, 165 (1965)); Restatement (Second) of Torts § 159 (1965); Restatement (Second) of Torts §§ 158, 165 (1965).*

[97] *Restatement of the Law 2d, Torts, § 164*

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

trespasses.[98]  Additionally, the failure to leave property, even if the owner has

previously consented or acquiesced in the original entry upon the land, is a

trespass.[99]  And, if, by any act of his, the actor intentionally causes a third person to

enter land, he is as fully liable as though he himself enters.[100]  Of particular

relevance to this case is the principle that

> One who employs an independent contractor to do work which the employer
> knows or has reason to know to be likely to involve a trespass upon the land
> of another or the creation of a public or a private nuisance, is subject to
> liability for harm resulting to others from such trespass or nuisance.[101]

 And finally, the mere fact that the entry upon the land does not cause harm to the

land does not absolve the trespasser of liability.[102]

### b. Cruz Is Clearly Liable For Trespassed Upon The Kubanyi Allotment: Such Trespass Was Intentional or Grossly Negligent.

There is no genuine factual dispute that Cruz is liable for trespass upon the

Kubanyi allotment on March 1, 2003.   As detailed above at Section I(b), Cruz and

---

[98] DISPUTES BETWEEN ADJOINING LANDOWNERS-EASEMENTS, §10-2 (Matthew Bender & Co., 2005) citing *New York State NOW v. Terry, 704 F. Supp. 1247  (USDC S NY, 1989)*
[99] *Restatement of the Law 2d, Torts, § 158, Comment l.*
[100] Id, Comment j; See also *Restatement of the Law 2d, Torts, § 158,*
[101] *Restatement of the Law 2d, Torts, § 427B,*
[102] *Restatement of the Law 2d, Torts, § 163* which states the rule as
> One who intentionally enters land in the possession of another is subject to liability to the possessor for a trespass, although his presence on the land causes no harm to the land, its possessor, or to any thing or person in whose security the possessor has a legally protected interest.

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

Don Kubanyi agree that Cruz's water crew crossed from the Rex Trail to the lake at the tree line break located at the southwestern corner of the lake.  There is also no genuine factual dispute that Cruz is liable for trespass upon the Kubanyi allotment for the spring of 2202.  While the Kubanyi's were unaware of the use of the allotment, Cruz admits the essential elements of the 2002 and 2003 trespass.[103]

The only possible factual issue is whether Cruz's trespass was intentional or mistaken.  This is not particularly important on the issue of primary liability because a trespasser is liable for the trespass whether the trespass is by intention, mistake or inadvertence.[104] Rather, the issue of intention more likely goes to the quantum and nature of damages: i.e. punitive or exemplary damages.

Cruz states that he did not know that he was off the Rex Trail right-of-way, however, there is no objective evidence to support that claim.  The undisputed evidence is clear that the trespass was either intentional or gross negligence, given

1)      Cruz's knowledge of the existence of the allotment in 1999 during his negotiations with Victor Kubanyi to lease the allotment for a construction camp;

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

[103] Plt. Ex. 3 (D.Cruz Depo.)., at 13:7-17; 15:15 to 16:18; 19:13-14; 21:5
[104] *Restatement (Second) of Torts §§ 163,  164, & 165 (1965)*

*Kubanyi v. GVEA* Case No. F04-0026
Plaintiffs' Initial Witness List

2)    Wayne Walter's report to Cruz that Cruz needed to get an

agreement with the Kubanyi's to gain access to the lake prior to the

spring of 2002;

3)    The allotment was heavily posted "No Trespassing", and, in

particular, was posted at the break in the tree line, where Cruz

accessed the lake from the Rex Trail;

4)    On March 1, 2003, Don Kubanyi told his crew and him personally

that they were trespassing and asked them to leave on more than

one occasion;

As noted above, there is no evidence that Defendants may offer to refute the

fact of the trespass. There may be some conflicting evidence as to intent, however,

that evidence has not been produced in discovery. The only evidence offered to date

is Cruz's subjective testimony that he had a subjective belief that the lake intersected

with the Rex Trail, but he also admits that he had plenty of surveyors available to

him and he never sought to undertake a location of the Rex Trail Right of Way and

the Kubanyi allotment boundaries.  The only evidence as to intent is Cruz's bald

assertion.  As noted above, a non-moving party may only defeat summary judgment

by producing <u>sufficient</u> specific facts to establish that there is a genuine issue of

material fact for trial.  The bald subjective statement by Dave Cruz is unsupported

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

by any facts that would lead a reasonable man to not believe he was not trespassing or to not put a reasonable person on inquiry notice.

