DAVID W. MÁRQUEZ
ATTORNEY GENERAL

Venable Vermont, Jr.
Assistant Attorney General
Office of the Attorney General
1031 W. 4th Ave., Suite 200
Anchorage, Alaska 99501
Telephone: (907) 269-5190
Fax: (907) 258-0760
Email: TWC_EFC@law.state.ak.us

Attorney for Trooper Jake Covey, Trooper Patrick Nelson

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| DON M. KUBANYI, JIMMY KUBANYI, AILEEN WELTON, ELIZABETH TUZROYLUK, DORIS KUBANYI, VICTOR KUBANYI, BOBBY KUBANYI, ARLETTE KUBANYI, and BRIAN BAGGETT,<br><br>Plaintiff(s),<br><br>vs.<br><br>GOLDEN VALLEY ELECTRIC ASSOCIATION, DAVE CRUZ, individually and d/b/a/CRUZ CONSTRUCTION, BLACK & VECH CORPORATION, JAKE COVEY and PATRICK NELSON,<br><br>Defendants. | Case No. 4:04-cv-0026-RRB<br><br>**NELSON AND COVEY'S REPLY ON THEIR MOTION FOR SUMMARY JUDGMENT** |

Plaintiffs Don Kubanyi and Brian Baggett sued two Alaska State Troopers – Jacob Covey and Patrick Nelson – under 42 U.S.C. § 1983 for excessive force in their arrest of Kubanyi and confrontation with Baggett at Seven Mile Lake on March 1, 2003. Taking the

complaint and Don Kubanyi's deposition at their face value, the troopers moved for complete summary judgment on the grounds of qualified immunity. Using the applicable methodology from the U.S. Supreme Court as demonstrated by *Graham v Connor*[1] and *Saucier v. Katz*,[2] the troopers reasoned that 1) there was no constitutional violation in the first place because the officers' actions were reasonable under the circumstances, 2) even if there was a constitutional violation, qualified immunity applies because the officers' actions have not previously been held to be unlawful, were in accord with training and policy, and were such as might have been taken by any reasonable officer, and 3) the Supreme Court has continually demonstrated the need for deference to actions taken by police officers in tense, uncertain, and rapidly evolving circumstances.

In response the Kubanyis[3] filed a unified document that opposes all defendants' motions for summary judgment,[4] and cross moves for summary judgment on all claims. As to the troopers, the Kubanyis claim that a jury might find there was excessive force under the circumstances and, at any rate, Don Kubanyi was tased after he surrendered.[5] In their cross

---

[1]   490. U.S. 386 (1989).

[2]   533 U.S. 194 (2001).

[3]   There are many plaintiffs in the overall lawsuit. They are referred to collectively "Kubanyis" to recognize their family status, even though some last names are different; and there are a variety of claims targeting different defendants. The present motion and this brief address only the claims against the troopers, which seem to have been made by Don Kubanyi and Brian Baggett.

[4]   All of the "construction defendants" moved for summary judgment on trespass and § 1983 claims; the trooper defendants perceived only a § 1983 claim against them.

[5]   Kubanyis' Brief at pp. 47-49.

motion for summary judgment, for the first time, the Kubanyis raised claims of violation of substantive and procedural due process rights by way of deprivation of property rights by aiding and failing to prevent trespass.[6] The new claim of violation of substantive and procedural due process rights will be addressed in a separate opposition. In the present reply, the troopers will address only the § 1983 excessive force claim. The troopers' response is this:

>The Kubanyis have made no opposition to the motion for summary judgment on the excessive force claim made by Brian Baggett; under Local Rule 7.1(d) they are taken to agree that the motion is meritorious. Thus that claim may be dismissed. The Kubanyis fail completely to recognize the concept of qualified immunity and the appropriate methodology to analyze it; it is not a jury question. Summary judgment based on qualified immunity is appropriate even upon consideration of the Kubanyis' contested fact – whether Don Kubanyi was tased even after he tried to surrender – because the troopers' response was a reasonable one under the circumstances. The tape of the incident, attached here as an exhibit, shows that the last use of the taser occurred only six seconds or so after Don Kubanyi began saying "I'm done, I'm done" and while he and the troopers were still struggling on the ground. Under the totality of the circumstances presented here, as shown in the troopers' affidavits, demonstrated by the actual tape, and not disputed by the Kubanyis, qualified immunity is appropriate and the court should grant summary judgment to the troopers.

