# GVEA EXHIBIT E

## STATE OF ALASKA DEPARTMENT OF NATURAL RESOURCES
## DIVISION OF MINING, LAND & WATER

Northern Region
3700 Airport Way
Fairbanks, AK 99709
(907) 451-2740, fax (907) 451-2751     **LAND USE PERMIT**
**Under AS 38.05.850**

PERMIT #LAS 23788

Golden Valley Electric Association (GVEA), is issued this permit to use the following described land:
  Within Sections 10, 13, 14, 15, 22, 23, and 26, Township 10 South, Range 7 West; and Sections 17, 18, and 34, Township 9 South, Range 7 West; all within the Fairbanks Meridian. See *Attachment C*

This permit is issued for the purpose of:
  Transport of heavy power line construction equipment on existing trails and on new temporary access routes for means of winter access to the Northern Intertie right of way.
  See *Attachment B*

This permit is issued subject to:
- Payment of the use fee in the amount of: **not applicable**;
- Proof of a Performance Guarantee in the amount of: **$60,000**, (see Special Stipulation # 9, attached);
- Proof of insurance in the amount of: **$1,000,000/$2,000,000** (see Special Stipulation #10, attached);
- Compliance with the Special Stipulations in *Attachment* A, the Stipulations on page 2 of this document, as well as the Stipulations in ADL 415854, Best Interest Finding for the GVEA Northern Intertie, and the **letters of clarification from DNR to GVEA, dated May 10 and 24, 2002.**

This permit is **not a property right.** It is a **temporary** authorization, revocable by the state with or without cause. This permit is effective beginning **June 1, 2002**, and ending on **November 30, 2003**, unless sooner terminated at the state's discretion.

_____     Natural Resource Manager     6-20-02
Signature of Authorized State Representative    Title    Date

_____     President & CEO    6-19-02
Signature of Permittee or Authorized Representative    Title    Date

P O Box 71249 Fairbanks, AK 99701-2999                     gwyman@gvea.com
Permittee's Address                                        email

(907) 451-5629        (907) 451-5629              Greg Wyman
Message Phone        Work Phone                  Contact Person

* Permittee is responsible for maintaining a current address with the division during the life of this authorization.
* Permittee is responsible for obtaining authorizations required by other agencies for the permitted activity.

1. This Land Use Permit conveys no interest or property right in state land. This permit may be reissued upon application by the permittee at the state's discretion. This permit is revocable immediately, with or without cause. If revoked without cause, the permittee will be allowed 30 days within which to remove the permittee's possessions and vacate the premises. If revoked for breach of any condition, the permittee shall immediately vacate the premises. This permit is not transferable. It is issued to authorize specific activities requested by the applicant and that are not included in the category of "generally allowed uses."

2. This Land Use Permit is subject to the following provisions:
    a. Activities employing wheeled or tracked vehicles shall be conducted in such a manner as to minimize surface damage.
    b. Existing roads and trails shall be used wherever possible. Trail widths shall be kept to the minimum necessary. Trail surface may be cleared of timber, stumps, and snags. Due care shall be used to avoid excessive scarring or removal of vegetative ground cover.
    c. All activities shall be conducted in a manner that will minimize disturbance of natural drainage systems, that will not cause a change in character, pollution, or siltation of streams, lakes, ponds, water holes, seeps, and marshes, and that will not disturb fish and wildlife resources. Cuts, fills, or other activities causing any of the above disturbances, if not repaired immediately, are subject to any corrective action as may be required by the director.
    d. Unless specifically authorized by this permit, the director prohibits the disturbance of vegetation within 300 feet of any waters located in specially designated areas as prescribed in 11 AAC 96.010(2) except at designated stream crossings. These special designations are noted on the State of Alaska land status plats.
    e. All activities shall be undertaken in a manner, which causes the least possible interference with other authorized uses of state lands.
    f. Trails and campsites shall be kept clean. All garbage and foreign debris shall be eliminated by removal, burning, or burial, unless otherwise authorized.
    g. All survey monuments, witness corners, reference monuments, mining claim posts, and bearing trees shall be protected against destruction, obliteration, or damage. Any damaged or obliterated markers shall be reestablished in accordance with accepted survey practices of the division.
    h. Every reasonable effort shall be made to prevent, control, or suppress any fire in the permitted area. Uncontrolled fires shall be reported immediately.
    i. Holes, pits, and excavations shall be filled, plugged, or repaired. Holes, pits and excavations necessary to verify discovery on prospecting sites, mining claims, and mining leasehold locations may be left open but shall be maintained so as to minimize erosion and siltation and shall be consistent with public safety and welfare.
    j. No person may engage in mineral exploration activity on land open to such use, the surface of which has been granted or leased to third parties by the State of Alaska, or on land in which the state has received the reserved interest of the United States until good-faith attempts have been made to agree with the surface owner or lessee in a settlement for damages which may be caused by such activity. If agreement cannot be reached, or lease or surface owner cannot be found within a reasonable time, operations may be commenced on the land only after specific approval of the director, and after making adequate provision for full payment of any damages which the surface owner or lessee may suffer.
    k. Entry on all lands under prospecting permit, lease, or claim, by other than the holder of the permit, lease, or claim, or his authorized representative, shall be made in a manner that will prevent unnecessary or unreasonable interference with the rights of the permittee, lessee, or claimant.

