Michael J. Walleri
Law Offices of Michael J. Walleri
330 Wendell Street, Suite E
Fairbanks, Alaska 99701
(907) 452-4716
(907) 452-4725 (Facsimile)
Attorney for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| DON M. KUBANYI, JIMMY KUBANYI, AILEEN WELTON, ELIZABETH TUZROYLUK, DORIS KUBANYI, VICTOR KUBANYI, BOBBY KUBANYI, ARLETTE KUBANYI, and BRIAN BAGGETT,<br><br>      Plaintiff(s),<br><br>vs.<br><br>GOLDEN VALLEY ELECTRIC ASSOCIATION, DAVE CRUZ, individually and d/b/a/ CRUZ CONSTRUCTION, BLACK & VEATCH CORPORATION, JAKE COVEY AND PATRICK NELSON,<br>      Defendants. | **REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT.** |

Case No. 4:04-cv-0026- RRB

Golden Valley Electric Association (GVEA) , Dave Cruz, Cruz Construction,

Black & Veatch Corporation, Alaska State Troopers Jake Covey and Patrick Nelson

Michael J. Walleri
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

sought summary judgment.   In response, the Kubanyi's opposed and filed cross motions for summary judgment that:

1)   the right of way for the Rex Trail does not provide direct legal public access to Seven Mile Lake.

2)   Cruz is liable for trespassed upon the Kubanyi Allotment during the spring of 2002 and 2003.

3)   Cruz's 2002 and/or 2003 trespasses were intentional or grossly negligent.

4)   GVEA is liable for the 2002 and/or 2003 trespasses.

5)   That Black and Veatch is liable for the 2002 and/or 2003 trespasses.

6)   Nelson and Covey are liable under §1983.

7)   Cruz et. al. are  liable under §1983, and

The Defendants have opposed the Kubanyi's summary judgment motion.  However, the Defendants have clearly failed to adequately establish genuine issues of material fact with regard to the cross motion, and the Court should grant the Kubanyi's motion for summary judgment.[1]

---

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

[1] *Mere conclusionary allegations are insufficient to require the motion for summary judgment be denied.  Provenz v Miller, 102 F.3d 1478, 1489-90 (9th Cir., 1996);  Angel v Seattle-First Nat.'l Bank, 653 F.2d 1293, 1299 (9th Cir. 1981).*

I.      THE STANDARDS FOR SUMMARY JUDGMENT

The standards of summary judgment within the Ninth Circuit have been

explained by one court as follows: [2]

> (S)ummary judgment is appropriate when there exists "no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."[3] The moving party bears the initial burden of establishing, through affidavits or otherwise, the absence of a genuine issue as to any material fact.[4] The moving party does not necessarily have to put on evidence which *negates* the opponent's claim.[5] Rather, the moving party may prevail by simply pointing out "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."[6]
>
> When the moving party has identified portions of the record which demonstrate the absence of a genuine issue of material fact, and the opposing party will have the burden of proof as to that fact at trial, <u>the opposing party has an obligation to produce evidence showing that the fact is in dispute.[7] If the opposing party fails to make the requisite showing, the court must enter judgment in favor of the moving party.[8]</u> (emphasis added)

In affirming this holding, the Ninth Circuit has noted, the factual

complexity of a case does not preclude the availability of summary judgment;

---

[2] *Bhan v. NME Hospitals, Inc., 669 F. Supp. 998, 1004 (E.D. Ca., 1987)*
[3] *Citing Fed. R. Civ. P. 56(c); Jung v. FMC Corp., 755 F.2d 708, 710 (9th Cir. 1985).*
[4] *Citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 26 L. Ed. 2d 142, 90 S. Ct. 1598 (1970); see T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).*
[5] *Citing Celotex Corp. v. Catrett, 477 U.S. 317, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986)*
[6] *Citing Id.* **106 S. Ct.** at 2553.
[7] *Citing **Celotex, 106 S. Ct. at 2552-53.***
[8] *Citing Id.*

Michael J. Walleri
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

rather, the critical inquiry is whether there is a genuine issue of material fact.[9]

Thus, if the party opposing summary judgment fails to offer cognizable

evidence that a genuine dispute of material fact exists, summary judgment

must be granted.[10]  That is the case here.


