IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| DON M. KUBANYI; JIMMY KUBANYI; AILEEN WELTON; ELIZABETH TUZROYLUK; DORIS KUBANYI; VICTOR KUBANYI; BOBBY KUBANYI; ARLETTE KUBANYI; and BRIAN BAGGETT,<br><br>      Plaintiffs,<br><br>vs.<br><br>GOLDEN VALLEY ELECTRIC ASSOCIATION; DAVE CRUZ, individually and d/b/a CRUZ CONSTRUCTION; BLACK & VECH CORPORATION; JAKE COVEY; and PATRICK NELSON,<br><br>      Defendants. | Case No. 4:04-0026 CV (RRB)<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AT DOCKET 57 and DENYING CROSS-MOTION FOR SUMMARY JUDGMENT AT DOCKET 88** |

**I. INTRODUCTION**

      Before the Court is Defendant Black & Veatch Corp. ("B&V") with a Motion to for Summary Judgment.[1]  B&V argues the Court should dismiss Plaintiffs' Don Kubanyi and the Kubanyi family ("Kubanyis") claims against B&V because: (1) B&V cannot be held

---

    [1]    Docket 57.

**I**

vicariously liable for any alleged trespass upon the Kubanyi allotment by Cruz Construction because it neither had contractual control, nor assumed control, over Cruz Construction; and (2) Kubanyis have failed to provide adequate proof to support their 42 U.S.C. § 1983 claim.

Kubanyis oppose at Docket 86 and argue B&V's motion should be partially denied because sufficient evidence exists to create a genuine issue of material fact as to B&V's potential liability for trespass. Kubanyis do not oppose B&V's motion for summary judgment on Kubanyis' § 1983 claims.

The Court finds that B&V is correct on all counts and accordingly grants B&V's motion at Docket 57 and denies Kubanyis' Cross-Motion at Docket 88 as to B&V. Because these matters have been thoroughly briefed by the parties, oral argument is not necessary.

**II. FACTS**

This case arises from an alleged trespass upon Kubanyis' Native Allotment which surrounds the southern shore and adjacent lands of Seven Mile Lake, approximately nine miles southeasterly of Anderson, Alaska.[2] The Allotment is subject to a continued right

---

[2]     Docket 34 at 5; Docket 57, Ex. 1, Ex. 8.

of public access along the non-exclusive use Rex to Bonnifield Trail not to exceed 50 feet in width.[3]

On or about July 17, 1999, Defendant Golden Valley Electric Association ("GVEA") hired B&V as an independent contractor to perform engineering and project management services in connection with the construction of the Northern Intertie Project.[4] Global Power & Communications ("Global Power"), a non-party to this litigation, hired Cruz Construction to build and construct ice roads for the project.[5]

On February 8, 2002, GVEA obtained from the Alaska Department of Natural Resources a Temporary Water Use Authorization (No. TWUP A2001-118) for extraction and use of water from Seven Mile Lake for construction and maintenance of ice roads and bridge for Northern Intertie Project set to expire on April 15, 2003.[6] Condition 7 of the TWUP explicitly declares: "This authorization does not authorize GVEA to enter upon any lands until proper rights-of-way, easements, or permission documents from the appropriate landowner have been obtained."[7]  GVEA previously

---

[3]   Docket 86 at 4; Docket 57, Ex. 1, Ex. 2; Docket 74 at 3-4 & Ex. 1, Ex. 2.

[4]   Docket 34 at 4; Docket 57 at 3.

[5]   Docket 57 at 3, & Ex. 5, Ex. 7 at 4.

[6]   Id., Ex. 3.

[7]   See id., Ex. 3 at 30 (Condition 7).

ORDER RE DOCKETS 57 and 88 - 3
4:04-CV-0026-RRB

obtained a Land Use Permit from the State, effective February 22, 1999, through February 21, 2004, for use of the Rex/South route for the construction of the Northern Intertie Project.[8]

On or about March 1, 2003, Cruz Construction accessed Seven Mile Lake by means of the Rex Trail.[9] A dispute arose between Don Kubanyi and employees of Cruz Construction, with Don Kubanyi claiming that Cruz Construction workers trespassed on his property.[10] Dave Cruz, President of Cruz Construction, called the Alaska State Troopers after Kubanyi threatened the workers. An altercation between Kubanyi and the Troopers ensued and Don Kubanyi was arrested. Afterwards, the Cruz workers continued the water pumping operation.[11]

Kubanyis initiated this lawsuit alleging trespass and violation of civil rights and naming as Defendants GVEA, Mr. Cruz individually and d/b/a Cruz Construction, Black & Veatch Corporation, and Alaska State Troopers Jake Covey and Patrick Nelson.[12] Specifically, Kubanyis allege that B&V is liable for Cruz Construction's alleged trespass upon the Kubanyi allotment because

---

[8]    Id.; see also id., Ex. 4.

[9]    Docket 34 at 6; Docket 57 at 3-4; Docket 59 at 2.

