IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| DON M. KUBANYI; JIMMY KUBANYI; AILEEN WELTON; ELIZABETH TUZROYLUK; DORIS KUBANYI; VICTOR KUBANYI; BOBBY KUBANYI; ARLETTE KUBANYI; and BRIAN BAGGETT,<br><br>        Plaintiffs,<br><br>vs.<br><br>GOLDEN VALLEY ELECTRIC ASSOCIATION; DAVE CRUZ, individually and d/b/a CRUZ CONSTRUCTION; BLACK & VECH CORPORATION; JAKE COVEY; and PATRICK NELSON,<br><br>        Defendants. | Case No. 4:04-0026 CV (RRB)<br><br><u>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AT DOCKET 72 and DENYING CROSS-MOTION FOR SUMMARY JUDGMENT AT DOCKET 88**</u> |

**I.   INTRODUCTION**

Before the Court are Defendants Alaska State Troopers Jake Covey and Patrick Nelson ("Troopers") with a Motion to for Summary Judgment.[1] The Troopers argue that the Court should dismiss Don Kubanyi's and the Kubanyi family's ("Plaintiffs")

---

[1]   Docket 72.

claims against the Troopers because: (1) the amount of force used was "objectively reasonable" and thus there was no constitutional violation, and (2) even if there was a constitutional violation, they are entitled to qualified immunity because they could have reasonably believed that the amount of force they used was appropriate under the circumstances. In opposition,[2] Plaintiffs argue the Troopers' motion should be denied because sufficient evidence exists for a reasonable jury to conclude that the Troopers used excessive force. Plaintiffs do not address the Troopers' qualified immunity defense, which this Court finds dispositive.

Plaintiffs also assert § 1983 claims for deprivation of property against the Troopers. The Troopers oppose at Docket 96. The Court finds these claims without merit. Because the matter has been thoroughly briefed, oral argument is not necessary.

## II. FACTS

This case arises out of the March 1, 2003, arrest of Plaintiff Don Kubanyi. Mr. Kubanyi owns a 1/8th undivided interest in a Native allotment bordering the south end of Seven Mile Lake, which was approved on September 21, 1992.[3] The allotment is posted with "No Trespassing" and "Private Property" signs.[4]

---

[2]    Docket 86.

[3]    <u>Id.</u> at 2.

[4]    <u>Id.</u> at 6.

During the spring of 2003, construction for an electrical intertie was under way near the Kubanyi allotment. One of the subcontractors, Cruz Construction, was hired to construct ice roads for the project.

On the afternoon of March 1, 2003, Don Kubanyi noticed that Cruz Construction had established a water pumping station on Seven Mile Lake and was preparing to pump water.[5] Mr. Kubanyi believed that the workers were trespassing upon the Kubanyi allotment to access the lake and informed the workers and Dave Cruz, owner of Cruz Construction, of their trespass. Mr. Cruz and Mr. Kubanyi spoke briefly, but did not resolve the matter. It is not clear whether Mr. Cruz believed his workers had trespassed, nor that a trespass had in fact occurred.

Later that evening, on two occasions, Mr. Kubanyi approached the workers and told them to stop trespassing.[6] The workers denied the trespass. Later, after becoming intoxicated, Mr. Kubanyi approached the workers a third time and told them to stop crossing the allotment and threatened to shoot if they continued to work through the night.[7] There is a factual dispute

---

[5]   Id. at 11.

[6]   Id. at 12.

[7]   Docket 86 at 13.

as to whether Mr. Kubanyi threatened to shoot the workers themselves or just the tires of their vehicles.[8]

Mr. Cruz called the Alaska State Troopers to report the threatened shooting. The call was dispatched to Troopers Jacob Covey and Patrick Nelson. Within a few minutes, the Troopers met Mr. Cruz near Mile 281 of the Parks Highway. Mr. Cruz led the Troopers to the Seven Mile Lake area where Cruz's workers were waiting for them.[9] Trooper Covey interviewed the construction workers.[10] The workers told the Troopers that Mr. Kubanyi was intoxicated and threatened to shoot them if they did not stop crossing the allotment.[11] The workers also told the Troopers that they had seen a firearm on the snowmachine of someone accompanying Kubanyi during one of the encounters.[12]

Around 6:30 pm, while the Troopers were conducting their investigation, Kubanyi exited his cabin and approached the Troopers and workers.[13] Trooper Covey advanced onto the lake with his handgun drawn and held at the low guard position.[14] Trooper Covey

---

[8]   Docket 74 at 4-5 & Ex. 4 at 7. See infra note 45.

