IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

DON M. KUBANYI; JIMMY KUBANYI;
AILEEN WELTON; ELIZABETH
TUZROYLUK; DORIS KUBANYI;
VICTOR KUBANYI; BOBBY KUBANYI;
ARLETTE KUBANYI; and BRIAN
BAGGETT,

        Plaintiffs,

vs.

GOLDEN VALLEY ELECTRIC
ASSOCIATION; DAVE CRUZ,
individually and d/b/a CRUZ
CONSTRUCTION; BLACK & VECH
CORPORATION; JAKE COVEY; and
PATRICK NELSON,

        Defendants.

Case No. 4:04-0026 CV (RRB)

**ORDER REGARDING MOTION**
**FOR PARTIAL SUMMARY JUDGMENT**
**AT DOCKET 74**

I.    **INTRODUCTION**

Before the Court are Defendants Mr. Cruz, individually and d/b/a Cruz Construction ("Cruz Defendants"), with a Motion to for Partial Summary Judgment.[1]    Cruz Defendants seeks partial summary judgment that (1) even assuming some trespass occurred,

---

[1]    Docket 74.

there have been no damages to Plaintiffs' property, and therefore
Plaintiffs are entitled to no more than nominal damages for their
trespass claim; and (2) Cruz Defendants cannot bear liability for
any alleged civil rights violation under 42 U.S.C. § 1983 because
they committed no conduct under color of state law, and did not
participate in the arrest of Plaintiff Don Kubanyi. The Court
denies Cruz Defendants' motion as to (1), but grants as to (2).

Also before the Court are Plaintiffs with a Cross Motion
for Partial Summary Judgment.[2] Plaintiffs' cross motion is denied.
Because these matters have been thoroughly briefed by the parties,
oral argument is not necessary.

## II. FACTS

This case arises over an alleged trespass on March 1,
2003, Defendant Cruz Construction on Plaintiffs' Native allotment.
Cruz Construction is a heavy snow and ice road contractor.[3]
Plaintiffs are comprised of the adult children and heirs of Nora
Kubanyi, an Alaska Native who applied for and received a Native
allotment which is identified as U.S. Survey 9954 and surrounds the
south end of Seven Mile Lake approximately nine miles southeast of
Anderson, Alaska.[4] Each of the Plaintiffs hold a 1/8th undivided

---

[2]    Docket 88.

[3]    Docket 86, Ex. 3 at 1.

[4]    Docket 86 at 2; Docket 57, Ex. 1.

interest in the property.[5]  This allotment is subject to a public easement along what is known as the Rex Trail, or the "Rex Bonnifield Trail," 50 feet in width.[6]

The Northern Intertie Project is a 96-mile, 230-kilovolt transmission line between Fairbanks and Healy, owned by Defendant Golden Valley Electric Association ("GVEA") and designed to bring additional power into the Interior by adding a second line and power source from the Anchorage and Susitna Power plants.[7]  During the winters of 2001-02, and 2002-03, GVEA subcontractor Global Power & Communications hired Cruz Construction, Inc. for the construction and maintenance of ice roads in support of the Northern Intertie Project.[8]

During the winter of 2001-02, Cruz Construction, and built an ice shack and obtained water from Seven Mile Lake.[9] During the Spring of 2002, Cruz employee Wayne Waters apparently contacted Plaintiff Don Kubanyi to obtain permission from the Plaintiffs to cross the Kubanyi allotment to gain access to the Seven Mile Lake to pump water from the lake to prepare an ice

---

[5]     Docket 34 at 5.

[6]     Docket 86 at 4.

[7]     Docket 74 at 3; Docket 77 at 3 n.3.

[8]     Docket 74, Ex. 4 at 4.

[9]     Docket 74 at 15-17.

road.[10]  Plaintiffs did not consent to this arrangement for the 2002 construction season.[11]  Although the evidence is not entirely clear, it appears that Cruz Construction continued its Spring 2002 operations without trespassing upon the Kubanyi allotment.  There was no objection from Plaintiff Don Kubanyi, or any other of the allotment owners.[12]  Additionally, Plaintiffs do not specifically allege that Cruz Construction trespassed in 2002.[13]

During the following winter of 2002-03, Cruz Construction again accessed the lake for maintenance of ice roads, arriving at the end of February.[14]  On March 1, 2003, Dave Cruz spoke with Don Kubanyi who was intoxicated.[15]  Later that evening, after Dave Cruz left the construction site, his workers called him and reported that Don Kubanyi was very upset and threatened to discharge a

---

[10]   Docket 34 at 6.

