Michael J. Walleri
Law Offices of Michael J. Walleri
330 Wendell Street, Suite E
Fairbanks, Alaska 99701
(907) 452-4716
(907) 452-4725 (Facsimile)
Attorney for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

DON M. KUBANYI, JIMMY KUBANYI,
AILEEN WELTON, ELIZABETH
TUZROYLUK, DORIS KUBANYI,
VICTOR KUBANYI, BOBBY KUBANYI,
ARLETTE KUBANYI, and BRIAN
BAGGETT,

           Plaintiff(s),

vs.

GOLDEN VALLEY ELECTRIC
ASSOCIATION, DAVE CRUZ, individually
and d/b/a/ CRUZ CONSTRUCTION,
BLACK & VECH CORPORATION, JAKE
COVEY AND PATRICK NELSON,
           Defendants.

**MEMORANDUM IN
OPPOSITION TO GVEA
MOTION IN LIMINE
REGARDING WIDTH AND
SCOPE OF EASEMENT**

Case No. 4:04-cv-0026- RRB

Golden Valley Electric Association (GVEA)[1] filed a motion in limine

respecting the width and scope of the Rex Trail right of way (ROW) across the

Kubanyi allotment pursuant to RS 2477. The GVEA motion assumes the existence of

Michael J. Walleri
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

---

[1] Cruz joined with the GVEA motion.

the right of way, and does not seek to determine the location of the right of way. The

Kubanyi's oppose GVEA's motion, and have filed a cross motion for partial

summary judgment challenging the existence of the RS 2477, and, in the alternative,

if the RS 2477 exists, clarification of location, width and scope of the trail right of

way.  The cross motion is supported by a separate memorandum.

## I.    THE FACTS & EVIDENCE

On December 9, 1992, the heirs of Nora Kubanyi (i.e. the plaintiff's in this action,

collectively referred to as "Kubanyi's") received title to the Native allotment which

describes the land conveyed as including all the land included within U.S. Survey

9954, and subject to "the continued right of public access along the non-exclusive

use Rex to Bonnifield Trail…"[2] The BLM apparently issued two Native Allotment

Certificates.  The first, which was recorded with the State Recorders office, provides

that the right of public access is "not to exceed 25 feet in width".[3]  The second, which

was not recorded, provides that the right of public access is "not to exceed 50 feet in

width."[4]

---

[2] Plt. Ex. 1 & 2 (Native Allotment Certificates)
[3] Plt. Ex. 1 (Native Allotment Certificate) The Certificate is dated December 9, 1992, and was recorded on December 23, 1992 in the Nenana Recording District, Book 49, page 694.
[4] Plt. Ex. 2

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

The history of the land title is set forth in the BLM adjudication decision. Nora Kubanyi commenced use and occupancy of the allotment on August 18, 1963.[5] The lands were selected by the State of Alaska on November 27, 1961.[6] On November 22, 1971, the BIA filed a Native Allotment Application on behalf of Nora Kubanyi.[7] A field examination was conducted by the BLM on April 1, 1977.[8] On June 1, 1981, the State of Alaska protested the Kubanyi allotment application, claiming that portions of the allotment were "necessary for access to lands owned by the United States and the State of Alaska, …."[9] As a result of the State protest, the allotment was "not legislatively approved" but required adjudication to resolve the State protest.[10] It is important to note, that the State protest of the Allotment was <u>not</u> based upon a claim of priority in selection.[11] Rather, the state protest sought to preserve it claim to public access across the allotment; i.e. the Rex Trail.

---

[5] Plt. Ex. 3 (BLM Decision September 21, 1992) , p 1  James Kubanyi verified that the family started to go out to Seven Mile Lake in August of 1963.  See Plt. Ex. 6 (James Kubanyi Depo) 28: 19-20

[6] Id. at 2

[7] Id. , at 1

[8] Id. at 2

[9] Id. at 1

[10] Id. Under the terms of ANILCA, Alaska Native allotments were legislatively approved unless a protest was filed  See 43 USC 1643

[11]. As the adjudication decision notes, the State may only select vacant and unappropriated lands under the Alaska Statehood Act, and since Nora Kubanyi's use and occupancy preceded the state selection, the land was ineligible for state land selection. See Id., at 3, at 3 This is consistent with the

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

In the adjudication process, the BLM found that the claim to public use of the

Rex Trail began in 1952, which was prior to Nora Kubanyi's use and occupancy.[12]

As a result, the BLM determined that Nora Kubanyi's use and occupancy of that

portion of the allotment containing the Rex Trail was not "exclusive of others", and,

hence, the allotment was approved "subject to the trail".[13]   Of course, this means

that the BLM found that the remaining portion of the allotment, not covered by the

trail, was used exclusively by Nora Kubanyi.   The BLM initially determined that the

portion of the allotment for which the public use of the trail was "non-exclusive" use

of Ms. Kubanyi was "not to exceed 25 feet in width."[14]  No appeal was taken from

this September 21, 1992 decision, which would mean that the decision became final.


