Borgeson & Burns, PC
100 Cushman Street, Suite 311
Fairbanks, AK 99701
(907) 452-1666
(907) 456-5055 – facsimile

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| Don M. Kubanyi, Jimmy Kubanyi, ) <br> Aileen Welton, Elizabeth Tuzroyluk ) <br> Doris Kubanyi, Victor Kubanyi, ) <br> Bobby Kubanyi, and Arlette Kubanyi, ) <br> ) <br> Plaintiffs, ) <br> ) <br> vs. ) <br> ) Case No. F04-0026 CIV <br> Golden Valley Electric Association and ) <br> Dave Cruz, individually and d/b/a ) <br> Cruz Construction, ) <br> ) <br> Defendants. ) <br> ) | |

### REPLY TO OPPOSITION TO MOTION IN LIMINE REGARDING WIDTH AND SCOPE OF EASEMENT

GVEA concedes that a material issue of fact exists concerning whether the Rex Trail Easement is fifty feet or one hundred feet wide. That issue, if still relevant, will be addressed by competing evidence at trial.

The fact that an RS 2477 highway easement exists across the Kubanyi Allotment, with a demonstrated history of heavy equipment activities, is beyond reasonable dispute.

The court should find that Cruz's operation of equipment and construction of an ice road on the Rex Trail, is within the allowable scope of the RS 2477 public easement through the Kubanyi Allotment.

Plaintiffs' opposition raises several additional and extraneous issues. Only in the last 3 pages of its 27 page opposition do the Plaintiffs address whether ice road construction activity and heavy equipment travel is within the scope of the Rex Trail easement. Prior to addressing the issue presented in GVEA's motion, Plaintiffs spend considerable effort briefing extraneous issues that were not raised in the main motion. Though the Plaintiffs have not filed a cross-motion seeking a court ruling on these extraneous issues, in an abundance of caution, GVEA will briefly address the additional issues raised, and would request the opportunity for supplemental briefing, if the court was inclined to address either of the following two issues:

1. **THERE IS NO DOUBT THAT THE KUBANYIS ACCEPTED AND HAVE LONG RECOGNIZED THE VALIDITY OF THE RS 2477 PUBLIC EASEMENT**

Attached as Exhibit A is the sworn testimony of Plaintiffs Elizabeth Tuzroyluk, Arlette Kubanyi, Aileen Welton, Bobby Kubanyi, and Victor Kubanyi. In 1990 all of these current Plaintiffs swore under oath the Rex Trail existed along the southern boundary of what they believed to be their Allotment. This prior testimony, along with other evidence in the BLM allotment file, clearly demonstrates that the current owners of the Allotment have always recognized the existence of the Rex Trail, and had at one time actually tried to exclude the trail from their Allotment by changing boundary lines. However, rather than wait another two or three years, the Kubanyis

agreed to accept their Allotment subject to the RS 2477 Rex Trail along the southern shore of Seven Mile Lake.[1]

BLM records also show that John Kubanyi, the husband of Nora Kubanyi and original occupier of the property, did not object to the trail "because it was there long before they were."[2] The Kubanyis understood that their Allotment boundaries were accepted with the Rex Trail running through it.

## 2. GVEA IS NOT CHALLENGING KUBANYIS' TITLE IN THEIR NATIVE ALLOTMENT

While perhaps an interesting academic exercise, the court should decline to take the Plaintiffs' red herring. As previously established, the Kubanyis accepted their Allotment subject to the Rex Trail RS 2477 right-of-way, as it existed either at the time of entry, 1963, or at the time the Allotment was perfected in 1992. There is little distinction between the competing dates, because even in 1963, the RS 2477 Rex Trail had been established by actual construction activities and a history of heavy equipment travel. These activities are detailed in both the BLM and DNR files and occurred as early as 1917. GVEA is not seeking to challenge native title to the Kubanyi Allotment and any reference to federal statutory law concerning burdens of proof, or other matters are simply irrelevant to this motion.

