GVEA EXHIBIT F

Case 4:04-cv-00026-RRB   Document 211-7   Filed 02/01/2007   Page 2 of 11

Deposition of Paul Mayo  Kubanyi, et al. vs. GVEA, et al.
Taken October 6, 2006  Case No. F04-0026 CIV (RRB)

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

DON M. KUBANYI, JIMMY KUBANYI,           )
AILEEN WELTON, ELIZABETH                 )
TUZROYLUK, DORIS KUBANYI,                )
VICTOR KUBANYI, BOBBY KUBANYI,           )
ARLETTE KUBANYI, and BRIAN               )
BAGGETT,                                 )
                                         )
         Plaintiffs,                     )
                                         )
    vs.                                  )
                                         )
GOLDEN VALLEY ELECTRIC                   )
ASSOCIATION, DAVE CRUZ,                  )
Individually and d/b/a CRUZ              )
CONSTRUCTION, BLACK & VEATCH             )
CORPORATION, JAKE COVEY and              )
PATRICK NELSON,                          )
                                         )
         Defendants.                     )
_____)
Case No. F04-0026 CIV (RRB)


DEPOSITION OF PAUL MAYO

Taken Friday, October 6, 2006

From the Hour of 10:32 a.m. to 2:13 p.m.

Pages 1 through 171, inclusive
Volume 1

Taken by Counsel for Defendant GVEA

at

Offices of Heartland Court Reporters
100 Cushman Street, Suite 308
Fairbanks, Alaska 99701


Reported by:
CAROL A. McCUE, RMR
Heartland Court Reporters

Heartland Court Reporters               Telephone:  907-452-6727
Carol A. McCue, RMR  E-mail: carol.mccue@acsalaska.net   Fax:  907-488-7701

4abe7933-89ad-40f6-a848-001fb12b7f01

Case 4:04-cv-00026-RRB   Document 211-7   Filed 02/01/2007   Page 3 of 11

Deposition of Paul Mayo                Kubanyi, et al. vs. GVEA, et al.
Taken October 6, 2006                  Case No. F04-0026 CIV (RRB)

Page 71

1    THE REPORTER: Off record.
2    (Off record, recess from
3     12:12 p.m. to 12:14 p.m.)
4    (Exhibit 1 marked.)
5    THE REPORTER: Back on record.
6  BY MR. QUINN:
7    Q.   All right. We've handed you what has been
8  marked as Exhibit 1, and we talked about that at the
9  initial part of the deposition, we've now had a chance
10 to -- to copy.
11       And these are -- these are parts of what you
12 called the appraisal file, with the exception of the
13 depositions that were in there and also as to court
14 cases.
15       And let me just ask you this. To what extent
16 are you knowledgeable about the information that's in
17 here? This looks like it's some communications with
18 Mr. Axelsson.
19   A.   Yeah. Just to -- from an appraisals
20 perspective, I wanted to see if we could get an
21 appraisal on the property.
22   Q.   Okay. Why don't you just tell me generally
23 what you know about -- about the appraisal file here.
24 Why is there such a file?
25   A.   To see if we could determine value on an

Heartland Court Reporters              Telephone: 907-452-6727
Carol A. McCue, RMR  E-mail: carol.mccue@acsalaska.net   Fax: 907-488-7701

4abe7933-89ad-40f6-a848-001fb12b7f01

Case 4:04-cv-00026-RRB  Document 211-7  Filed 02/01/2007  Page 4 of 11

Deposition of Paul Mayo                    Kubanyi, et al. vs. GVEA, et al.
Taken October 6, 2006                      Case No. F04-0026 CIV (RRB)

