Borgeson & Burns, PC
100 Cushman Street, Suite 311
Fairbanks, AK 99701
(907) 452-1666
(907) 456-5055 – facsimile

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| Don M. Kubanyi, Jimmy Kubanyi, Aileen Welton, Elizabeth Tuzroyluk Doris Kubanyi, Victor Kubanyi, Bobby Kubanyi, and Arlette Kubanyi,<br><br>             Plaintiffs,<br><br>vs.<br><br>Golden Valley Electric Association and Dave Cruz, individually and d/b/a Cruz Construction,<br><br>             Defendants. | Case No. F04-00026 CIV |

## DEFENDANT GVEA'S OPPOSITION TO PLAINTIFFS' MOTION TO DISMISS GVEA'S COUNTERCLAIMS

Defendant, Golden Valley Electric Association, Inc. ("GVEA") opposes Plaintiffs' Motion to Dismiss GVEA's Counterclaims based on the following.

### GVEA Asserts Cognizable Claims

Plaintiffs assert that GVEA has failed to state whether GVEA's counterclaims are state or federal causes of action.[1] Plaintiffs incorrectly state that GVEA asserts the State of Alaska owns the right-of-way crossing the Kubanyi's Native Allotment.[2]

---

[1] Plaintiffs Memorandum in Support of Motion to Dismiss GVEA's Counterclaims, page 2, Docket 207.

[2] *Id.*

Defendant GVEA's Opposition to Plaintiffs' to Motion to Dismiss GVEA's Counterclaims
F04-00026 CI
Page 1 of 18

In fact, GVEA claims that the right-of-way was reserved by the federal government in its grant of the Allotment. The federal government reserved the right-of-way for use by the general public. Therefore, it is GVEA's contention that the right-of-way is reserved for the use of the general public, of which GVEA is a member.

In addition to being a federally reserved right-of-way, the Rex to Bonnifield Trail is also an R.S. 2477 trail. R.S. 2477 trails are dedicated for use by the general public.[3]

It makes no difference whether the grant of the Trail was accepted by the State of Alaska as an R.S. 2477, or used by a public user for such a period of time and under such conditions as to prove that the R.S. 2477 grant has been accepted, or whether reserved by the federal government in the Allotment grant. The fact remains that the right-of-way on the Rex to Bonnifield Trail on the Plaintiffs' Allotment exists for use by the general public. The Plaintiffs admit that much.[4]

GVEA's complaint for wrongful and malicious interference with an express right-of-way easement is based on the uncontested fact that the portion of the Rex to Bonnifield Trail (Rex Trail) which crosses the Allotment is a reserved or dedicated

---

[3] See *Price v. Eastham*, 75 P.3d 1051, 1055 (Alaska 2003) (explaining that Congress enacted 43 U.S.C. § 932, Revised Statute (RS) 2477, commonly referred to as RS 2477, in 1866 as part of the Lode Mining Act. "Under RS 2477, the federal government granted rights-of-way, providing: "[T]he right-of-way for the construction of highways over public lands, not reserved for public uses, is hereby granted." The grant was self-executing, meaning that an RS 2477 right-of-way automatically came into existence "if a public highway was established across public land in accordance with the law of Alaska."). Although Congress repealed RS 2477 in 1976, the statute governs this case because the claimed right-of-way on the Rex Trail existed before then.

[4] See Deposition Excerpt of Don Kubanyi, attached as Exhibit A, Deposition Excerpt of Plaintiffs' Expert Paul Mayo, attached as Exhibit B, Deposition Excerpt of Plaintiffs' Expert Eric Stahlke, attached as Exhibit C.

public right-of-way. All members of the general public, whether they are State citizens, federal citizens, or just visitors passing through, have a right to use the Rex to Bonnifield Trail, and specifically, that portion of the Rex to Bonnifield Trail that passes through the Allotment. Again, Plaintiffs do not contest that there exists a public right-of-way across their Allotment.[5]

Additionally, all of the people of the state have a right to use and enjoy Seven Mile Lake.[6] Plaintiffs have no legal claim to the land from the Rex Trail to Seven Mile Lake because that land is below the ordinary high water mark of Seven Mile Lake and belongs to the people of the State of Alaska.[7]

Plaintiffs cite *Venetian Casino Resort, L.L.C. v. Local Joint Exec. Bd.*,[8] to support Plaintiffs' premise that wrongful interference with an express right-of-way easement is a state law claim. GVEA agrees with Plaintiffs that this Court should apply the *Venetian* case to the matter at bar.

