

*Fairbanks Office*
3745 Geist Road, SuiteB
Fairbanks, AK 99709

*Anchorage Office*
4500 Business Park Blvd, Ste. C-10
Anchorage, AK 99503

*Tok Office*
HC 72 Box 850
Tok, AK 99780

# SUMMIT
## CONSULTING SERVICES, Inc.

ph: (907) 458-7747
fax: (907) 458-7748
summitcfbks@aol.com

ph: (907) 563-5675
fax: (907) 563-5685
summitanchorage@aol.com

ph: (907) 291-2339
fax: (907) 291-2333
summitclok@aol.com

February 9, 2007

Michael J. Walleri
Attorney-at-Law
330 Wendell Street, Suite E
Fairbanks, Alaska 99701

Reference: Kubanyi vs. Golden Valley Electric Association

At your request I have prepared an engineering analysis of the economic impact of the trespass on the Kubanyi allotment at 7-Mile Lake near Clear, Alaska by Cruz Construction, Incorporated (CCI) in February and March of 2003 as part of the GVEA Northern Intertie construction project. CCI was under contract with Global Power & Communications for ice road construction and maintenance. I have not been asked to provide any opinion on the actual trespass issue or the right of access by CCI to 7-Mile Lake. My analysis is based on my experience in construction and permitting and documents that you provided.

## Conclusion

Due to time constraints there was no feasible alternative route to access 7-Mile Lake from the Rex Trail in the time required to complete ice road work for the Intertie project. CCI gained a financial advantage by having 7-Mile Lake available as a water source, instead of having to use Fish Creek for ice and snow making at the south end of the GVEA Intertie project. Based on figures provided by CCI, the financial benefit to them was at least $291,509

## Investigation

As part of the investigation I reviewed the transcript of a deposition of Mr. Cruz taken on January 24, 2006. I also reviewed a series of CCI file documents that you provided that were purportedly relevant to the 7-Mile Lake water use issues. In addition, you provided several maps that had been prepared by Tanana Chiefs conference, and a copy of a DNR Land Use Permit ADL 415854. I also contacted Christy Everett, U.S. Army Corps of Engineers (ACOE) regulatory Division, Fairbanks regional Office.

## Analysis

Water was used to provide snow making and road surfacing material for improvements to the Rex Trail and the Intertie route across sensitive terrain that could only be accessed in the winter. The surface improvements were required in order to permit access to the Intertie route for heavy equipment including cranes, drill rigs and other construction equipment necessary for erecting the electrical towers



and installing wires for the Intertie. Construction activities were permitted under Land Use Permits issued by the Alaska Department of Natural Resources (DNR). The DNR Division of Land issued Permits ADL 41654 in 1999 (Intertie right-of-way survey and construction access) and the DNR Division of Mining Land and Water issued Permit #LAS 23614 in 2001 (Rex Trail and Cosna Road access). Rights to withdraw and use water were obtained via Temporary Water Use Permits issued by the DNR.

Water for snow and ice making for improvements could be taken from any available water source that was legally available to CCI. For the Rex Trail improvements from the Parks Highway to the intersection of the Intertie R.O.W. and along the R.O.W. up to Fish Creek, about 6 miles north from the Rex Trail intersection, the only available water supply with sufficient quantity appears to have been either 7-Mile Lake or Fish Creek. Due to the proximity to the Rex Trail, the 7-Mile Lake water source was the closest and least expensive alternative until the Fish Creek access was reached.

Dave Cruz asserted in his deposition that water was used from 7-Mile Lake to provide an ice surface to the Rex Trail and along the Intertie route from the intersection with the Rex Trail to Fish Creek. It appears that water was used from 7-Mile Lake during January of 2002 and February 2003, up until March 1, 2003 when water withdrawal from 7-Mile Lake was halted. A subcontractor's report from GP&C on January 15, 2002 noted that they were intending to set up a water shack on 7-Mile Lake on January 16. I could not locate any documentation regarding the length of time water was used in 2002, but a time frame of 10 days to 2 weeks seems reasonable, based on the documentation of water withdrawals and use in 2003.

Based on Mr. Cruz' testimony it appears that CCI was using water from 7-Mile Lake from February 26, 2003 to March 1, 2003. On March 1, 2003 CCI was denied direct access from the Rex Trail to south end of 7-Mile Lake and temporarily halted work on the project. A stop work notice was issued on March 4 discontinuing the use of 7-Mile Lake as water source. After water withdrawal from 7-Mile Lake was stopped CCI had to either select an alternate route to the north end of 7-Mile Lake across state land, or remobilize the water withdrawal activities to Fish Creek, a distance of about 8 miles away. Figure 1 shows a potential route from the Rex Trail that crosses State land to the east of the Kubanyi allotment and access 7-Mile Lake near the north east corner of the lake. The distance from the Rex Trail to 7-Mile Lake along this route is about ½ mile.

Mr. Cruz stated in his deposition that if necessary he could have cut a route across the state land in about 4 hours by mulching timber and dragging it out, then hauling water (presumably from Fish Creek, the nearest available water source) in about half a shift (presumable 4-5 hours). He estimated that this cost was about $5000. He did not investigate the requirement to obtain a permit for this activity.

