Borgeson & Burns, PC
100 Cushman Street, Suite 311
Fairbanks, AK 99701
(907) 452-1666
(907) 456-5055 – facsimile

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| Don M. Kubanyi, Jimmy Kubanyi, Aileen Welton, Elizabeth Tuzroyluk, Doris Kubanyi, Victor Kubanyi, Bobby Kubanyi, Arlette Kubanyi, and Brian Baggett<br><br>                Plaintiffs,<br><br>vs.<br><br>Golden Valley Electric Association and Dave Cruz, individually and d/b/a Cruz Construction,<br><br>                Defendants. | Case No. F04-0026 CIV |

## SUPPLEMENTAL BRIEFING REGARDING THE INTER-RELATIONSHIP AND LEGAL EFFECT OF THE TWUP IN LIGHT OF THE ALASKA WATER USE ACT AND RELATED REGULATIONS

GVEA seeks a ruling that the TWUP cannot provide a legal basis for its tort liability to Plaintiffs for trespass actions allegedly committed by Cruz Construction. The Court ordered further briefing concerning the legal effect of Conditions 3, 7, and 10 of the TWUP in light of the Alaska Water Use Act and applicable rules and regulations governing the permitting process for appropriating the water resources of the State of Alaska.

## BACKGROUND

The State of Alaska issued GVEA a Temporary Water Use Permit ("TWUP") which authorized GVEA to withdraw water from several identified sources to include Seven Mile Lake. This water was to be used for the construction/maintenance of the ice road servicing the Northern Intertie Transmission Line Project.[1]

Plaintiffs have specifically identified Conditions 7 and 10 of the TWUP as their basis for alleging GVEA is liable to the Plaintiffs for Cruz's alleged trespass.[2] Plaintiffs claim that because section 3 is an indemnity provision, sections 7 and 10 must be intended for some reason other than indemnity.

> Condition 3 of the TWUP provides:
>
> Indemnify the State against and hold it harmless from any and all claims, demands, suits, loss, liability and expense for injury or for death of persons and damages to or loss of property arising out of or connected with the exercise of the privileges covered by this permit.
>
> Condition 7 of the TWUP provides:
>
> This authorization does not authorize the permittee to enter upon any lands until proper rights-of-way, easements, or permission documents, from the appropriate land owner have been obtained.
>
> Condition 10 of the TWUP provides:
>
> Permittee is responsible for the actions of contractors, agents, and other persons who perform work to accomplish the approved project, and shall ensure that workers are familiar with the requirements of this authorization. For any activity that significantly deviates from the approved project during its siting, construction, or operation, the permittee is required to contact the water resources section and obtain approval before beginning the activity.

---

[1] See Plaintiff's First Amended Complaint and Exhibits.
[2] *Id.*

The only issue currently before the court is whether GVEA can be liable to Plaintiffs for the alleged torts of a third party (Cruz Construction) based on Conditions 7 and 10 of the TWUP where the state has permitting and enforcement authority and the Plaintiffs have an existing remedy at law by their trespass claim.

## LEGAL ARGUMENT

### The TWUP Does Not Create a Private Cause of Action

The State of Alaska has adopted a permitting system for the issuance of temporary water use rights. That permitting system and the requirements it sets forth were established to protect the interests of the State of Alaska, the environment, and the general public. Plaintiffs incorrectly assert that Alaska's permit system creates or protects their individual interest. Neither the facts nor the law supports Plaintiffs' theory.

Alaska's water permitting requirements serve to protect the assets of the state and, collectively, the people of the state. Alaska has the authority to issue permits subject to conditions. The rationale is simple. Alaska need not issue the permit in the first place and thus the state can authorize the use of water on the terms and conditions that it chooses.[3] The restrictions contained in the TWUP were intended to protect the state from liability which might stem from its granting a permit to a private entity, to protect the waters of Alaska, to protect the environment, and to ensure the use of water resources consistent with the public good. Plaintiffs' reading of the conditions in the TWUP as creating in them some right to enforce alleged permit violations is strained at best.

---

[3] *Tulkisarmute Native Community Council v. Heinze*, 898 P.2d 935 (Alaska 1995); *Bank of Am. Nat'l Trust & Savings Assoc. v. State Water Resources Control Bd.*, 42 Cal. App. 3d 198, 116 Cal. Rptr. 770 (1974); *Hale v. Water Res. Dep't*, 184 Or. App. 36, 55 P.3d 497 (2002).

Although Alaska case law is sparse on this subject, other courts have found that similar state permit systems do not create private causes of action to enforce the permits, especially where a party claiming injury has an existing remedy at law. In *California v. Sierra Club*,[4] the United States Supreme Court declined to create a private cause of action on facts very similar to the case at bar.

