IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| DON M. KUBANYI; JIMMY KUBANYI; AILEEN WELTON; ELIZABETH TUZROYLUK; DORIS KUBANYI; VICTOR KUBANYI; BOBBY KUBANYI; ARLETTE KUBANYI; and BRIAN BAGGETT,<br><br>　　　　　Plaintiffs,<br><br>vs.<br><br>GOLDEN VALLEY ELECTRIC ASSOCIATION; and DAVE CRUZ, individually and d/b/a CRUZ CONSTRUCTION,<br><br>　　　　　Defendants. | Case No. 4:04-cv-0026-RRB<br><br><br>**ORDER RE MOTIONS AT<br>DOCKETS 75 AND 152** |

I.   INTRODUCTION

Before the Court is Defendant Golden Valley Electric Association ("GVEA") with a Motion for Summary Judgment Dismissing Plaintiffs' Claims Against GVEA Premised on the Water Permit Between GVEA and the State of Alaska at Docket 152 on the grounds that the permit is a contract between GVEA and the State of Alaska which does not provide a private remedy for Plaintiffs.  Plaintiffs

oppose at Docket 226 on the grounds that they are intended third-party beneficiaries of the permit.

The Court ordered supplemental briefing at Docket 284, which the parties submitted on June 7, 2007 (Dockets 298 and 299). After thoroughly reviewing the supplemental briefing, briefing on the present motion, and briefing relating to the Court's Order of November 15, 2006, at Docket 143 (Dockets 77, 86, and 103), the Court concludes that GVEA's present motion must be granted.

Additionally, because the Court has not previously addressed three other theories of liability under which Plaintiffs argue that GVEA is liable (Docket 226 at 10-11; Docket 86 at 31), the Court hereby addresses those theories at Plaintiffs' request. As a result, GVEA's Motion for Summary Judgment at Docket 75 is partially granted and partially denied.

Because these matters have been adequately briefed by the parties, oral argument is not necessary.

II. BACKGROUND

In 2001, GVEA solicited bids from construction contractors to construct the Northern Intertie Transmission Line Project ("Intertie Project") located between Healy and Fairbanks, Alaska. Global Power and Communications LLP ("Global") submitted the lowest bid and entered into a contract with GVEA. As an independent contractor, Global was able to choose the method and

means of completing the project.[1]  The contract allowed Global to hire subcontractors to assist with performing the construction of the project.  However, the subcontractors were to be Global's responsibility.[2]  On December 3, 2001, GVEA entered into a subcontract with Cruz Construction.[3]

In preparation for construction of the Intertie Project, GVEA obtained the necessary Land Use and Water Use permits.  GVEA obtained a Land Use Permit from the State of Alaska, Department of Natural Resources ("DNR"), Division of Land in March of 1999 for the purpose of authorizing early entry for construction and survey of a Public Utility Right-of-Way Permit for utility purposes."[4]

In July of 1999, GVEA obtained a Right-of-Way Grant/Temporary Use Permit from the United States Department of the Interior, Bureau of Land Management ("BLM") pursuant to Title V of the Federal Land Planning and Management Act ("FLPMA").[5]  The Right-of-Way Grant/Temporary Use Permit ("FLPMA Permit") granted GVEA the "right to construct, operate, maintain, and terminate a

---

[1] Docket 77, Ex. A.

[2] Id.

[3] Id., Ex. B.

[4] Id., Ex. C at 1.

[5] 43 U.S.C. 1761

230 KV transmission line" effective August 5, 1999, through July 29, 2029.[6]

On January 8, 2002, GVEA obtained a Temporary Water Use Authorization (No. TWUP A2001-118) ("TWUP") from the Alaska Department of Natural Resources ("DNR"), Water Resources Section which authorized GVEA and its contractors to withdraw water from several identified sources, including Seven Mile Lake, for the construction/maintenance of ice road/bridge construction on the Intertie Project.[7]

On or about March 1, 2003, Cruz workers were conducting a water pumping operation near the south end of Seven Mile Lake for the purpose of constructing ice roads for the Intertie Project. Plaintiff Don Kubanyi believed that Cruz employees were trespassing on his Native allotment. Dave Cruz, president of Cruz Construction, and his workers believed that they were working within the permissible bounds of a public access easement. After Mr. Kubanyi threatened members of his crew, Mr. Cruz called the Alaska State Troopers. An altercation between Mr. Kubanyi and the Troopers ensured and Mr. Kubanyi was arrested for assault, disorderly conduct and resisting arrest. It is undisputed that no

---

[6]   See Docket 103, Ex. C-1 at 1.

