Borgeson & Burns, PC
100 Cushman Street, Suite 311
Fairbanks, AK  99701
(907) 452-1666
(907) 456-5055 – Facsimile

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| Don M. Kubanyi, Jimmy Kubanyi, Aileen Welton, Elizabeth Tuzroyluk, Doris Kubanyi, Victor Kubanyi, Bobby Kubanyi, Arlette Kubanyi and, Brian Baggett, <br><br>　　　　　　　　　Plaintiffs, <br><br>　　　vs. <br><br>Golden Valley Electric Association, Dave Cruz, individually and d/b/a Cruz Construction <br><br>　　　　　　　　　Defendants. | Case No. F04-0026 Civil |

**DEFENDANT GVEA'S TRIAL BRIEF**

Defendant Golden Valley Electric Association (GVEA), pursuant to this Court's Pretrial Order, and Local Rule 39.2, hereby submits this Pretrial Memorandum.

**I.　PARTIES**

This case involves trespass claims against Defendant GVEA by eight siblings, Plaintiffs Don Kubanyi, Jimmy Kubanyi, Aileen Welton, Elizabeth Tuzroyluk, Doris Kubanyi, Victor Kubanyi, Bobby Kubanyi, and Arlette Kubanyi.  The Plaintiffs all own a 1/8 undivided interest in a Native allotment bisected by a dedicated public

easement, the Rex Trail, which abuts Seven Mile Lake.  On March 1, 2003, Cruz Construction (Cruz) workers, who were subcontractors of GVEA's general contractor, Global Power and Communications, LLP, were pumping water near the south end of Seven Mile Lake to construct ice roads for the Northern Intertie Transmission Line Project.  Plaintiffs believed that the Cruz workers were trespassing on their Native allotment.  Cruz workers believed they were working within the permissible bounds of the Rex Trail public access easement.  The Plaintiffs assert that GVEA is liable for Cruz's trespass because (1) GVEA retained sufficient control over Cruz's actions; and/or (2) GVEA knew or should have known that Cruz's work would involve a trespass.

GVEA has asserted counterclaims against all above-named Plaintiffs and Brian Baggett for wrongful interference with a right-of-way easement and interference with GVEA's prospective business advantage.  Mr. Baggett is no longer a Plaintiff because he accepted an offer of judgment from GVEA; however, he remains a Defendant to GVEA's counterclaims because he would not agree to a mutual release.

According to Plaintiffs' own realty experts, trespass damages are measured by the physical damage to the property in question, and in some cases, the lease value of the property in question.  GVEA's damages are measured by the additional costs incurred by GVEA in response to Plaintiffs' criminal actions and tortious interference with Cruz' legal access to Seven Mile Lake, namely paying Cruz an

additional $131,000 for costs incurred by having to move water pumping operations from Seven Mile Lake to Fish Creek.

## II. DESIGNATION OF APPROPRIATE PLEADINGS AND ANY PRETRIAL RULINGS BY DOCKET NUMBER

### A. Orders at Dockets 305 and 306

In Orders issued August 13, 2007 at Dockets 305 and 306, the Court granted summary judgment dismissing Plaintiffs' theories of liability against GVEA based on the State-issued Temporary Water Use Permit ("TWUP"), and the Federal Land Planning and Management Act ("FLPMA") and applicable regulations. As a result of this Order, since no employee of GVEA is alleged to have trespassed on the Plaintiffs' property, GVEA is only potentially liable for Cruz's actions if it can first be proved that Cruz committed a trespass, and (1) GVEA retained sufficient control over Cruz's actions such that liability should be imposed on GVEA; and/or (2) GVEA is found liable under conventional principles of trespass liability consistent with the Restatement of Torts §427(b).

#### 1. Retention of Control

In the August 13, 2007 Order, the Court issued the following findings:

> The general rule is that the employer of an independent contractor is not responsible for the negligence of the contractor. This rule is said to be based on the fact that the employer of an independent contractor has no control over the prosecution of the work and that it would be unjust to

hold him liable for the torts of another whom he cannot direct.[1]

Alaska courts have not dealt specifically with trespass committed by a subcontractor. GVEA points to case law from other jurisdictions which have applied the general rule.[2] In Maine, for example, a party can be liable for an independent contractor's trespass "if the trespass was authorized as part of the contract, or was the natural result of the work contracted to be done, or the trespass was somehow directed or part of a common purpose, or the trespass was ratified."[3] Hence, the Maine Supreme Court reversed judgment against an employer because the independent contractor was neither directed nor authorized to trespass, but rather "was acting for its own benefit at its own expense."[4] Additionally, the Nebraska Supreme Court has held that whether a party directed or authorized the independent contractor's trespass, or retained control of the work, was a question of material fact to be resolved at trial.[5]

The Court observes that the terms of the contract between GVEA and Global appears to cede control to Global,[6] and that Mr. Cruz testified that he reported directly to, and took his orders from Global.[7] Nevertheless, Cruz was GVEA's sub-contractor through Global for at least part of 2002.[8] GVEA obtained the TWUP which listed the permitted water sources, including Seven Mile Lake. GVEA representatives regularly attended weekly project meetings.