Therefore, the Court should deny Cruz motion for partial summary judgment as to Count I (Trespass)  and grant summary judgment to Plaintiff on the issue of Cruz's liability for trespass.

### c.  GVEA Is Liable For Trespass Upon The Kubanyi Allotment

Essentially, there are four (4) theories of trespass liability running to GVEA. First, if GVEA's legal analysis is correct, there is a genuine factual issue as to whether GVEA maintained sufficient control over Cruz's activities to retain liability. However, it is more likely that GVEA is liable, as a matter of law, 1) under conventional principals of trespass liability, 2) assumption of liability under the State TWUP, or 3) by operation of FLPMA and applicable regulations.

GVEA's central argument is that Cruz was an independent contractor over whom GVEA had neither control nor responsibility. This is consistent with the general rule that "the employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or his

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

servants".[105]  Specifically, GVEA cites *Crnkovich v Scaletta, 277 N.W. 2d 416 (Neb. 1979)* for the principal that where a trespass is committed by an independent contractor, the other party to the contract is not liable for the trespass unless such other party controls the work or authorizes the specific act.[106]  However, the Court in *Crnkovich* held that this was a factual issue that must be tried.   Accepting GVEA authority as controlling *arguendum,* there are genuine factual disputes as to whether GVEA exercised sufficient control over Cruz's activities to incur liability.  As noted above, GVEA obtained the water permit that listed the permitted water sources, and included Seven Mile Lake.[107]  Cruz was advised that he could only take water from these permitted water sources.[108]  Prior to mobilizing to the Seven Mile Lake, Cruz advised GVEA of its intent to do so as part of the general weekly project meeting.[109]  There is a genuine factual dispute as to whether GVEA exercised sufficient control over the project to acquire liability under the legal principals advanced by GVEA.

However, *Crnkovich* did not involve a trespass the strict application of the independent contractor doctrine as articulated by GVEA is not the majority rule in trespass cases.  As with most general rules, there are often exceptions, and the

---

[105] *Restatement (Second) of Torts § 409*
[106] GVEA also cites Bonk v McPherson 605 A. 2d 74 (Maine, 1992)
[107] Cruz Ex. 5
[108] Plt. Ex. 3 (D.Cruz Depo.) 58:7
[109] Plt. Ex. 3 (D.Cruz Depo.) 72:11-73-10.

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

general rule relied upon by GVEA is no exception. Specifically, Restatement of Torts

2d lists twenty-four (24) exceptions to the general rule,[110] which have largely been

accepted in Alaska.[111]  As noted above, the majority rule applicable to this case

provides

> One who employs an independent contractor to do work which the employer
> knows or has reason to know to be likely to involve a trespass upon the land
> of another or the creation of a public or a private nuisance, is subject to
> liability for harm resulting to others from such trespass or nuisance.[112]