---

[6]   Kubanyis' Brief at pp. 43-45.

## I.  THE KUBANYIS HAVE NOT OPPOSED SUMMARY JUDGMENT ON THE BRIAN BAGGETT CLAIM

The Kubanyis have made no mention of Brian Baggett's claim in their cross motion for summary judgment or of the troopers' motion for summary judgment on that claim, similarly based on qualified immunity.  Under Local Rule 7.1(d)(1), that can be taken as an admission that the troopers' motion for summary judgment is well taken.  As the troopers have demonstrated in their motion, there are no disputed issues of material fact and they are entitled to summary judgment on that claim.

## II.  QUALIFIED IMMUNITY IS NOT A JURY ISSUE

The Kubanyis argue that a reasonable jury might view the evidence as indicating that the troopers used excessive force.[7]  But the Kubanyis cite only pre-*Saucier* cases, they discuss not at all qualified immunity, and they overlook directly controlling authority that qualified immunity is an issue of law for the court and is to be addressed at the earliest possible stage in the litigation.[8]  The Kubanyis don't get to a jury just because a jury might agree with them, and they certainly don't get to a jury by ignoring the qualified immunity analysis when it has been placed squarely into play by the troopers' motion for summary judgment.  The Kubanyis' attempt to raise but a single issue of contested fact – whether the taser and pepper spray were used on Dong Kubanyi after he allegedly

---

[7]  Kubanyis' Brief at p. 49.

[8]  *Saucier*, 533 U.S. at 201; *Act Up!/Portland v. Bagley*, 971 F.2d 298, 301 (9th Cir. 1992); *Trevino v. Gates*, 99 F.3d 911, 917 (9th Cir. 1996).

surrendered.[9] That issue will be addressed in the next section. Virtually all other facts – as opposed to intentions – are undisputed and thus the issue of qualified immunity is squarely before the court.

### III.   THERE ARE NO MATERIAL ISSUES OF CONTESTED FACT

The Kubanyis attempt to turn the "facts" around and argue that the troopers attacked Don Kubanyi, without reason, as he attempted to comply with their orders.[10] But the Kubanyis ignore – and more significantly – <u>do not contest</u> the following facts which place the takedown events into context:

1) The troopers were dispatched to meet Dave Cruz, who told them that Don Kubanyi was threatening to shoot his workers;

2) The troopers drove to Seven Mile Lake, down a dark rough ice road to an unfamiliar place, where they were interviewing the workers, who confirmed that Don Kubanyi had threatened to shoot them;[11]

3) The troopers rightly prioritized the potential issues here as personal safety first and trespass issues second;[12]

4) the troopers did not know whether Don Kubanyi was armed or not, but had

---

[9]   Kubanyis' Brief at p. 49.

[10]   Kubanyis' Brief at pp. 48-49.

[11]   Kubanyi's statement that, *au contraire*, "he threatened to shoot tires not people," is irrelevant; he didn't make that statement to the troopers, who were hearing from the workers when Kubanyi first arrived.

[12]   In the event, because of Don Kubanyi's failure to cooperate, and the seriousness of the threat he represented, the troopers never got to the second issue.

5

a reasonable ground to believe that he was, or to at least need to check to see if he was, as he approached them from the darkness;[13]

5) The troopers could readily see and hear that Don Kubanyi was intoxicated, hostile, unruly, and uncooperative – which Kubanyi doesn't contest;

6) Kubanyi's failure to show his hands or to lie down, combined with his attitude and the previous threats, made it all the more necessary to determine his threat level and his ability to carry out dangerous activities;

7) Kubanyi failed to respond to direct threats of control – "you will be controlled with 10,000 volts of electricity" – and repeated requests and orders, leaving his intentions even more clouded;

8) The troopers were unfamiliar with the area and the terrain and couldn't simply let Don Kubanyi leave without ascertaining and neutralizing any threat he presented.

All of these contextual factors, which the Kubanyis ignore but do not contest, justify the takedown and arrest of Don Kubanyi. The troopers didn't need to believe that Don Kubanyi had committed criminal offenses in order to determine his threat level; once it was clear that he had,[14] the takedown and arrest were justified.