3. In the case of a permit authorizing early entry, pending issuance of a final authorization, permittee agrees to remove any improvements and to rehabilitate the area to a condition acceptable to the director if the final lease/right-of-way permit is not issued or the permittee fails to complete the lease/right-of-way process within one year of the date of the execution of this entry authorization. Permittee also understands that early entry is undertaken at his/her own risk in the event that the final authorization is not issued.

4. Permittee and permittee's contractors, subcontractors and all personnel shall indemnify the State of Alaska and hold it harmless from any and all claims, suits, loss, liability and expense for injury to or death of persons and damage to or loss of property arising out of or in connection with permittee's entry on and use of this land.

## Special Stipulations
Attachment A

In addition to the Special Stipulations attached to the permit ADL 415854 for construction in the right of way, and the letters of conditions dated May 10, 2002, and May 23, 2002, the following Special Stipulations apply.

1. **Authorized Officer.**

    a. The Authorized Officer for the Department of Natural Resources is the Northern Regional Manager or designee. The Authorized Officer may be contacted at 3700 Airport Way, Fairbanks, Alaska 99709 or 907-451-2740.

    b. The Authorized Officer reserves the right to modify these stipulations or use additional stipulations as deemed necessary.

2. **Indemnification.** Land Use Permit Standard Stipulation 4 is amended to read:

    Permittee assumes all responsibility, risk and liability for all activities of Permittee, its employees, agents, invitees, contractors, subcontractors, or licensees directly or indirectly conducted in connection with this permit, including environmental and hazardous substance risks and liabilities, whether accruing during or after the term of this permit. Permittee shall defend, indemnify, and hold harmless the State of Alaska, its employees, and agents from and against any and all suits, claims, actions, losses, costs, penalties, and damages of whatever kind or nature, including all attorney's fees and litigation costs, arising out of, in connection with, or incident to any act or omission by Permittee, its employees, agents, invitees, contractors, subcontractors, or licensees, unless the sole proximate cause of the injury or damage is the negligence or willful misconduct of the State or anyone acting on the State's behalf. Within 15 days Permittee shall accept any such cause or action or proceeding upon tender by the State. This indemnification shall survive the termination of the permit.

3. **Valid Existing Rights.** This authorization is subject to all valid existing rights in and to the land under this authorization. The State of Alaska makes no representations or warranties whatsoever, either expressed or implied, as to the existence, number, or nature of such valid existing rights.

4. **Reservation of Rights.** The Division reserves the right to grant additional authorizations to third parties for compatible uses on or adjacent to the land under this authorization.

5. **Compliance with Governmental Requirements; Recovery of Costs.** Permittee shall, at its expense, comply with all applicable laws, regulations, rules and orders, and the requirements and stipulations included in this authorization. Permittee shall ensure compliance by its employees, agents, contractors, subcontractors, licensees, or invitees.

6. **Change of Address.** Any change of address must be submitted in writing to the Authorized Officer.

7. **Preference Right.** No preference right for use or conveyance of the land is granted or implied by this authorization.

8. **Alaska Historic Preservation Act.** The permittee shall consult the Alaska Heritage Resources Survey (907) 269-8718 so that known historic, archaeological and paleontological sites may be avoided.

    The Alaska Historic Preservation Act (AS 41.35.200) prohibits the appropriation, excavation, removal, injury, or destruction of any state-owned historic, prehistoric (paleontological) or archaeological site without a permit from the commissioner. Should any sites be discovered during the course of field operations, activities that may damage the site will cease and the Office of History and Archaeology in the Division of Parks and Outdoor Recreation (907) 269-8718 and shall be notified immediately.