## II.  IT IS NOW UNCONTESTED THAT CRUZ TRESPASSED UPON THE KUBANYI ALLOTMENT.

As to the critical issue of trespass, Cruz Construction's Opposition to the

Cross Motion neatly elucidates the controversy.

> It is undisputed that the plaintiff's allotment surrounds but does not include Seven Mile Lake.  The parties further agree that the boundary of the lake is defined by its 'ordinary (mean) high water mark.'   The parties dispute, however, whether the 'ordinary (mean) high water-mark' of the lake overlaps the Rex Trail.  If the 'ordinary (mean) high water-mark of Seven Mile Lake does in fact override the Rex Trail, then no trespass occurred, because the Cruz defendants would have immediately entered the lake at the moment they left the Rex Trail and never set foot on any portion (of) plaintiff's allotment not subject to the trail's public easement.[11]

Conversely, if the ordinary mean high water-mark of the lake does not override the

Rex Trail, the Cruz Construction crew necessarily left the public easement and

crossed the Kubanyi allotment, and thereby trespassed upon the allotment.  Two

---

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

[9] *Bhan v. NME Hosp., Inc., 929 F.2d 1404, 1409 (9th Cir., 1990)*
[10] Id.
[11] Cruz Op. Memo, at 2

*Kubanyi v. GVEA* Case No. F04-0026
Reply : Plt. Cross Motion

factual issues are critical to any resolution of this controversy: 1) the location of the lake's ordinary mean high water mark, and 2) the location of the trail.

1)      **The Location of Seven Mile Lake's Ordinary Mean High Water Mark- The Stalke Report**.   In support of their claim, the Kubanyi's have submitted a survey report (i.e. the "Stalke Report"[12])   In determining the lake boundary of the allotment, Stalke uses the "BLM Manual of Surveying Instructions for the Surveying of Public Lands, 1973,"[13] which is the standard accepted text.   As that report explains, there is a line of trees running east to west along the southern end of the lake between the Rex Trail and Seven Mile Lake, which is clearly represented in the mapping and the aerial photography.[14]   According to the Stalke report the lake's ordinary mean high water is located to the North of the tree line.

2)      **The Location of the Rex Trail- The Stalke Report.**  The Stalke Report does not attempt to locate the legal easement for the Rex Trail.  Rather, as the report notes, the Stalke reports the location of the trail "as –built."  As noted in the opening brief, the original survey of the Kubanyi allotment notes the location of the trail as

---

[12] Plt. Ex. 2
[13] Id.
[14] Id.

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

*Kubanyi v. GVEA* Case No. F04-0026                                                    5 of 22
Reply : Plt. Cross Motion

meandering across the southern allotment boundary, <u>which is substantially south of its present (2006) location</u>.[15]  The trail, through use, has moved north, closer to the lake.  The Stalke report does reflect the easement for the trail as identified in the allotment survey.  It is very clear that the legal easement identified in the allotment survey is substantially south of the current trail.   Obviously, the trail has been straighten as it crosses the Kubayni allotment by unknown users, and has moved to the north.   This does not mean that the trail---- as actually built – follows the easement.  Indeed, a casual comparison of the allotment survey and the aerial photos reveals that the location of the trial at the time of survey and the current trail location differ; i.e. the trail has moved to the North.  Nonetheless, the Stalke Report uses the most conservative approach –most favorable to the Defendant's--- to determine the trail location: i.e. its current 'as built', as opposed to the location at time of survey. Stalke uses the center line of the "as-built", with a 50 foot easement (25 feet on each side of the center line) reserved in the allotment certificate.  His conclusion is clear, that the entire fifty foot easement is located south of the tree line.