[10]   Docket 34 at 7; Docket 57 at 3-4, & Ex. 7 at 7-9; Ex. 8 at 13-15, 18-19.

[11]   Docket 34 at 8.

[12]   See generally id.

of B&V's alleged involvement in Cruz Construction's decision to locate its watering operation at Seven Mile Lake.[13]

It is undisputed that no B&V employee trespassed on the Kubanyi allotment.[14] There were no contractual agreements between B&V and Cruz Construction.[15] Mr. Cruz testified in his deposition that he reported directly to Mike Gearhart, then-President of Global Power, who was present during all construction.[16] Mr. Cruz testified that he took orders from Global Power and no one else.[17]

### III. STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if there is no genuine dispute as to material facts and if the moving party is entitled to judgment as a matter of law. The moving party has the burden of showing that there is no genuine dispute as to material fact.[18] The moving party need not present evidence; it need only point out the

---

[13]   Docket 86 at 36.

[14]   Docket 57 at 3-4, & Ex. 7 at 10, Ex. 9 at 25-26; see also Docket 59 at 2; Docket 86 at 36-37.

[15]   Docket 57 at 3-4 & Ex. 7 at 5-6, 9-10; Docket 59 at 2.

[16]   Docket 57, Ex. 7 at 5.

[17]   Id. at 6.

[18]   Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

lack of any genuine dispute as to material fact.[19] Once the moving party has met this burden, the nonmoving party must set forth evidence of specific facts showing the existence of a genuine issue for trial.[20] All evidence presented by the non-movant must be believed for purposes of summary judgment, and all justifiable inferences must be drawn in favor of the non-movant.[21] However, the nonmoving party may not rest upon mere allegations or denials, but must show that there is sufficient evidence supporting the claimed factual dispute to require a fact-finder to resolve the parties' differing versions of the truth at trial.[22]

**IV.  DISCUSSION**

To determine whether the nature and extent of the control present is sufficient to impose vicarious liability, both the contractual provisions relating to control and the actual exercise of control are relevant.[23]

---

[19]   Id. at 323-325.

[20]   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).

[21]   Id. at 255.

[22]   Id. at 248-49.

[23]   Dahle v. Atlantic Richfield, 725 P.2d 1069, 1072 (Alaska 1986); Moloso v. State, 644 P.2d 205, 211 (Alaska 1982).

A.   **Contractual Control**

B&V argues that it did not have or "retain" contractual control over Cruz Construction. Kubanyis do not oppose this argument.

"One who employs an independent contractor to do work which the employer knows or has reason to know to be likely to involve a trespass upon the land of another . . . is subject to liability for harm resulting to others from such trespass or nuisance."[24]  "It is normally a question of fact for the jury to determine whether an employer of an independent contractor has retained sufficient control so as to make the employer liable."[25]

B&V was hired as an independent contractor by GVEA.[26] Cruz Construction was hired as a subcontractor by Global Power.[27] Kubanyis did not name Global Power as a party in this lawsuit.[28] Kubanyis allege that B&V assisted GVEA in entering into a contract for purchase of services from Cruz Construction for the construction and maintenance of ice bridges and roads along the Rex

---

[24]   Restatement (Second) of Torts, § 427B.

[25]   <u>Moloso</u>, 644 P.2d at 212.

[26]   Docket 57 at 8.

[27]   <u>Id.</u>

[28]   <u>See generally</u> Docket 34.

Trail.[29]  However, B&V asserts, and Kubanyis do not deny, that no contractual relationship existed between B&V and Cruz Construction.[30]

Therefore, there is no genuine issue of material fact regarding whether B&V retained contractual control; simply, B&V did not have a contractual relationship with Cruz Construction.

### B. Assumed Control

Notwithstanding the absence of a contractual relationship, the Court must consider whether B&V gratuitously assumed a sufficient amount of control over Cruz Construction to subject it to liability.

Assumption of control may serve as the basis for liability if there is a sufficient causal relationship between the assumed control and the alleged negligence, even where there is no employment or independent contractor relationship.[31]  "'It is ancient learning that one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting

---

[29]   Id. at 5.

[30]   Docket 57 at 8.

[31]   Sterud v. Chugach Elec. Ass'n, 640 P.2d 823, 828 (Alaska 1982).

carefully.'  The concept of voluntary assumption of a duty has long been recognized in Alaska."[32]

Kubanyis allege that B&V participated in Cruz Construction's decision to relocate its watering operation to Seven Mile Lake.[33]  For evidence of control, Kubanyis point to the deposition testimony of Dave Cruz, President of Cruz Construction. There appears to be a factual dispute over certain aspects of Mr. Cruz's testimony, namely the extent of B&V's involvement in securing water permits and B&V employee Jeff Jensen's role in

---

[32]  Hammond v. Bechtel, Inc., 606 P.2d 1269, 1277 (Alaska 1980) (citation omitted) (citing, inter al., Restatement (Second) of Torts § 324A).