[9]   Docket 72 at 4.

[10]  Id.

[11]  Docket 72, Ex. E at 3-5.

[12]  Docket 86 at 13; Docket 72 at 4.

[13]  Docket 72 at 4.

[14]  Id. at 4-5.

ordered Kubanyi to show his hands.[15] Kubanyi responded with hostility and profanity.[16] After several warnings, Trooper Nelson fired a taser cartridge which failed to subdue him. An altercation between Mr. Kubanyi and the Troopers ensued and Mr. Kubanyi punched Trooper Nelson in the face.[17] Trooper Covey deployed a chemical spray, which succeeded in subduing Mr. Kubanyi.[18] The Troopers then secured Mr. Kubanyi in a patrol car and assisted him in washing and wiping the pepper spray from his eyes.[19] Don Kubanyi was arrested and charged with several counts of assault, disorderly conduct, and resisting arrest.[20]

Plaintiff Brian Baggett, Kubanyi's brother-in-law, began to approach from across the lake. Trooper Nelson stayed with Kubanyi while Trooper Covey confronted Mr. Baggett, again with his handgun drawn in the low guard position.[21] Trooper Covey announced "State Troopers" and gave commands similar to those he had given Mr. Kubanyi.[22] Trooper Covey commanded Mr. Baggett to get on his

---

[15]   See Docket 72, Ex. D at 2-3; Docket 95, Ex. F.

[16]   Docket 72 at 4-5.

[17]   Id. at 7-8 & Ex. A at 13, Ex. B at 5-6, Ex. C at 19.

[18]   Id., Ex. C at 25.

[19]   Id.

[20]   Docket 74, Ex. 3 at 14.

[21]   Docket 72 at 8 & Ex. C at 25.

[22]   Id. at 9 & Ex. C at 26.

knees and put his hands on his head and Mr. Baggett complied.[23] Trooper Covey patted down Mr. Baggett for weapons and determined that he was not armed.[24] Trooper Covey did not use physical force against Mr. Baggett and did not make physical contact with him, other than for the weapons pat down, because Mr. Baggett was cooperative and allowed the Troopers to determine that he did not present a threat.[25]

### III. STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if there is no genuine dispute as to material facts and if the moving party is entitled to judgment as a matter of law. The moving party has the burden of showing that there is no genuine dispute as to material fact.[26] The moving party need not present evidence; it need only point out the lack of any genuine dispute as to material fact.[27] Once the moving party has met this burden, the nonmoving party must set forth evidence of specific facts showing the existence of a genuine issue

---

[23]   Id., Ex. D at 5-6.

[24]   Id., Ex. C at 26.

[25]   Id., Ex. D at 6-7.

[26]   Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

[27]   Id. at 323-325.

for trial.[28]  All evidence presented by the non-movant must be believed for purposes of summary judgment, and all justifiable inferences must be drawn in favor of the non-movant.[29]  However, the nonmoving party may not rest upon mere allegations or denials, but must show that there is sufficient evidence supporting the claimed factual dispute to require a fact-finder to resolve the parties' differing versions of the truth at trial.[30]

**IV.  DISCUSSION**

    **A.  Excessive Force**

Don Kubanyi alleges that the Troopers used excessive force in subduing him.  The Troopers argue that their use of force was reasonable under the circumstances and that they are protected by the doctrine of qualified immunity.[31]  "Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'"[32]  When a defendant invokes the defense of qualified immunity, "a ruling should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is

---

[28] <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248-49 (1986).

[29] <u>Id.</u> at 255.

[30] <u>Id.</u> at 248-49.

[31] Docket 20 at 26.

[32] <u>Saucier v. Katz</u>, 533 U.S. 194, 200 (2001).

dispositive."[33] The doctrine of qualified immunity seeks to "avoid excessive disruption of government and permit the resolution of many insubstantial on claims summary judgment."[34]

To evaluate a claim of qualified immunity, a court must first consider the threshold question of whether the facts, taken in the light most favorable to the party asserting the injury show the officer's conduct violated a constitutional right.[35] If the officer violated a constitutional right, "the next, sequential step is to ask whether the right was clearly established" at the time of the violation.[36] This requires an assessment of whether "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."[37] Thus, to survive the Defendant's motion for qualified immunity, Plaintiffs must state a violation of a constitutional right, and that right must have been clearly established at the time Kubanyi was controlled with a taser and pepper spray by Troopers Nelson and Covey on March 1, 2003.