[11]   Id.

[12]   Docket 74 at 4 & Ex. 4 at 5-6.

[13]   The Court notes that Plaintiffs' Cross Motion requests a determination that Cruz Defendants are liable for trespasses in 2002, in addition to those alleged in 2003.  See Docket 88. However, neither Plaintiffs' Complaint, nor their Amended Complaint, actually allege trespass in 2002.  Plaintiffs only allege that Cruz Construction requested permission in 2002 to cross the allotment and that Plaintiffs did not grant permission.  Docket 34 at 6.  Plaintiffs do not allege that, in spite of not having received permission, Cruz Construction entered Plaintiffs' land.

[14]   Docket 74 at 4 & Ex. 4 at 6-7.

[15]   Id., Ex. 3 at 11-12, Ex. 4 at 7.

weapon.[16]  Mr. Cruz called 911 and two Alaska State Troopers, Jake Covey and Patrick Nelson, were dispatched.

Upon arrival, Trooper Covey began interviewing the crew members and inspector on scene, and confirmed that Kubanyi had threatened the use of firearms.[17]  As he was conducting interviews, a man whom someone identified as Don Kubanyi walked on the lake toward Trooper Covey.[18]  Trooper Covey ordered Kubanyi to show his hands.[19]  Kubanyi responded with hostility and profanity.[20]  After several warnings, Trooper Nelson fired a taser cartridge which failed to subdue him.[21]  An altercation between Mr. Kubanyi and the Troopers ensued and Mr. Kubanyi punched Trooper Nelson in the face.[22]  Trooper Covey deployed a chemical spray, which succeeded in subduing Kubanyi, who was arrested and charged with several counts of assault, disorderly conduct and resisting arrest.[23]  The

---

[16]    Id. at 5 n.1; Docket 102, Ex. 4 at 4; see infra note 65.

[17]    Id. at 5 & Ex. 7 at 18.

[18]    Id.

[19]    Id. at 23-25.

[20]    Id.

[21]    Id.

[22]    Id.

[23]    Id. at 6, 23-25.

Cruz Construction crew members "took cover" near their vehicles during the altercation and arrest.[24]

After the incident with the Troopers, the Cruz Construction workers continued the water pumping operation.[25] There is evidence, including statements by Plaintiff Don Kubanyi, that Cruz Defendants genuinely believed they were in the right.[26] Mr. Kubanyi also acknowledged that the alleged trespass by Cruz Construction personnel did not damage his property, because the ground was all frozen in that area.[27]

Plaintiffs initiated this lawsuit alleging trespass and violation of civil rights and naming as defendants GVEA, Mr. Cruz individually and d/b/a Cruz Construction, Black & Veatch Corporation, and State Troopers Jake Covey and Patrick Nelson.[28]

## III. STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if there is no genuine dispute as to material facts and if the moving party is entitled to judgment as a matter of law. The moving party has the burden of

---

[24]   Id. at 5-6, 15-16 & Ex. 4 at 33.

[25]   Docket 34 at 8.

[26]   Docket 74 at 5 & Ex. 3 at 92.

[27]   Id., Ex. 3 at 122.

[28]   See generally Docket 34.

showing that there is no genuine dispute as to material fact.[29]  The moving party need not present evidence; it need only point out the lack of any genuine dispute as to material fact.[30]  Once the moving party has met this burden, the nonmoving party must set forth evidence of specific facts showing the existence of a genuine issue for trial.[31]  All evidence presented by the non-movant must be believed for purposes of summary judgment, and all justifiable inferences must be drawn in favor of the non-movant.[32]  However, the nonmoving party may not rest upon mere allegations or denials, but must show that there is sufficient evidence supporting the claimed factual dispute to require a fact-finder to resolve the parties' differing versions of the truth at trial.[33]

## IV.  DISCUSSION

### A.    Trespass Damages

The parties dispute whether the Rex Trail intersects Seven Mile Lake, and therefore, whether a trespass actually occurred.[34]  Notwithstanding this dispute, Cruz moves for partial

---

[29]    Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

[30]    Id. at 323-325.