On October 13, 1992, the State of Alaska submitted a letter to the BLM with an

affidavit[15] from Dave Pott, identified as a Gold King Homestead resident, regarding

---

general principle that the Native applicant would have a preference right to obtain the land over
other applicants who file to receive the land while the Native still occupies the land in question. See
CASE, ALASKA NATIVES AND AMERICAN LAWS, at 111 (2nd Ed., 2002)

[12] Id., at 2

[13] Id. at 3

[14] Id. at 3

[15] In fact, the state did not submit an affidavit. Rather it submitted an unattested written statement.
GVEA submits the same statement to the Court, together with another unattested written statement
from a Mr. Miller.  Neither of these statements are cognizable evidence, and may not be considered
by the Court in determining the merits of the facts asserted in the statements.

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

the Rex Trail.[16] In the letter, the State DNR requested that the BLM "place a 50 foot

easement on the Rex Trail where it crosses the subject native allotment."

Interestingly, Mr. Pott requested that the State seek to assert a 100-foot easement.[17]

From the State's letter, it is clear, however, that the State only asserted a 50-foot

easement for the Rex Trail.

As a result of this letter, on October 23, 1992, BLM issued a Decision that

modified in part its September 21st decision.[18]  The BLM decision specifically dealt

with the Rex trail.  While the BLM did not adjudicate whether an RS 2477 actually

crossed the Kubanyi allotment[19] it modified its decision to provide that the right of

public access across the Kubani allotment is "not to exceed 50 feet in width" and

noted that the heirs acknowledged the width of the trail to be 50 feet.   The effect of

this was not to create an easement, but to merely recognize the existence of the

claim, and to limit the claimed RS 2477 to reflect the width asserted by the State.   In

---

[16] Plt. Ex 4
[17] Id, at 3
[18] Plt. Ex. 5 (BLM Decisoin of October 23, 1992)   The procedure used here was somewhat odd, in that the State did not formally file an appeal, nor did the state file a request for reconsideration.  However, it should be noted that the letter was filed before the time for appeal had run, and was more in the nature of an informal request to reconsider.  Notably, the Kubanyi's did not object to the informality of the process, nor the modification of the certificate.
[19] The BLM does not have the power to adjudicate an RS 2477.  See *Southern Utah Wilderness Alliance, v BLM, 425 F.3d 735 (10th Cir. 2005)*

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

essence, the BLM decision acknowledged that the State was only asserting a fifty-foot easement across the allotment.

As previously noted, during spring of 2002 and 2003, Cruz Construction accessed water from Seven Mile Lake to construct an ice road upon portions of the Rex Trail (including that portion of the Rex Trail that crosses the Kubanyi allotment) and portions of the GVEA intertie ROW.  To accomplish this, Cruz ran its trucks over a 43.7-foot portion of the Kubanyi allotment outside the established fifty-foot easement.[20]  Additionally, Cruz undertook construction of an ice road along the Rex Trail to facilitate access to the intertie, and used the right of way as a staging area for equipment used in these efforts.[21]   The Kubanyi's brought this action alleging that the Defendants[22] trespassed upon the Kubanyi allotment in the process of extracting water from Seven Mile Lake in furtherance of their construction of an electrical intertie to the east of the Kubanyi allotment.

GVEA motion is premised upon a claim that the Rex Trail is an RS 2477 easement 100 foot in width, and allows GVEA the right to construct an ice road on

---

[20] See Plt. Motion for Partial Summary Judgment (Docket 86)
[21] Id.
[22] Golden Valley Electric Ass'n, Cruz, and Black and Veatch

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

the allotment, and otherwise use the right of way as a staging area to support its

water extraction and ice road construction activities.