The cases cited by the Kubanyis regarding burden of proof, all address entities seeking to establish RS 2477 rights against the federal government. Here, the federal government is not a party and has no interest in this litigation. Rather, the

---

[1] Exhibit B
[2] Exhibit C.

REPLY TO OPPOSITION TO MOTION IN LIMINE REGARDING WIDTH AND SCOPE OF EASEMENT
F04-00026 CI
Page 3 of 8

Kubanyis have wrongfully interfered with GVEA's valid exercise of its RS 2477 access rights. Issues concerning burdens of proof on the various claims and counterclaims, will be something that the court may eventually need to address, but not now.

### 3. THE RS 2477 REX TRAIL WAS ESTABLISHED LONG BEFORE THE KUBANYIS' ENTRY ON THE LAND

As recognized in the seminal RS 2477 case of *Sierra Club v Hodel*[3] each western state has developed its own state based definition of the perfection or scope of the RS 2477 grant, either by explicitly declaring RS 2477 to incorporate state law or by simply expounding its own law.[4] It is settled that Alaska State law should define the scope of its RS 2477 roadways.

In *Girves v Kenai Peninsula Borough*,[5] the Alaska Supreme Court found that Alaska courts have long recognized the operation of [RS 2477] within the state or territory, and noted that numerous other territories and states have effectively claimed the right-of-way granted under [RS 2477].[6]

In Alaska, "it is well recognized that a state or territory need not use the word "accept" in order to consummate the grant…[RS 2477] is in effect, a standing offer from the federal government. All that is needed to complete the transfer is a positive act by the state or territory which clearly manifests an intent to accept the offer.[7] It is beyond reasonable dispute that the State of Alaska "accepted" the grant of the Rex

---

[3] 848 F.2d 1068 C.A 10 (Utah), 1988
[4] *Id.* at 1144
[5] 536 P.2d 1221 (Alaska 1975)
[6] *Id.*
[7] *Id.*, citing *Hamerly v Denton*, 359 P.2d 121, 123 (Alaska 1961) footnotes omitted.

REPLY TO OPPOSITION TO MOTION IN LIMINE REGARDING WIDTH AND SCOPE OF EASEMENT
F04-00026 CI
Page 4 of 8

Trail at least as early as 1927 when it improved the trail and cleared a survey cut for a railroad expansion project.

### 4. AN RS 2477 EASEMENT IS SPECIFICALLY FOR THE PURPOSE OF <u>CONSTRUCTING A HIGHWAY</u> AND CRUZ'S ACTIVITIES WERE WELL WITHIN THAT SCOPE

The court should always remember the exact language of RS 2477. "The right-of-way for the construction of highways over public lands, not reserved for public uses is hereby granted."

The Rex Trail RS 2477 was "proved up" and "accepted" by actual highway construction activity documented in the DNR and BLM files as early as 1907. It is unreasonable to argue that the very purpose for which the right-of-way was established (for construction of highways) is somehow exceeded by Cruz engaging in that very act.

Cruz's activities on the Rex Trail through the Kubanyi Allotment involved the construction of an ice highway. In *Sierra Club v Hodel*[8] Tenth Circuit found:

> Utah adheres to the general rule that he owners of the dominant and servient estates "must exercise [their] rights so as not unreasonably to interfere with the other." *Big Cottonwood Tanner Ditch Co. v Moyle*, 109 Utah 213, 174 P.2d 148, 158 (1946). See *Nielson v Sandberg*, 105 Utah 93, 141 P.2d 696, 701 (1943) (an easement is limited to the original use for which it was acquired.)
>
> Applying the "reasonable and necessary" standard in light of traditional uses does not mean, however, that the County's right-of-way is limited to the uses to which the Burr Trail was being put when it first became an RS 2477 road. RS 2477 was an open-ended and self-executing grant.  ***1084** Under the BLM regulations, the right-of-way became effective upon construction or establishment by the state, see, e.g., 43 C.F.R. § 2822.2-1 (1979); and "no action on the part of the [federal]

---

[8]  848 F.2d 1068  C.A. 10 (Utah) 1988

Government [was] necessary." *See, e.g., id.* at § 2822.1-1. Because the grantor, the federal government, was never required to ratify a use on an RS 2477 right-of-way, each new use of the Burr Trail automatically vested as an incident of the easement. Thus, all uses before October 21, 1976, not terminated or surrendered, are part of an RS 2477 right-of-way.