Page 72

1  access easement. And it looks like just for access
2  only, we were trying to see -- or the appraiser was
3  trying to see if under something called USPAP, the
4  Uniform Standards of Professional Appraisal Practice,
5  if he could provide an appraisal. And in this case, he
6  could not.
7      Q.  And why is that, do you know?
8      A.  It went beyond just property rights, it was a
9  complicated issue that went to Don Kubanyi, his civil
10 rights, apparently.
11          It was a -- the magnitude of the project, the
12 appraiser thought that he didn't have the expertise to
13 evaluate it if the construction company could go to a
14 different water source and if he could determine the
15 difference between the cost of going to a different
16 source and then the cost of the convenience of just
17 going across that sliver of land, and so on.
18     Q.  All right. And is that -- is that type of --
19 Mr. Axelsson said, boy, I'm not -- I'm a real estate
20 appraiser, I can't -- I don't have the expertise to get
21 into that. Is that essentially what his position was?
22     A.  Yes.
23     Q.  In terms of strictly a real estate appraisal
24 evaluation of this, it would just be the cost, wouldn't
25 it be, of -- of the use permit that we talked about?

Heartland Court Reporters                    Telephone:  907-452-6727
Carol A. McCue, RMR  E-mail: carol.mccue@acsalaska.net  Fax:  907-488-7701

4abe7933-89ad-40f6-a848-001fb12b7f01

Case 4:04-cv-00026-RRB   Document 211-7   Filed 02/01/2007   Page 5 of 11

Deposition of Paul Mayo                    Kubanyi, et al. vs. GVEA, et al.
Taken October 6, 2006                      Case No. F04-0026 CIV (RRB)

Page 73

1   A.   Just from --
2   Q.   From a real estate appraisal, that is the
3   damages of -- at least a measure of damages for the
4   trespass, wouldn't it just be the value of the use
5   permit?
6   A.   From what I remember, yeah, just real property
7   value, but when he got into the legal value, that's
8   when I said, okay, I'm not an expert.
9   Q.   All right.
10  A.   And then I also said everything goes -- I
11  don't know how to measure the other issues that are
12  connected to the case, so --
13  Q.   All right.  And Mr. Axelsson, what's -- what's
14  his background?
15  A.   Appraising-wise or do you want a quick resume,
16  or --
17  Q.   Well, I mean, is he someone who's qualified
18  to -- in your view, to determine issues of trespass
19  damages?
20  A.   Yes.  He's provided -- mainly he's provided
21  access appraisals, before and after appraisal.
22  Q.   Okay.  Tell me what you mean by that.
23  A.   For instance, the taking of a property, like
24  the Department of Interior -- Department of
25  Transportation, with the state --

Heartland Court Reporters              Telephone:  907-452-6727
Carol A. McCue, RMR  E-mail:  carol.mccue@acsalaska.net   Fax:  907-488-7701

4abe7933-89ad-40f6-a848-001fb12b7f01

Case 4:04-cv-00026-RRB   Document 211-7   Filed 02/01/2007   Page 6 of 11

Deposition of Paul Mayo                    Kubanyi, et al. vs. GVEA, et al.
Taken October 6, 2006                      Case No. F04-0026 CIV (RRB)

Page 74

1    Q.    Okay.

2    A.    -- acquiring Native allotments and then reviewing the state appraiser appraisal, to see if that was in line with values, comparables, and so on.

5    Q.    All right.  And the before and after would be, he would assess its value before this taking had occurred, and then its value after the taking had occurred, and you find out what the difference is and that's the -- that's the damages assessment, essentially?

11   A.    Yes.  Just from a narrow definition like this one.

13   Q.    All right.  Now, in this case, there has been no diminution in value of this property, is that fair to say, based on what happened out there?  I mean, the value of that property is not any less or any more because of what happened in March of '03?

18   A.    Strictly from this definition, yes.  Legal value, I don't know.  That's where I said I -- gee whiz, I can't.

21   Q.    I'm just saying, you know, if you were to go out and do an appraisal of this property, the value of this property, you would just do the appraisal, you'd come up with a number, but the fact of this occurrence in March of '03 wouldn't impact at all on your

Heartland Court Reporters                    Telephone:  907-452-6727
Carol A. McCue, RMR  E-mail: carol.mccue@acsalaska.net  Fax:  907-488-7701