In *Venetian*, a property owner sought a declaratory judgment that a sidewalk on its property was not public forum and that the owner had a right to exclude labor union demonstrators from its sidewalk. The United States District Court for the

---

[5] See *Supra* note 4.

[6] AS 38.05.126(c).

[7] AS 38.05.126(c) states "Ownership of land bordering navigable or public water does not grant an exclusive right to the use of the water and a right of title to the land below the ordinary high water mark is subject to the rights of the people of the state to use and have access to the water for recreational purposes or other public purposes for which the water is used or capable of being used consistent with the public trust."

[8] 257 F. 3d 937 (9th Cir. 2001).

Defendant GVEA's Opposition to Plaintiffs' to Motion to Dismiss GVEA's Counterclaims
F04-00026 CI
Page 3 of 18

District of Nevada denied the property owner's request and held that the sidewalk was a "public forum."

This case is very similar to *Venetian* because in both cases, land owners are trying to restrict public rights of use on rights of way reserved or dedicated to the general public. This Court should adopt the rule stated in *Venetian* that although the owner of the property retains title, by reserving or dedicating the property to public use, the owner has given over to the State or to the public generally "one of the most essential sticks in the bundle of rights that are commonly characterized as property," the right to exclude others."[9]

Another similarity exists between this case and *Venetian*. In *Venetian,* the court held that the sidewalk in front of the Venetian hotel was a thoroughfare sidewalk, "seamlessly connected to public sidewalks on either end and intended for general public use."[10] Just like the sidewalk in *Venetian*, the portion of the Rex Trail crossing Plaintiffs' Allotment is indistinguishable from the connecting R.S. 2477 portions to its east and west.

---

[9] See *Venetian,* 257 F. 3d at 945 (citing *Dolan v. City of Tigard,* 512 U.S. 374, 393, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994) (quoting *Kaiser Aetna v. United States,* 444 U.S. 164, 176, 100 S.Ct. 383, 62 L.Ed.2d 332 (1979)); *see also* 39 Am.Jur.2d, Highways, § 183 (1999) (public dedication creates an easement in the public "with fee title to the property remaining in abutting property owners").

[10] *Venetian*, 257 F.3d at 943 (stating that the title to the property was held by the Venetian, but there was "a servitude imposed for unobstructed public use of the sidewalk.").

There are no barriers or other physical boundaries to indicate to travelers making their way back and forth on the Rex to Bonnifield Trail that the stretch of trail on the Allotment enjoys a different legal status than the public R.S. 2477 trail to which it is "seamlessly connected" to the east and west. There is no separation, no fence, and no indication whatever to persons continuing on the trail and crossing through the Allotment that they have entered some special type of enclave.[11] Plaintiffs may not restrict the public's use of the portion of the Rex Trail crossing their land anymore than they may restrict the public's use of the Rex Trail extending from the eastern and western corners of their land and on to the Parks highway and to Bonnifield.

Most importantly, GVEA expert Patrick Kalen's report clearly shows that the ordinary high water mark of Seven Mile Lake intersects the Rex Trail on the Plaintiffs' Allotment.[12] Therefore, Plaintiffs do not have the right to bar people from using the Rex Trail to access Seven Mile Lake. Any land between the Rex Trail and Seven Mile Lake which is below the ordinary high water mark is "subject to the rights of the people of the state to use and have access to the water for recreational purposes or other public purposes for which the water is used or capable of being used."[13]

---

[11] See Id. at 945; *United States v. Grace,* 461 U.S. 171, 180, 103 S.Ct. 1702, 75 L.Ed.2d 736 (1983).