I contacted Christy Everett with the ACOE and discussed permitting for this type of activity. The ACOE has permitting jurisdiction in any area defined as wetland, and the property between the Rex Trail and the north end of 7-Mile appears to be wetland, based on the aerial photography provided by TCC. She said that the ACOE does not specifically regulate ice road construction as long as there is no vegetative or mineral soil fill used in the construction of the road. However, machine clearing is prohibited with out a permit, and if any organic debris was left in the road bed a permit would also be required. I presume that in order for CCI to remove ½ mile of timber and brush in 4 hours that machine

Kubanyi vs GVEA
February 9, 2007
Page 3 of 4



**SUMMIT**
CONSULTING SERVICES, Inc.

clearing would have been required and some debris would have remained, and if clearing by hand a much longer time frame would have been needed. It was confirmed by Ms. Everett that an individual ACOE permit would have been required for this activity as described herein. There are no applicable Nation Wide Permits (NWP) that would cover this activity. A NWP requires only a 10 day Agency notification, while an individual ACOE permit requires a 30-day public notice at a minimum, and usually takes between 90 and 120 days to acquire, from start of process to issuance of the permit. In addition, DNR would also have to issue a Habitat Permit, and the State of Alaska Department of Environmental Conservation would have to issue a Water Quality Certification.

Both DNR Land Use permits specifically allow construction activities only in the specified rights-of-way. LAS 2364 explicitly prohibits construction of new roads or trails across state land with the exception of the connection between the east end of the Cosna road and the Intertie right-of-way (Special Stipulation 15). Therefore any alternative access to 7-Mile Lake outside of the Rex Trail right-of-way would require a permit modification at the very least, and may require an altogether new permit. It is likely that the acquisition of new permits for the alternate access to 7-Mile Lake would take at least 3 months and could take up to a year. This was a high profile project and the original project was delayed a year during the permit process. It is likely that there would have been considerable public interest and scrutiny.

The subcontract (Subcontract No. 2002-01, December 3, 2001) between CCI and GP&C provides a specific construction schedule for the ice road work (Paragraph 1, Scope of Work), and notes that "time is of the essence" (Paragraph 3, Time, Schedule And Delays). Additionally, in a Request for Information from GP&C to GVEA on 12/23/02 (RFI 117) regarding potential standby time, GP&C notes that "timely ice construction is critical in completing this winter's construction project." It is apparent that a delay of several weeks, not to mention months that would cost an entire construction season, would have serious and costly impacts to the project. Therefore it is my opinion that the only reasonable alternative, once access to the south end of 7-Mile lake was terminated, was to backhaul water from Fish Creek, the next closest available water source. Construction of the alternate access route from the Rex Trail to the north end of 7-Mile Lake was not feasible based on delays that would be encountered in a permitting effort.

Although I believe that Mr. Cruz's estimate of the time and cost to build an alternate access to 7-Mile Lake is significantly low, it is also my opinion that the access road cost is irrelevant. Based on the construction timetable, it was not a feasible alternative, and the Fish Creek backhaul was the only reasonable alternative available to CCI. The cost for this change in plans, including the delays that occurred due to the loss of access to 7-Mile Lake is the basis for a request for additional compensation made by CCI to GP&C on March 5, 2003. In this letter Mr. Cruz requests compensation in the amount of $21,750 per day for standby time, and a lump sum cost of $131,500 for the cost to remobilize from 7-Mile Lake to Fish Creek. In a contract invoice that CCI billed to GP&C on March 22, 2003, a standby charge of $17,949 per day was requested for 3 days of standby, $4,357 was requested for remobilization costs from 7-Mile Lake to Fish Creek, and $66,540 was requested for impact due to the changed water source, ($16,635 per day), for a total invoice amount of $124,744.

GVEA authorized a time and expenses not-to-exceed amount of $131, 500 on March 6, 2003 (RFI response No. 127). This was apparently rejected by CCI due to the requirement to provide

Kubanyi vs GVEA
February 9, 2007
Page 4 of 4


**SUMMIT**
CONSULTING SERVICES, Inc.

documentation for the additional costs, which CCI believes should be have been on a lump sum basis. There is no record in the documents I reviewed to indicate if this offer was ever accepted, or what final change order amount, if any, was negotiated.

It is my opinion that CCI clearly benefited from the use of 7-Mile Lake as opposed to having to use Fish Creek for the water source for snow making and ice road construction. The financial benefit to the contractor can be derived by assuming that the only water source available was Fish Creek, and the additional costs noted in their claims for additional compensation are accurate and based on their actual costs. If 7-Mile Lake was unavailable as a water source, all water would have been taken from Fish Creek. The cost would have been equal to the amount hat the contractor claimed when in fact the water source was changed from 7-Mile to Fish Creek. This applies to both the March 2003 costs as well as the benefit that was achieved in using the 7-Mile Lake water during the 2001/2002 construction season.

Based on these figures, it is my opinion that the vale of the 7-Mile Lake water source to CCI is as follows:

| | |
|---|---|
| **2001/2002 Construction Season** | |
| Additional mobilization to Fish Creek | $4,357 |
| 10 days (assumed) @$16,635 = | $166,350 |
| | |
| **2002/2003 Construction Season** | |
| Additional mobilization to Fish Creek | $4,357 |
| 7 days (February 26, 27, 28, March 7, 8, 9 and 10) @ $16,635 = | $116,445 |
| | |
| Total | $291,509 |

This cost ignores the standby charges requested by CCI since presumably CCI would have had to standby for the Fish Creek water sources initially mobilized to Fish. In my opinion CCI gained a financial advantage of at least $291,509 by having 7-Mile Lake available as a water source, instead of having to use Fish Creek for ice and snow making at the south end of the GVEA Intertie project.

Please do not hesitate to contact me if you have any questions or comments.

Sincerely,

Mark B. Sherman, PE
Summit Consulting Services

Attachment   Figure 1, Alternate Access Road, 11x17