In *Sierra Club*, the court found that it could not be assumed from legislative silence on private rights of action that Congress intended that a general regulatory prohibition would provide an automatic basis for a private remedy.[5] In analyzing whether a private right of action should be implied from a statute, the *Sierra Club* court considered the critical issue to be not simply who would benefit from the statute, but whether Congress intended to confer federal rights on those beneficiaries.

The *Sierra Club* court found that "the focus of the inquiry is on whether Congress intended to create a remedy . . . . The federal judiciary will not engraft a remedy on a statute, no matter how salutary, that Congress did not intend to provide."[6]

The enforcement section of Alaska's water permitting code, 11 AAC 93.280, states:

> (a) If the commissioner finds that a person is causing, engaging in, or maintaining a condition or activity that involves the use of a water resource and that presents an imminent or present danger to the health, safety, or welfare of the people of the state or the right of a prior appropriator, or, with the exception of changes in water quality, to the resource itself, the commissioner will, in his or her discretion
>
>> (1) order the person immediately to discontinue, abate, or alleviate the condition or activity; or

---

[4] 451 U.S. 287, 101 S.Ct. 1775 (1981).
[5] *Sierra Club,* 451 U.S. at 296, 101 S.Ct. at 1780.
[6] *Sierra Club,* 451 U.S. at 297, 101 S.Ct. at 1781.

>   (2) take any other action considered necessary to alleviate the emergency.
>
> (b) The owner of the property or the operator of the improvement or other condition that causes the emergency may be held liable for the costs associated with remedial action taken under this section, including the cost of any work done to make safe a water use structure or its appurtenances. If the person fails to make payment within 90 days, costs may be recovered by the state from the person in an action in superior court.

That section is followed by 11 AAC 93.290, which states:

> (a) In order to protect the public interest the commissioner may issue any of the following orders:
>
>   (1) an order prescribing construction and other engineering modifications of impoundment, withdrawal, or diversion structures but not waiving the responsibility of the applicant to apply for and receive appropriate state or federal regulatory permits or licenses;
>
>   (2) a stop order to a person who, by means including free-flowing wells or drainage into lower strata underground, wastes water without putting it to a beneficial use;
>
>   (3) a stop order to a person substantially interfering with the appropriation of water to which a right was granted under the provisions of this chapter;
>
>   (4) a stop order to a person appropriating, diverting, or impounding water without a permit or authorization, including uses that are not a significant amount of water under 11 AAC 93.035;
>
>   (5) an order requiring the submittal of books, records, meters, gauges, well logs, and other hydrologic information relevant to an adjudication or action; or
>
>   (6) an order to remove or abate unpermitted diversion or impoundment works.
>
> (b) If the commissioner considers it necessary to prevent or rectify a violation of this chapter, the commissioner will, in his or her discretion,
>
>   (1) give notice and hold a hearing in order to gather additional information, evidence, or testimony; or

>     (2) obtain a search warrant or court order authorizing the commissioner to enter onto the property, seize, or remove structures or works of appropriation, or directing the violator to take other action required to protect against damage to persons and property.

Alaska's TWUP enforcement code sections, like the sections under scrutiny in *Sierra Club*, do not give any indication that Alaska's legislature intended to create a private remedy. This court, just like the United States Supreme Court in *Sierra Club*, should not engraft such a remedy onto Alaska's statutes.

A similar analysis was used by the State of Hawaii. In *Whitey's Boat Cruises, Inc. v. Napali-Kauai Boat Charters, Inc.*,[7] Hawaii's Supreme Court held that commercial tour boat operators had no private right of action under state and county permit requirements for commercial boating. The *Whitey's* court found that the regulations in question were **not** established to create or protect business interests, but rather to protect environment and benefit the general public. The *Whitey's* plaintiffs were denied their attempt to assert against defendant's torts which were derivative of the defendant's violations of permit requirements.

Plaintiffs in this case are alleging torts which they claim derive from Alaska's TWUP requirements. Plaintiffs' allegations based on the TWUP simply cannot stand. Just like the permitting requirements for boating in Hawaii, the water permitting requirements for water uses in Alaska were established to protect the environment and to benefit the general public. No private action to enforce Alaska's permit requirements exists, and Plaintiffs have no standing to assert torts derived from alleged permit

---

[7] 110 Hawai'i 302, 312, 132 P.3d 1213, 1223 (Hawai'i,2006).

requirement violations. TWUP violation enforcement is uniquely and absolutely a right belonging to the State of Alaska.