[7]   Docket 77, Ex. 5.

GVEA employee was present at the Kubanyi allotment at any time on March 1, 2003.[8]

Plaintiffs filed a Complaint seeking damages for trespass and violation of civil rights under 28 U.S.C. § 1983 against Defendants GVEA, Dave Cruz individually and d/b/a Cruz Construction, engineering company Black & Veatch Corp., and two Alaska State Troopers. Plaintiffs did not assert any claim against Global. Black & Veatch and the Troopers have been entirely dismissed from this litigation.

GVEA moved for summary judgment on the grounds that GVEA is not liable for torts committed by the employees of Cruz Construction.[9] Plaintiffs opposed GVEA's motion by presenting four theories of liability under which they alleged that GVEA could be held liable for Cruz Construction's alleged trespass: (1) retention of control, (2) conventional principles of trespass liability, (3) assumption of liability under the State-issued TWUP, and (4) by operation of the Federal Land Planning and Management Act ("FLPMA") and applicable regulations.[10]

The Court granted GVEA's motion for summary judgment on Plaintiffs' § 1983 claims, but denied the motion on Plaintiffs' trespass claims based on language in Condition 10 of the TWUP, the

---

[8] Docket 86 at 46.

[9] Docket 75.

[10] Docket 86 at 31.

ORDER RE MOTIONS AT DOCKETS 75 AND 152 - 5
4:04-CV-0026-RRB

relevant part of which reads: "Permittee is responsible for the actions of contractors, agents, or other persons who perform work to accomplish the approved project, and shall ensure that workers are familiar with the requirements of this authorization."[11]  The Court found that Plaintiffs' third theory based on the TWUP was sufficient to defeat GVEA's summary judgment motion.  The Court, however, did not decide the merits of Plaintiffs' other theories of liability, which remain untouched by subsequent motions.[12]

GVEA filed the present Motion for Summary Judgment on Plaintiffs' claims against GVEA based on the TWUP on the grounds the Court's order at Docket 143 did not decide whether GVEA assumed liability to the State of Alaska only, or directly to Plaintiffs. After reviewing Plaintiffs' Opposition (Docket 226) and GVEA's Reply (Docket 236), the Court required supplemental briefing regarding the interrelationship and legal effect of Conditions 3, 7, and 10 of the TWUP in light of the Alaska Water Use Act and the rules and regulations promulgated thereunder.[13]  Both parties filed supplemental briefing on June 7, 2007.

### III. STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted when there is no genuine

---

[11]   See Docket 143 at 6-9; Docket 77, Ex. 5 at 4.

[12]   See Docket 284 at 2.

[13]   See Alaska Stat. § 46.15.010, et seq.; Docket 284.

dispute as to any material fact and the moving party is entitled to judgment as a matter of law. The moving party has the burden of showing that there is no genuine dispute as to any material fact.[14] The moving party need not present evidence; it need only point out the lack of any genuine dispute as to material fact.[15]

Once the moving party has met this burden, the nonmoving party must set forth evidence of specific facts showing the existence of a genuine issue for trial.[16] All evidence presented by the non-movant must be believed for purposes of summary judgment, and all justifiable inferences must be drawn in favor of the non-movant.[17] However, the nonmoving party may not rest upon mere allegations or denials, but must show that there is sufficient evidence supporting the claimed factual dispute to require a fact-finder to resolve the parties' differing versions of the truth at trial.[18]

---

[14]   Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

[15]   Id. at 323-325.

[16]   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).

[17]   Id. at 255.

[18]   Id. at 248-49.