Accepting GVEA's proposed authority, the Court holds that there are genuine issues of material fact as to whether GVEA exercised sufficient control over Cruz's activities to incur liability. At a minimum, a reasonable jury could conclude that GVEA ratified Cruz's chosen path and that the

---

[1] *Matanuska Electric Ass'n, Inc. v. Johnson*, 386 P.2d 698, 699 (Alaska 1963).
[2] See GVEA's previous Mot. For Summ. J. at 7 (citing *Crnkovich v. Scaletta*, 277 N.W.2d 416 (Neb. 1979); *Bonk v. McPherson*, 605 A.2d 74 (Maine 1992)).
[3] *Bonk*, 605 A.2d at 79 (citations omitted).
[4] *Id.*
[5] *Crnkovich*, 277 N.W.2d at 420.
[6] Docket 77 at 5-6, & Ex. A.
[7] Docket 57, Ex. 7 at 5-6.
[8] Docket 86, at 6 & Ex. 3 at 1; Docket 103 at 10.

trespass, if established, "was the natural result of the work contracted to be done,"[9] or was "part of a common purpose,"[10] rather than "for [Cruz's] own benefit."[11]

Because such a determination is inherently bound up in questions of fact, GVEA's Motion for Summary Judgment on Plaintiffs' theory that GVEA is liable for trespass through its retention of control must be denied.

### 2.   Conventional Principles of Trespass Liability

GVEA and Plaintiffs agree that the rule applicable to this case is supplied by the Restatement (Second) of Torts, §427(B):  "One who employs an independent contractor to do work which the employer knows or has reason to know to be likely to involve a trespass upon the land of another…is subject to liability for harm resulting to others from such trespass…"[12]  This Court previously held:

> Plaintiffs argue that GVEA knew or should have known that Cruz's use of the TWUP would involve a trespass on the Kubanyi allotment.  Don Kubanyi had provided a map of the allotment's location during planning/scooping hearings to GVEA's Project manager, Greg Wyman.[13]  Plaintiffs also assert that Cruz advised GVEA during the weekly planning meeting that it was mobilizing to Seven Mile Lake.[14]  Additionally, Wayne Walters, a former Nenana policeman hired as a safety officer on the GVEA project, met with Don Kubanyi and advised him that the construction project planned to pump water from Seven Mile Lake.[15]  In that conversation, Don Kubanyi objected to the plan because it would involve trespassing on the Kubanyi allotment.[16]

---

[9] *Bonk*, 605 A.2d at 79.
[10] *Id.*
[11] *Crnkovich*, 277 N.W.2d at 420.
[12] See Docket 86 at 33 & Docket 103 at 12
[13] Docket 86 at 7, 34 & Ex. 4, ¶ 14
[14] Id. at 32, & Ex. 3, at 72:11-73-10
[15] Id. at 7, & Ex. 5 at 13:5-19, 39:1-5, 52:20-22
[16] Id.

> Whether a trespass occurred is an open dispute of fact which must be resolved by a trial on the merits. If a trespass in fact occurred, there exists sufficient evidence from which a reasonable jury could conclude that GVEA knew, or had reason to know, that Cruz's plans at Seven Mile Lake would constitute a trespass.
>
> Accordingly, GVEA's Motion for Summary Judgment at Docket 75 is denied with respect to Plaintiffs' theory that GVEA is liable under conventional principles of trespass liability for Cruz's alleged trespass to Plaintiffs' property.

### B. Orders Regarding Dockets 75, 152, and 170

At Docket 280, the court denied Plaintiffs' Motion for Summary Judgment and on GVEA's counterclaims, and at Docket 281, the court issued Orders regarding motions at Dockets 248, 253 and 261. At Docket 287, the court entered an Order regarding Motions to Dismiss at Dockets 221 and 234.