---

[110] The preface to *Restatement (Second) of Torts § 409 provides* "Except as stated in §§ 410-429".  The
Restatement goes on to list the following exceptions to the general rule:
§ 410 Contractor's Conduct in Obedience to Employer's directions; § 411 Negligence in Selection of
Contractor; § 412 Failure to Inspect Work of Contractor After Completion; § 413 Duty to Provide for
Taking of Precautions Against Dangers Involved in Work Entrusted to Contractor; § 414 Negligence
in Exercising Control Retained by Employer; § 414A Duty of Possessor of Land to Prevent Activities
and Conditions Dangerous to Those Outside of Land; § 415 Duty to Supervise Equipment and
Methods of Contractors or Concessionaires on Land Held Open to Public; § 416 Work Dangerous in
Absence of Special Precautions; § 417 Work Done in Public Place;  418 Maintenance of Public
Highways and Other Public Places; § 419 Repairs Which Lessor Is Under a Duty to His Lessee to
Make; § 420 Repairs Gratuitously Undertaken by Lessor; § 421 Maintenance of Structures on Land
Retained in Lessor's Possession Necessary to Tenant's Enjoyment of Leased Land; § 422 Work on
Buildings and Other Structures on Land; § 422A Work Withdrawing Lateral Support; § 423 Making
or Repair of Instrumentalities Used in Highly Dangerous Activities; § 424 Precautions Required by
Statute or Regulation; § 425 Repair of Chattel Supplied or Land Held Open to Public as Place of
Business; § 426 Negligence Collateral to Risk of Doing the Work; § 427 Negligence as to Danger
Inherent in the Work § 427A Work Involving Abnormally Dangerous Activity: 427B Work Likely to
Involve Trespass or Nuisance; § 428 Contractor's Negligence in Doing Work Which Cannot Lawfully
Be Done Except Under a Franchise Granted to His; § 429 Negligence in Doing Work Which Is
Accepted in Reliance on the Employer's Doing the Work Himself
[111] *Hammond v. Bechtel, Inc.*, 606 P.2d 1269 (1980)
[112]) *Restatement (Second) of Torts §§ 427(B);  See Commonwealth Edison Co. v. United States, 271 F.3d 1327
(Fed. Cir. 2001);* Budagher v. Amrep Corp*., 97 N.M. 116, 637 P.2d 547 (1981)Barber Pure Milk Company
v. Young, 263 Ala. 100, 81 So.2d 328 (1955); Stout Lumber Co. v. Reynolds, 175 Ark. 988, 1 S.W.2d 77
(1928); Bleeda v. Hickman-Williams & Co., 44 Mich. App. 29; 205 N.W.2d 85 (1972); Hazard Municipal
Housing Com. v. Hinch, 411 S.W.2d 686(Ky. 1967)*

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

As noted above, GVEA had actual knowledge of the Kubanyi allotment because Don Kubanyi had provided a map of the allotment's location during the planning/scoping hearings to Greg Wyman, GVEA's Progject manager.[113] Moreover, Cruz advised GVEA during the weekly planning meetings that it was mobilizing to Seven Mile Lake.   Clearly, GVEA had knowledge of the allotment, and knew of the plan to set up the watering point.  GVEA either knew or should have known that Cruz's use of the permit would involve a trespass on the Kubanyi allotment.

Thirdly, and more clearly, GVEA assumed liability for the trespass by its contractors in obtaining the temporary water use permit (TWUP).[114] The permit allowed "GVEA and its contractors" to use the water at Seven Mile Lake, however, the permit specifically stated

> This authorization does not authorize the permittee to enter upon any lands until proper rights-of-way, easements, or permission documents from the appropriate landowner have been obtained.[115]

Additionally, the TWUP stated,

---

[113] Ex. 4 (D. Kubanyi Affidavit)
[114] Cruz Ex. 5
[115] Id. at para. 7

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

*Kubanyi v. GVEA* Case No. F04-0026
Plaintiffs' Initial Witness List

> Permittee shall be responsible for all actions of contractors, agents or other persons who perform work to accomplish the approved project, and shall ensure that workers are familiar with the requirements of this authorization.[116]

Clearly, GVEA assumed financial responsibility for the actions of its contractors under the TWUP.

Finally, GVEA was operating under a Right of Way permit issued under Title V of the Federal Land Management and Policy Act, [FLPMA] [43 USC 1761].[117] FLPMA provides that "Each right-of-way shall contain such terms and conditions as the Secretary concerned deems necessary to …protect lives and property…."[118]  The permit incorporates by reference 43 CFR 2880 et. seq., which contains the following regulation:

> 43 CFR § 2807.12   If I hold a grant, for what am I liable?
>
> If you hold a grant, you are liable to the United States and to third parties for any damage or injury they incur in connection with your use and occupancy of the right-of-way.
> …
> (d) If BLM issues a grant to more than one person, each is jointly and severally liable.

---

[116] Id, at para 10
[117] GVEA Ex. D
[118] 43 USCS § 1765(b)(iii)

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

Clearly, these provisions of FLPMA and its regulations impose joint and several liability for trespass against third parties upon GVEA as a permittee.

Therefore, the Court should deny GVEA's motion for partial summary judgment as to Count I (Trespass) and grant Kubanyi's motion to find GVEA liable for the 2002 and/or 2003 trespasses.