---

[13] Don Kubanyi's statement that he was not armed is again irrelevant; he didn't say that to the troopers and refused to cooperate in proving it; the troopers couldn't know whether he was and had to respond defensively under the circumstances.

[14] Kubanyi's threats to shoot the workers were made that much more credible by his attitude and failure to cooperate; his punch to Trooper Nelson's face merely sealed the deal.

6

The context here is everything.[15] In order for the court to appreciate it, Trooper Covey's tape has been transferred to a compact disk and attached as Exhibit F. The court should listen to it to put context on the bare bones of the transcripts and affidavits previously provided.[16]

The Kubanyis argue a single potentially troubling fact – Don Kubanyi says he was tased after he surrendered. The troopers agree that he was tased and pepper sprayed after he began to say "I'm done." But he did not surrender in the sense of becoming still and passive. To the troopers, he was still actively resisting. Exh. A, p. 31; Exh. C, p. 47. Even Kubanyi admits his arms were still flailing after he first said "I'm done."[17] In any event, while Kubanyi's intentions might be in dispute, his actual physical actions were not; in a three person pileup resulting from a takedown after he punched the trooper in the face, Kubanyi was still actively moving and resisting the troopers' efforts to subdue and cuff him.

The tape of the event again provides perspective. The only taser sound that occurs after Kubanyi first says "I'm done" occurs about six seconds after he first says that, and he continues to say it. The sounds of the struggle continue as well, and then the cuffs can be heard going on. These few seconds are meaningless to a claim of excessive force

---

[15] *Graham*, 490 U.S. at 396 ("Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application [ ] its proper application requires careful attention to the facts and circumstances of each particular case [.]") (quotations and citations omitted).

[16] The tape of the confrontation and arrest has been made available to the parties in discovery and thus it is not reproduced for them on a disc with the filing of this reply.

[17] Kubanyis' Brief at p. 49.

7

where the takedown and arrest occur in only a few seconds overall, where the force is minimal – this was a taser, not a pistol shot – and where the qualified immunity standard is meant to give great deference to police officers using force and making arrests in difficult, uncertain, and rapidly evolving circumstances.[18]

The Kubanyis' nod to the *Graham* factors,[19] but they do not discuss them. That is a glaring omission because a fact-sensitive application of these non-inclusive factors shows why qualified immunity is applicable here. This analysis has already been performed in the troopers' opening brief[20] and will not be repeated. But it is readily apparent that all of the three express *Graham* factors are at play here – severity of the crime, immediacy of the threat to officers or others, and active resistance or attempts to evade – in a way that favors the troopers' use of an intermediate level of ultimately harmless force to investigate and neutralize the potential threat here.

As a final note, the United States Supreme Court cases have recognized that there is a sometimes "hazy border between excessive and acceptable force."[21] The proper approach to these issues warns that if things are hazy in the courtroom or in the motion papers, think about how they must have been to officers in the field. The result is to give

---

[18] *Graham*, 490 U.S. at 396-97.

[19] Kubanyis' Brief at p. 47, n.144.

[20] At pp. 18-21.

[21] *E.g., Saucier*, 533 U.S. at 206.

8

deference to the difficulty, and the necessity, of this type of police work.[22]

## CONCLUSION

The court should grant summary judgment to the troopers on the basis of qualified immunity.

DATED this 31st day of August, 2006 at Anchorage, Alaska.

>DAVID W. MÁRQUEZ
>ATTORNEY GENERAL
>
>By: s/ Venable Vermont, Jr.
>Assistant Attorney General
>Office of the Attorney General
>1031 W. 4th Ave., Ste. 200
>Anchorage, AK 99501
>Phone: (907) 269-5190
>Fax:    (907) 258-0760
>Venable_Vermont@law.state.ak.us
>TWC_ECF@law.state.ak.us
>Alaska Bar No. 8306067

This is to certify that on this date, a copy
of the foregoing Reply on Motion for Summary
Judgment is being served electronically on:

**Michael J. Walleri**
walleri@gci.net; christen_woodward@yahoo.com

**Daniel T. Quinn**
dquinn@richmondquinn.com; cesary@richmondquinn.com

**Cory Borgeson, Esq.**
cborgeson@bnblaw.com; kday@bnblaw.com

**Eric P. Gillett**
egillett@pregodonnell.com; mmorgan@pregodonell.com

s/ Venable Vermont, Jr.  8/31/06

---

[22] *Id.*