9. **Performance Guaranty.** The permittee shall provide a surety bond or other form of security acceptable to the Division in the amount of **$60,000** payable to the State of Alaska. Such performance guaranty shall remain in effect for the term of this authorization and shall secure performance of the permittee's obligations hereunder. The amount of the performance guaranty may be adjusted by the Authorized Officer upon approval of amendments to this authorization, changes in the development plan, upon any change in the activities conducted or performance of operations conducted on the premises. If Permittee fails to perform the obligations under this permit within a reasonable time, the State may perform Permittee's obligations at Permittee's expense. Permittee agrees to pay within 20 days following demand, all

costs and expenses reasonably incurred by the State of Alaska as a result of the failure of the permittee to comply with the terms of this permit. The provisions of this permit shall not prejudice the State's right to obtain a remedy under any law or regulation. If the authorized officer determines that the permittee has satisfied the terms and conditions of this authorization the performance guaranty may be released. The performance guaranty may only be released in a writing signed by the Authorized Officer. **This requirement may be satisfied by adding LAS 23788 to the bond retained by GVEA for permit ADL 415854. The bond must reference LAS 23788.**

10. <u>Insurance.</u> The permittee shall secure or purchase at its own expense, and maintain in force at all times during the term of this permit, the following policies of insurance to protect both the permittee and the permittor (the State, its officers, agents and employees). Where specific limits are shown, it is understood that they shall be the <u>minimum</u> acceptable limits. If the permittee's policy contains higher limits, the State shall be entitled to coverage to the extent of such higher limits. Certificates of Insurance must be furnished to the Authorized Officer prior to occupancy. The certificate must provide for a 60-day prior notice to the State in the event of cancellation, non-renewal or material change of conditions. Failures to furnish satisfactory evidence of insurance, or lapse of the policy, are material breaches of this permit and shall be grounds, at the option of the State, for termination of the permit. All insurance policies shall comply with, and be issued by, insurers licensed to transact the business of insurance under Alaska Statute, Title 21.

    **Workers' Compensation Insurance:** The permittee shall provide and maintain, for all its employees, Workers' Compensation Insurance as required by AS 23.30.045. Where applicable, coverage must comply with any other statutory obligations, whether Federal (i.e. U.S.L.&H). or, Jones Act) or other state laws in which employees are engaged in work on the [leased/permitted] premises. The insurance policy must contain a waiver of subrogation clause in favor of the State.

    **Commercial General Liability Insurance:** Such policy shall have <u>minimum</u> coverage limits of $1,000,000/$2,000,000 combined single limit per occurrence. The policy shall be written on an "occurrence" form and shall not be written as a "claims-made" form unless specifically reviewed and agreed to by the Division of Risk Management, Department of Administration. The State must be named as an additional named insured on the policy with respect to the operations of the permittee on or in conjunction with the permitted premises. **This requirement may be satisfied by adding LAS 23788 to the insurance retained by GVEA for permit ADL 415854. The insurance certificate must reference LAS 23788.**

    **Commercial Automobile Liability Insurance:** Such policy shall have <u>minimum</u> coverage bodily injury liability limits of $300,000 combined single limit per occurrence. The policy shall cover all owned, hired and non-owned vehicles.

11. <u>Plan of Operations.</u> The use of the site authorized by this permit shall be limited to the area and improvements specified in the plan of operations dated **May 9, 2002**. The permittee is responsible for accurately siting operations within this area. Any proposed revisions to the plan of operations must be approved in writing by the Authorized Officer before the change in use or development occurs.

12. <u>Site Maintenance.</u>

    a. The area subject to this authorization shall be maintained in a neat, clean and safe condition, free of any solid waste, debris or litter. Standard Stipulation 2(f) is amended to exclude elimination of garbage and foreign debris by burial.

    b. Nothing will be stored on site that could be an attractive nuisance to wildlife or create a potentially hazardous situation.

13. <u>Existing Access Routes/Temporary Access Routes.</u>

    a. Existing access roads will not be widened or otherwise upgraded for construction and maintenance, except where repairs are necessary to make existing roads passable.

    b. The permittee shall leave the existing roads and trails in a condition equal to or better than their original condition, as determined by the Authorized Officer.

    c. In winter, in the event of disturbance to the route surface, to accomplish reconditioning, the permittee may grade or drag the route without removing the snow bed.

    d. No permanent access or construction of new roads or trails across state land is allowed

e. Width and clearing of vegetation on temporary access routes shall be kept to the minimum necessary for safe passage of equipment, and shall occur only within the authorized area.

f. There shall be no disturbance to the vegetative mat or underlying substrate. Disturbance to the vegetative mat includes no removal of the tops of tussocks.

g. When clearing a path for the temporary access routes, trees over 4 inches in diameter must be cut. Such vegetation may not be knocked over and run over with equipment, which may cause uprooting, breakage of the vegetative mat, and increased erosion.

h. There will be no placement of earth fill material on the temporary access routes.

i. Ice roads and ice pads must be thick enough to prevent damage to the tundra and underlying substrate

j. At the end of the construction season, where vegetation has been cleared, the permittee is required to block the ends of the temporary access routes with downed vegetation to discourage future public use.