       3)     **The Stalke Report Conclusions.**  In conclusion, Stalke reports that the lake mean high water mark is "north" of the tree line; the entire easement is "south"

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

---

[15] Plt. Memo (Op/ Cross Motion), at Note 92.  See generally, Plt. Ex. 1

of the tree line, and that there is a distance of 43.7 feet between the lake boundary and the closest boundary of the Rex Trail easement.  As a consequence, it was necessary to cross portions of the Kubanyi allotment that were outside the public easement in order to access the lake.

    **4)**    **Defendants Offer No Contrary Evidence.** In response to the Stalke survey report, GVEA, Black and Vetch and the Troopers offer no evidence as to the trail location, nor do they offer any evidence as to the location of the mean high water mark.   Rather, these Defendants merely make unsupported allegations that the trail and the lake intersect.   As noted above, the party opposing summary judgment has an obligation to produce evidence showing that the fact is in dispute.[16] If the opposing party fails to make the requisite showing, the court must enter judgment in favor of the moving party.[17] With reference to the Kubanyi's cross motion on the first issue,[18] the failure of the GVEA, Black and Vetch, and the Troopers to offer any cognizable evidence as to these two important facts[19] means that these Defendants have failed to meet their burden to establish a genuine issue of

[16] Citing **Celotex, 106 S. Ct. at 2552-53.**
[17] Citing Id.
[18] I.e.  whether the right of way for the Rex Trail does provides direct legal public access to Seven Mile Lake.
[19] I.e. the location of the lake's ordinary mean high water mark, and the trail location.

Michael J. Walleri
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

material fact exist for trial, and that the Kubanyi's are entitled to summary judgment as to them.

Cruz offers the affidavit of Patrick Kalen,[20] a surveyor hired by the Defendants, who merely states that the lake "intersects" with the trail at various locations.  The Kalen affidavit does not actually offer any evidence as to the location of the ordinary high water mark, nor the location of the trail (either the surveyed location indicated on the plat, nor the as built.)   Most importantly, the Kalen affidavit does not actually state that the intersection of the lake at the location in dispute --- i.e. the point that was crossed by the Cruz construction crew.  Stated otherwise, the Defendant's surveyor fails to actually offer an opinion that the ordinary mean high water mark of the lake intersects with the trail.   The result is that the even Cruz has failed to offer cognizable evidence as to the location of the ordinary mean high water mark, and the trail location sufficient to establish a genuine dispute as to the most relevant material facts.  As a result, the Kubanyi's are entitled to summary judgment as to all Defendants on the issue as to whether the

Michael J. Walleri
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

---

[20] The Defendants requested, and received, substantial "56(f)" extensions of time to respond to the Kubanyi's cross motion for summary judgment.  The purpose of these extensions was to allow the Defendant's an opportunity to conduct their own survey investigation.

*Kubanyi v. GVEA* Case No. F04-0026
Reply : Plt. Cross Motion

right of way for the Rex Trail does provides direct legal public access to Seven Mile
Lake.

     5)    **The Kalen Report.** Mere days ago, the Defendant's finally produced
the Kalen & Assoc. report, which is attached.[21] The report's final conclusions,
however, does not support the "implications" suggest in the Kalen affidavit.  The
Kalen affidavit and the Kalen Report are peculiar in that they both fail to actually
offer any opinion as to the location of the ordinary high water mark and the trail.
The affidavit speaks in gross generalities about "intersection" of the lake and trail.
The report is more ambiguous, and does not actually conclude that there is
intersection between the ordinary high water mark of Seven Mile Lake and the Rex
Trail.  Such generalities speak volumes, and strongly indicate that the Defendant's
expert cannot actually support the Defendant's position.

    More telling is the actual conclusion of the Kalen Report with regard to the
two most important issue: i.e. location of the trail and location of the ordinary high
water mark.  In stating his opinion, Kalen states there is agreement between Kalen
and Stalke on

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

---

[21] Plt. Ex. 9 (Kalen Report – Attached)

The location of the general tree line, and one of four gaps noted, and planimetic details such as the structure, <u>the edge of the Rex Trail near Gap #2 and the centerline of the Rex trail at this gap</u>. The Kalen survey and the TCC survey overlap wi a positional error of less than a foot.[22] (emphasis added)

Consequently, the Kalen Report agrees with Stalke's location of the trail "as built", and the determination of the boundaries of the easement measured off the trail's centerline 'as built'. <u>In particular, the Kalen Report agrees that the Rex Trail easement is to the south of the tree line between the trail and the lake</u>.