[33]  Docket 86 at 36; Docket 124 at 17.  Without presenting evidence, Kubanyis allege that B&V assisted GVEA in entering into a contract for the purchase of services from Cruz Construction for the construction and maintenance of ice bridges and roads along the Rex Trail.  Docket 34 at 5.  Kubanyis also assert that B&V attended weekly planning meetings where the decision to relocate to Seven Mile Lake was made; however, this assertion also lacks evidence. Kubanyis cite paragraphs 72:11-25 and 73:1-10 of Mr. Cruz's deposition testimony.  Docket 86, Ex. 3 at 18-19.  This excerpt refers to "Greg Lyman."  Id.  Kubanyis present no evidence that the said "Greg Lyman" is employed by B&V.  Similarly, Kubanyis present no evidence that any B&V employee attended weekly planning meetings hosted by Cruz Construction.  It is worth noting that elsewhere in Kubanyis' briefing they identify "Greg Wyman" (presumably the same person) as "project superintendent for GVEA."  See Docket 86 at 7 & Ex. 4 at 4-5.  These cited excerpts from Mr. Cruz's deposition suggest that this is the same individual.  See Docket 86, Ex. at 19.

identifying available water sources.[34]  However, any issue of fact regarding this matter is immaterial.

Kubanyis allege that B&V employee Jeff Jensen provided Mr. Cruz with the water use permit and selected the watering spots to be used by Cruz Construction.[35]  B&V, on the other hand, submits that B&V's role was limited to applying for the water permit and that the State reviewed the application and made the final determination to issue the permit to GVEA.[36]  Mr. Cruz testified that B&V applied for the water permit, while the State reviewed the application and made the final determination to issue the permit to GVEA.[37]  The State-issued water permit itself, rather than B&V or Mr. Jensen, identified the available water sources.[38]

Regardless of the extent of B&V's involvement in the permitting process and identification of available water sources, the parties do not dispute that Mr. Jensen did not specify exactly which water source to use.[39]  Additionally, the parties do not

---

[34]  See Docket 86, Ex. 3 at 12, 16; Docket 97 at 3-4; Docket 124 at 17-18.

[35]  Docket 86 at 36 & Ex. 3 at 12.

[36]  Docket 97 at 3-4.

[37]  Docket 86, Ex. 3 at 12.

[38]  Id.

[39]  Id. at 12, 16.

dispute that no one from B&V told Mr. Cruz to trespass on the Kubanyi allotment.[40]

Moreover, the water permit was issued to GVEA, not B&V, and included a condition which explicitly declared: "This authorization does not authorize GVEA to enter upon any lands until proper rights-of-way, easements, or permission documents, from the appropriate landowner have been obtained."[41]  There is no evidence that B&V was responsible to obtain permission from private landowners before Cruz Construction, GVEA, or any other contractor, began water extraction operations.  Moreover, even though there were non-trespassory means of accessing Seven Mile Lake,[42] there is no evidence that B&V controlled which path Cruz Construction choose to use to access the lake.

Kubanyis present no evidence that Mr. Cruz was beholden to B&V in any way.  On the contrary, the parties do not dispute Mr. Cruz's testimony that he reported directly to Mike Gearhart, then-President of Global Power, who was present during all construction and that Mr. Cruz took his orders exclusively from Global Power.[43]

---

[40]   Id.

[41]   Docket 57, Ex. 3 at 2 (Condition 7).

[42]   Docket 86 at 5-6.

[43]   Docket 57, Ex. 7 at 5-6.

Taking Kubanyis' factual allegations as true, the Court concludes that B&V did not assume sufficient control over Cruz Construction to be held liable for any alleged trespass by Cruz Construction.[44] B&V's motion for summary judgment on Kubanyis' trespass claims is therefore **GRANTED**.

### C.    Kubanyis' Cross-Motion

Kubanyis' Cross-Motion for Partial Summary Judgment at Docket 88 seeks a determination that B&V is liable for alleged trespasses in 2002 and 2003.[45] For the reasons set forth above, Kubanyis' cross-motion is **DENIED** with respect to B&V.

### D.    B&V is not liable under 42 U.S.C. § 1983.

Kubanyis concede that B&V is not liable under § 1983.[46] B&V's motion for summary judgment on Kubanyis' § 1983 claims is hereby **GRANTED**.

## V.    CONCLUSION

For the aforesaid reasons, B&V's Motion for Summary Judgment at Docket 57 is hereby **GRANTED** and Kubanyis' Cross-Motion

---

[44]    See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49, 255 (1986).

[45]    Docket 88 at 2.

[46]    Docket 86 at 50.

for Partial Summary Judgment at Docket 88 is **DENIED** with respect to B&V.  B&V is therefore dismissed from this litigation.

    ENTERED this 15th day of November, 2006.

                                S/RALPH R. BEISTLINE
                                UNITED STATES DISTRICT JUDGE