### 1. Constitutional Right

---

[33] Id.

[34] Id. at 202.

[35] Id. at 201.

[36] Id.

[37] Id. at 202 (citation omitted).

ORDER RE DOCKETS 72 and 88 - 8
4:04-CV-0026-RRB

dispositive."[33] The doctrine of qualified immunity seeks to "avoid excessive disruption of government and permit the resolution of many insubstantial on claims summary judgment."[34]

To evaluate a claim of qualified immunity, a court must first consider the threshold question of whether the facts, taken in the light most favorable to the party asserting the injury show the officer's conduct violated a constitutional right.[35] If the officer violated a constitutional right, "the next, sequential step is to ask whether the right was clearly established" at the time of the violation.[36] This requires an assessment of whether "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."[37] Thus, to survive the Defendant's motion for qualified immunity, Plaintiffs must state a violation of a constitutional right, and that right must have been clearly established at the time Kubanyi was controlled with a taser and pepper spray by Troopers Nelson and Covey on March 1, 2003.

### 1. Constitutional Right

---

[33] Id.

[34] Id. at 202.

[35] Id. at 201.

[36] Id.

[37] Id. at 202 (citation omitted).

The Fourth Amendment protects citizens from the excessive force by law enforcement officers when apprehending suspected criminals.[38] All claims alleging that law enforcement used excessive force to effect an arrest are analyzed under the Fourth Amendment.[39] The test is one of "objective reasonableness under the circumstances."[40] The court must weigh "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake."[41] Specifically, the court should consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight."[42] In weighing these factors, the Supreme Court of the United States has cautioned that "the reasonableness of the officer's belief as to the appropriate level of force should be judged from that on-scene perspective. We set out a test that cautioned against the '20/20 vision of hindsight' in favor of

---

[38]   Graham v. Connor, 490 U.S. 386, 394-95 (1989).
[39]   Id. at 395.
[40]   Id. at 399.
[41]   Id. at 396.
[42]   Id.

deference to the judgment of reasonable officers on the scene."[43] The Supreme Court has held that "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."[44] The critical question is whether a reasonable officer in these same circumstances would have concluded that a threat existed to justify the level of force alleged to be excessive.

The first factor under Graham concerns the severity of the criminal activity at issue leading up to the Troopers' use of force against Mr. Kubanyi. The suspected criminal activity of which the Troopers had been apprised by the Cruz Construction workers was Kubanyi's threat to shoot the workers.[45] Threatening

---

[43] Saucier v. Katz, 533 U.S. 194, 204-05 (2001)(citing Graham, 490 U.S. 386 (1989)).

[44] Graham, 490 U.S. at 397.

[45] Docket 74 at 4-5 & Ex. 3 at 11, Ex. 4 at 7. The Court acknowledges that a dispute exists over whether Don Kubanyi threatened to shoot the Cruz workers or just the tires of their vehicles. See Docket 74 at 5 n.1; Docket 86 at 45-46. According to Dave Cruz, his site inspector reported in a phone conversation that Kubanyi was "very upset and said Don had threatened to kill them. He was going to get his gun and kill them and that they were fearing for their life . . . ." Docket 74, Ex. 4 at 7. Kubanyi acknowledged in his deposition, that he threatened to shoot out the tires on the crew members' vehicles and intended his threats to scare the crew members, but denied that he threatened to shoot them. Id., Ex. 3 at 11. The Court finds this distinction immaterial. Mr. Cruz relayed to the Troopers the information that he received from his workers. Docket 102, Ex. 11 at 4. This was sufficient to create reasonable apprehension in the Troopers.

to shoot a person is a serious crime.[46]  The second Graham factor asks whether Kubanyi posed "an immediate threat to the safety of the officer or others."[47]  The potentially immediate threat to the Troopers and others initially resulted from Kubanyi's threat to use deadly force to protect his property.  Upon encountering Mr. Kubanyi, the Troopers' first concern was to determine the extent of Mr. Kubanyi's threat to the Troopers' and the workers' safety.  Mr. Kubanyi's refusal to comply with the Troopers' effort to make this determination heightened their assessment of the threat.  Whether Mr. Kubanyi ultimately had a firearm when he confronted the Troopers is irrelevant because the inquiry must focus on the facts known to the officer at the time of the shooting, rather than all objective facts in the record.[48]

Ultimately, justification for the Troopers' use of force in this case is found in the third factor under Graham.  Kubanyi's failure to yield to the Troopers' commands weighs in favor of the Troopers because Kubanyi was "actively resisting arrest or attempting to evade arrest by flight."[49]  Kubanyi refused to cooperate with the Troopers' standard procedure to assess nature of

---

[46]   Alaska Stat. § 11.41.220(a)(1)(A).