[31]    Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).

[32]    Id. at 255.

[33]    Id. at 248-49.

[34]    Docket 86 at 30.

summary judgment that even if a trespass did occur, damages for this trespass are nominal at most because no damage occurred to the Kubanyi allotment and any trespass was unintentional.

The Alaska Supreme Court has held that where a trespass caused no damage and was non-deliberate, the Court is not required to award any damages.[35]  Further, an unintentional and non-negligent trespasser is not liable to the landowner even if the trespass does cause harm.[36]  Conversely, the Court may award damages in excess of a nominal award, including punitive damages, for an intentional trespass committed without the landowners' permission, even though the property was not damaged.[37]

### 1.    Intentionality of Trespass

Cruz Defendants argue that even if a trespass did occur, it was unintentional because they genuinely believed that they had

---

[35]    Wernberg v. Matanuska Elec. Ass'n, 494 P.2d 790, 793 (holding that "since the jury found that the trespass caused no actual damage and was non-deliberate, it was not required to award any damages.").

[36]    Id. at 793 (citing Restatement (Second) of Torts, § 166 (1965)).

[37]    Restatement (Second) of Torts, § 163 (emphasis added) (cited in St. Paul Church, Inc. v. Bd. of Trs. of the Alaska Missionary Conference of the United Methodist Church, Inc., __ P.3d __, 2006 Alas. LEXIS 156, *54 n.60; Mapco Express, Inc. v. Faulk, 24 P.3d 531, 539 n.23 (Alaska 2001)).

a right to enter the lake.[38]    Plaintiffs argue that evidence suggests that trespass was intentional and/or grossly negligent.[39]

The parties dispute whether the placement of "No Trespassing" signs was sufficient to apprise Cruz Defendants of the allotment boundaries[40] and whether either party knew the true boundary.[41]   For example, Don Kubanyi admitted in his deposition that he is not certain about the boundary line.[42]   However, there is evidence that Mr. Cruz attempted to negotiate with the Kubanyis as early as 1999 for an agreement to use the allotment, from which a trier of fact could infer some awareness of the boundaries of the allotment.[43]   Finally, on March 1, 2003, Cruz Defendants were on notice that Don Kubanyi at least believed the Cruz workers were trespassing.[44]   In deposition, however, Don Kubanyi acknowledged that the Cruz Construction personnel genuinely believed that they had a right to enter the lake from the trail.[45]

---

[38]    Docket 102 at 9; Docket 74, Ex. 3 at 13.

[39]    Docket 34 at 9; Docket 86 at 29-30; Docket 124 at 13-14.

[40]    See Docket 102 at 10; Docket 86 at 29-30.

[41]    Docket 102 at 9-11; Docket 74, Ex. 4 at 5.

[42]    Docket 102, Ex. 10 at 2.

[43]    Docket 74, Ex. 4 at 7; Docket 86, Ex. 3 at 2.

[44]    Id.

[45]    Docket 74 at 7, 9 & Ex. 3 at 13.

The Court concludes that the parties' relative positions raise multiple issues of fact regarding the intentionality of the alleged trespass by Cruz Defendants. The Court finds that a trier of fact could conclude either that Cruz Defendants intentionally entered Plaintiffs' land or that trespass was unintentional. Therefore, summary judgment on this issue is not appropriate.

## 2. Nominality of Damages

Plaintiffs allege in their Amended Complaint that "Cruz Construction unlawfully appropriated the value of such land and caused certain damage to the property."[46] Cruz Defendants move for partial summary judgment that any damages award be limited to nominal damages because the Kubanyi allotment did not sustain physical damage.[47]

Alaska law "limit[s] recovery without proof of damages to cases of intentional invasion, where the trespass action may serve an important purpose in determining and vindicating the right to exclusive possession of the property."[48] In Wernberg v. Matanuska Electric Association, the Alaska Supreme Court held that where a

_____

[46]    Docket 34 at 9.

[47]    See Docket 102 at 11-12; Docket 74, Ex. 3 at 15.

[48]    Wernberg v. Matanuska Elec. Ass'n, 494 P.2d 790, 793 (Alaska 1972) (citing W. Prosser, Law of Torts §§ 66-67 (4th ed. 1971)).