## II.    THE STANDARDS FOR SUMMARY JUDGMENT

GVEA incorrectly stylized its motion as a motion in limine.  Technically, a

motion in limine is a challenge to the admissibility of evidence. *United States v. Lui*,

941 F.2d 844, 846 (9th Cir. 1991).   A motion for summary judgment is a motion

intended to be dispositive as to factual or legal issues in the case.  FRCP  56.  Where

a party files a motion in limine that substantively seeks summary judgment, the

Court should apply summary judgment standards. *Colan v. Mesa Petroleum Co., 951*

*F.2d 1512 (9th Cir. 1991)* Neither GVEA nor Cruz seek to preclude the admission of

evidence. Rather they seek a ruling of law that the RS 2477 easement at issue is 100

feet in width, and that Cruz's activities constructing an ice road on that portion of

the trail that crossed the Kubanyi allotment was within the scope of permissible

uses.   These questions are clearly go beyond to the admission of evidence, and, in

actuality, seek summary judgment on the width and scope of the easement.

Therefore, GVEA's motion is more properly considered a motion seeking partial

summary judgment and the Court should apply those standards to the

consideration of these motions. The Kubanyi's cross motion, on the other hand,

Michael J. Walleri
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

*Kubanyi v. GVEA* Case No. F04-0026                                                    7 of 27
Memo:Def. Mot. On Easement & Plt. Cross Motion

seeks partial summary judgment on the existence, width, scope and location of the RS 2477 ROW.  Hence, the standards of summary judgment should be applied to the cross motion.

Ultimately, summary judgment is appropriate if the Court finds that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits… show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[23] However, the relative burdens of production and persuasion of the moving and non-moving parties is critical in determining whether there is a material fact in dispute.

If the moving party bears the burden of persuasion on the issue at trial, its showing must "entitle it to a directed verdict if the evidence went uncontroverted at trial." *Houghton v. South, 965 F.2d 1532, 1536 (9th Cir. 1992)*[24] "The judge's inquiry, therefore, unavoidably asks . . . whether there is evidence upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed."  Id.

---

[23] *See* FRCP 56(c)

[24] Citing Celotex Corp. v. Catrett, 477 U.S. 317, 331 (1986) (Brennan, J., dissenting) ("If the moving party will bear the burden of persuasion at trial, that party must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial."); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

In this case GVEA et. al. has the burden of proof at trial to establish the existence, location, width and scope of any RS 2477 ROW alleged to cross the Kubanyi allotment.  GVEA and Cruz claim a right of use under RS 2477 as a member of the public.   However, GVEA and Cruz is not the "owner" of the ROW.  GVEA and Cruz have no possessory interest in the ROW, if it exists.    Nonetheless, the clear rule is that claimants  of rights under RS 2477 have the burden of proof to establish the right of way, including its scope and width.[25]   Thus, there is a presumption **against** GVEA and Cruz claim as to existence, location, width and scope, of any claimed ROW.  GVEA et. al. must present cognizable evidence that would be sufficient to establish their claim as to the existence, location, width and scope of the RS 2477.

GVEA and Cruz are also challenging the Kubanyi's title in a Native allotment. As previously noted, a non-Native entity seeking to challenge Native title has the burden of proof as a matter of federal statutory law.[26]   Thus, two separate legal principles clearly impose the burden of proof as to the existence, location, width and scope of the RS 2477 upon GVEA and Cruz.

---

[25]*Adams v. United States, 3 F.3d 1254, 1257 (9th Cir. 1993); See also United States v. Garfield County, 122 F. Supp. 2d 1201, 1225 (D. Utah 2000); Fitzgerald v. United States, 932 F. Supp. 1195, 1201 (D. Ariz. 1996) Humboldt County v. United States, 684 F.2d 1276, 1280 (9th Cir. 1982)*
[26] 25 USC 194

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

*Kubanyi v. GVEA* Case No. F04-0026
Memo:Def. Mot. On Easement & Plt. Cross Motion

As previously noted, a moving party who also bears the burden of persuasion on the issue at trial, must show through affirmative evidence that he is entitled to a directed verdict if the evidence went uncontroverted at trial."[27]  There is no question that GVEA et. al. have the burden of persuasion as to the existence, location, width and scope of the RS 2477 at trial. Consequently, GVEA and Cruz must support their motion for summary judgment with the production of cognizable evidence that would entitle them to a verdict if the Kubanyi's offer no evidence at all.   If GVEA and Cruz fail to carry their initial burden of production, the Kubanyi's have no obligation to produce anything in order to defeat the GVEA and Cruz's motion for summary judgment.[28]   In this case, however, the Kubanyi's are capable of also showing the existence of cognizable evidence raising an issue of material fact as to the existence, location, width and scope of the RS 2477 ROW.  The Court should simply deny the motion.

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

[27]  *Houghton v. South, 965 F.2d 1532, 1536 (9th Cir. 1992)*
[28] *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160, 26 L. Ed. 2d 142, 90 S. Ct. 1598 (1970)*; Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 607 (11th Cir. 1991).