Though Alaska has not specifically addressed the question, our history of RS 2477 jurisprudence would compel a common law similar to Utah's whereby each previously established use of an RS 2477 road automatically became a permitted use, within the scope of the easement.

Accepting this premise, and applying it to the facts of this case taken in the light most favorable to the Plaintiffs, Cruz's construction activities would have to be similar to activities that occurred on the trail prior to 1963.

Here, the BLM record concerning the Kubanyi Allotment contains virtually the same information contained in the State of Alaska DNR case file on the Rex Trail RS 2477. The statement of David Pott, which outlines the historical use of the Rex Trail, including its use during the 1920s as an access road to mines on Gold King, Bonnifield, and Grubstake Creeks is found in both business records.[9] Mr. Pott demonstrated that he has seen large cats, loaders, 18-wheeler trucks, and pick-up trucks on the Rex Trail as far back as Gold King Creek (far beyond the Kubanyi allotment).[10] He also details a use of large track vehicles such as Nodwells during the hunting seasons. Don Wright is said to have driven a Caterpillar up the Rex Trail in the early 1950s. Notably, Mr. Pott notes that in the vicinity of Seven Mile

---

[9] Exhibit D
[10] Id.

Lake, the trail is about 150 feet wide.[11] Both the scope and the 150 foot width of the Rex Trail through the allotment is verified by the Kubanyis themselves as reflected in the BLM file. John Kubanyi (now deceased) is quoted as stating "…the trail is in bad condition and people using it tend to go around the original trail onto the Allotment."[12]

Further information from the BLM file demonstrates a number of miners have used the Rex Trail highway for purposes of moving heavy equipment, including a 10,000 gallon fuel truck (Tim Kiehl), a D-8 Cat (James Cude), a 5,000 gallon fuel sled drug by a D-8 Dozer (James Cude), a 410 backhoe and an 8-inch suction dredge (Phillip Cannon and Jack Dunshie), and a D-9 Cat (Del Johnson).[13] Evan Miller (also deceased) stated that he ran Cat trains in 1947.

## CONCLUSIONS

Cruz's use of water tankers to temporarily improve the traveled surface of the Rex highway is entirely consistent and well within the scope of prior uses of the trail. The court should grant summary judgment on this issue.

DATED at Fairbanks, Alaska, this 1st day of December, 2006.

BORGESON & BURNS, PC
Attorney(s) for Plaintiff GVEA

By:   s/Cory Borgeson
        Cory Borgeson
        ABA # 8405009

---

[11] Id.
[12] Exhibit C
[13] Exhibit E

REPLY TO OPPOSITION TO MOTION IN LIMINE REGARDING WIDTH AND SCOPE OF EASEMENT
F04-00026 CI
Page 7 of 8

This is to certify that on this date, a copy of the foregoing
document is being served electronically on:

Michael Walleri  walleri@gci.net; christin_woodward@yahoo.com
330 Wendell Street, Suite E
Fairbanks, AK  99701

Daniel T. Quinn  dquinn@richmondquinn.com; cesary@richmondquinn.com
Richmond & Quinn
360 K Street, Suite 200
Anchorage, AK  99501-2028

Eric P. Gillett  egillett@pregodonnell.com; mmorgan@pregodonell.com
Preg O'Donnell & Gillett PLLC
1800 Ninth Avenue, Suite 1500
Seattle, WA  98101-1340

David Floerchinger  dave_floerchinger@law.state.ak.us; TWC.ECF@law.state.ak.us
Assistant Attorney General
Department of Law
1031 West Fourth Avenue, Suite 200
Anchorage, AK  99501