4abe7933-89ad-40f6-a848-001fb12b7f01

Case 4:04-cv-00026-RRB    Document 211-7    Filed 02/01/2007    Page 7 of 11

Deposition of Paul Mayo                    Kubanyi, et al. vs. GVEA, et al.
Taken October 6, 2006                      Case No. F04-0026 CIV (RRB)

Page 78

1  A.  Yes.
2  Q.  All right.  And the point, I guess my question
3  is, whatever that number is, am I correct in saying
4  that it wouldn't be influenced at all by events of
5  March 2003; that is, whether the events in 2003
6  happened or didn't happen, you'd still come up with the
7  same number today for the value of that property?
8  A.  Just from a realty perspective, no, but just
9  beyond the appraisal, there's more flexibility.  Again,
10 it depends on who the contractors are, the magnitude of
11 the project, the impact on the local land there.
12 Q.  I know.  You're answering a different
13 question, really.  I'm just saying -- let's just say
14 the Kubanyis were going to sell the property.
15 A.  Uh-hum.
16 Q.  And someone was going to do an appraisal to
17 figure out what a fair price is today for that
18 property.  I mean, an appraiser would just go out and
19 do an appraisal, right?
20 A.  Yes.
21 Q.  And the number they would reach wouldn't be
22 impacted by anything that happened in 2003?
23 A.  No.
24 Q.  Okay.  All right.  Now -- now, in this
25 Exhibit 1, it looks like there are letters from

Heartland Court Reporters              Telephone: 907-452-6727
Carol A. McCue, RMR  E-mail: carol.mccue@acsalaska.net  Fax: 907-488-7701

4abe7933-89ad-40f6-a848-001fb12b7f01

Case 4:04-cv-00026-RRB   Document 211-7   Filed 02/01/2007   Page 8 of 11

Deposition of Paul Mayo              Kubanyi, et al. vs. GVEA, et al.
Taken October 6, 2006                Case No. F04-0026 CIV (RRB)

Page 79

1  Mr. Walleri where he sends to Mr. Axelsson parts of
2  briefs that he's written in this case that talk about
3  issues of damages, and it looks like he's also enclosed
4  some -- I'm not sure where this comes from, but the --
5  some kind of an appraisal valuation thing.  I guess,
6  did you -- have you ever -- have you looked at this
7  stuff?
8      A.   I haven't read through it, no.
9      Q.   Okay.  All right.  And if you haven't, I'm not
10 going to -- I'm not going to have you do that.
11          It looks like you have been identified -- and
12 I was just going to ask you if you were aware of this,
13 but you've been identified as a retained expert witness
14 in this case.  Did you know that you were a retained
15 expert witness?
16     A.   Yes, I knew I was subpoenaed, I guess, or to
17 provide a deposition.
18     Q.   All right.  Did you know that -- that the
19 plaintiffs, the Kubanyis in this case, have actually
20 identified you as a retained expert?
21     A.   Okay.
22     Q.   All right.  And it says this, it says that
23 Mr. Mayo will be testifying as to facts relating to the
24 management of Native Allotment lands, rights-of-way
25 acquisition on Native Allotment, trespass management

Heartland Court Reporters              Telephone:  907-452-6727
Carol A. McCue, RMR  E-mail: carol.mccue@acsalaska.net  Fax: 907-488-7701

4abe7933-89ad-40f6-a848-001fb12b7f01

Case 4:04-cv-00026-RRB  Document 211-7  Filed 02/01/2007  Page 9 of 11

Deposition of Paul Mayo                Kubanyi, et al. vs. GVEA, et al.
Taken October 6, 2006                  Case No. F04-0026 CIV (RRB)

Page 93

1   Q.   Yeah.

2   A.   And -- yeah.

3   Q.   I'm sorry.  And that the fair rental value of
4   crossing a little sliver of Native Allotment land would
5   generally be between 600 and $1500?

6   A.   Yeah.  It would be nominal.

7   Q.   And your surveyor, Hans Axelsson, had said
8   that there was really no damages here, you'd have to do
9   a before and after appraisal, and he told Mr. Walleri,
10  you know, I don't see anything there, and I -- and the
11  other things you're asking me to do, I'm not qualified
12  to do, right?