[12] See Patrick Kalen's Report and Addendum #1, attached at Exhibit D.

[13] AS 38.05.126(c).

Plaintiffs may exclude people from their own land, but Plaintiffs may not keep people from using a public right-of-way to access a public body of water.[14] Furthermore, Plaintiffs are certainly not entitled to any compensation for a member of the public's use of a public right-of-way to access a public body of water.

### This Court has Jurisdiction to Hear GVEA's Counterclaims

It is not clear why Plaintiffs believe that GVEA's counterclaims are non-cognizable if they are "state law claims" as Plaintiffs allege.[15] If Plaintiffs are alleging that this Court lacks jurisdiction to hear GVEA's Counterclaims, Plaintiffs are incorrect. Plaintiffs brought their action in this Court claiming this Court had jurisdiction. GVEA must bring its compulsory counterclaims in this Court. On its face, 28 U.S.C. § 1367, provides federal courts which have original jurisdiction over one or more claims with supplemental jurisdiction over any other claim that forms part of the same case or controversy.[16]

---

[14] AS 38.05.126(c) uses language similar to that of the public trust doctrine. The public trust doctrine states that tidelands conveyed to individuals are subject to the public's right to use the tidelands for navigation, commerce and fishing. "While patent holders are free to make such use of their property as will not unreasonably interfere with these continuing public easements, they are prohibited from any general attempt to exclude the public from the property by virtue of their title." *City of Saint Paul v. State, Dept. of Natural Resources*, 137 P.3d 261, 263 (Alaska 2006) (citing in note 8 *CWC Fisheries, Inc. v. Bunker,* 755 P.2d 1115, 1121 (Alaska 1988)).

[15] Plaintiffs Memorandum in Support of Motion to Dismiss GVEA's Counterclaims, page 2, Docket 207.

[16] 28 U.S.C. § 1367(a) states "Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within the original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

GVEA's counterclaims are formed from the same controversy as Plaintiffs' claims. Specifically, and as this Court has already recognized, "GVEA's counterclaims involve the same set of facts and circumstances as Plaintiffs' claims..."[17]  Therefore, GVEA's counterclaims fall under the supplemental jurisdiction of, and may be properly heard by, this Court.

If supplemental jurisdiction is not enough, this Court also has jurisdiction over this matter because it involves a determination of the scope of an R.S. 2477 trail. In *Southern Utah Wilderness Alliance v. Bureau of Land Management*,[18] the circuit court reviewing the scope of an R.S. 2477, stated that "federal law governs the interpretation of R.S. 2477, but that in determining what is required for acceptance of a right-of-way under the statute, federal law "borrows" from long-established principles of state law, to the extent that state law provides convenient and appropriate principles for effectuating congressional intent."[19] The applicable state law in this case is that of the State of Alaska, but it is the federal court that must apply that law. Therefore, even without invoking supplemental jurisdiction, this case is properly before this Court on the federal R.S. 2477 question.

---

[17] Order Granting GVEA's Motion to Amend Answer and File Counterclaim at 3, Docket 177, filed December 18, 2006.

[18] 425 F.3d 735, 767 (10th Cir. 2005).

[19] *Id.*

**Title to the Kubanyi Allotment is Not Challenged**

Plaintiffs' again claim, as they did in their Opposition to GVEA's Motion to Amend its Answer to add Counterclaims,[20] that GVEA's Counterclaims challenge the Kubanyis' title to the land in dispute. Plaintiffs claim that because of the challenge to title, the United States is a necessary party to GVEA's counterclaims.[21] Plaintiffs' still misunderstand GVEA's counterclaims.