There is no provision in Alaska's permitting scheme which would provide a private cause of action for persons alleging injury. Furthermore, no evidence exists to suggest that Alaska's legislature intended to confer the state's rights of permit enforcement on private parties acting in their own interest. Plaintiffs do not have any right to assert TWUP violations. Plaintiffs do not have a remedy under the TWUP. Rather, Plaintiffs must look to their remedy at law, an action in trespass.

## The Alaska Water Use Act

The Alaska Water Use Act, AS 46.15, and related regulations, outlines a procedure for appropriating water resources of the state. Certain listed criteria exist for the issuance of a permanent appropriation under AS 46.15.080, and another less structured set of requirements exists for a temporary water use permit (TWUP) under AS 46.15.155. TWUPs are typically used for ice road construction projects.[8]

AS 46.15.155(f) provides that the commissioner may impose conditions or limitations on an authorization for temporary use of water to protect the water rights of other persons or to protect fish and wildlife habitat, human health, or other public interests. Subsection (h) provides that a person to whom an authorization for temporary use of water was issued under this section may allow another person to use the authorization, consistent with the conditions and limitations of the authorization.

AS 46.15.175 provides that if the commissioner has reason to believe that a person who holds an appropriation permit under this chapter is willfully violating or has

---

[8] See, *State Dept. of Natural Resources v Greenpeace, Inc.*, 96, P.3d 1056, 1058 (Alaska 2004).

willfully violated a term, condition, or restriction or limitation of the permit, **the commissioner** may commence proceedings to terminate the appropriation permit under AS 44.62.330-44.62.630.

11 AAC 93.210(b) provides that a water right or priority is not established by a temporary water use authorization issued under 11 AAC 93.220. Authorized temporary water use is subject to amendment, modification, revocation by the department if the department determines that amendment, modification, or revocation is necessary to supply water to lawful appropriators of record or to protect the public interest.

The Water Use Act and its implementing regulations simply provide a streamlined framework for a private person or entity to apply for and receive authorization from the State of Alaska to appropriate the publicly owned water resource. A fair reading of the above statues and regulations cannot lead to the judicial conclusion that Plaintiffs have a cause of action to enforce the TWUP. GVEA assumed responsibility only to the State of Alaska under the TWUP. If Cruz construction trespassed on Plaintiffs' property, Plaintiffs' remedy is a cause of action for that trespass, not a cause of action alleging a violation or attempting private enforcement of the TWUP.

The above statutes and regulations have very little legal effect regarding Conditions 3, 7, and 10 of the actual TWUP in this case.

### Permit Conditions 3, 7, and 10 are Designed to Protect the State of Alaska and Not to Grant Additional Rights to Private Property Owners

11 AAC 304.2 (1969) states that the Director of the Division of Lands is authorized to issue special land use permits 'on such terms and conditions as he deems to be **in the best interests of Alaska**.[9] In *Swindel v. Kelly*, the Supreme Court of Alaska identified an "established principle that the rights and privileges of a licensee are dependent upon the agreement creating the license," and looked to the conditions in a written permit to determine those rights.[10]

It follows that both GVEA's rights and its liabilities are dependent upon the agreement. No where in the TWUP does GVEA agree to suit by a third party based on the TWUP. Rather, GVEA agrees to act under the TWUP in a way that will not cause harm to the State of Alaska, and the conditions contained in the TWUP are intended to benefit the State of Alaska.

### Condition 3

Condition 3 of the TWUP is merely an indemnity provision protecting the state from financial liability connected with the withdrawal of water under the TWUP. The TWUP requires GVEA to use its water rights under the authorization consistent with AS 46.15.155(h). If Cruz had injured anyone (such as Plaintiffs), **and** if Plaintiffs had sued the State of Alaska for their injuries, then GVEA would be required to indemnify the State of Alaska against any such claim or expenses.

Plaintiffs in this case only brought claims against the State of Alaska for a civil rights violation related to the actions of its State Troopers responding to an assault

---

[9] *Swindel v. Kelly*, 499 P.2d 291, 294 (Alaska 1972).
[10] *Swindel v. Kelly*, 499 P.2d 291, 296 (Alaska 1972).

complaint. Plaintiffs did not sue the State of Alaska for damages arising from the state's issuance of the TWUP. Therefore, GVEA is not liable to the state for any TWUP violation and does not have to indemnify the state against Plaintiffs' action. Condition 3 is not triggered.

### Condition 7

Condition 7 of the TWUP provides:

> This authorization does not authorize the permittee to enter upon any lands until property rights-of-way, easements, or permission documents from the appropriate land owner obtained.

This condition insulates the State of Alaska from any liability under a "takings" theory. That is, if GVEA (or Cruz) had entered upon (and therefore "taken") the lands owned by the Kubanyis, GVEA could not defend against a claim by arguing that it had permission to do so on the basis of the TWUP.