## IV. DISCUSSION

### A. Law of the Case

Plaintiffs assert that the law of the case doctrine precludes reconsideration of the Court's Order at Docket 143 because the Court "clearly intended" to decide that GVEA is liable under the TWUP.[19] However, denial of a motion for summary judgment does not necessarily establish the "law of the case."[20] Moreover, "every order short of a final decree is subject to reopening at the discretion of the district judge.'"[21] Therefore, the Court reopens its earlier ruling at Docket 143 and addresses GVEA's liability under the TWUP as follows.

### B. GVEA's Liability Under TWUP

DNR issued the TWUP to GVEA pursuant to the Alaska Water Use Act (the "Act"), AS 46.15, and its regulations, which outline a procedure for appropriating water resources of the State of Alaska. The Act's permitting requirements serve to protect the assets of the State and, collectively, the people of the State. However, neither the Act nor its regulations specifically address permittee liability for work performed under the permit.

---

[19] Docket 226 at 5.

[20] Fed. Ins. Co. v. Scarsella Bros., Inc., 931 F.2d 599, 601 n.4 (9th Cir. 1991).

[21] Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 12 & n.14 (1983); see also Fed. R. Civ. P. 54(b); Wright, Miller, & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 4478, at 637, 667-68, 692 (2002).

The regulations authorize the Commissioner of DNR to issue the permit subject to terms, conditions, restrictions, and limitations necessary to "protect the water rights of other persons or to protect fish and wildlife habitat, human health, or other public interests."[22]

GVEA's TWUP contained the several conditions, the meaning of which has become the center of a dispute between Plaintiffs and GVEA.  Condition 3 requires GVEA to:

> Indemnify the State against and hold it harmless from any and all claims, demands, suits, loss, liability and expense for injury to or death of persons and damages to or loss of property arising out of or connected with the exercise of the privileges covered by this permit.[23]

Condition 7 states:

> This authorization does not authorize the permittee to enter upon any lands until proper rights-of-way, easements, or permission documents, from the appropriate landowner have been obtained.[24]

Condition 10 states:

> Permittee is responsible for the actions of contractors, agents, or other persons who perform work to accomplish the approved project, and shall ensure that workers are familiar with the requirements of this authorization.  For any activity that significantly deviates from the approved

---

[22] See Alaska Stat. §§ 46.15.100, .155(f), .120.

[23] Docket 77, Ex. 5 at 3.

[24] Id., Ex. 5 at 4.

> project during its sitting, construction, or operation, the permittee is required to contact the Water Resources Section to obtain approval before beginning the activity.[25]

Plaintiffs argue that they are third-party beneficiaries to these conditions even though the TWUP, which is a contract between the State of Alaska and GVEA, does not mention Plaintiffs or their Native allotment.[26]

According to Plaintiffs, Conditions 3, 7, and 10, define a broad class of beneficiaries in which they are included.[27] However, Condition 3 is clearly an indemnity provision which only contemplates benefitting the State of Alaska and makes no explicit mention of third-parties. Condition 7 is express limit on the authority granted by the TWUP which would prevent GVEA from invoking the TWUP as a shield against a third-party's trespass claim, but does not create a remedy for trespass to land of a third party. Condition 10 extends GVEA's obligation to indemnify the State to include the actions of independent contractors, agents, and other persons working on the project. Read in context, these conditions protect the State from liability which might stem from

---

[25] Id.

[26] Docket 298 at 5-6; Syndoulos Lutheran Church v. A.R.C. Indus., 662 P.2d 109, 114 (Alaska 1983) (recognizing the rights of a third-party beneficiary to enforce the terms of a contract entered into for his benefit, notwithstanding the fact that the third party is not named specifically in the contract).

[27] Docket 298 at 6.

its grant of a permit to a private entity.  These conditions also protect the waters of Alaska and the environment and ensure that the use of water resources is consistent with the public good. Plaintiffs are not third-party beneficiaries of these conditions any more than any other member of the general public.