GVEA believes that the above court Orders appropriately identify the remaining issues for trial, and inherently provide limits for each party to observe with regards to presentation of evidence, jury instructions, exhibits, and the special verdict form.

### III. SUMMARY OF ANTICIPATED EVIDENCE ON LIABILITY AND DAMAGES ORGANIZED BY CLAIM

### A. Trespass

Liability on the trespass claim hinges on the competing testimony of two surveyors. Eric Stahlke, Plaintiffs' surveyor, will testify that Cruz employees necessarily entered the Kubanyi allotment when passing from the Rex Trail to the

ordinary high water mark (OHM) of Seven Mile Lake. GVEA's surveyor, Pat Kalen, will testify that the center line of the Rex Trail is actually located below the ordinary high water mark of Seven Mile Lake, and therefore there is no allotment land between the Rex trail and Seven Mile Lake at the point of the Cruz employees' entry regardless of whether the width of the easement is 50, 100 or 200 feet. Mr. Kalen will also testify that any raised land between the trail and the lake are properly categorized as "islands" located inside the ordinary high water mark of the State-owned Seven Mile Lake.

In addition to the surveyor's ultimate opinions, there will be significant OHM evidence presented concerning whether the Rex Trail RS 2477 easement has a total width of 50 feet or 50 feet from center line (for a total of 100 feet in width), or whether 25 USC §313, creates a 200 ft. easement for the Rex Trail. If the federal law applies, it would require a directed verdict or a jury verdict of no trespass, even if Mr. Stahlke's opinion is adopted by the jury. The parties have briefed the issue of the Rex Trail width on several occasions throughout this litigation, most recently at Dockets 312 and 327, when Plaintiffs advocated for a minimum width of 50 feet from centerline, and GVEA asserted that the Trail width could extend up to 300 feet total if the easement was created for railroad purposes. Since the Rex Trail started as a survey cut for a railroad connection from the Parks Highway, this federal statute is controlling (despite Plaintiffs' withdrawing their Motion in Limine).

The remainder of evidence concerning liability will involve the above trespass theories as identified by this court at Docket 305 and 306. GVEA will introduce

evidence that Cruz was an independent contractor hired by the general contractor, Global Power Communications, Inc., to build an ice road on the Rex Trail.  Any "control" over this independent contractor was exercised by Global through its contract with Cruz and not by GVEA in its role as owner of the project.  This Court has previously observed that the terms of the contract between GVEA and Global appears to cede control (Docket 77 at 5-6 & Exhibit A), and that Mr. Cruz himself testified that he reported directly to, and took his orders from, Global.  (Docket 57, Exhibit 7 @ 5-6).

Accordingly, the jury in this case must first decide whether there was a trespass.  If not, they must decide GVEA's counterclaims.  If the jury finds a trespass, they must determine who is liable for the trespass, 1) Cruz (a named and settled party), 2) Global, or 3) GVEA.  GVEA's evidence will focus on showing that if a trespass occurred, it was done solely by Cruz who should bear full liability.  If any liability based on independent contractor theories is assessed by a jury, it should be against Global, the entity that actually exerted control over Cruz and who had undertaken responsibility for Cruz' actions, both in contract and at common law.

In summary, GVEA will present evidence that there was no trespass, and if there was a trespass, GVEA is not responsible under either of the two remaining theories that remain.  The Restatement (Second) of Torts, §414 and §427(b), offer helpful guidance to the Court and the parties toward identifying relevant evidence

and formulating appropriate jury instructions on the independent contractor theories of liability.[17]

### B.   Trespass Damage Evidence

GVEA intends to present the testimony of real estate valuation experts, Hans Axelson and Paul Mayo.  The Plaintiffs have admitted that Cruz' activities did not damage the land in question, and no Plaintiffs are claiming interference with subsistence activities or other personal damages.  Mr. Axelson's expert opinion will be that damages for trespass to land are measured by the value of the property before the trespass, and the value of the property after the trespass.  If no actual damages can be shown, then only nominal damages may be awarded.  Mr. Mayo will provide evidence, consistent with his prior deposition, that the lease value of analogous properties would be $500 or less.