### d. B&V May Be Liable For Trespass Upon The Kubanyi Allotment

Black and Vetch are not the permittee under the TWUP or the FLPMA, and thus these theories of liability applicable to GVEA do not necessarily apply to B&V. However, it is very clear that Black and Vetch directed Cruz to relocate its watering operation to Seven Mile Lake, and directed Cruz to trespass upon the Kubanyi allotment. Specifically, Cruz testified that Mr. Jensen of B&V provided Mr. Cruz with the permit, and selected the watering spots to be used by Cruz.[119] Black and Vetch was at the weekly meeting when the decision was made to relocate the watering point to Seven Mile Lake.[120] As a result, there is substantial evidence that B&V actually directed or participated in deciding that Cruz should trespass upon the Kubanyi allotment. Such activity would give rise to liability for the trespass

Michael J. Walleri
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

[119] Plt. Ex. 3 (D.Cruz Depo.) 37:7-12; 58:1-7
[120] Id., at 72:11- 73-10

under the principles articulated in *Restatement (Second) of Torts §§ 427(B) (supra)*. In the alternative, there is sufficient evidence to create a genuine issue of material fact to preclude the grant of B&V's motion for summary judgment.

Therefore, the Court should deny B&V's motion for summary judgment, and grant Kubanyi's motion for partial summary judgment holding B&V liable for the trespasses upon the Kubanyi allotment on 2002 and 2003.

### e.  The Kubanyi's Are Entitled To More Than Nominal Damages.

Cruz and B&V argue that no damage was done to the land and seek to limit the Kubanyis to nominal damages should a trespass be proven. In support of this motion, they cite *Wernberg v Matanuska Elec. Ass'n., 494 P.2d 790 (Alaska, 1972)* There are many problems with this argument.

First, in *Wernberg*, the Court found that there was no intentional trespass. That is not the case here.  Cruz, et. al. were clearly on notice that they were entering Kubanyi land--- i.e. the posting of No Trespassing signs, the investigation and report of Mr. Walters to Mr. Cruz of the need to gain access, and the fact that all parties acknowledge that Don Kubanyi gave specific notice of the trespass and his desire for Cruz and his crew to stop its night operations.   This was not an unintentional

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

trespass.  Subsequently, the Alaska Supreme Court explained *Wernberg* as affirming the trial court rejection "as "speculative" landowner's claimed lost-use damages based on his allegedly intended use of land as an airstrip, where the landowner had taken no steps to develop that use."[121]  In *Wernberg* there was no economic value extracted from the subject land. That is not the case here.  Cruz testified that the water was necessary to his $3 million contract,[122] and when he was required to relocate, and that relocation resulted in a change order cost to GVEA of $110,000.[123] The Seven Mile Lake site was the closest watering site to the area in which the company was working.[124]  At a minimum, GVEA, Cruz, and B&V extracted at least $110,000 of value by trespassing upon the Kubanyi lands.  *Wernberg* is simply not applicable.

More importantly, the fact that damage was not done to the allotment lands does not forclose damages.  As the Alaska Supreme Court explained, in *Wernberg,* a the plaintiff could claim either the diminution in value or the value of trees measure of damages.[125]  That holding, however, did not foreclose the possibility of other

---

[121] *Chenega Corp. v. Exxon Corp., 991 P.2d 769, 793 n97 (Alaska 1991)*
[122] Plt. Ex. 3 (D.Cruz Depo.) 36:19-21
[123] Id.,at 66:23-67:12
[124] Id., 45:6 to 46:7
[125] *Andersen v. Edwards, 625 P.2d 282, 288(Alaska, 1981)*

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

measures of damages. [126] Various measures of damage for trespass have been employed in Alaska, including lost use, (including value of lost conservation or recreation values)[127] restoration costs,[128] rental value,[129] etc.  But as the Court in *Andersen v. Edwards,* stated, the value of the damages may vary depending upon the nature of the trespass.

This case is really a "resource conversion" case, and the better measure of damages in such cases is the amount of profits received by the trespasser as a result of the trespass. *Chanslor-Canfield Midway Oil Co. v. United States, 266 F. 145, 1920 U.S. (9th Cir. Cal. 1920); Edwards v. Lee's Administrator*, 265 Ky. 418, 96 S.W. 2d 1028 (Ky. App. 1936); See *Alaska v. 13.90 Acres of Land, 625 F. Supp. 1315, 1322 (D Ak. 1985).* The measure of damages in "resource conversion" trespass cases is premised upon an unjust enrichment theory.[130]  That is to say, the measure of damages is the amount of profits obtained by trespasser as a result of the trespass.