14. **Operation of Vehicles/Storage of Equipment.**

a. Vehicular travel is restricted to the ADL 415854 right of way, and to the existing roads, trails, and temporary access routes authorized under this land use permit and identified in Attachment C.

b. Vehicles, including four wheelers and other ATVs, shall be operated without disturbing the vegetative mat and underlying substrate.

c. Pursuant to Letter of Conditions for Upland Use, dated May 10, 2002, winter access in wetlands can occur only after there is at least 6 inches of snow on the ground and 12-inch depth of frost. The 6 inches of snow depth may be modified by DNR based on snow conditions and the availability of DNR approved alternative methods to protect the vegetative mat. This condition applies to wetlands already identified, and other wetland/sensitive areas as determined in summer inspections by DNR.

d. In regards to clearing of vegetation in winter or summer for access to or along the Intertie right of way, there will be no use of trail-groomers that remove the vegetative mat or disturb the mineral soil.

e. In order to minimize the use of equipment in the right of way and on the temporary access routes, overall, construction should proceed sequentially.

f. Use of single-passenger vehicles will be avoided whenever possible.

g. Depending on location, vegetation and terrain, DNR may require that there be no repetitive use of the same route. Instead, each successive vehicle pass will require use of different tracks.

h. Tracked vehicles must use the least aggressive tracks as required to safely negotiate the terrain. The purpose of this condition is to protect the vegetative mat, with special concern for the turning of tracked vehicles.

i. Filling low spots and smoothing with snow and ice is allowed.

j. Ice or snow bridges constructed at stream crossings shall not contain extraneous material (i.e. soil, rock, brush, or vegetation), and shall be removed immediately after use, or prior to breakup.

k. Snow ramps or other mitigating measures will be used to prevent ice or snow bridges from being an unsafe obstacle to snow machiners or others using the existing roads for travel.

l. There shall be no stream bank modification. Summer stream crossings will require authorization from the ADF&G in the form of a Fish Habitat Permit and the placement of a bridge.

m. Incidents of damage to the vegetative mat and follow-up corrective actions that have occurred while operating under this authorization shall be reported to the Authorized Officer within 72 hours of occurrence.

n. During equipment maintenance operations or temporary storage of equipment, the site shall be protected from leaking or dripping hazardous substances or fuel. The permittee shall place drip pans or other surface liners designed to catch and hold fluids under the equipment or develop a maintenance or storage area by using an impermeable liner or other suitable containment mechanism.

o. Vehicle maintenance, and storage or stockpiling of material or equipment on the surface ice of lakes, ponds or rivers is prohibited.

p. Storage of equipment, materials or supplies after the dates of authorized use is specifically prohibited.

15. **Public Access.** All operations must be conducted in a manner that will ensure minimum conflict with other users of the area. There shall be no interference with free public use of state lands and waters.

16. **Destruction of Markers.** All survey monuments, witness corners, reference monuments, mining claim posts, bearing trees, and unsurveyed lease corner posts shall be protected against damage, destruction, or obliteration. The permittee shall notify the Authorized Officer of any damaged, destroyed, or obliterated markers and shall reestablish the markers at the permittee's expense in accordance with accepted survey practices of the Division.

17. **Fuel and Hazardous Substances.** Secondary containment shall be provided for fuel or hazardous substances.

    a. **Container marking.** All independent fuel and hazardous substance containers shall be marked with the contents and the permittee's name using paint or a permanent label.

    b. **Fuel or hazardous substance transfers.** Secondary containment or a surface liner must be placed under all container or vehicle fuel tank inlet and outlet points, hose connections, and hose ends during fuel or hazardous substance transfers. Appropriate spill response equipment must be on hand during any transfer or handling of fuel or hazardous substances to respond to a spill of up to five gallons. Trained personnel shall attend transfer operations at all times.