On the second point, Kalen, in general terms, disagrees with the location of the ordinary mean high water mark. Of particular note, he does not use the same survey instructions; i.e. he argues, without authority, that the *BLM Manual of Surveying Instructions for the Surveying of Public Lands 1973*, that was used by Stalke, "is the wrong book". With all due respect to Mr. Kalen, **he** is simply wrong as a matter of law. In determining land boundaries, the Ninth Circuit relies upon the *BLM Manual of Surveying Instructions for the Surveying of Public Lands 1973*.[23]

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

---

[22] Plt. Ex. 9 (Kalen Report – Attached) at 6
[23] Alaska v United States, 754 F. 2d 851, 852 (9th Cir. 1985)

Notwithstanding Mr. Kalen's unorthodox methodology for determining the ordinary high water mark, his ultimate opinion actually agrees with the Stalke Report on the most critical issue.  The Kalen report summary of opinion, states

> The ordinary high water is located at the margin of hydophytic plants, the moss and the horsetails.  Brush begins to grow slightly above this line, willows reach into the transition zone, dead horsetails from spring or mid summer reach into the willows. <u>The trees (spruce and birch are found one to five feet from and above the ordinary high water line.</u> (Emphasis added)[24]

<u>In other words, Kalen agrees that the ordinary mean high water mark is located to the north of the  of the tree line.</u>  Thus, Kalen agrees that the Rex trail easement and the lake's ordinary mean high water mark are separated by a line of trees, the location of which Kalen and Stalke agree upon.   While Stalke fixes the distance between the easement boundary and the lake shore as 43.7 feet, Kalen does not offer any measurement, but does conclude that there is distance between the boundary of the trail easement and the lake's ordinary high water mark. Thus, while Stalke and Kalen disagree as to the distance between the lake and the easement boundaries – and Kalen fails to offer any precise measurement  --- they agree that there is some distance, meaning that the Cruz Construction crew necessarily trespassed upon the Kubanyi Native allotment outside the Rex Trail easement in order to access the lake for water.

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

---

[24] Plt. Ex. 9 (Kalen Report – Attached) at 12

6)      **The Kubanyi's Are Entitled to Summary Judgment on the Issue of Legal Access.**  In their cross motion for summary judgment, the Kubanyi's seek a determination that the right of way for the Rex Trail does not provide direct legal public access to Seven Mile Lake. While the Defendants failed to offer any evidence of a genuine issue of material fact going to this issue, the conclusion of the Defendant's surveyor – whose final report was only available after the Defendant's submitted their oppositions -- agrees with the TCC surveyor that there is geographic separation between the easement and the lake's ordinary mean high water mark.  As a result, there is actual agreement that the Rex Trail does not provide direct legal public access to Seven Mile Lake, and the Kubanyi's are entitled to summary judgment on this issue.

7)      **The Kubanyi's Are Entitled to Summary Judgment on the Issue of Cruz Trespass.**   In their cross motion for summary judgment, the Kubanyi's seek a determination that Cruz is liable for trespass upon the Kubanyi Allotment during the spring of 2002 and 2003.  Cruz does not contest that his crew left the trail at the location referred to as "Gap #2," passed through the line of trees separating the trail and the lake.  Given that the land in question was within the Kubanyi allotment, and outside the public easement, there is no question that Cruz trespassed upon the

Michael J. Walleri
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

*Kubanyi v. GVEA* Case No. F04-0026
Reply : Plt. Cross Motion

12 of 22

Kubnayi allotment, and the Kubanyi's are entitled to summary judgment on this issue.