[47]   Graham, 490 U.S. at 397.

[48]   Saucier, 533 U.S. at 204-05.

[49]   Graham, 490 U.S. at 396.

the threat he posed.  He refused to hold his hands out to the side and to turn around and took a physically and verbally combative posture.[50]  He refused to lie down on the ground and remained belligerent.[51]  During the Troopers' attempt to control him, Kubanyi punched Trooper Nelson in the face.[52]  There is no constitutional right to resist or interfere with arrest or to strike an officer.[53]

The Troopers acknowledge that they continued to use the taser and pepper spray after Mr. Kubanyi said "I'm done."[54]  The Troopers assert that even though Kubanyi announced "I'm done," he did not cease flailing his arms and actively resisting.[55]  This additional use of the taser and pepper spray lasted only a matter of seconds.  The entire episode from the initial discharge of the taser to securing Kubanyi in handcuffs lasted about 51 seconds.[56]

Because the law acknowledges that "officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force

---

[50]  Docket 72, Ex. C at 16-17, Ex. D at 4-5.

[51]  Id.

[52]  Id.

[53]  Resisting arrest is a Class A Misdemeanor.  Alaska Stat. § 11.56.700.

[54]  Docket 95 at 7.

[55]  Docket 86 at 49.

[56]  Docket 72, Ex. E at 3.

that is necessary in a particular situation,"[57] the law allows for reasonable mistake on the part of law enforcement officers: "If an officer reasonably, but mistakenly, believed that a suspect was likely to fight back, for instance, the officer would be justified in using more force than in fact was needed."[58]  The Court concludes that the Troopers did not violate Kubanyi's constitutional rights.

### 2. Clearly Established Rights

Even if Mr. Kubanyi's constitutional rights were violated, the Troopers are entitled to qualified immunity if that right was not clearly established at the time of the incident. "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."[59]  The liberal threshold for qualified immunity protects officers from the sometimes "hazy border between excessive and acceptable force."[60]  "Qualified immunity protects 'all by the plainly incompetent or those who knowingly violate the law.'"[61]

---

[57]   Saucier, 533 U.S. at 205.

[58]   Id.

[59]   Saucier, 533 U.S. at 202 (citing Anderson v. Creighton, 483 U.S. 635, 640 (1987)).

[60]   Id. at 206 (citation omitted).

[61]   Id. at 202 (citing Malley v. Briggs, 475 U.S. 335, 341 (1986)).

The inquiry into whether a right is clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition."[62] The Supreme Court of the United States recently made clear that the "'relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'"[63] The focus in this inquiry is whether the officer had fair notice that his conduct was unlawful; "reasonableness is judged against the backdrop of the law at the time of the conduct. If the law at that time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation."[64]

Tazers and pepper spray are appropriate law enforcement measures for controlling a dangerous or uncooperative person. Here, the question must be whether, at the time of the Troopers' actions, it was "clearly established" in the "specific context" of these facts that the Troopers were violating Kubanyi's Fourth Amendment rights. The specific context confronting the Troopers was an intoxicated man who, while intoxicated, had reportedly

---

[62] Id. at 201.

[63] Haugen v. Brosseau, 543 U.S. 194, 198 (2004) (quoting Saucier, 533 U.S. at 202).

[64] Id.; Saucier, 533 U.S. at 206.

threatened to shoot the Cruz Construction workers and who refused to comply with the Troopers' standard commands when confronted. Because of Kubanyi's refusal to cooperate with the Troopers' attempt to assess the danger level of the situation, the Troopers naturally assumed that he was dangerous.

Just as the law allows room for reasonable mistake about the amount of force required,[65] the law also allows room for an officer's reasonably mistaken understanding of the law: "An officer might correctly perceive all of the relevant facts but have a mistaken understanding as to whether a particular amount of force is legal in those circumstances. If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense."[66]

In an episode lasting barely one minute, where Kubanyi's words indicated he was "done" resisting, but his actions did not, it cannot be said that the Troopers' continued use of the taser and pepper spray, before restraining Kubanyi in handcuffs, was unreasonable. The Court holds that the Troopers' belief about the legal appropriateness of their use of force was reasonable, and therefore entitled to qualified immunity.