ORDER RE DOCKET 74 - 10
4:04-CV-0026-RRB

jury found that a trespass caused no actual damages and was non-deliberate, the court was not required to award any damages.[49]

The issue of intent, discussed _supra_ in Section IV.A.1, is also relevant in determining the permissibility of an award in excess of nominal damages.  Restatement (Second) of Torts, § 163, recently cited by the Alaska Supreme Court,[50] states:

> One who _intentionally_ enters land in the possession of another _is subject to liability_ to the possessor for a trespass, _although his presence on the land causes no harm_ to the land, its possessor, or to any thing or person in whose security the possessor has a legally protected interest.[51]

Comment e of the same section reads:

> The fact that the actor _knows that his entry is without the consent_ of the possessor and without any other privilege to do so, while not necessary to make him liable, may affect the amount of damages recoverable against him by showing such a complete disregard of the possessor's legally protected interest in the exclusive possession of his land as to _justify the imposition of punitive in addition to nominal damages for even a harmless trespass,_

---

[49]    _Id._

[50]    _See_ _St. Paul Church, Inc. v. Bd. of Trs. of the Alaska Missionary Conference of the United Methodist Church, Inc._, __ P.3d __, 2006 Alas. LEXIS 156, *54 n.60; _Mapco Express, Inc. v. Faulk_, 24 P.3d 531, 539 n.23 (Alaska 2001)).

[51]    Restatement (Second) of Torts, § 163 (emphasis added).

or in addition to compensatory damages for one
which is harmful.[52]

Viewing the evidence in a light most favorable to the
Plaintiffs, the Court concludes that a trier of fact could
potentially find that the Cruz Defendants intentionally entered
Plaintiffs' land knowing that the entry was without Plaintiffs'
consent. Therefore, the Court will not foreclose a damage award in
excess of nominal damages, notwithstanding the possibility that a
jury might simultaneously conclude that the property sustained no
physical damage.

Cruz Defendants' Motion for Partial Summary Judgment on
the issue of nominal damages is **DENIED**. Plaintiffs' Cross Motion
for Partial Summary Judgment on the issue of intentionality of
trespass is likewise **DENIED**.

B.    **Civil Rights Violations**

Plaintiffs allege that the Cruz Defendants "enlist[ed]
the troopers to aid and abet their trespass to the effect of
depriving the Kubanyis of their property"[53] and seek relief under

---

[52]    Id., Cmt. e (emphasis added). See generally Docket 86 at
37-40 (Plaintiffs' assertion of entitlement to damages).

[53]    Docket 86 at 45-46. The Court notes that Plaintiffs' §
1983 claim against Cruz Defendants does not include an allegation
of excessive force. See Docket 86 at 41.

42 U.S.C. § 1983.[54]  Cruz Defendants move for summary judgment on Plaintiffs' claims under 42 U.S.C. § 1983 on the grounds that they were not "willful participants" in any joint action with the State or its agents and did no act under the color of state law.[55]

A plaintiff alleging a cause of action under 42 U.S.C. § 1983 "must demonstrate a deprivation of a right secured by the Constitution or laws of the United States, and that the defendant acted under color of state law."[56]  "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights."[57]

A § 1983 claim can also lie against a private party "if, though only if, there is such a close nexus between the State and the challenged action that seemingly private behavior may fairly be

---

[54]    Docket 34 at 10.  42 U.S.C. § 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

[55]    Docket 74 at 14; Docket 102 at 14.

[56]    Kirtley v. Rainey, 326 F.3d 1088, 1092 (9th Cir. 2003) (citing West v. Adams, 487 U.S. 42, 48 (1988)).

[57]    Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).

treated as that of the State itself."[58]  For example, when a private party is a "willful participant in joint action with the State or its agents",[59] exercises some control over a state official's actions,[60] or "deliberately cloak[s] [him- or herself] with the authority of the state"[61] the private party may be held to have acted under color of state law.[62]  A private party may be liable under § 1983 even if the public official is sheltered under the doctrine of qualified immunity.[63]

The evidence demonstrates that Cruz Defendants' actions on March 1, 2003 were limited to the following: (1) Mr. Cruz called the Alaska State Troopers after receiving a report from one of his workers that an intoxicated Don Kubanyi had threatened to shoot

---

[58]  Single Moms, Inc. v. Montana Power Co., 331 F.3d 743, 747 (9th Cir. 2003) (citation omitted).