### III.     RS 2477 &  PROOF OF CLAIM.

The parties generally agree that the claim to an easement across the Kubanyi allotment arises under a federal statute passed in 1866, commonly called "R.S. 2477"[29] The statute provides, "The right of way for the construction of highways over public lands, not reserved for public uses, is hereby granted." In 1976, the statute was repealed by the Federal Land Policy Management Act of 1976 (FLPMA).[30] However, FLPMA contained a savings clause, which preserves all R.S. 2477 rights of way in existence on the date of FLPMA's enactment.[31]

It is critical to an understanding of RS 2477 to observe that the statute only provides rights of way across public land.[32]  As explained by the Alaska Supreme Court,

> The term 'public lands' means lands which are open to settlement or other disposition under the land laws of the United States. It does not encompass lands in which the rights of the public have passed and which have become subject to individual rights of a settler. When a citizen has made a valid entry under the homestead laws, the portion covered by the entry is then segregated from the public domain. It has been appropriated to the use of the entryman, and until such time as the entry may be cancelled by the government or relinquished, the land is not included in grants made by

---

[29] Act of July 26, 1866, ch. 262, §  8, 14 Stat. 251, 253, *codified at* 43 U.S.C. §  932,

[30] Pub.L. No. 94-579 §  706(a), 90 Stat. 2743.

[31] 43 USC 1769

[32] *Hamerly v. Denton,* 359 P.2d 121 (Alaska 1961).

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

Congress under 43 U.S.C.A. § 932. Consequently, a highway cannot be established under the statute during the time that the land is the subject of a valid and existing homestead claim.[33]

As noted above, the Rex trail was established in 1952, which was prior to Nora Kubanyi's entry upon the land in 1963. In the case of Native allotments, a valid entry sufficient to segregate the land from the public domain occurs upon the commencement of the Native claimants use and occupation.[34]  Therefore, the lands within the Kubanyi allotment ceased to be public lands on August 18, 1963, meaning that any rights under R.S. 2477 had to arise prior to that date.

As the Alaska Supreme Court has explained,

The operation of § 932 [R.S. 2477] is not obvious from its terms. Case law has made it clear that § 932 is one-half of a grant -- an offer to dedicate. In order to complete the grant "there must be either some positive act on the part of the appropriate public authorities of the state, clearly manifesting an intention to accept a grant, or there must be public user for such a period of

---

[33] Id. at 123; See also *Dillingham Commercial Company, Inc. v. City Of Dillingham, 705 P.2d 410, 414 (Alaska 1985)*

[34] *Alaska v. 13.90 Acres of Land,  625 F. Supp. 1315, 1319 (9th Cir., 1985).*  As this Court explained,

It is true that completion of five years use and occupancy does not vest a preference right in the native occupant. The use and occupancy creates an inchoate preference right. This inchoate preference right only becomes vested upon the filing of a timely application. *See, e.g., Golden Valley Electric Ass'n*, 85 IBLA 363, 364 (1985); *United States v. Flynn*, 53 IBLA 208, 234 (1981). Once vested, the preference relates back to the initiation of occupancy and takes preference over competing applications filed prior to the native allotment application. *Aguilar v. United States*, 474 F. Supp. 840 (D. Alaska 1979); *Flynn*, 53 IBLA at 235. *See also Village and City Council of Aleknagik*, 77 IBLA 130, 135 (1983) (holding implicitly that application relates back).

Michael J. Walleri
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

time and under such conditions as to prove that the grant has been accepted."[35]

In other words, in this case, either 1) the state needed to accept the grant through some positive act, or 2) there must have been a public user for sufficient time and conditions to prove the grant has been accepted by the public.

The question of whether a public right of way has been acquired must be determined by the conditions as they existed when action was taken to acquire the right of way.[36]  Those conditions must be measured against state law standards --- in effect at the time[37] --- respecting the acquisition of public rights of way through prescriptive easements.[38]  In this case, Alaska law in effect at the time would require ten (10) years of continuous and uninterrupted public use with proof of a distinct and positive assertion of a right hostile to the owner of the property.[39]  Notably, sporadic infrequent or occasional use is not sufficient to establish a valid RS 2477

---

[35] *Dillingham Commercial Company, Inc. v. City Of Dillingham, 705 P.2d at, 414*

[36] *Hamerly v. Denton,* 359 P.2d, at 124

[37] GVEA argues that state statutes enacted in 1998  should be considered by the Court in determining whether the RS 2477 exists. That may be the case in determining the existence of RS 2477 claim across federal lands that may arise now or in the future.   However, the lands at issue in the present case passed out of public (i.e. federal ownership) in 1963.  *Hamerly v. Denton, supra.*  Hence, any right that may exist was created under the laws of Alaska in effect at that time.  The statutes enacted by the State legislature in 1998 have no application to whether an RS 2477 was created prior to 1963.