13  A.   Yes.  Just from evaluation perspective, that's
14  what we could provide.  From a legal value perspective,
15  no, we could not provide legal value.

16  Q.   So as far as the -- the trespass claim that
17  the Kubanyis have asserted against Golden Valley
18  Electric Association, do you have any opinion as to
19  what the value of that might be, from a realty
20  perspective under the laws of trespass, as you
21  understand them?

22  A.   No.  It was just my opinion at the time.  No.
23  I -- at the time, 50 was an offer, 50 was what I
24  thought the family could take, but then they brought in
25  other issues that I was not qualified to --

Heartland Court Reporters              Telephone:  907-452-6727
Carol A. McCue, RMR  E-mail: carol.mccue@acsalaska.net  Fax: 907-488-7701

4abe7933-89ad-40f6-a848-001fb12b7f01

Case 4:04-cv-00026-RRB   Document 211-7   Filed 02/01/2007   Page 10 of 11

Deposition of Paul Mayo                    Kubanyi, et al. vs. GVEA, et al.
Taken October 6, 2006                      Case No. F04-0026 CIV (RRB)

Page 133

1    navigable water?
2        A.   That could also come into play.
3        Q.   Okay. And you didn't put that in your
4    investigator report?
5        A.   No.
6        Q.   Formal written report is -- on the next page
7    here is supposed to contain an appraisal, and you
8    couldn't do that because an appraisal couldn't be done
9    in this case, right?
10       A.   Not for beyond 50,000, no.
11       Q.   Well, it sounds like from Mr. Axelsson's
12   letter, an appraisal couldn't be done for anything more
13   than nominal damages because an appraisal would include
14   a before and after valuation of the property in
15   question; is that right?
16       A.   Just for what he was obligated to do, no, he
17   could not provide an appraisal.
18       Q.   All right. Mr. Axelsson told Mr. Walleri
19   that, you know, jeez, from an appraisal perspective,
20   you know, I really can't show anything. I'd have to do
21   a before and after, and you're not going to get
22   anything but nominal damages, right?
23       A.   Yes. I -- the comparables would have to be
24   perfect information like similar court cases, but then
25   those are confidential, too, so for comparables, for

Heartland Court Reporters                 Telephone: 907-452-6727
Carol A. McCue, RMR  E-mail: carol.mccue@acsalaska.net  Fax: 907-488-7701

4abe7933-89ad-40f6-a848-001fb12b7f01

Case 4:04-cv-00026-RRB   Document 211-7   Filed 02/01/2007   Page 11 of 11

Deposition of Paul Mayo                Kubanyi, et al. vs. GVEA, et al.
Taken October 6, 2006                  Case No. F04-0026 CIV (RRB)

Page 134

1  access use, no, it was nominal.
2      Q.  Okay.  And -- and under Paragraph B it says,
3  the appraisal should include -- or shall include a
4  statement of various things, describing the topography
5  and the location of the trespass area.  That would be
6  important, right?
7      A.  Yes.
8      Q.  I mean, you'd like to know that yourself,
9  where this trespass occurred?
10     A.  Yes.
11     Q.  But it didn't, right?  Because no appraisal
12 was done.
13     A.  No.
14     Q.  And even the surveyor didn't show where the
15 trespass occurred, did he?
16     A.  I don't know yet, I've got to look at those
17 maps.
18     Q.  Okay.  You haven't -- you haven't talked to
19 Mr. Stahlke?
20     A.  I -- not recently.  I just have the original
21 cadastral survey map of the allotment.
22     Q.  Okay.  And you're also -- appraisal is
23 supposed to contain a quantification of the acreage
24 involved so the appraiser can determine a fair market
25 rental value or other appropriate measure of damages,

Heartland Court Reporters                    Telephone:  907-452-6727
Carol A. McCue, RMR  E-mail:  carol.mccue@acsalaska.net   Fax:  907-488-7701

4abe7933-89ad-40f6-a848-001fb12b7f01