As set forth in GVEA's Reply to Plaintiffs' Opposition to GVEA's Motion to Amend Answer to add Counterclaims,[22] GVEA's counterclaims are not based on whether the Kubanyis hold title to the Allotment. Rather, GVEA's counterclaims are based on the Kubanyis' interference with an express easement on the Rex to Bonnifield Trail, which runs through their Allotment.

The United States has already reserved the portion of the Rex Trail adjacent to Seven Mile Lake as an easement for public access. GVEA now seeks a determination that Plaintiffs are not entitled to keep the public from using this public right-of-way reservation. No challenge to the Plaintiffs' title to the Allotment has been brought. The only challenge is to the Plaintiffs' right to exclude the public from lawful uses of the right-of-way already granted by the United States.

GVEA's claim for interference with a prospective business advantage is based on the same set of events. Plaintiffs' interference with the Cruz workers'

---

[20] Docket 148.

[21] Plaintiffs' Memorandum in Support of Motion to Dismiss GVEA's Counterclaims, page 3, Docket 207.

[22] GVEA's Reply to Plaintiffs Opposition to GVEA's Motion to Amend Answer to add Counterclaims at 1, 2-4, Docket 157.

accessing Seven Mile Lake from the Rex Trail was a malicious and wrongful interference with an expressly reserved right-of-way. That malicious and wrongful act interfered with Cruz's work performance. The torts upon which GVEA's claims are based have nothing to do with Plaintiffs' title to their Allotment. They have to do with Plaintiffs' wrongful and malicious actions.

Finally, this Court has already stated that GVEA's counterclaims do not seek adjudication of Plaintiffs' title in their Allotment, as Plaintiffs' assert.[23] Plaintiffs are now making the exact same arguments this Court has already heard and rejected as flawed. Plaintiffs must accept that GVEA's counterclaims do not constitute an action to quiet any title to Plaintiffs Allotment. Rather, GVEA's counterclaims are tort actions, and actions to which the United States simply is not a party.

### The United States is Not a Necessary Party

This Court has already stated that Plaintiffs' authorities, cited for the premise that the United States is an indispensable party in establishing interests in Indian trust lands, are not applicable.[24]

The Rex Trail right-of-way across the Kubanyis' Allotment was reserved by the United States in the original grant and description of the Allotment and the Kubanyis accepted that the trail was not part of their Allotment. GVEA does not

---

[23] Order Granting GVEA's Motion to Amend Answer and File Counterclaim at 3, Docket 177, filed December 18, 2006.

[24] *Id.* (See Plaintiffs' Memorandum in Support of Motion to Dismiss GVEA's Counterclaims, page 3 - 4, Docket 207, citing 28 U.S.C. 2409; *Heffle v. State*, 633 P.2d 264 (Alaska 1981); *Imperial Granite Co. v. Pala Band of Mission Indians*, 940 F.2d 1269 (9th Cir. 1991); *United States v. Mottaz*, 476 US 834, 90 L. Ed. 2d 841, 106 S.Ct. 2224 (1986); *Shultz v. Dept. of the Army*, 10 F. 3d 649 (9th Cir. 1993)).

dispute that the Kubanyis have title to a Native Allotment, nor does GVEA dispute the location of that Allotment. GVEA merely seeks to prevent the Kubanyis from interfering with the public's reserved use of the easement that is the Rex Trail right-of-way which crosses the Allotment. The United States is not a necessary party in determining whether the Kubanyis interfered with the public right-of-way.

Just as the United States is not a party who needs to be joined in the easement interference claim, the United States need not be joined to adjudicate the interference with a business advantage claim.

Plaintiffs cite *United States v. Mottaz*,[25] for the premises that: (1) the United States is a required party; and (2) that the United States has sovereign immunity and cannot be joined as a party. Both of these premises are flawed.