Condition 7 as it relates to the water use act would only be implicated if (1) GVEA argued that it was privileged under the TWUP for itself or Cruz to enter the Kubanyis' land, or (2) GVEA tendered the defense of the claim of the State of Alaska or (3) GVEA otherwise tried to shift the blame to the State of Alaska by arguing that the permit authorized the entry on Plaintiffs' land without permission. In this case, GVEA has raised no such defense, and has not sought to avoid liability for trespass by pointing to the permit in arguing that the State of Alaska had authorized or approved its actions.

Therefore, Condition 7 has no effect and cannot be invoked by Plaintiffs to create a private remedy.

**Condition 10**

Condition 10 of the TWUP provides:

> Permittee shall be responsible for all actions of contractors, agents or other persons who perform work to accomplish the approved project, and shall ensure that workers are familiar with the requirements of this authorization.

This Condition, like Conditions 3 and 7, simply protects the state from potential liability from the acts of the permittee or anyone the permittee may authorize to use the authorization under AS 45.15.155(h). Condition 10 prevents the permittee (GVEA) from avoiding responsibility to the State of Alaska by arguing that any violation of the permit was committed by others, such as Cruz, for which it bears no responsibility.

Condition 10 was likely inserted because of simple transfer provisions contained in AS 46.15.155(h). The State Department of Resources naturally wants to ensure compliance with a permit that appropriates an important public resource such as water. The state understandably wants to make the permittee responsible for any liability the state may have. The State also has an interest in preventing any destruction or loss of a public resource, such as the unpermitted diversion of large amounts of water, or the complete draining of a creek bed in a way that damages a fishery or other important public resource, and in limiting its liability for such destruction.

If Cruz had dumped a fuel truck into Seven Mile Lake, had sucked the lake dry of water, or had otherwise failed to protect "the water rights of other persons or to protect the fish and wildlife habitat, human health or other public interests,"[11] then the state could hold GVEA responsible under the TWUP. That is not the case here.

---

[11] AS 46.15.155(f).

Supplemental Briefing
Case No. F04-0026 CIV
Page 11 of 13

An important distinction contained in AS 46.15.155(f) is that the commissioner of DNR may impose reasonable conditions or limitations on an authorization for temporary use of water [such as Conditions 3, 7, and 10] to protect (1) the water rights of other persons, (2) fish and wildlife habitat, (3) human health, or (4) other **public interests.**

The statutory framework for TWUPs and enabling regulations simply seeks to ensure that a permittee such as GVEA will be responsible for any harm to a public interest or to any financial liability the state itself may face.  No where in the statutes or enabling regulations, does the Alaska Legislature evidence the intent to protect **private interests** such as the Kubanyis' private property rights at issue in this case.  No where in this case have Plaintiffs claimed the state is liable to them under the TWUP in a way which might give rise to GVEA's agreement to indemnify the state.

The state has a legitimate, compelling, public interest, and indeed, a constitutional obligation to protect public interests, and public resources such as water, fish and wildlife habitat.  The state does not have any such compelling interest, or any legislative mandate, to enhance or enforce the private property rights of individuals who may be tangentially effective by operations conducted under a TWUP.

The TWUP conditions imposed by the Director of the Division of Lands are intended to be terms and conditions which are **in the best interests of Alaska**.  This Court should not interpret TWUP conditions as intended to benefit a private plaintiff, especially in absence of any evidence of legislative intent to do so.

## CONCLUSION

Plaintiffs' argument that the State of Alaska, in administering a TWUP, intended to expand common law liability in favor of private property owners whose private

property rights may be impacted by the exercise of state permit rights, is unfounded in fact or law.  Plaintiffs cannot point to anything in Alaska's Water Use Act statutes, or in their enabling regulations, which would evidence the legislature's desire to create a private cause of action for individual property owners in addition to those actions already available to them, such as Plaintiffs' action for trespass.  Plaintiffs are limited to traditional remedies at law.  This Court should not engraft a remedy onto a statute where none exists, and should dismiss Plaintiffs' claims based on the TWUP as a matter of law.

DATED at Fairbanks, Alaska, this 7th day of June, 2007.

BORGESON & BURNS, PC
Attorney(s) for Plaintiff GVEA

By:     s/Cory Borgeson
        Cory Borgeson
        ABA # 8405009

This is to certify that on this date, a copy of the foregoing
document is being served electronically on:

Michael Walleri  walleri@gci.net; christin_woodward@yahoo.com
330 Wendell Street, Suite E
Fairbanks, AK  99701

Daniel T. Quinn dquinn@richmondquinn.com; cesary@richmondquinn.com
Richmond & Quinn
360 K Street, Suite 200
Anchorage, AK  99501-2028