Moreover, all enforcement powers for violation of the Act set forth in Title 11, Chapter 93 of the Alaska Administrative Code, sections 270 through 290, belong to the Commissioner only.[28] Plaintiff has not identified, and the Court has not found, any provision in Alaska's water permitting scheme which creates a private right of action for Plaintiffs.  Furthermore, there is no evidence to suggest that Alaska's legislature intended to confer the state's rights of permit enforcement on private parties acting in their own interest.  The Court will not engraft a remedy onto a statute that the legislature did not intend to provide.[29]

Plaintiffs have no private remedy under the TWUP. Accordingly, GVEA's Motion for Summary Judgment at Docket 152 is granted.

**C.   Plaintiffs' Other Theories of Liability**

Plaintiffs previously set forth four theories of liability under which they alleged that GVEA could be held liable for Cruz Construction's alleged trespass.  Because the Court found

---

[28]   See 11 Alaska Admin. Code § 93.270-290.

[29]   See California v. Sierra Club, 451 U.S. 287, 297 (1981).

that Plaintiffs' theory based on the TWUP was sufficient to defeat summary judgment, the Court did not decide the merits of Plaintiffs' other theories of liability.[30]

Plaintiffs request that if the Court holds that GVEA is not liable under the TWUP, the Court should consider Plaintiffs' other theories of liability.[31] The Court agrees. The Court refers to the parties' earlier briefing on these theories, including GVEA's original Motion for Summary Judgment at Docket 75, Plaintiffs' Opposition at Docket 86, and GVEA's Reply at Docket 103, and addresses Plaintiffs' remaining theories as follows:

### 1.   Retention of Control

"The general rule is that the employer of an independent contractor is not responsible for the negligence of the contractor. This rule is said to be based on the fact that the employer of an independent contractor has no control over the prosecution of the work and that it would be unjust to hold him liable for the torts of another whom he cannot direct."[32]

Alaska courts have not dealt specifically with trespass committed by a subcontractor.  GVEA points to case law from other

---

[30]   Docket 143 at 9.

[31]   Docket 226 at 10-11.

[32]   _Matanuska Electric Ass'n, Inc. v. Johnson_, 386 P.2d 698, 699 (Alaska 1963).

jurisdictions which have applied the general rule.[33] In Maine, for example, a party can be liable for an independent contractor's trespass "if the trespass was authorized as part of the contract, or was the natural result of the work contracted to be done, or the trespass was somehow directed or part of a common purpose, or the trespass was ratified."[34] Hence, the Maine Supreme Court reversed judgment against an employer because the independent contractor was neither directed nor authorized to trespass, but rather "was acting for its own benefit at its own expense."[35] Additionally, the Nebraska Supreme Court has held that whether a party directed or authorized the independent contractor's trespass, or retained control of the work, was a question of material fact to be resolved at trial.[36]

The Court observes that the terms of the contract between GVEA and Global appears to cede control to Global,[37] and that Mr. Cruz testified that he reported directly to, and took his orders

---

[33]  See Docket 75 at 7 (citing Crnkovich v. Scaletta, 277 N.W.2d 416 (Neb. 1979) and Bonk v. McPherson, 605 A.2d 74 (Maine 1992)).

[34]  Bonk, 605 A.2d at 79 (citations omitted).

[35]  Id.

[36]  Crnkovich, 277 N.W.2d at 420.

[37]  Docket 77 at 5-6, & Ex. A.

from Global.[38]  Nevertheless, Cruz was GVEA's sub-subcontractor through Global and direct subcontractor for at least part of 2002.[39] GVEA obtained the TWUP which listed the permitted water sources, including Seven Mile Lake.  GVEA representatives regularly attended weekly project meetings.

Accepting GVEA's proposed authority, the Court holds that there are genuine issues of material fact as to whether GVEA exercised sufficient control over Cruz's activities to incur liability.  At a minimum, a reasonable jury could conclude that GVEA ratified Cruz's chosen path and that the trespass, if established, "was the natural result of the work contracted to be done",[40] or was "part of a common purpose",[41] rather than "for [Cruz's] own benefit."[42]

Because such a determination is inherently bound up in questions of fact, GVEA's Motion for Summary Judgment on Plaintiffs' theory that GVEA is liable for trespass through its retention of control must be denied.