Plaintiffs are expected to introduce evidence on damages through their retained expert, Mark Sherman.  The admissibility of Mr. Sherman's damage

---

[17] *See also Hobbs v. Mobil Oil Corp.*, 445 P.2d 933 (Alaska 1968); *Morris v. City of Soldotna.* 553 P.2d 474 (Alaska 1976).  Restatement (Second) of Torts § 414 provides: One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care. Comment C to the foregoing section states: In order for the rule stated in this Section to apply, the employer must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way.

testimony is still under consideration by this court.  At Docket 307, this court delayed ruling on the admissibility of Mr. Sherman's testimony while commenting "it is unclear how evidence of 'motive' is probative of Plaintiffs' trespass claims against GVEA and Cruz Construction.  Moreover, Plaintiffs' proposed measure of damages based on 'financial benefit received,' does not find support in Alaska's law of trespass. The Court, however, will refrain from ruling on GVEA's motion to exclude testimony and report of Plaintiffs' expert, Mark Sherman, until closer to trial." (Order at Docket 307).  Without Sherman's testimony, the only evidence before the jury regarding trespass damages, will be either nominal damages ($1), according to Mr. Axelson, or $500, according to Mr. Mayo.  Either amount would be divided among all eight land owners consistent with their undivided 1/8 ownership of the property.

Evidence concerning the Plaintiffs' remaining claims necessarily will involve educating the jury about Cruz' settlement.  Dave Cruz is a subpoenaed trial witness, as is at least one of his employees.  The jury must be educated regarding the various legal, contractual, and financial relationships between Cruz, Global, and GVEA.  They also must be advised why Cruz is not present at trial, yet still available for fault-allocation purposes.  While GVEA does not believe it is appropriate for the court (or the parties through their witnesses), to inform the jury concerning the actual amount of settlement, the fact that Cruz paid some amount of money to the Plaintiffs in exchange for dismissal of Plaintiffs' claims against them, should become a part of trial.  If the jury awards any damages against GVEA, for the actions of Cruz, under any of the theories outlined above, then it will be the court's responsibility to make

appropriate deductions to the verdict for Cruz' settlement, so as to avoid a double recovery.  In other words, the damages awarded by the jury must exceed $50,000 (the amount of the Cruz settlement) before GVEA faces any monetary liability to the Plaintiffs.

## IV. SUMMARY OF EVIDENCE ON LIABILITY AND DAMAGES FOR GVEA's COUNTERCLAIMS

In this case, it is undisputed that the Rex Trail easement running through Plaintiffs' property is an express easement dedicated to public use.[18]  GVEA claims that Plaintiffs intentionally interfered with GVEA's use of the easement.  As a member of the public GVEA is entitled to full enjoyment of the easement, and those easement rights are paramount to those of the Plaintiffs.[19]  GVEA is not required to obtain permission from the Plaintiffs to do what they are already legally entitled to do.[20]

Although the easement crosses Plaintiffs' property, they ordinarily have no duty to do any positive act with respect to the maintenance or repair of an easement, but they are required to refrain from unlawfully and unreasonably interfering with or obstructing the easement.[21]  What constitutes unreasonable interference depends on consideration of the disadvantage to GVEA and/or its contractors.[22]  Whether an

---

[18] The Rex Trail is an RS 2477 right-of-way designated under 43 U.S.C. § 932.  See Price v. Eastham, 75 P.3d 1051, 1055 (Alaska 2003).
[19] See 28A C.J.S. Easements § 224.
[20] Id.
[21] 25 Am.Jur. 2d Easements and Licenses § 86.
[22] Id.

interference is substantial depends upon whether the Plaintiffs' conduct deprived GVEA of a degree of use to which they were entitled to by the easement.[23]

In addition, GVEA asserts that the Plaintiffs intentionally interfered with the prospective business advantage and contract relations between GVEA, Global and Cruz. GVEA had a valid agreement with Global, and Global with Cruz that Plaintiffs unjustifiably interfered with, resulting in damages exceeding $131,000, the cost incurred by Cruz for having to relocate to Fish Creek.

As the court previously noted in its order at Docket 231, the Plaintiffs have already admitted all essential elements of fact supporting GVEA's counterclaims. (See Docket 120, paragraphs 24, 28, 38 and 46, and Docket 205, paragraphs 24, 28, 38 and 46). Given these admissions, a finding of no trespass should require a directed verdict on GVEA's counterclaims. At trial, GVEA will simply introduce Plaintiffs' admissions as to liability, and present testimony of GVEA officials, and Dave Cruz himself as to the additional costs incurred by the forced relocation to Fish Creek. Plaintiffs agree that the relocation to Fish Creek caused GVEA to pay additional money, yet they have tried to shift GVEA's damages into their own damages through a dubious theory advanced by Mark Sherman. Again, the court is still considering whether to allow Mr. Sherman to espouse a damages theory wholly unsupported by law.

[23] 100 Am.Jur. Trials 337.