Alternatively, the Ninth Circuit held in *Hammond v. County of Madera, 859 F.2d 797, 804 (9th Cir. 1988),* that a measure of trespass upon a Native allotment was the

---

[126] Id.
[127] *Chenega Corp. v. Exxon Corp., 991 P.2d 769, 793 n97 (Alaska 1991)*
[128] *Andersen v. Edwards, 625 P.2d at 288*
[129] *Hammond v. County of Madera, 859 F.2d 797, 804 (9th Cir. 1988).*
[130] *Triple Elkhorn Mining Co. v. Anderson, 646 S.W.2d 725, 726 (Ky. 1983)*

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

reasonable rental value of the land (compensatory damages), plus the consequential

damages that may have been incurred. As the Ninth Circuit noted,

> A trespasser is liable in damages for all injuries proximately flowing from his trespass. If a trespass causes mental distress, the trespasser is liable in damages for the mental distress and for any resulting illness or physical harm. *Gavcus v. Potts*, 808 F.2d 596 (7th Cir. 1986); *see also Belluomo v. KAKE TV & Radio*, 3 Kan. App. 2d 461, 596 P.2d 832 (1979) (allowing recovery of compensatory damages for injuries resulting from a publication of information acquired by trespass); *Kornoff v. Kingsburg Cotton Oil Co.*, 45 Cal. 2d 265, 288, 288 P.2d 507, 511 (1955) (holding that once a cause of action for trespass or nuisance is established, an occupant of land may recover damages for annoyance and injury even if he or she has suffered no [*805] physical injury); *Thompson v. Simonds*, 68 Cal. App. 2d 151, 161-62, 155 P.2d 870, 875 (1945)(holding that a plaintiff can recover damages for "pain, anxiety, inconvenience, [and] annoyance" resulting from the interference that defendant's trespass caused to plaintiff's free use of his land.).

And finally, punitive damages may be claimed if the conduct is "outrageous".[131]

While actual malice need not be shown, the plaintiff must show at a minimum

"reckless indifference to the rights of others, and conscious action in deliberate

disregard of them."[132] The facts discussed above might clearly support a finding of

reckless indifference and accordingly punitive damages may be pled and recovered.

As a consequence, the Court should deny Defendant Cruz and B&B 's motion for

partial summary judgment.

---

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

[131] *Alaska v. 13.90 Acres of Land, 625 F. Supp. 1315, 1322 (D Ak. 1985).*
[132] Id., citing *Alyeska Pipeline Service Co. v. Anderson*, 629 P.2d 512, 527 (Alaska 1981)

## V.    ELEMENTS OF §1983 CLAIM

The complaint alleges a §1983 claim.  Admittedly, the complaint is somewhat ambiguous with regard to the theory of liability and the allegation of claims between plaintiffs and defendants.  Plaintiffs claims are rooted in two theories: i.e. 1) deprivation of all Plaintiff's property rights by Nelson and Covey, Cruz and GVEA as to all Plaintiffs, and 2) excessive force by Nelson and Covey against Don Kubanyi.  The §1983 claim is not intended to run against Black and Vetch.

### a.  DEPRIVATION OF PROPERTY RIGHTS– GENERALLY

In order to hold a party liable under section 1983 for the deprivation of property rights, a claimant must show: (1) that the actions of the public officials involved were taken under color of law; (2) that the conduct caused a deprivation of plaintiffs' rights, privileges or immunities secured by the Constitution or laws of the United States; and (3) that the conduct was the consequence of a government's "policy or custom. *Hammond, v. County of Madera, 859 F.2d 797, 801 (9th Cir., 1988)[133]* "    In *Hammond*, Native allottees alleged that a County trespassed upon their allotment by

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

---

[133] Citing *Parratt v. Taylor*, 451 U.S. 527, 535, 68 L. Ed. 2d 420, 101 S. Ct. 1908 (1981), *overruled in part on other grounds, Daniels v. Williams*, 474 U.S. 327, 330-331, 88 L. Ed. 2d 662, 106 S. Ct. 662 (1986).

constructing, maintaining and utilizing roads and that County officials, in attempting to secure a right-of-way across the allotment and incorporating the roads into the County system, deprived them of their property rights protected by the Constitution and statutes of the United States. The appellants requested damages for the trespass and pursuant to 42 U.S.C. § 1983.  The court held that under these circumstances the §1983 claim was cognizable.