    Vehicle refueling shall not occur within the annual floodplain or tidelands. This restriction does not apply to water-borne vessels provided no more than 30 gallons of fuel are transferred at any given time.

    c. **Storing containers within 100 feet of water bodies.** Containers with a total capacity larger than 55 gallons that contain fuel or hazardous substances shall not be stored within 100 feet of a water body.

    d. **Exceptions.** The Authorized Officer may under unique or special circumstances grant exceptions to this stipulation on a case-by-case basis. Requests for exceptions should be made to the Authorized Officer.

    e. **Definitions.**

    "Containers" means any item that is used to hold fuel or hazardous substances. This includes tanks, drums, double-walled tanks, portable testing facilities, fuel tanks on small equipment such as light plants and generators, flow-test holding tanks, slop oil tanks, bladders, and bags. Manifolded tanks or any tanks in a series must be considered as single independent containers. Vehicles, including mobile seismic tanks, are not intended to be included under this definition.

    "Hazardous substances" are defined under AS 46.03.826(5) as (a) an element or compound which, when it enters the atmosphere, water, or land, presents an imminent and substantial danger to the public health or welfare, including fish, animals, or vegetation; (b) oil; or (c) a substance defined as a hazardous substance under 42 U.S.C. 9601(14).

    "Secondary containment" means an impermeable diked area or portable impermeable containment structure capable of containing 110 percent of the volume of the largest independent container. Double-walled tanks do not qualify as secondary containment unless an exception is granted for a particular tank.

    "Surface liner" means any safe, non-permeable container (e.g., drips pans, fold-a-tanks, etc.) designed to catch and hold fluids for the purpose of preventing spills. Surface liners should be of adequate size and volume based on worst-case spill risk.

18. **Solid Waste.**

    a. All solid waste and debris generated from the activities conducted under this authorization shall be removed to a facility approved by the ADEC prior to the expiration, completion, or termination of the authorization or activities.

    b. The premises shall be maintained free of solid waste that might create a health or safety hazard.

19. **Forest Resources.** Clearing of vegetation shall occur only within the authorized area.

20. **Fire Prevention, Protection, and Liability.**

    a. The permittee shall take all reasonable precautions to prevent and suppress forest, brush, and grass fires and shall assume full liability for any damages to state land resulting from the negligent use of fire.

    b. The State of Alaska is not liable for damage to the permittee's personal property and is not responsible for forest fire protection of the permittee's activity.

21. **Site Restoration.**

    a. The site shall be left in a clean, safe condition acceptable to the Authorized Officer. All solid waste debris and any hazardous wastes connected with use of the site shall be removed and backhauled to an ADEC approved solid waste facility.

    b. The permittee shall submit a rehabilitation (revegetation) plan, in the event there is disturbance to the vegetative mat and revegetation is required.

22. **Inspection.**

    a. Authorized representatives of the State of Alaska shall have reasonable access to the subject area for purposes of inspection.

    b. The permittee may be charged fees under 11 AAC 05.010(a)(7)(M) for inspections concerning non-compliance.

23. **Completion Report.**

    a. A completion report shall be submitted within 30 days of termination/expiration of the authorized activities. The report shall contain the following information:

        i. A statement of restoration activities and methods of debris disposal.

        ii. A statement that the permittee has removed all improvements and personal property from the authorized area.

        iii. A report covering any known incidents of damage to the vegetative mat and underlying substrate, and follow-up corrective actions that may have taken place while operating under this authorization.

    c. Failure to submit the required report may subject the permitted site to a final field inspection. The permittee shall be assessed a fee for this inspection per 11 AAC 05.010 (a)(7)(M).

    d. The performance guarantee will not be released until a satisfactory completion report has been received.

24. **Notification.** The permittee shall immediately notify DNR and DEC by phone of <u>any</u> unauthorized discharge of oil to water, <u>any</u> discharge of hazardous substances (other than oil), and <u>any</u> discharge of oil greater than 55 gallons on land. All fires and explosions must also be reported.

    The DNR 24 hour spill report number is (907) 451-2678; the Fax number is (907) 451-2751. The DEC spill report number is (800) 478-9300. DNR and DEC shall be supplied with all follow-up incident reports.

25. **Violations.** This authorization is revocable immediately upon violation of any of its terms, conditions, stipulations, nonpayment of fees, or upon failure to comply with any other applicable laws, statutes and regulations (federal and state). Should any unlawful discharge, leakage, spillage, emission, or pollution of any type occur due to permittee's, or its employees', agents', contractors', subcontractors', licensees', or invitees' act or omission, permittee, at its expense shall be obligated to clean the area to the reasonable satisfaction of the State of Alaska.