8)    **The Kubanyi's Are Entitled To Summary Judgment That Cruz's 2002 And/Or 2003 Trespasses Were Intentional Or Grossly Negligent.**    In their cross motion for summary judgment, the Kubanyi's seek a determination that Cruz's 2002 and/or 2003 trespasses were intentional or grossly negligent.  As a beginning point it must be noted that it is not a requirement for liability that the trespasser know that the trespass is being committed; trespasses resulting from ignorance, mistake[25] or inadvertence are still trespasses.[26]  Cruz argues that assuming that a trespass occurred, the trespass was unintentional, but fails to cit any authority for the principal that unintentional trespass is privileged.  The law is clear, that unintentional trespass is not privileged.[27]

Nonetheless, Cruz assertion of unintentional trespass is unsupported by any evidence.[28]  Cruz fails to offer any evidence to refute several important facts.  Cruz

---

[25] *Restatement of the Law 2d, Torts, § 164*
[26] DISPUTES BETWEEN ADJOINING LANDOWNERS-EASEMENTS, §10-2 (Matthew Bender & Co., 2005) citing *New York State NOW v. Terry, 704 F. Supp. 1247  (USDC S NY, 1989)*
[27] Supra.
[28] Cruz offers the rather weak excuse that "the landowner himself was unsure of the boundary of his property" because Mr. Kubanyi erred in identifying the ordinary mean high water mark of the lake.

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

does not deny that he (Cruz) had specific knowledge of the existence of the

allotment as a result of his 1999 negotiations with Victor Kubanyi to lease the

allotment for a construction camp and Wayne Walter's 2002 report to Cruz that Cruz

needed to obtain an agreement with the Kubanyi's to gain access to the lake.[29]   None

of the Defendants deny or offer any contrary evidence that the allotment was

heavily posted with "No Trespassing" signs at the break in the tree line (Gap # 2)

where Cruz accessed the lake from the Rex Trail.[30]   And finally there is no dispute

that Don Kubanyi personally requested--- several times --- that the Cruz crew stop

trespassing on the allotment, and the crew, and Mr. Cruz, refused. [31]   Indeed, Cruz

admits that he had access to surveyors who could have located the trail boundary,

but blindly and arrogantly proceeded to ignore the warnings given by Don Kubanyi.

Simply stated, Cruz offers no evidence to support his contention that he had neither

constructive nor actual knowledge of the trespass.  As a result, the Kubanyi's are

entitled to summary judgment on this issue.

---

See Cruz Op, at 10 Of course, Mr. Kubanyi's knowledge is irrelevant as to the issue of whether Mr. Cruz knew he was trespassing, except that it is not disputed that Mr. Kubanyi advised Mr. Cruz that he was trespassing, which, of course, was correct.
[29] See Summary of facts at Plt. Memo, Cross Motion at p. 30
[30] Id.
[31] Id.

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

### III.    GVEA IS LIABLE FOR THE TRESPASS.

In their cross motion for summary judgment, the Kubanyi's seek a determination that GVEA is liable for the 2002 and/or 2003 trespasses.   The Kubanyi's assert four theories of liability as to GVEA: 1) GVEA maintained sufficient control over Cruz's activities to retain liability 2) conventional principals of trespass liability, 3) assumption of liability under the State TWUP, or 4) by operation of FLPMA and applicable regulations.  As expected, GVEA's central argument is that Cruz was an independent contractor over whom GVEA had neither control nor responsibility.  As noted in Kubanyi's cross-motion for summary judgment, GVEA's argument is irrelevant with regard to each of these legal theories.

Obviously, there is a factual dispute with regard to the first two theories: i.e. a genuine issue of  i.e. the amount of control GVEA continued to exercise over the project  (*Crnkovich v Scaletta,*)[32] and whether they knew or should have known (Restatement § 427B).[33]  As a result, summary judgment as to these theories is inappropriate.