---

[65] Saucier, 533 U.S. at 205.

[66] Id.

**B.   Excessive Force Against Brian Baggett**

It is not clear from Plaintiffs' submissions whether they intend to allege that the Troopers used excessive force against Brian Baggett. To the extent that Plaintiffs do allege that the Troopers used excessive force against Mr. Baggett, Plaintiffs do not oppose the Troopers' motion for summary judgment on this claim.

Unlike Mr. Kubanyi, Mr. Baggett cooperated with the Troopers' commands.[67] Because of his compliance, the Troopers determined that Mr. Baggett did not present a threat without the need to use physical force. The Troopers did not make physical contact with Mr. Baggett other than for a weapons pat-down.[68] This did not violate Mr. Baggett's constitutional rights. The Troopers' motion for summary judgment on claims of excessive force against Mr. Baggett is granted.

///

///

///

///

///

///

---

[67]   Docket 72, Ex. D at 5-7.

[68]   Id.

### C. Deprivation of Property Rights

Plaintiffs assert a claim against Troopers Covey and Nelson for deprivation of property rights under 42 U.S.C. § 1983.[69] The Troopers oppose at Docket 96.

Plaintiffs argue that the Troopers deprived Plaintiffs of their property rights by aiding and abetting Cruz Construction and others in the illegal trespass upon the Kubanyi allotment. Specifically, Plaintiffs argue the Troopers violated Plaintiffs' substantive due process by preventing Plaintiffs from stopping a trespass, and procedural due process by failing to provide Plaintiffs with a hearing before or after the Troopers' "forcible assistance" to Cruz Construction in its trespass.[70]

These claims lack merit. The Troopers became involved in this matter for the purpose of preventing violence, not to solve a trespass issue. Significantly, the Plaintiffs offer no evidence that any of the Plaintiffs complained to the Troopers about their

---

[69] Docket 34 at 8-10; Docket 86 at 43-45. 42 U.S.C. § 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

[70] Docket 86 at 43-45.

allegations of trespass.  Trooper Covey stated in his deposition that neither Don Kubanyi, nor Brian Baggett mentioned wanting to file a complaint of trespass.[71]  Moreover, Mr. Kubanyi's resistance to arrest, which required the Troopers to forcibly control him, impeded the Troopers ability to address a trespass issue, if they were inclined.

Plaintiffs have not demonstrated a constitutional violation for deprivation of property rights.  Moreover, even if the Court could find a constitutional violation on these facts, the Troopers are sheltered under the doctrine of qualified immunity because "the contours of substantive due process in the context of regulating property . . . [are] not clearly established."[72]

///

///

---

[71]     Docket 87, Ex. 7 at 11.

[72]     Squaw Valley Dev. Co. v. Goldberg, 375 F.3d 936, 950 (9th Cir. 2004).  In their Reply brief, Plaintiffs cite Hammond v. County of Madera, 859 F.2d 797 (9th Cir. 1988), in support of their claim for violation of their right to be secure in their property.  In Hammond, the Ninth Circuit addressed the narrow issue of "whether appellants' injury resulted from acts which can be said to be official county policy", id. at 801, and reversed the district court's dismissal of the civil rights claim and held that the County was liable under § 1983, id. at 803, for its actions in acquiring a right-of-way and incorporating a road into the Madera County road system, id., passim.  The Court did not address whether the law was "clearly established" for purposes of evaluating the qualified immunity of county officials.  This is the question at issue in the case at bar.  Squaw Valley, supra, on the other hand, resolves this issue.

D.  **Plaintiffs' Cross Motion**

In their omnibus Opposition, Plaintiffs include a motion for partial summary judgment without clearly indicating to which claims they intend to seek summary judgment.  To the extent that Plaintiffs seek summary judgment on any of the claims asserted against Troopers Covey and Nelson, Plaintiffs' motion is hereby **DENIED**.

V.  **CONCLUSION**

For the aforesaid reasons, Defendant's Motion for Summary Judgment[73] is hereby GRANTED and Plaintiff's Cross Motion for Summary Judgment,[74] as to the Troopers, is DENIED.  The Troopers are therefore dismissed from this litigation.

ENTERED this 15th day of November, 2006.

S/RALPH R. BEISTLINE
UNITED STATES DISTRICT JUDGE

---

[73]  Docket 72.

[74]  Docket 86.