[59]  Kirtley, 326 F.3d at 1092 (quoting Dennis v. Sparks, 449 U.S. 24, 27 (1980)).

[60]  King v. Massarweh, 782 F.2d 825, 829-30 (9th Cir. 1986) (citing Arnold v. IBM, 637 F.2d 1350, 1356 (9th Cir. 1981)).

[61]  Howerton v. Gabica, 708 F.2d 380, 384-85 (9th Cir. 1983).

[62]  But see id. at 385 ("A single request for the police to perform their peace-keeping functions may not be sufficient to make a [private party] a 'joint actor' with the state for section 1983 purposes.").

[63]  See Dennis v. Sparks, 449 U.S. 24, 26-27 (1980) ("there was no good reason in law, logic, or policy for conferring immunity on private persons who persuaded the immune judge to exercise his jurisdiction corruptly.").

them;[64] (2) The Cruz workers gave their account to the Troopers of

Mr. Kubanyi's threats made while intoxicated;[65] (3) When Troopers

Jake Covey and Patrick Nelson arrived, Mr. Cruz escorted them to

the site;[66] (4) Mr. Cruz and his employees claimed that they had a

right to be present on the Native allotment;[67] (5) When Don Kubanyi

approached, Cruz Defendants identified him as the man who

threatened to discharge his weapon;[68] (6) The Crew workers "took

cover" near their vehicles during the altercation and arrest;[69] (7)

---

[64] Docket 74 at 4-5, 15 & Ex. 4 at 7. The Court acknowledges that a dispute exists over whether Don Kubanyi threatened to shoot the Cruz workers or just the tires of their vehicles. See id. at 5 n.1; Docket 86 at 45-46. According to Dave Cruz, his site inspector reported in a phone conversation that Kubanyi was "very upset and said Don had threatened to kill them. He was going to get his gun and kill them and that they were fearing for their life . . . ." Docket 74, Ex. 4 at 7. Kubanyi acknowledged in his deposition, that he threatened to shoot out the tires on the crew members' vehicles and intended his threats to scare the crew members, but denied that he threatened to shoot them. Id., Ex. 3 at 11. The Court finds this distinction immaterial, however, and observes that the parties agree that Mr. Kubanyi was intoxicated and threatened to discharge a firearm. See Docket 74, Ex. 3 at 11-12, Ex. 4 at 7, Ex. 7 at 3. This was sufficient to create apprehension in Mr. Cruz to call the State Troopers and tell them just what his workers had told him. See Docket 102, Ex. 4 at 4.

[65] Docket 74 at 15.

[66] Id. at 4; Docket 86 at 45.

[67] Docket 86 at 46. The Court notes Plaintiffs' allegation that Cruz Defendants made this claim falsely. See Docket 86 at 45-46. This allegation, however, goes to the issue of intent, discussed in Section IV.A.1, supra, and is not relevant to the Court's reasoning in adjudicating Plaintiffs' § 1983 claim.

[68] Docket 74 at 5 & Ex. 7; Docket 86 at 46.

[69] Docket 74 at 5-6 & Ex. 4 at 33; Docket 102 at 16 & Ex. 11 at 22-35.

After the incident with the Alaska State Troopers, the Cruz Construction workers continued the water pumping operation, including the crossing of the Kubanyi allotment.[70]  Moreover, the Troopers testified that the Cruz Defendants did not dictate or control their response in any way.[71]

    In cases such as this, the Ninth Circuit has declined to allow a § 1983 action against a private party.  In <u>King v. Massarweh</u>, the Ninth Circuit held that a landlord who called the police to complain of criminal trespass by tenants was not the proximate cause of the apartment search and arrest of a tenant where the landlord exercised no control over the police decision to make the search or the arrest.[72]

    The Court in <u>King</u> followed its prior decision in <u>Arnold v. IBM</u>, where, in response to the plaintiff's § 1983 claim against IBM for involvement in a state investigation that led to a search of the plaintiff's residence, his arrest, and indictment, the Court held that "although the state action would not have occurred 'but for' IBM's involvement, absent some showing that IBM had control over the task force in its decision to search the plaintiff's residence, arrest, or indict him, IBM did not proximately cause

---

[70]    Docket 34, ¶ 38.

[71]    Docket 74 at 15-16 & Ex. 8 at 65.