[38]Id., *See also Southern Utah Wilderness Alliance, v BLM, 425 F.3d 735 (10th Cir. 2005)*

[39] *Hamerly v. Denton,* 359 P.2d, at 126

Michael J. Walleri
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

easement.[40] Hence, mere use by "sightseers, hunters and trappers" is insufficient, and the road must be "either necessary or convenient for the accommodation of the public. Where there is a dead end road or trail, running into wild, unenclosed and uncultivated country, the <u>desultory use ... does not create a public highway</u>" sufficient to establish an RS 2477 claim.[41](emphasis added)

Once an RS 2477 ROW is established, it is necessary to determine the location, width and scope of permitted uses.    This is particularly important where a party seeks to improve the ROW with new construction.  The Courts have held that

> Where evidence establishes dedication of a roadway, the width of the roadway is not to be measured by the court by the boundaries of the beaten track but it is necessary and proper for the court in defining the road to determine its width and fix it according to what is reasonable and necessary under all the facts and circumstances for the uses which were made of the road[42]

 In other words, the width is determined by the pattern of prior use, which in this case, means use prior to 1963. Similarly, the location must be determined with reference to the *termni* of the road as it was used when the RS 2477 claim attached.[43]

---

[40] Id.

[41] Id.

[42] *Jeremy v Bertagnole, 101 Utah 1; 116 P.2d 420; (1941)*

[43] *Dillingham Commercial Company, Inc. v. City Of Dillingham, 705 P.2d at, 414*

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

Finally, the scope of permitted uses of the ROW is limited to 'any purpose consistent with public travel." The ROW does not permit uses unrelated to travel, such as the encampments, staging areas, etc.

Permitted uses become of particular concern respecting maintenance and improvements of the road come into play. The relationship between the ROW owner and the underlying landowner is one of a dominant and subservient land interests.[44] Generally, the owners of the dominant and subservient estates must exercise [their] rights so as not unreasonably to interfere with the other.[45] The scope of permitted uses clearly allows maintenance of the highway by the public governmental body accepting the ROW.[46] However, any road construction, beyond "maintenance," requires advance notification to the owner of the underlying subservient and mutual accommodation between the owner of the ROW and the owner of the underlying land.[47] "Where rights-of-way and easements are concerned, one party cannot serve as the

---

[44] *Southern Utah Wilderness Alliance, v BLM, 425 F.3d 735, 747 (10th Cir. 2005)*
[45] Id. citing *Hodel*. In *United States v. Garfield County*, 122 F. Supp. 2d 1201, 1246 (D. Utah 2000).
[46] *Id, at 747*
[47] Id.

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

sole judge of scope and extent, or as the sole arbiter of what is 'reasonable and necessary.'"[48]

Ordinarily no material changes can be made by either party without the other's consent.[49]

In summary, in determining GVEA's RS 2477 claim, the existence, location, scope and width of the easement are determined by the public's continuous and uninterrupted use of the land for ten years prior to August 18, 1963.   It is theoretically possible that an RS 2477 route across the Kubanyi allotment may have been established between 1952 and the eleven years prior to Ms. Kubanyi's entry upon the land.   However, "This fact will not be presumed against the owner of the land; *the burden rests on the party relying on a dedication to establish it by proof that is clear and unequivocal.*"[50] (emphasis in original).

## IV.    GVEA & CRUZ INCORRECTLY ASSUME THE EXISTENCE OF THE RS 2477.

As a preliminary point, GVEA assumes without comment, and Cruz expressly assumes the existence of the RS 2477 ROW.  The assumption is unwarranted.  The Kubanyi's prior motions also expressly presumed *arguendo*, that

---

[48] Id.

[49] Id.

[50] *Hamerly v. Denton,* 359 P.2d, at 125; quoted with emphasis at *Dillingham Commercial Company, Inc. v. City Of Dillingham, 705 P.2d at, 416*

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

the RS 2477 ROW existed because the Certificate of Allotment reserves the right of

public access is "not to exceed 50 feet in width" [51] and it is clear that Cruz clearly

strayed from that 50 foot width. That reservation, however, does not actually

determine whether an RS 2477 actually exists. It merely reserves from the grant,

subject to the claim asserted by the state that a 50 foot RS 2477 ROW exists.