In *Mottaz*, the plaintiff claimed she alone possessed valid title to interests in Indian Allotments and that title asserted by the United States was defective. The Court reversed an order requiring the United States to pay the plaintiff the current value of her interests because the plaintiff's claims were was barred by the Quiet Title Act's 12-year period of limitations.[26]

The ruling in *Mottaz* has no bearing on this case because this matter does not fall within the authority of the Quiet Title Act. GVEA is not asserting that the Kubanyis do not have title to the Allotment and GVEA is not asserting that the United States has defective title. GVEA is merely attempting to keep Plaintiffs from

---

[25] 476 U.S. 834, 106 S. Ct. 2224 (U.S.Minn.,1986).

[26] *Id.*

interfering with an existing, expressly granted, right-of-way across the Allotment. The Quiet Title Act simply does not apply.

Plaintiffs also cite *Imperial Granite Co. v. Pala Band of Mission Indians*,[27] for the premise that the United States is an indispensable party, however, Plaintiffs' premise is again flawed. In *Imperial Granite*, the Ninth Circuit Court of Appeals found that certain tribal officials acted within proper scope of their authority in exercising jurisdiction over a road in the absence of any allegation that a plaintiff, whose access to the road was blocked by the tribe, had any property right in road.[28] The *Imperial Granite* complaint alleged only that a portion of the road in control of the Indian Tribe lay on trust land, to which naked title was in the United States and beneficial ownership is in the Tribe.[29] In direct contrast to the *Imperial Granite* complaint, GVEA's counterclaim states that the road in question was expressly reserved for public use. Plaintiffs agree that at least a 50 foot public right-of-way was reserved in their grant of the Allotment.

Unlike the plaintiff in *Imperial Granite*, GVEA alleges that it has a property right in the Rex Trail as expressly reserved to GVEA as a member of the public. It is for the public benefit that the access was initially reserved in the Allotment grant.

GVEA alleges a property right in the Rex Trail easement as a member of the public for whom the right was reserved. In another of Plaintiffs improperly applied

---

[27] 940 F.2d 1269 (C.A.9 (Cal.),1991).

[28] *Id.*

[29] *Id.* at 1272.

Defendant GVEA's Opposition to Plaintiffs' to Motion to Dismiss GVEA's Counterclaims
F04-00026 CI
Page 11 of 18

cases, *Heffle v. State*,[30] the Supreme Court of Alaska stated "[i]t is basic that one may not successfully move for a restraining order to prevent obstruction of an easement if one does not have proper title to or rights in the easement."[31] Unlike the party seeking relief in *Heffle*, GVEA's right in the Rex Trail easement is expressly reserved by the United States, the original grantor of the Plaintiffs' Allotment. Therefore, title to the property need not be adjudicated. Rather, this Court must decide whether Cruz's lawful use of the easement was obstructed by Plaintiffs, and whether that obstruction wrongfully interfered with GVEA's business and contract with Cruz.[32]

GVEA is not asking Plaintiffs to defend a claim against the United States, as Plaintiffs allege. GVEA is asking this Court to prevent Plaintiffs from interfering with an expressly granted right-of-way. GVEA is asking this Court to order Plaintiffs to compensate GVEA for its damages incurred as a result of Plaintiffs' wrongful interference with this expressly granted right-of-way and wrongful interference with GVEA's business advantage.

---

[30] 633 P.2d 264, 269 (Alaska, 1981).

[31] *Id.* ; See also *Metzger v. Bose*, 155 Cal.App.2d 131, 317 P.2d 128, 129 (1957). See generally R. Powell, The Law of Real Property P 420 (1979).

[32] *See* Restatement (Third) of Property: Servitudes, § 4.10 cmt. a (1998) ("In the absence of detailed arrangements between them, it is assumed that the owner of the servitude and the holder of the servient estate are intended to exercise their respective rights and privileges in a spirit of mutual accommodation.").

Defendant GVEA's Opposition to Plaintiffs' to Motion to Dismiss GVEA's Counterclaims
F04-00026 CI
Page 12 of 18

**GVEA May Assert Counterclaims Without Joining the State of Alaska**

GVEA does not believe the State of Alaska has any need to assert claims against Plaintiffs for malicious and wrongful interference with an express right-of-way or wrongful interference with a business advantage. GVEA's counterclaims are based on Plaintiffs' tortious actions. The State of Alaska does not need to be joined in order for GVEA's claims to be adjudicated.