---

[38]   Docket 57, Ex. 7 at 5-6.

[39]   Docket 86, at 6 & Ex. 3 at 1; Docket 103 at 10.

[40]   Bonk, 605 A.2d at 79.

[41]   Id.

[42]   Crnkovich, 277 N.W.2d at 420.

### 2. Conventional Principles of Trespass Liability

GVEA and Plaintiffs agree that the rule applicable to this case is supplied by the Restatement (Second) of Torts, section 427(B): "One who employs an independent contractor to do work which the employer knows or has reason to know to be likely to involve a trespass upon the land of another . . . is subject to liability for harm resulting to others from such trespass . . . ."[43]

Plaintiffs argue that GVEA knew or should have known that Cruz's use of the TWUP would involve a trespass on the Kubanyi allotment. Don Kubanyi had provided a map of the allotment's location during planning/scooping hearings to GVEA's Project manager, Greg Wyman.[44] Plaintiffs also assert that Cruz advised GVEA during the weekly planning meeting that it was mobilizing to Seven Mile Lake.[45] Additionally, Wayne Walters, a former Nenana policeman hired as a safety officer on the GVEA project, met with Don Kubanyi and advised him that the construction project planned to pump water from Seven Mile Lake.[46] In that conversation, Don

---

[43]   See Docket 86 at 33 and Docket 103 at 12.

[44]   Docket 86 at 7, 34, & Ex. 4, ¶ 14.

[45]   Id. at 32, & Ex. 3, at 72:11-73-10.

[46]   Id. at 7, & Ex. 5 at 13:5-19, 39:1-5, 52:20-22.

Kubanyi objected to the plan because it would involve trespassing on the Kubanyi allotment.[47]

Whether a trespass occurred is an open dispute of fact which must be resolved by a trial on the merits. If a trespass in fact occurred, there exists sufficient evidence from which a reasonable jury could conclude that GVEA knew or had reason know that Cruz's plans at Seven Mile Lake would constitute a trespass.

Accordingly, GVEA's Motion for Summary Judgment at Docket 75 is denied with respect to Plaintiffs' theory that GVEA is liable under conventional principles of trespass liability for Cruz's alleged trespass to Plaintiffs' property.

### 3. Federal Land Planning and Management Act

Plaintiffs argue that FLPMA and its regulations impose upon GVEA liability for trespass against third parties because the FLPMA Permit incorporates by reference provisions of Title 43 of the Code of Federal Regulations, Part 2800. Included therein is section 2807.12 which addresses the question "If I hold a grant, for what am I liable?" as follows:

> If you hold a grant, you are liable to the United States and to third parties for any damage or injury they incur in connection with your use and occupancy of the right-of-way.[48]

---

[47] Id.

[48] 43 C.F.R. 2807.12.

This provision limits the permittee from attempting to use the FLPMA Permit as a shield to avoid liability to third parties for damage or injury caused by a permittee. Other regulations incorporated by reference in the FLPMA Permit expressly deal with trespass,[49] however, they only establish BLM's enforcement authority as to trespass on public lands and do not create a private remedy for trespass to Plaintiffs' Native allotment.

Accordingly, GVEA's Motion for Summary Judgment at Docket 75 is granted with respect to Plaintiffs' theory that GVEA is liable under the FLPMA Permit.

## V. CONCLUSION

For the reasons stated herein, GVEA's Motion at Docket 152 is **GRANTED**. GVEA's Motion at Docket 75 is **PARTIALLY GRANTED** as to Plaintiff's theory that GVEA is liable under the FLPMA Permit, and **PARTIALLY DENIED** as to Plaintiffs' theories that GVEA is liable by retention of control and under conventional principles of trespass liability. This matter shall proceed in due course.

**IT IS SO ORDERED**

ENTERED this 13th day of August, 2007.

S/RALPH R. BEISTLINE
UNITED STATES DISTRICT JUDGE

---

[49] See 43 C.F.R. §§ 2808.10-.12.