## V.   SUMMARY OF WHAT IS LIKELY TO BE MOST AT ISSUE

Whether the Rex Trail right-of-way (measured at 50 feet, 100 feet, or 200 feet) is below or within the ordinary high water mark of Seven Mile Lake is determinative of whether a trespass occurred.  If the Rex Trail is below or within the OHM, judgment for GVEA is appropriate.  If the Rex Trail is above the OHM, Cruz trespassed, and the jury needs to decide whether to award $1 (under Axelson's opinion), or $500 (under Mayo's opinion).  Then the jury must decide whether to assess this award against Cruz, Global, or GVEA.

If a trespass occurred, then GVEA cannot prevail on its counterclaims.

If no trespass occurred, then the jury must find in favor of GVEA's counterclaims and award damages jointly and severally against the nine counter-claimed Defendants.

## VI.   SUMMARY OF ISSUES LIKELY TO ARISE REGARDING EVIDENCE

Plaintiffs have repeatedly stated that they expect at least a two-week trial.  GVEA cannot imagine this case lasting longer than 5 days.  The issue most prone to evidentiary disputes concerns the proper width of the Rex Trail.  There are various documents, expert opinions, and state and federal statutes that demonstrate a wide spread disagreement as to the actual width of the Rex Trail right-of-way as it crosses the Plaintiffs' allotment.  Plaintiffs can be expected to vigorously advocate for the admission of evidence that supports a 50-foot easement, and GVEA will advocate for admission of evidence that supports a 100 or 200-foot easement.  GVEA believes that the court should issue a pre-trial ruling that the minimum width

of the Rex Trail is 100 feet consistent with the State of Alaska's definition of a "highway" under AS 19.10.015(a), but could be 200 or 300 feet under 25 USC §313. It can be anticipated that the Plaintiffs will launch various objections to the testimony of Hans Axelson and Paul Mayo, and that the Plaintiffs will also raise various obscure legal objections related to federal Indian law pre-emption, and other issues raised, but never fully articulated by the Plaintiffs.

Another issue of evidentiary concern to GVEA is whether all the Plaintiffs will be required to appear at trial and testify. While GVEA does not want to subpoena the Plaintiffs, if the Plaintiffs themselves (or some of them) are not planning on attending their own trial, GVEA should be forewarned. To avoid the appellate issues this tactic caused in *Blood v. Kenneth A. Murray Insurance, Inc.*, 151 P.3d 428 (Alaska, 2006), Plaintiffs should be required to clarify, pre-trial, whether they plan on attending.

Plaintiffs have also repeatedly attacked Pat Kalen's expert report. Since Kalen's opinion as to the ordinary high water mark of Seven Mile Lake overlapping the Rex Trail right-of-way is so critical to the outcome of this case, Plaintiffs can be expected to raise various evidentiary objections in an effort to prevent, dilute, or confuse Mr. Kalen's testimony in the minds of the jury. Because of the liberal evidentiary rules regarding the testimony of experts, and because this Court has already rejected Plaintiffs' pre-trial Daubert motion to exclude Kalen's testimony, the court should be able to swiftly deny Plaintiffs' anticipated objections.

With respect to Plaintiffs' damage expert, Mark Sherman, again, the court has previously expressed serious reservations about the admissibility of Mr. Sherman's novel opinions. A pre-trial order limiting the subjects Mr. Sherman may address would reduce evidentiary issues during trial, and would be efficient for both the court and the parties.

GVEA expects to call Trooper Jake Covey, Dave Cruz, and Cruz employee Chris Faeo, to testify concerning Don Kubanyi's actions precipitating this lawsuit. While Plaintiffs may object, GVEA considers such evidence to be critically important as a factual backdrop to the trespass claims. This evidence also supports the counter claims, namely the decision to depart the lake and incur additional expenses.

## CONCLUSION

This is a simple case about whether an independent contractor on a construction project trespassed on private property, and if so, whether the owner of the project can be financially liable. GVEA will attempt to stay focused on legitimate legal and factual issues in an effort to efficiently move this case to conclusion.

DATED this 4th day of June, 2008.

s/Cory R. Borgeson
100 Cushman Street, Suite 311
Fairbanks, AK  99701
(907) 452-1666
Fax: (907) 456-5055
Email: cborgeson@bnblaw.com
ABA # 8405009

Certificate of Service

I hereby certify that on the 4th day of June, a copy of the foregoing document was served electronically on:

Michael Walleri

F:\303869\286\00017718.DOC