As explained by the U.S. Supreme Court, the claim in such cases can be of two separate natures: procedural due process, and substantive due process.[134]  On one hand a violation of procedural due process occurs where there is a deprivation by state action without benefit of a hearing (either pre- or post deprivation). In this sense, the deprivation of the constitutionally protected property interest is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law.*[135]

On the other hand, the violation may be of substantive due process, and a plaintiff may also invoke § 1983 regardless of the availability of a state remedy if the

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

---

[134] Daniels v. Williams, 474 U.S. 327, 337 (1986)
[135] Zinermon v. Burch, 494 U.S. 113, 125 (1990)

Federal Constitution prohibits a State from taking certain actions. "(R)egardless of the fairness of the procedures used to implement them," the constitutional violation is complete as soon as the prohibited action is taken; the independent federal remedy is then authorized by the language and legislative history of § 1983."[136]

Although generally inapplicable to private parties, a § 1983 claim can lie against a private party when "'he is a willful participant in joint action with the State or its agents."[137]

### i. Nelson and Covey Are Liable Under §1983 for Deprivation Of Property Rights

Appling *Hammond* to the present case it is obvious that Nelson and Covey are liable under §1983 for deprivation of property rights of all Plaintiffs both with regard to substantive and procedural due process rights theories. There is no question that Nelson and Covey were public officials acting under the color of law. Moreover, Nelson and Covey clearly deprived the plaintiff's of their property rights by aiding and abetting Cruz et. al. in the illegal trespass upon their property.

---

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

[136] Daniels v. Williams, 474 U.S. 327, 338 (1986)
[137] *Kirtley v. Rainey, 326 F.3d 1088, 1092 (9th Cir. 2003) (quoting Dennis v. Sparks, 449 U.S. 24, 27, 66 L. Ed. 2d 185, 101 S. Ct. 183 (1980)).*

Moreover, the Troopers admit --- i.e. affirmatively claim ----that their actions were consistent with the State of Alaska's  government's "policy or custom."[138]

First, it must be understood that the state and federal constitution do not give the State of Alaska jurisdiction to interfere with a Native Allottee's self-help efforts to prevent trespass upon his Native Allotment.[139] Clearly, the actions by Nelson and Covey fall within the general penumbra of "substantive due process" claims; i.e. the federal and state constitutions simply prohibit the Troopers from "adjudicating" whether the trespass claims by a Native allottee.  There is no question that the Troopers prevented Don Kubanyi from seeking to stop the trespass.  Moreover, when Mr. Bagget approached the Troopers, they threatened Bagget and other members of the Kubanyi family against further interference with the Cruz Construction crew that was engaged in the trespass upon the allotment. [140]

---

[138] Nelson & Covey Memo, at 10-12.

[139] *Heffle v. State, 633 P.2d 264 (Alaska, 1981)*  In *Foster v. Dep't of Transp., 34 P.3d 1288, 1292(Alaska 2001)* explained *Heffle*  by noting the case

> "recognized that under § 1360(b),  state courts lack jurisdiction to adjudicate disputes involving the ownership or right to possession of property, such as  Native allotments, held in trust by the United States or subject to a restriction against alienation imposed by the United States. We also noted that "to reach the conclusion that an injunction is proper in this controversy, the ownership of and interests in the easement which crosses [the defendant's] Native allotment must be adjudicated."

This does not mean that the troopers cannot stop confrontations between Allottees and alleged trespassers.  Rather, the troopers may request the alleged trespasser to withdraw from the situation and seek a civil determination as to his rights, if the trespasser claims rights.

[140] Plt. Ex. 8

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

Equally, there was a procedural due process claim in that the State never

provided the Kubanyi's with any hearing as to the trespass claim --- either before

their forcible assistance to Cruz et. al., or after.  Clearly, the failure to provide any

pre- or post- deprivation hearing was a procedural due process violation.