---

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

[32] *277 N.W. 2d 416 (Neb. 1979), See Plt.Memo, Cross-motion at 31-33*
[33] See Plt. Memo, Cross-motion at 33

*Kubanyi v. GVEA* Case No. F04-0026
Reply : Plt. Cross Motion

However, it is clear that GVEA assumed liability for the trespass as a permittee under the TWUP issued by the BLM.  It is not disputed, and GVEA offers no contrary evidence, that GVEA was the permitted under the TWUP.[34]  The GVEA boldly ignores the plain meaning of the terms of the TWUP, which expr provides

> This authorization does not authorize the permittee to enter upon any lands until proper rights-of-way, easements, or permission documents from the appropriate landowner have been obtained.[35]
>
> ….
> Permittee shall be responsible for all actions of contractors, agents or other persons who perform work to accomplish the approved project, and shall ensure that workers are familiar with the requirements of this authorization.[36]

Rather, GVEA boldly asserts that obtaining permits does not render GVEA liable for the trespass, and cites an Ohio state case.[37]  Of course, the cited case is clearly distinquishable because the permit in that case did not contain a condition in which the permittee assumed liability for contractors as is the case here.  Moreover, GVEA ignores FLPMA regulations, which clearly make a permitee liable for trespass. 43 CFR § 2807.12[38]    GVEA is asking this Court to ignore the terms of the Federal

---

[34] Cruz Ex. 5 See Plt. Memo, Cross-motion at 34-35
[35] Id. at para. 7
[36] Id, at para 10
[37] GVEA Memo, at 14, citing Lamberjack v Ohio, 714 N.E. 2d 482 (Ohio Ct. Cl., 199(
[38] The regulation, cited in the Kubanyi's cross motion reads

Michael J. Walleri
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

permit, and BLM regulations under which GVEA was operating.  Essentially, GVEA is asking this court to retroactively re-write the federal permit and ignore federal regulations governing the permit, without a single legal citation in support of that position.

### IV. THAT BLACK AND VETCH IS LIABLE FOR THE 2002 AND/OR 2003 TRESPASSES.

In their cross motion for summary judgment, the Kubanyi's seek a determination that Black and Vetch is liable for the 2002 and/or 2003 trespasses.  As originally, argued, the Kubanyi's presented the following evidence respecting B& V culpability based upon a theory that  Black and Vetch directed Cruz to relocate its watering operation to Seven Mile Lake, and directed Cruz to trespass upon the Kubanyi allotment;

    a.  Cruz testified that Mr. Jensen of B&V provided Mr. Cruz with the permit, and selected the watering spots to be used by Cruz.[39]

---

If I hold a grant, for what am I liable?

If you hold a grant, you are liable to the United States and to third parties for any damage or injury they incur in connection with your use and occupancy of the right-of-way.

…

(d) If BLM issues a grant to more than one person, each is jointly and severally liable

[39] Plt. Ex. 3 (D.Cruz Depo.) 37:7-12; 58:1-7:  Plt. Memo, at 37

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

   b.  Black and Vetch was at the weekly meeting when the decision was made to

       relocate the watering point to Seven Mile Lake. [40]

B& V does not deny or offer any evidence that these factual assertions are incorrect or in serious dispute.  As previously noted, these facts give rise to B&V's liability for trespass under the principles articulated in *Restatement (Second) of Torts §§ 427(B) (supra)*.  Cruz testified that B&V directed his actions.  B&V simply failed to offer any evidence in opposition to the Kubanyi's cross motion that would demonstrate that they did not direct Cruz's action.  Notably, B&V failed to even offer a single affidavit from any of their people denying Mr. Cruz's allegations. As noted above, the failure to respond with any controverting evidence by B&V entitled the Kubanyi's to summary judgment on this issue.