[72]    <u>King v. Massarweh</u>, 782 F.2d 825, 828-29 (9th Cir. 1986).

Arnold's injuries."[73]  In comparing Massarweh's conduct with IBM's, the Court in King noted that Massarweh, also a landlord, was not sufficiently connected with state action to have caused the state actions within the meaning of § 1983 because Massarweh's "involvement with the police is even more attenuated [than IBM's]."[74]  While the Troopers in the present case would not have visited the Kubanyi allotment on March 1, 2003 "but for" Mr. Cruz's summons, this is not enough to find that Cruz Defendants acted under color of law.

In King, the Court also distinguished an earlier, contrary precedent.  In Howerton v. Gabica, the Court had held that landlords who repeatedly requested and obtained aid from police to evict non-rent-paying tenants acted under color of state law because the landlords "deliberately cloaked themselves with the authority of the state in effecting repossession of the trailer premises."[75]  However, the Court indicated that "[a] single request for the police to perform their peace-keeping functions may not be sufficient to make a landlord a 'joint actor' with the state for section 1983 purposes."[76]

---

[73]    Arnold v. IBM, 637 F.2d 1350, 1356 (9th Cir. 1981).

[74]    King, 782 F.2d at 829.

[75]    Howerton v. Gabica, 708 F.2d 380, 384-85 (9th Cir. 1983).

[76]    Id. at 385.

In the present case, Plaintiffs have presented no evidence to suggest that Cruz Defendants "deliberately cloaked themselves" with state authority as the landlords in Howerton did.[77] Rather, Mr. Cruz made a single request to for State Trooper assistance to investigate a threat of violence. The Troopers visited the scene for the sole purpose of performing their peace-keeping functions. Cruz Defendants's actions are far more attenuated than those of the landlords in Howerton and are insufficient to find a private party liable under § 1983.[78]

The Court concludes that regardless of whether Cruz Defendants violated Plaintiffs' property rights by trespass, as a matter of law, Cruz Defendants did not act under color of state law. Accordingly, Cruz Defendants' Motion for Summary Judgment on Plaintiffs' § 1983 claims is **GRANTED** and Plaintiffs' Cross Motion for Summary Judgment is **DENIED**.

## C.    Plaintiffs' Cross Motion

Plaintiffs' Cross Motion for Partial Summary Judgment seeks a determination that Cruz Defendants are liable for trespass during the spring of 2002 and 2003,[79] and that Cruz's 2002 and/or

---

[77]    Id.

[78]    Accord Arnold, 637 F.2d at 1356; King, 782 F.2d at 829.

[79]    Docket 88, ¶ 2.

2003 trespasses were intentional or grossly negligent.[80]
Plaintiffs' Cross Motion also seeks a determination that Cruz is
liable under § 1983 for deprivation of property rights.[81]

As discussed in Sections IV.A, IV.B., supra, Plaintiffs'
Cross Motion for Partial Summary Judgment regarding intentionality
of trespass and Cruz Defendants' § 1983 liability is denied.

Finally, the Court concludes that the question of whether
a trespass in fact occurred is replete with factual issues which
the Court will not attempt to resolve. Notably, two professional
surveyors, Eric Stahlke and Patrick Kalen, reach differing
conclusions in their professional reports on the relative locations
of the Rex Trail easement and the boundary of Seven Mile Lake at
various points in time.[82] The respective credibility and
conclusions of these professionals and their surveys, and any
inferences drawn therefrom, are issues for the trier of fact.
Plaintiffs' Cross Motion for Partial Summary Judgment is therefore
**DENIED** in full with respect to Cruz Defendants.

---

[80]    Id., ¶ 3.

[81]    Id., ¶ 7.

[82]    See Docket 123; Docket 86, Ex. 2.

**V.    CONCLUSION**

For the aforesaid reasons, Cruz Construction's Motion for Summary Judgment (Docket 74) is hereby **GRANTED** as to Plaintiffs' claims under 42 U.S.C. § 1983, but **DENIED** on all other counts. Plaintiffs' Cross Motion for Summary Judgment (Docket 88) is **DENIED** in full with respect to the Cruz Defendants.  This matter shall proceed forward in due course.

ENTERED this 15th day of November, 2006.

S/RALPH R. BEISTLINE
UNITED STATES DISTRICT JUDGE