As the Tenth Circuit has ably noted, the BLM, the agency that issued the

Certificate of Native Allotment, does not have the right to actually adjudicate the

existence of the RS 2477.[52] Thus, BLM conveyed to the Kubanyi's the land, subject

to the State's assertion of right to a prior existing claim of the RS 2477, which the

State claimed to be 50 feet wide. The State's assertion of right, however, does not

create the easement. Rather, it merely asserts the claim. GVEA and Cruz would

have this court merely assume the existence of the ROW, which is otherwise

unsupported by any cognizable evidence. GVEA and Cruz have simply failed to

present any cognizable evidence that would support the establishment of the RS

2477 easement, and have therefore failed to satisfy their initial burden of production

necessary to support their motion for summary judgment.

---

[51] Plt. Ex. 1 and 2
[52] *Southern Utah Wilderness Alliance, v BLM, 425 F.3d 73, 749-759 (10th Cir. 2005)*

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

In support of their claim as to the existence of the RS 2477, GVEA et. al. merely present evidence that the State of Alaska claims the Rex Trail as an RS 2477.[53]  They also point to a State of Alaska website that discusses the State's RS 2477 program, but the website offers no "evidence" as to the existence of a Rex Trail easement across the Kubanyi allotment.  Additionally, GVEA presents two unsworn written statements purporting to date from 1985 (Evan Miller)[54] and 1992 (David Pott) This evidence is not cognizable in support of a summary judgment motion.[55]  Moreover, the "evidence" does not support sufficient use of the trail as a "public highway" prior to 1963.  The Pott statement only asserts use since 1983, which is irrelevant to the RS 2477 claim, because the land was segretated from public use in 1963, the date of the Kubanyi use and occupation commenced.  The Miller statement claims that the trail was in use in 1908 and states that he ran a "cat train" over it in 1947.   The statement is clearly hearsay, and more likely conjecture.   It is also inconsistent with the BLM findings that the trail was actually established in 1952.   However, the combined statements actually reference only occasional and sporadic use by gold prospectors prior to 1963.   As the Alaska Supreme Court has noted, such use is

---

[53] See A.S. 19.30.400 The Defendants merely cite a state statute that makes a general **claim** as to the existence of an RS 2477 claim to the Rex trail.
[54] GVEA Ex. D
[55] See FRCP 56

Michael J. Walleri
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

insufficient to establish an RS 2477.[56]  Thus, GVEA et. al. failed to produce any

evidence as to the existence of the Rex trail  as a RS 2477prior to 1963.


   Equally important is that GVEA et. al. failed to offer any evidence that the RS

2477 actually extended to connect the Rex trail to access Seven Mile Lake.   Indeed,

the Kubanyi's are able to offer affirmative evidence that the trail has never been

used to access Seven Mile Lake by the general public.[57]

As the Alaska Supreme court noted, the existence of an RS 2477 is supported by

evidence of the two termini of the proposed route.[58] In otherwords, in order to

establish an RS 2477 access route to Seven Mile Lake, GVEA and Cruz would be

required to show some cognizable evidence that Seven Mile Lake was in fact a

terminal for historic public access prior to 1963.  Thus, all the evidence suggests that

the Rex Trail has never been used by the general public to access Seven Mile Lake.

Thus, even if an RS 2477 were established in the vicinity of the Kubanyi allotment,

there is no evidence that the easement was used by the public to access Seven Mile

Lake.  Thus, even if GVEA were able to show that the Rex trail was used to traverse

---

[56] *Hamerly v. Denton, supra.*

[57] Plt. Ex. 6 (Jim Kubanyi Depo) at 27:25-28:9; Plt. Ex. 7 (Doris Kubanyi Depo.) at 43:17-25; Plt. Ex. 8 (Aileen Welton Depo.) at 23:21-24:24

[58] *Dillingham Commercial Company, Inc. v. City Of Dillingham, 705 P.2d 410, 414 (Alaska 1985)*

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

the land in question from between the western and eastern boundaries of the

allotment, there is no evidence that the trail used to access Seven Mile Lake.


Neither GVEA nor Cruz provide any such evidence, and thus fail to meet

their burden of production incumbent upon a moving party with a burden of proof

at trial on the issue respecting the existence of an RS 2477.   Moreover, the Kubanyi's

are able to demonstrate that the Rex trail has not been used by the general public to

access Seven Mile Lake.  The Court should deny the GVEA and Cruz motions for

summary judgment as to the width and scope of the RS 2477, because they have

failed to actually establish the existence of the ROW.