When Don Kubanyi threatened Cruz workers with violence and threatened to use a firearm against them, he far exceeded any right or authority he might have had to prevent Cruz workers from using the Rex Trail to access Seven Mile Lake. Don Kubanyi acted tortiously. Additionally, any other Plaintiffs who acted to prevent Cruz workers from using the Rex Trail or from accessing Seven Mile Lake from the Rex Trail also exceeded their rights and also acted tortiously. Although the State of Alaska might have some criminal claim against Plaintiffs, GVEA's claims sound in tort. Therefore, there is no logical reason the State of Alaska should be joined for the just adjudications of GVEA's counterclaims.

Furthermore, GVEA has a financial interest and a right of use interest in the outcome of this suit. Any assertion by Plaintiffs that GVEA does not have a stake in the outcome of this matter would be preposterous.

Fed. R. Civ. P. 19(a) requires the Court to determine first what class of persons is required for a just adjudication of the controversy. The State of Alaska

would fall within the class of required persons if complete relief could not be afforded existing parties in their absence.[33] That is not the case here.

GVEA or Plaintiffs may be afforded complete relief by this Court's decisions on the matters at issue without the State of Alaska's involvement. Plaintiffs seek recovery from Defendants Cruz and GVEA, and have not sought any recovery from the State for their alleged harms. Presumably, Plaintiffs could be afforded complete relief if they are successful, without the State of Alaska as a party.

Likewise, GVEA seeks recovery from Plaintiffs for the Plaintiffs' interference with the right-of-way, and for the Plaintiffs' interference with GVEA's business advantage. GVEA can be afforded complete recovery from Plaintiffs if GVEA is successful. Again, joining the State of Alaska is not necessary.

The other scenario in which the State of Alaska might be a party required for a just adjudication of the claims in this suit is if the State had claimed an interest relating to this action. In that scenario, the State's absence from the suit might impair the State's ability to protect an interest, or subject existing parties to recurrent or otherwise inconsistent obligations.[34] But, the State of Alaska has not sought to join this suit. Moreover, no State interest is at stake in deciding GVEA's counterclaims. The State does not have an interest in whether Plaintiffs acted

---

[33] *Mayer v. Development Corp. of America*, 396 F. Supp. 917, 922 (D.C. Del. 1975) (citing C. Wright, Federal Courts § 70, at 300 (2d ed. 1970).

[34] *Mayer v. Development Corp. of America*, 396 F. Supp. 917, 922 (D.C. Del. 1975) (citing C. Wright, Federal Courts § 70, at 300 (2d ed. 1970).

tortiously by interfering with a right-of-way and interfering with GVEA's business advantage.

Also, the adjudication of GVEA's counterclaims would not subject Plaintiffs to recurrent or otherwise inconsistent obligations. Instead, it would make clear to the parties exactly what the extent of the Rex Trail right-of-way is, and exactly what access the public has to Seven Mile Lake from the Rex Trail, for future reference. Adjudication of GVEA's counterclaims would act to curtail any recurrent or otherwise inconsistent obligations rather than create them.

The State of Alaska does not meet either of Rule 19's criteria for determination of a party's status as indispensable. The State of Alaska simply does not qualify as a necessary party, and need not be joined for a just adjudication of this matter.

Plaintiffs rely on *Blatchford v. Native Village of Noatak*,[35] for the premise that the State may not be joined in an action against its will. *Blatchford* holds that a state will not be subject to suit in federal court unless it has consented to suit.[36] In the case at bar, GVEA is not arguing that the State of Alaska should be joined. Therefore, the *Blatchford* case is not relevant because no one is trying to join the State, with or without its will.