As a result, there are no genuine issues of disputed fact, and the Court should

grant plaintiff's motion for summary judgment holding Nelson and Covey liable

under §1983 under both substantive and procedural due process theories.

### ii.   Cruz Is Liable Under for Deprivation Of Property Rights

As noted above, a § 1983 claim can lie against a private party when "'he is a

willful participant in joint action with the State or its agents."[141]  From the facts

noted above, there can be no serious factual dispute that Cruz and his construction

crew were 'willful' participants in enlisting the troopers to aid and abet their

trespass, to the effect of depriving the Kubanyi's of their property.   Cruz called the

troopers; Cruz and his employees claimed --- falsely --- that Don Kubanyi threatened

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

---

[141] *Kirtley v. Rainey, 326 F.3d 1088, 1092 (9th Cir. 2003) (quoting Dennis v. Sparks, 449 U.S. 24, 27, 66 L. Ed. 2d 185, 101 S. Ct. 183 (1980)).*

physical harm; Cruz and his employees claimed – falsely – that they had a right to be present on the Native allotment; and Cruz and his employees identified Don Kubanyi and directed the Troopers to confront Kubanyi; Cruz and his employees identified and directed the troopers to confront Mr. Baggett.  The effect of all this was that Cruz and his employees were not only willful participants, but were actually directing the Troopers actions in an effort to secure the illegal use of the allotment, and to deprive the Kubanyis of their use and enjoyment of their property.  As a result, there are no genuine issues of disputed fact, and the Court should grant plaintiff's motion for summary judgment holding Cruz liable under §1983.

### iii.   GVEA is  Liable Under for Deprivation Of Property Rights

While it is true that GVEA employees were not present on the night of March 1, 2006, it is also true that GVEA 1) assumed of liability under the State TWUP, and 2) is liable by operation of FLPMA and applicable regulations.  [See generally Sec. IV(c) *supra*.]  Just as GVEA is liable for the trespass under these theories of liability, so GVEA is liable for the §1983 violations.  There is nothing in the permits which limits GVEA's responsibility to common law or non-statutory claims.  The language of the TWUP obligates the permittee to obtain consents from all landowners before entry upon private lands and provides that "Permittee (GVEA) shall be responsible

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

*Kubanyi v. GVEA* Case No. F04-0026
Plaintiffs' Initial Witness List

46 of 50

<u>for all actions</u> of contractors…"[142]    Clearly, GVEA assumed liability for all its

contractor's actions, including actions giving rise to §1983 liability.  Equally, the

federal regulations impose liability upon GVEA "to the United States <u>and to third</u>

<u>parties</u> <u>for any damage or injury</u> they incur in connection with your use and

occupancy of the right-of-way."[143] As a consequence, GVEA is liable for §1983

liability which arises in connection with the use of the right –of-way, and the Court

should deny plaintiff's motion for summary judgment as to GVEA with respect to

§1983 liability.


      **b.  EXCESSIVE FORCE – The Court Should Deny Nelson And Covy's**
         **Motion For Summary Judgment**


      The parties generally agree that the test relative to an excessive force claim is

objective reasonableness.[144]   As a general matter, the question of whether excessive

---

[142] Cruz Ex. 5

[143] 43 CFR § 2807.12

[144] See Nelson & Covey Memo, at 14 citing *Graham v. Connor, 490 U.S. 386, 387, 104 L. Ed. 2d 443, 109 S. Ct. 1865 (1989);* The Ninth Circuit in Franklin v. Foxworth, 31 F.3d 873,  875 (9th Cir. Or. 1994) described *Graham* as follows:

    In *Graham,* a case in which officers used excessive force in making  [*876]  an investigatory stop of a diabetic, the Supreme Court stated that determining the reasonableness of a seizure "requires careful attention to the facts and circumstances *of each case,* including the severity of the crime at issue, whether the suspect poses an *immediate threat* to the safety of the officers or others, and whether he is *actively resisting arrest* or attempting to *evade arrest* by flight." *Id*. at 396 (emphasis added). The inquiry is not limited to the specific *Graham* factors,  [**7] however. Rather, we must look to whatever specific factors may be appropriate in a particular case, whether or not listed in *Graham,* and then must consider "whether the *totality*

Michael J. Walleri
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

force was used under the circumstances is usually one for the jury.[145]   As the Ninth

Circuit has instructed

> The reasonableness of force should be analyzed in light of such factors as the
> requirements for the officers' safety, the motivation for the arrest, and the
> extent of the injury inflicted.[146]

Don Kubanyi alleges that Nelson and Covey used excessive force in response

to his arrest. The Troopers, in combination, used both a stun gun and pepper spray

to subdue Don Kubanyi. But as the evidence shows, while Kubanyi was insulting

and offensive, he complied with the troopers orders to stop advancing toward them.