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

---

[40] Id., Plt. Ex. 3 (D.Cruz Depo.) at 72:11- 73-10

**V. NELSON AND COVEY ARE LIABLE FOR THE 2002 AND/OR 2003 TRESPASSES.**

In their cross motion for summary judgment, the Kubanyi's seek a determination that Nelson and Covey are liable under §1983. The Kubanyi's claim is based upon in *Hammond v. County of Madera, 859 F.2d 797, 804 (9th Cir. 1988)* The Troopers indirectly argue that Hammond is no longer good law, and cite *Squaw Valley Dev. Co. v. Goldberg, 375 F.3d 936 9(th Cir. 2004)* However, there is nothing in Squaw Valley that suggest such a conclusion. In this case, the Troopers suggest that the Kubanyi's had no constitutional right to be secure in their property; i.e. the allotment. There is not serious dispute at this point, that

- the land was posted,

- the trooper were told that there was a trespass claim by the Kubanyis

- Cruz was violating criminal trespass laws, which the Troopers witnessed,

- the troopers were aware of policies and customs in dealing with trespass claims, and

- the Kubanyi's were unarmed.

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

The troopers do not deny any of this.  The Troopers merely claim that the report from the Cruz claiming "Indians were out there getting wild"[41]  was sufficient to Taze and Mace Don Kubanyi, arrest him for saying "Fuck off", remove him from his property, and threaten the rest of the Kubanyi's that there should be no more trouble.

Of course, the Troopers admit that they arrested Don Kubanyi because Mr. Kubanyi told the Trooper to "fuck off".[42]  There is no question that Mr. Kubanyi was arrested in retaliation for telling the Troopers to fuck off.  The problem with this scenario is that telling an officer to "Fuck off" in such a situation, is constitutionally protected speech, and an arrest is the basis for summary judgment, by itself, under §1983. *Stone v. Juarez, , 2006 U.S. Dist. LEXIS 27272 (D.N.M., Apr. 23, 2006) citing Houston v. Hill, 482 U.S. 451  (1987); See also  Duran v. Douglas, 904 F.2d 1372, 1378 (9th Cir. 1989)* But there is no question that the  Troopers did not stop there. Rather, there is no question that the Troopers went much further and threatened the remaining Kubanyi members with similar treatment if there was more "trouble". There is no genuine issue of material fact that would prevent entry of summary judgment in favor of the Kubanyi's.

---

[41] Id., 28: 18-22  The Kubanyi's are Innupiat Eskimon; not Indian.
[42] Plt. Ex. 7 (Covey Depo) ., 29:9-24

Michael J. Walleri
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

**CONCLUSION.**

For the reasons stated above, the Court should grant summary judgment in favor of the Kubanyi's on the following issues:

8)  the right of way for the Rex Trail does not provide direct legal public access to Seven Mile Lake.

9)  Cruz is liable for trespassed upon the Kubanyi Allotment during the spring of 2002 and 2003.

10) Cruz's 2002 and/or 2003 trespasses were intentional or grossly negligent.

11) GVEA is liable for the 2002 and/or 2003 trespasses.

12) That Black and Veatch is liable for the 2002 and/or 2003 trespasses.

13) Nelson and Covey  are liable under §1983.

14) Cruz et. al. are  liable under §1983, and


DATED this 2nd day of November,  2006.


MICHAEL J. WALLERI

/s/ Michael J. Walleri
Law Offices of Michael J. Walleri
330 Wendell Street, Suite E
Fairbanks, Alaska 99701
(907) 452-4716

Michael J. Walleri
Attorney at Law

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

(907) 452-4725
walleri@gci.net
AK Bar No. 7906060

Certificate of Service
I hereby certify that under penalty of perjury that a true and
correct copy of the foregoing was sent to the following counsel
of record on November 2, 2006, 2006 via ECMl and U.S. Mail to:

Mr. Venable Vermont, Jr.                    Mr. Cory Borgeson
Assistant Attorney General                  Boreson & Burns, P.C.
Department of Law                           100 Cushman Street, Suite 31
1031 W. Fourth Ave., Suite 200              Fairbanks, Alaska 99701
Anchorage, Ak  99501

Mr. Eric P. Gillett                         Mr. Daniel T. Quinn
Preg O'Donnell & Gillett, P.C.              Richmond & Quinn
1800 Ninth Ave., Suite 1500                 360 K Street, Suite 200
Seattle, WA  98101- 1340                    Anchorage, AK 99501-2038

/s/ Michael J. Walleri

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725