## V.    THE RELEVANCE OF EASEMENT WIDTH.

The Court need not address the issue of easement width.  GVEA and Cruz

seek a determination that the Rex Trail easement across the Kubanyi allotment is 100

feet wide.  In the Kubany's prior motion for summary judgment, the Kubanyi's

claim that the easement does not exceed  50 feet in width, and that Cruz and GVEA

crossed a portion of the Kubanyi allotment outside the trail easement to reach the

shore of Seven Mile Lake.  The portion of the Kubanyi allotment outside the

easement traversed by Cruz was 43.7 feet in length.  That measurement assumes

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

*arguendo* that the centerline of the trail easement is located at the current "as-built" trail centerline.  GVEA and Cruz's expert agrees with the Kubanyi's surveyor as to the location of the trail's "as-built" centerline, and the Defendants expert witness report does not offer any opinion upon the location of the lake's ordinary mean high water mark.[59]  Thus, all the cognizable evidence in the record clearly establishes that Cruz traversed the 43.7 feet distance on the Kubanyi allotment located outside the easement between the trail easement boundary (calculated at 50 feet) and the lake. Assuming *arguendo*  that GVEA and Cruz are correct that the easement is 100 feet, Cruz still trespassed because his use still went beyond the easement boundary onto the Kubanyi allotment.

The easement is measured in equal distance from the centerline.  In the case of a fifty-foot easement, the easement would extend twenty-five (25) feet in each direction from centerline.  In the case of a hundred (100) foot easement, the easement would extend fifty (50) feet in each direction from centerline.  Thus, the fifty-foot easement means that Cruz traversed 43.7 feet on Kubanyi land outside the easement. In the case of a 100-foot easement, Cruz would have traversed 18.7 feet off the right of way.  Therefore, that portion of the trespass claim respecting Cruz's traversing

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

---

[59] See Plt. Reply on Cross Motion for Partial Summary Judgment (Trespass)

Kubanyi land outside the easement is established regardless of whether the easement is fifty or one hundred feet, unless GVEA and Cruz present affirmative evidence that the centerline of the easement is located closer (by at lease 19 feet) than all evidence before the Court would indicate. GVEA and Cruz have noticeably failed to offer any such evidence. Indeed, the evidence presented by GVEA and Cruz confirm the location of the "as built" center line of the Rex Trail. Therefore, the Court need not make a determination of the width in order to rule on the Kubanyi's motion for partial summary judgment on trespass, because under either theory, Cruz activity on the Kubanyi allotment occurred outside the confines of the right of way. On the other hand, the issue may be relevant to the ultimate controversy because the Kubanyi's reserve the argument that the trail "as-built" differs from the actual legal easement boundaries. Moreover, GVEA is correct in noting that the Kubanyi's complaint is sufficient to plead that the Cruz ice road construction activity upon the Rex trail exceeds the scope of allowable use, and would be a trespass upon the allotment even if Cruz had not strayed from the right of way boundaries.

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

## VI.    GVEA's EVIDENCE IS INSUFFICIENT TO SUPPORT IT'S MOTION FOR SUMMARY JUDGMENT AS TO THE WIDTH OF THE RS 2477 RIGHT OF WAY.

GVEA and Cruz have simply failed to present any cognizable evidence that would support the width any  RS 2477 easement that may exist, and have therefore failed to satisfy their initial burden of production necessary to support their motion for summary judgment.

GVEA et. al.  offer no cognizable evidence that the easement is 100 foot in width. GVEA and Cruz point to a State of Alaska DNR website to claim that 'all RS 2477 claims are 100 feet in width.  That assertion is simply not true. The website clearly states, "Individual RS 2477 widths will likely differ" from the general assertion of 100 foot width.[60]  GVEA offers evidence that the State asserts a 100 foot easement along other portions of the Rex Trail, and argues that such actions by the State "is convincing evidence" that the Rex trail within the Kubanyi allotment is 100 foot wide.[61]  The problem with such "convincing evidence" is that the only expression from the state respecting the Kubanyi allotment is that the State asserts a fifty foot

---

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

[60] GVEA Ex. A, at 4
[61] GVEA Memo at 3.

easement across the Kubanyi allotment.[62] Simply stated, GVEA and Cruz have failed to meet their burden of production to support their claim to a 100 foot easement.

Of course, and existence of an RS 2477 is dependent upon a state's acceptance of the  ROW grant from the Federal government.[63]   Such acceptance need not amount to formal acceptance, and may be established by actions by the public or the government authority that imply acceptance of the grant from the Federal government.[64]   However,  in this case, the State has made a formal assertion of right as to the RS 2477 that does not exceed 50 feet.  The formal assertion of right limited to a 50 foot claim clearly amounts to a formal action by the State rejecting any federal grant of a ROW with a width greater than 50 feet. it may do so.