---

[35] 501 U.S. 775, 111 S. Ct. 2578, 115 L. ed. 2d 686 (1991)

[36] *Id.*

Defendant GVEA's Opposition to Plaintiffs' to Motion to Dismiss GVEA's Counterclaims
F04-00026 CI
Page 15 of 18

Plaintiffs rely on *Southern Utah Wilderness Alliance v. BLM*[37] for their faulty argument that only the State of Alaska, and not GVEA, may claim it has a right-of-way across Plaintiffs Allotment via the R.S. 2477 that is the Rex Trail. GVEA agrees that this Court should follow the precedents set out in *Southern*.

In *Southern*, several environmental organizations brought an action for declaratory and injunctive relief barring some counties from further road construction across federal Bureau of Land Management (BLM) land.[38] In the *Southern* case, the counties were the parties claiming the existence of an R.S. 2477 and seeking to determine its scope. However, nowhere in the published ruling does the *Southern* court state that only a state, or county, and not a private would-be road user, has standing to bring a claim regarding the scope or use of an R.S. 2477.[39]

The *Southern* court gives a brief history of the R.S. 2477 right-of-way grants and the litigation that surrounds them. Significantly, the Southern court notes that "all pre-1976 litigated cases involving contested R.S. 2477 claims (and there are dozens) were between private landowners who had obtained title to previously-public land and would-be road users who defended the right to cross private land on what they alleged to be R.S. 2477 rights of way."[40] Just like Plaintiffs and GVEA.

---

[37] 425 F. 3d 735 (10th Cir. 2005).

[38] *Southern Utah Wilderness Alliance v. Bureau of Land Management*, 425 F.3d 735, (10th Cir. 2005).

[39] *Id.*

[40] *Id.* at 740-741.

Defendant GVEA's Opposition to Plaintiffs' to Motion to Dismiss GVEA's Counterclaims
F04-00026 CI
Page 16 of 18

Finally, the State of Alaska does not need to assert that it has an R.S. 2477 right-of-way. A grant in the federal statute for R.S. 2477 rights-of-way for the construction of highways over public land is self-executing, meaning that a right-of-way automatically comes into existence if a public highway was established across public land in accordance with the law of Alaska prior to the repeal of the statute in 1976.[41] A right-of-way user may assert its right to use an R.S. 2477 without the involvement of the State.[42]

GVEA therefore does have standing to bring a claim which involves the use and scope of an R.S. 2477.[43] GVEA need not join the State of Alaska as a party, because GVEA's status as an R.S. 2477 user is enough to give GVEA an interest in the R.S. 2477 and a stake in the outcome of this suit.[44]

## Conclusion

For the above reasons, GVEA respectfully requests this Court deny Plaintiffs' Motion to Dismiss GVEA's Counterclaims against Plaintiffs.

---

[41] *Price v. Eastham*, 75 P.3d 1051 (Alaska 2003) (discussing 43 U.S.C.A. § 932).

[42] See e.g. *Price v. Eastham*, 75 P.3d 1051 (Alaska 2003) (snow machine users sued a private landowner claiming they had a right to use a trail); *Anderson v. Richards*, 96 Nev. 318, 608 P.2d 1096 (Nev., 1980) (landowner sought removal of obstructions across a roadway which trial court found to be a "public road.").

[43] AS 19.10.015 (a) states "It is declared that all officially proposed and existing highways on public land not reserved for public uses are 100 feet wide. This section does not apply to highways that are specifically designated to be wider than 100 feet."

DATED at Fairbanks, Alaska, this 2nd day of February, 2007.

BORGESON & BURNS, PC
Attorney(s) for Plaintiff GVEA


By: _____s/Cory Borgeson_____
Cory Borgeson
ABA # 8405009

This is to certify that on this date, a copy of the foregoing
document is being served electronically on:

Michael Walleri  walleri@gci.net; christin_woodward@yahoo.com
330 Wendell Street, Suite E
Fairbanks, AK  99701

Daniel T. Quinn  dquinn@richmondquinn.com; cesary@richmondquinn.com
Richmond & Quinn
360 K Street, Suite 200
Anchorage, AK  99501-2028