In response to the orders to lie on the ground, Mr. Kubanyi merely asked why they

wanted him to do this.  Mr. Kubanyi did not initiate an attack upon either Trooper

nor did he attack any member of the Cruz construction crew.  Rather, it was the

other way around.  The Troopers placed Mr. Kubanyi under arrest and physically

attacked him with a stun gun and pepper spray merely because --- in their

explanation --- he told them to "Fuck You".[147]   While the epitaph was crude and

---

of the circumstances justifies a particular sort of seizure." *Id.* (emphasis added), *quoting Garner*, 971 U.S. at 8-9.
See  also  *Ward v. City of San Jose, 967 F.2d 280, 284 (9th Cir. 1991).*
[145] *McKenzie v. Lamb*, 738 F.2d 1005, 1011 (9th Cir. 1984)
[146] Id., citing *Roberts v. Marino*, 656 F.2d 1112, 1114 (5th Cir. 1981).
[147] Plt. Ex. 7(Covey Depo) 38:22-39:8

Michael J. Walleri
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

socially inappropriate, it was not illegal.  There is no authority for the idea that a

citizen telling a police officer to "fuck you" has committed a criminal offense.[148]

        Moreover, as the troopers admits, the only reason for deploying a tazer or

pepper spray is to obtain control of a suspect.[149]  However, as noted above, after

Don Kubanyi surrendered, the Troopers admit, and the tape clearly indicates, that

Officer Covey continued to taze Don Kubanyi.[150]  There is some suggestion that Mr.

Kubanyi was "flailing," however, even Officer Nelson is unsure whether Mr.

Kubanyi's arms were flailing because he was being tazed.[151]

        In this case, a reasonable jury might view the evidence as indicating that

Nelson and Covey used excessive force in light of the *Graham* factors listed above.

The Court should deny Nelson and Covey's motion for summary judgment.

---

[148] Any offense that may have been committed – i.e. striking Officer Covey --- did not occur until after Covey placed Kubanyi under arrest for saying "fuck you".

[149] Plt. Ex. 6 (Nelson Depo) 11:21-12:2

[150] See Trooper Memo, at 6

[151] Id., at 55:26

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

*Kubanyi v. GVEA* Case No. F04-0026
Plaintiffs' Initial Witness List

### c.  BLACK AND VETCH IS NOT LIABLE UNDER §1983

There is no objection to Black and Vetch's motion for summary judgment as to the §1983 claims against it.

## VI.    CONCLUSION

For the above reasons, the Court should deny the Defendants motions for summary judgment – except B& V's motion on the §1983 claims --- and grant the Plaintiff's motions for summary judgment.

DATED this 3rd  day of July, 2006.

MICHAEL J. WALLERI

/s/ Michael J. Walleri
AK Bar No. 7906060
Attorney for Plaintiffs

Certificate of Service
I hereby certify that under penalty of perjury that a true and
correct copy of the foregoing was sent to the following counsel
of record on July 3, 2006 via ECMI  and U.S. Mail to:

Mr. Venable Vermont, Jr.                    Mr. Cory Borgeson
Assistant Attorney General                  Boreson & Burns, P.C.
Department of Law                           100 Cushman Street, Suite 31
1031 W. Fourth Ave., Suite 200              Fairbanks, Alaska 99701
Anchorage, Ak  99501

Mr. Eric P. Gillett                         Mr. Daniel T. Quinn
Preg O'Donnell & Gillett, P.C.              Richmond & Quinn
1800 Ninth Ave., Suite 1500                 360 K Street, Suite 200
Seattle, WA  98101-1340                     Anchorage, AK 99501-2038

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

/s/ Michael J. Walleri