The State's action either amounts to a formal rejection of a claim in excess of 50 feet, or cognizable evidence that the ROW does not exceed 50 feet.  In either case, the Court should deny the motion for summary judgment seeking a 100 foot ROW.

---

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

[62] Plt. Ex. 4 & 5
[63] *Southern Utah Wilderness Alliance, v BLM, 425 F.3d, at 764 n 51*
[64] Id.

**VII.  GVEA's EVIDENCE IS INSUFFICIENT TO SUPPORT IT'S MOTION FOR SUMMARY JUDGMENT AS TO THE LOCATION THE RS 2477 RIGHT OF WAY.**

GVEA has also failed to offer any evidence as to the location of the trail prior to 1963.  GVEA has offered several aerial photographs.  The oldest picture submitted is Exhibit E to the Kalen report[65] clearly shows two trails: 1) an obviously older trail meandering along the southern boundary of the allotment, and 2) a obviously newer straight trail, running between the allotment's southern boundary and the tree line boarding the lake.  The 1992 Survey, confirms that this meandering trail actually meanders along the southern boundary of the allotment, entering and exiting the allotment.   It is unclear whether the straight-line road or the meandering road is the road as it existed in 1963.  Neither GVEA nor Cruz has offered any cognizable evidence to establish the location of the RS 2477 relative to Seven Mile Lake in 1963.

**VIII.  GVEA's EVIDENCE IS INSUFFICIENT TO SUPPORT IT'S MOTION FOR SUMMARY JUDGMENT AS TO THE SCOPE THE RS 2477 RIGHT OF WAY.**

Finally, GVEA offers no evidence that the scope of the easement includes the construction of an ice road, or to use the ROW for a construction staging area.  As noted above, all the evidence before the Court clearly suggests that the Rex Trail has

Michael J. Walleri
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

[65] See Kalen Report lodged by Cruz as supplemental evidence.

never been used by the general public to access Seven Mile Lake.   The only

"evidence"[66] offered by GVEA is that the Rex Trail was occasionally used once or

twice by miners to access the  Grubstake mining claims with "Cat trains."  There is

no evidence that the miners build ice roads along the Rex trail prior to 1963, or used

the ROW as a staging area for heavy equipment engaged in construction activity.

Nor is there any evidence that the ROW was used as a staging area for equipment to

draw water off Seven Mile Lake.  Again, GVEA et. al has failed to meet a minimum

burden of production in support of their motion as to the scope of the alleged RS

2477, while the Kubanyi's have provided affirmative evidence that the Trail was not

used for these or similar purposes.


IX.    CONCLUSION


In conclusion, therefore, GVEA et. al. have  the burden of persuasion on the

existence, width, scope, and location of the RS 2477 Right of Way at trial. Given such

a burden, GVEA et. al. have moved for summary judgment without meeting any of

their burden of production on any of these issues.  Moreover, the Kubanyi's have

affirmatively produced evidence that 1) they own title to the land, 2) the trail was

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

---

[66] The "evidence" is not admissible.

never used to access Seven Mile Lake by the general public; and 3) the State only

asserts a fifty foot RS 2477 right of way as to the Kubanyi allotment.  The Court

should deny the GVEA et al. motions as to width and scope of the alleged ROW.



DATED this 17th  day of November ,  2006.


MICHAEL J. WALLERI


/s/ Michael J. Walleri
Law Offices of Michael J. Walleri
330 Wendell Street, Suite E
Fairbanks, Alaska 99701
(907) 452-4716
(907) 4524725 (Facsimile)
walleri@gci.net
AK Bar No. 7906060

Certificate of Service
I hereby certify that under penalty of perjury that a true and
correct copy of the foregoing was sent to the following counsel
of record on November 17, 2006,  2006 via ECMl  and U.S. Mail to:

Mr. Venable Vermont, Jr.                    Mr. Cory Borgeson
Assistant Attorney General                  Boreson & Burns, P.C.
Department of Law                           100 Cushman Street, Suite 31
1031 W. Fourth Ave., Suite 200              Fairbanks, Alaska 99701
Anchorage, Ak  99501

Mr. Eric P. Gillett                         Mr. Daniel T. Quinn
Preg O'Donnell & Gillett, P.C.              Richmond & Quinn
1800 Ninth Ave., Suite 1500                 360 K Street, Suite 200
Seattle, WA  98101- 1340                     Anchorage, AK 99501-2038


/s/ Michael J. Walleri


Michael J. Walleri
Attorney at Law

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725