Borgeson & Burns, PC
100 Cushman Street, Suite 311
Fairbanks, AK 99701
(907) 452-1666
(907) 456-5055 – facsimile

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| Don M. Kubanyi, Jimmy Kubanyi, <br> Aileen Welton, Elizabeth Tuzroyluk <br> Doris Kubanyi, Victor Kubanyi, <br> Bobby Kubanyi, Arlette Kubanyi and, <br> Brian Baggett, <br><br>                Plaintiffs, <br><br>    vs. <br><br> Golden Valley Electric Association, <br><br>                Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

Case No. F04-0026 CIV

## DEFENDANT GVEA'S REVISED PROPOSED JURY INSTRUCTIONS

Defendant, Golden Valley Electric Association (GVEA), through counsel, submits the following proposed jury instructions.

Jury Instruction No._____

INTRODUCTION

In 2001, Golden Valley Electric Association (GVEA) solicited bids from construction contractors to construct the Northern Intertie Transmission Line Project located between Healy and Fairbanks. Global Power and Communications, Inc. (Global) entered into a contract with GVEA to be the primary contractor of the Project. As an independent contractor, Global was able to choose the method and means of completing the project. The contract allowed Global to hire subcontractors to assist with performing the construction of the Project. On December 3, 2001, Global hired Cruz Construction as an independent contractor to construct ice roads during the construction of the Project. This case arises from an alleged trespass upon Plaintiffs' property by Cruz Construction, Inc. that occurred during the construction of the ice road on the Rex Trail.

Jury Instruction No.\_\_\_\_
Release of One or More Co-Tortfeasors or Plaintiffs[1]


Cruz, Global, Dryden and LaRue, and Black & Veatch are not currently parties to this lawsuit. Nonetheless, you are required to determine the percentage of fault, if any, of the absent parties named above whose fault contributed in whole or in part to the injuries claimed by the plaintiffs. You will be required on the special verdict form you will be given in this case to answer certain questions about the absent parties. You are to answer these questions on the basis of the evidence presented to you in this trial and in accordance with the instructions I have given you explaining trespass and liability theories.

The absence of any party is not evidence of fault and shall not be in any way the basis of your verdict in this case.

---

[1] Alaska Civil Pattern Jury Instruction No. 03.12. See also AS 09.17.080.

Jury Instruction No._____

TRESPASS AND NUISANCE – INTRODUCTORY COMMENT[2]

A trespass is an intrusion onto land possessed by another without consent or other privilege.  Trespass includes not only entry onto land, but also remaining on land, or causing a third person or thing to enter or remain.[3]

At common law, harm was inferred from every direct entry on land belonging to someone else.  In <u>Wernberg v. Matanuska Elec. Ass'n.,</u>[4] the Alaska Supreme Court rejected the common law rule in favor of the more modern approach taken by § 165 and 166 of the Restatement (Second) of Torts (1965).  Under the Restatement, liability and damages are determined by the character of the entry.

If an entry was intentional, the trespasser is liable for damages regardless of whether the entry caused harm.  See <u>id.</u> at § 158 & 165 Comment b.  However, if the entry was the result of negligent or reckless conduct or an abnormally dangerous activity, there is no liability in the absence of actual harm.  See <u>id.</u> at § 165.  Accidental entry does not give rise to liability for trespass even if the entry results in actual harm.  See <u>id.</u> at § 166.

A person who intentionally enters someone else's property commits an intentional trespass and is liable even if the person mistakenly believed he or she had a right to be on the property.[5]

Diminution in value is the generally recognized measure of damages for any harm to real property caused by a trespass.[6]  However, a defendant may elect to recover restoration costs in certain circumstances,[7] particularly where the harm to the real property is temporary.[8]

---

[2] Alaska Civil Pattern Jury Instruction No. 13.00.

[3] <u>See</u> Restatement (Second) of Torts § 159-161 (1965).

[4] 494 P.2d 790, 793 (Alaska 1972).

[5] <u>Brown Jug, Inc. v. Int'l Bhd. of Teamsters</u>, 688 P.2d 932, 938 (Alaska 1984).

[6] <u>See</u> <u>Andersen v. Edwards</u>, 625 P.2d 282, 289 (Alaska 1981).

[7] <u>Id.</u> at 288-89; <u>G & A Contractors, Inc. v. Alaska Greenhouses, Inc.</u>, 517 P.2d 1379 (Alaska 1974).

[8] <u>G & A Contractors, Inc. v. Alaska Greenhouses, Inc.</u>, 517 P.2d at 1386 (court upheld award of restoration damages because harm to the land was not "fixed and irreparable").

The Restatement explains the difference between trespass and private nuisance as follows:

> A trespass is an invasion of the interest in the exclusive possession of land, as by entry upon it.  A nuisance is an interference with the interest in the private use and enjoyment of the land, and does not require interference with the possession.

Id. at § 821D Comment d (citations omitted).

AS 09.45.230 allows a "person to bring a civil action to enjoin or abate a private nuisance" and to receive damages.  Injunction and abatement are traditionally equity matters for the court to decide.  It is only when damages are claimed, as in this case, that the case goes to the jury.

AS 09.45.255 defines nuisance as ". . . a substantial and unreasonable interference with the use or enjoyment of real property, including water."  The statute does not give any guidance as to what constitutes substantial or unreasonable interference.

The Restatement requires "significant harm, of a kind that would be suffered by a normal person in the community or by property in normal condition and used for a normal purpose."  Restatement (Second) of Torts § 821F (1979).

The Restatement describes "significant harm" as ". . . harm of importance, involving more than slight inconvenience or petty annoyance."  Restatement (Second) of Torts § 821F, Comment c (1979).  There must be "a real and appreciable invasion of the plaintiff's interests . . . ."  Restatement (Second) of Torts § 821F, comment c (1979).

According to the Restatement, whether an interference is unreasonable is determined by use of a balancing test: if the gravity of the harm outweighs the utility of the conduct, the invasion is unreasonable.  Restatement (Second) of Torts § 826 (1979).

Alaska's nuisance statutes identify certain public nuisances, but do not define the elements of a cause of action for public nuisance.  At common law, "the same act or structure may be a public nuisance, also a private nuisance as to a person who is thereby caused a special injury other than that inflicted upon the general public."  Snyder v. Kelter, 4 Alaska 447 (Alaska 1912).

The Restatement explains recovery of private damages from public nuisance as follows:

> The private individual can recover in tort for a public nuisance only if he has suffered harm of a different kind from that suffered by other persons exercising the same common right. It is not enough that he has suffered the same kind of harm or interference to a greater extent or degree.

Restatement (Second) of Torts § 821C, Comment b (1979).

In addition to the requirement that the plaintiff have suffered an injury different from that suffered by the public, the plaintiff must have suffered the injury in the exercise of a public or common right.  Maier v. Ketchikan, 403 P.2d 34, 38 (Alaska 1965).  "A public right is one common to all members of the general public."  Restatement (Second) of Torts § 821B, Comment g (1979).

The Alaska Statutes identify some specific public nuisances.  See, e.g., as follows: AS 03.05.050 (agricultural or fishing products); 03.30.030 (wire fences); 09.50.170-.240 (bawdy houses); 16.05.800 (fishing equipment); 16.05.880 (construction in specified waters); 19.25.150 (advertising signs); and 19.27.060-.080 (junk yards).  These statutes may eliminate the necessity of proving one or more of the elements of a cause of action for public nuisance.

A person may suffer a nuisance that is both public and private:

> When the nuisance, in addition to interfering with the public right, also interferes with the use and enjoyment of the plaintiff's land, it is a private nuisance as well as a public one.

Restatement (Second) of Torts § 821C, Comment e (1979).

Jury Instruction No.____

SIMPLE TRESPASS AND DENIAL – NEGLIGENT/RECKLESS ENTRY[9]
Determining the Ordinary High Water Mark


The Plaintiffs claim that Defendant GVEA trespassed on the Plaintiffs' property.


To determine whether the Defendant trespassed, you must first determine whether an actual trespass was committed by Cruz Construction Inc. (Cruz).


First, you must decide whether the property at issue belongs to the Plaintiffs. To determine this you must decide the ordinary high water mark (OHM) of Seven Mile Lake. I will define "ordinary high water mark" for you in a moment.


The Court has held that Alaska state law determines the ordinary high water mark of Seven Mile Lake. Both parties agree that the State has title to the bed of its navigable waters, such as Seven Mile Lake, up to the ordinary high water mark (OHM). The parties, however, disagree over the location of the OHM. The "ordinary high water mark" is defined as:

> [T]he mark along the bank or shore up to which the presence and action of the *nontidal* water are so common and usual, and so long continued in all ordinary years, as to leave a natural line impressed on the bank or shore and indicated by erosion, shelving, changes in soil characteristics, destruction of terrestrial vegetation, or other distinctive physical characteristics.[10]

---

[9] Alaska Civil Pattern Jury Instruction No. 13.01; 13.02.
[10] 11 AAC § 53.900 (23) (emphasis added).

Under surveying standards, the ordinary high water mark "is to be determined by observing and marking the place on the bank or shore up to which the presence and action of water are so prolonged as to impress on the bank or shore a character distinct from the bank or shore with respect to vegetation and the nature of the soil."[11]   Looking at the vegetation and the nature of the soil, the OHM rests at the point below which the value of the soil for agricultural purposes has been destroyed.[12]    "This does not mean that all vegetation is absent below the mark, but rather that terrestrial vegetation will not grow there."[13]

Once you have determined the OHM, go on to the next instruction.

---

[11] 11 AAC § 53.120 (2).

[12] *See State v. Pankratz*, 538 P.2d at 989 (citing *Howard v. Ingersoll*, 54 U.S.381, 415 (1851); *Borough of Ford City v. United States*, 345 F.2d 645, 648 (3rd Cir.1965), *cert. denied*, 382 U.S. 902 (1965)).

[13] *Id.* (citations omitted).

Jury Instruction No.\_\_\_\_

SIMPLE TRESPASS AND DENIAL – NEGLIGENT/RECKLESS ENTRY[14]

Determining the Width of the Rex Trail Easement

Next, in determining whether a trespass occurred, it may be necessary for you to determine the legal width of the Rex Trail.  You have heard evidence that the Rex Trail is an RS 2477 right-of-way that is considered a "highway" under Alaska law.[15]

Alaska law also provides that all officially proposed and existing highways on public land not reserved for public uses are 100 feet wide.[16]  This law does not apply to highways that are specifically designated to be wider than 100 feet.

Moreover, under federal law, right of way easements through Native allotments are not to exceed fifty feet in width on each side of the center line of the road (100 feet total), except where there are heavy cuts and fills, when it cannot exceed one hundred feet in width on each side of the road (200 feet total), and if the easement was originally intended for railroad uses, the easement may include grounds adjacent thereto for station buildings, depots, machine shops, sidetracks, turn-outs, and water stations, not to exceed two hundred feet in width (for a total of 400 feet) by a length of three thousand feet, and not more than one station to be located within any one continuous length of ten miles of road.[17]

---

[14] Alaska Civil Pattern Jury Instruction No. 13.01; 13.02.

[15] See AS 19.30.400.

[16] AS § 19.10.015 (Establishment of highway widths:  (a) It is declared that all officially proposed and existing highways on public land not reserved for public uses are 100 feet wide. This section does not apply to highways that are specifically designated to be wider than 100 feet.   (b) Notwithstanding (a) of this section, a municipality may designate the width of a road that is not a part of the state highway system if the municipality maintains the road.

[17] 25 U.S.C.A. § 313.

Once you have determined the width of the Rex Trail easement go onto the next instruction.

Jury Instruction No._____

SIMPLE TRESPASS AND DENIAL – NEGLIGENT/RECKLESS ENTRY[18]

If you decide that the OHM is within the easement, then a trespass did not occur and you must find that Cruz did not trespass on Plaintiffs' property.

If you decide that the OHM is not within the easement, you must decide whether it is more likely true than not true that:

(1) Cruz entered the Plaintiffs' Property;

(2) the Plaintiffs were in possession of the Property when the entry occurred; and

(3) Cruz's entry was intentional.

The entry was intentional if Cruz intended to be in that location. An entry can be intentional even if Cruz mistakenly thought they had a right to be on the property.

If you decide that all three of these things are more likely true than not true, then you must go on to the next instruction.

Otherwise, you must decide in favor of the Defendant.

---

[18] Alaska Civil Pattern Jury Instruction No. 13.01; 13.02.

Jury Instruction No._____
Independent Contractor – Right to Control[19]

As a general rule, an employer is not responsible for the negligence or trespass of an independent contractor, particularly where the independent contractor enjoys full control over the manner in which they perform their work.[20]  However, if the employer retained some degree of control over the manner in which the independent contractor's work was done, they can be subject to liability for the independent contractor's negligence or trespass by failing to exercise that control with reasonable care.[21]  Reasonable care is that amount of care that a reasonably prudent person would use under similar circumstances.[22]

To determine whether the nature and extent of the control is sufficient to impose liability, you must look at both the contractual provisions and the actual exercise of control.[23]  To impose liability, the control must be to such an extent that the independent contractor cannot perform their work in the manner they choose. Liability does not attach if the supervision exercised is of limited scope, as where it is confined to requiring that the work be done according to the contract.

A general power to supervise and coordinate the work is not sufficient control to render an employer liable.[24]  Liability does not result from the mere retention of general supervisory powers over an independent contractor's acts, a general right to order the work stopped or resumed, to inspect it, or to recommend alterations and

---

[19] Alaska Civil Pattern Jury Instruction No. 23.04B.

[20] *Anderson v. PPCT Mgmt. Systems, Inc.*, 145 P.3d 503, 510 (Alaska 2006); *Sievers v. McClure*, 746 P.2d 885, 888 (Alaska 1987).

[21] *Anderson*, 145 P.3d at 510 (quoting Restatement (Second) of Torts § 414 cmt. c (1965)).  Section 414 provides:  "Negligence in Exercising Control Retained By Employer.  One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care."

[22] Alaska Civil Pattern Jury Instruction No. 03.03A.

[23] *Anderson*, 145 P.3d at 510 (citing *Moloso v. State*, 644 P.2d 205, 211 (Alaska 1982).

[24]  87 C.J.S. Trespass § 32.

deviations, or the power to reject subcontractors.[25]   Liability similarly does not arise from merely making suggestions, directing where and when the work is to be performed, giving directions that merely change the order of working, directing the sequence of work, or making an arrangement with the contractor to pay the contractor's employee.[26]

If you decide that it is more likely than not true that Global, or Black & Veatch, or Dryden and LaRue, or GVEA had sufficient control over Cruz's actions, then they may be responsible for Cruz's acts if that control was not exercised with reasonable care.

---

[25]  Id.

[26]  Id. *See also Hammond v. Bechtel Inc.*, 606 P.2d 1269, 1275 (Alaska 1980); *Moloso v. State*, 644 P.2d 205, 212-14 (Alaska 1982) (The right to conduct safety inspections and the authority to direct that dangerous equipment not be used or operations cease because of safety concerns indicated retained control).  *See also Everette v. Alyeska Pipeline Service Co.*, 614 P.2d 1341, 1348 (Alaska 1980) (Obligating the independent contractor to follow specific procedures in accomplishing the work and retaining responsibility to revise job specifications to ensure worker safety were strong evidence of retained control).

Jury Instruction No._____
Independent Contractor – Trespass Theory

One who employs an independent contractor to do work which the employer knows or has reason to know to be likely to involve a trespass upon the land of another or the creation of a public or private nuisance, is subject to liability for harm resulting to others from such trespass or nuisance.[27]

This rule applies in particular if Cruz was directed or authorized to commit the trespass, or to create a nuisance, and the trespass or nuisance was a necessary result of Cruz's work.[28]  Absent evidence that the employer directed the independent contractor to trespass or to create a nuisance, or that the claimed trespass or nuisance was necessary to complete the assigned task, the employer cannot be held liable for any damage to property caused by the independent contractor's negligence.[29]

If you decide that it is more likely true than not true that the employer knew or had reason to know that Cruz's work would involve a trespass or nuisance, then you must decide in favor of the plaintiffs.

Otherwise, you must decide in favor of the defendant.

---

[27] Restatement (Second) of Torts § 427B (1965).
[28] Restatement (Second) of Torts § 427B, comment b.
[29] 41 Am.Jur.2d Independent Contractors § 47.  See also 87 C.J.S. Trespass § 32.

Jury Instruction No._____
Trespass – Damages[30]

If you decide in favor of the Plaintiffs, then you must decide how much money, if any, would fairly compensate the Plaintiffs for the trespass.  The item of claimed loss is damage to plaintiffs' real property.   The amount that will reasonably compensate the plaintiffs for this loss is the following:

[A]    The difference in the fair market value of the property immediately before and immediately after the trespass or the fair rental value.  In a moment I will explain how to measure the fair market value and fair rental value.

[B]    If there is no difference in the fair market value, but you previously found that Cruz's entry on the property was intentional, then you must award the Plaintiffs the amount of $1, or determine the fair rental value.  Otherwise, the Plaintiffs are not entitled to any compensation for this item of claimed loss.

---

[30] Alaska Civil Pattern Jury Instruction No. 13.05.

**DEF. GVEA'S PROPOSED JURY INSTRUCTIONS**
*Kubanyi, et al. v. GVEA*
F04-0026 CIV
Page 15 of 34

Jury Instruction No._____
Fair Market Value Defined[31]

I will now explain the term "fair market value."

Imagine that the owner of property puts it up for sale and is allowed a reasonable time to sell it.  The fair market value is the amount a fully informed seller would receive from a fully informed buyer in a normal, open market sale.  In arriving at this figure, you must assume that the owner would be free to sell or not to sell and that the buyer would be free to buy or not to buy.

---

[31] Alaska Civil Pattern Jury Instruction No. 20.17A.

Jury Instruction No._____
Fair Rental Value Defined[32]


I will now explain the term "fair rental value."

Imagine that the owner of the property puts it up for rent and is allowed a reasonable time to rent it. The fair rental value is the amount of rent that a fully informed property owner would receive from a fully informed renter of the property in an open rental market. In arriving at this figure, you must assume that the owner would be free to rent or not to rent, and that the renter would also be free to rent or not to rent.

---

[32] Alaska Civil Pattern Jury Instruction No. 20.17C.

Jury Instruction No._____
Wrongful Interference with an Express Right of Way Easement[33]

In this case, it is undisputed that the Rex Trail easement running through Plaintiffs' property is an express easement dedicated to public use.[34]   GVEA claims that Plaintiffs intentionally interfered with Cruz's use of the easement, which cost GVEA, as owner of the Project, $131, 500.

As a member of the public, Cruz was entitled to full enjoyment of the easement, and those easement rights are paramount to those of the Plaintiffs.[35]   Neither GVEA nor Cruz was required to obtain permission from the Plaintiffs to do what they are already legally entitled to do.[36]

Although the easement crosses Plaintiffs' property, Plaintiffs are required to refrain from unlawfully and unreasonably interfering with or obstructing the easement.[37]

What constitutes unreasonable interference on the part of the Plaintiffs depends on consideration of the advantage to Plaintiffs of the desired use and the disadvantage to Global as general contractor, Cruz as Global's contractor, and/or GVEA as owner of the Project.[38]   Whether the interference is substantial depends upon whether the Plaintiffs' conduct deprived the public of a degree of use to which they were entitled to by the easement.[39]

---

[33] Alaska Civil Pattern Jury Instruction No. 13.03.
[34] The Rex Trail is an RS 2477 right-of-way designated under 43 U.S.C. § 932.  *See Price v. Eastham*, 75 P.3d 1051, 1055 (Alaska 2003).
[35] See 28A C.J.S. Easements § 224.
[36] Id.
[37] 25 Am.Jur. 2d Easements and Licenses § 86.
[38] Id.
[39] 100 Am.Jur. Trials 337.

In this case, you must decide that it is more likely true than not true that the following things happened:

1.          Plaintiffs substantially interfered with the right to use the public easement;

2.          GVEA suffered damages as a result of the interference.

If you decide it is more likely true than not true that these things happened, you must find in favor of GVEA.

Jury Instruction No._____
Interference with Contract[40]

In this case, GVEA claims that the Plaintiffs intentionally interfered with a contract between GVEA and Global.  GVEA had a fixed price contract with Global for the construction of an ice road; thus, in order for GVEA to prevail on this claim, you must decide that it is more likely true than not true that the following five things happened:

1.  Plaintiffs knew or should have known about the contract;

2.  Plaintiffs intended to interfere with the contract;

3.  the contract price was modified;

4.  the modification was caused by the Plaintiffs' wrongful or unjustified conduct; and

5.  GVEA suffered damages as a result of the modification.

If you decide it is more likely true than not true that these five things happened, you have decided that the Plaintiffs interfered with GVEA's contract with Global, and you must decide whether the Plaintiffs' conduct was legally justified.  I will tell you how to determine whether the Plaintiffs' conduct was legally justified in a moment.

---

[40] Alaska Civil Pattern Jury Instruction No. 19.01.

Jury Instruction No._____
"Intent" Defined[41]


A person acts with intent if the person desires the results of the person's actions or believes the results are substantially certain to follow from those actions. A person's act may be intentional even though it is neither malicious nor produced by hostile feelings toward another person.

---

[41] Alaska Civil Pattern Jury Instruction No. 19.02.

Jury Instruction No._____
Intentional Interference with Contract – Justification[42]

In response to GVEA's claim that the Plaintiffs intentionally interfered with GVEA's contract with Global, the Plaintiffs claim that the interference was legally justified.  In order for the Plaintiffs to prevail on this defense, you must decide if it is more likely true than not true that:

1.  The Plaintiffs' predominant purpose for interfering was to protect the Plaintiffs' property from being impaired or destroyed, rather than to act maliciously or with the specific intent to injure GVEA; and,

2.  The means employed by the Plaintiffs were not improper.

If you find that it is more likely true than not true that these elements have been established, you must find for Defendant GVEA.

---

[42] Alaska Civil Pattern Jury Instruction No. 19.03.

Jury Instruction No._____
Damages[43]

If you decide in favor of GVEA, you must then decide how much money, if any, will fairly compensate GVEA. I will list for you the items of loss claimed by GVEA. You may not assume because I list an item of loss or explain how to measure a particular loss that you are required to make an award for that loss. For each item of loss you must decide that it is more likely true than not true that:

1.    GVEA had such a loss or is reasonably probable to have such a loss in the future, and

2.    the loss was legally caused by the conduct of the Plaintiffs.

If both of these things are more likely true than not true, you must then decide how much money will fairly compensate GVEA for that item of loss. If you do not conclude that both of these things are more likely true than not true for a particular item of loss, you may not make an award for that loss. [You should add up any awards for all items and record the sum on your verdict form.]

The items of loss claimed by GVEA are:

1. Costs incurred by GVEA for Cruz having to relocate water pumping operations to Fish Creek.

2. Any additional costs incurred by GVEA due to Plaintiffs' actions.

A legal cause of harm is an act or failure to act which is a substantial factor in bringing about the harm. An act or failure to act is a substantial factor in bringing about harm if it is more likely true than not true that:

---

[43] Alaska Civil Pattern Jury Instruction No. 20.01A.

(1)     the act or failure to act was so important in bringing about the harm that a reasonable person would regard it as a cause and attach responsibility to it; and

(2)     the harm would not have occurred but for the act or failure to act.[44]

---

[44] Alaska Civil Pattern Jury Instruction 3.06.

Jury Instruction No._____

## INTRODUCTION TO SPECIAL VERDICT FORM[45]

I will now give you a form called a "Special Verdict Form." It has a list of questions you must answer. I have already instructed you on the law you are to use in answering these questions. You must follow my instructions and the form carefully. The special verdict form tells you what to do after each question. At least (insert numbers) of you must agree upon an answer to each question, but the same (insert numbers) of you need not agree upon each answer.

---

[45] Alaska Civil Pattern Jury Instruction 03.09.

SPECIAL VERDICT FORM – ACTION ACCRUING ON OR AFTER AUGUST 17, 1997 – NON-PARTIES

SPECIAL VERDICT[46]

We, the jury in the above-captioned case, find the following special verdict submitted to us in the above-captioned case:

**(1)     Did Cruz Construction ("Cruz") trespass on plaintiffs' property?**

Answer "yes" or "no."  Answer: _____

If your answer to Question No. 1 was "no," do not answer Question No. 2. Instead, you must go on to Question No. 21.

However, if your answer to Question No. 1 was "yes," answer Question No. 2.

**(2)     Did Global Power and Communications, Inc. retain sufficient control over Cruz's actions?**

Answer "yes" or "no."  Answer: _____

If your answer to Question No. 2 was "no," do not answer Questions No. 3.  Answer Question No. 5.

However, if your answer to Question No. 2 was "yes," you must now answer Question No. 3.

**(3)     Did Global Power and Communications, Inc. fail to exercise its control over Cruz's actions with reasonable care?**

Answer "yes" or "no."  Answer: _____

If your answer to Question No. 3 was "no", you must now answer Question No. 5.

If your answer to Question No. 3 was "yes," answer Question No. 4.

_____

[46] Alaska Civil Pattern Jury Instruction No. 03.09D.  See also AS 09.17.080(a) (1997).

**(4)    Was Global Power and Communications, Inc.'s failure to exercise control with reasonable care a legal cause of injury to the plaintiffs?**

Answer "yes" or "no."  Answer: _____

If your answer to Question No. 4 was "no," you must now answer Question No. 5.

If your answers to Questions Nos. 2, 3 and 4 were "yes", answer Question No. 5.

**(5)    Did Global Power and Communications, Inc. know or have reason to know that Cruz's work was likely to involve a trespass upon plaintiffs' land?**

Answer "yes" or "no."  Answer: _____

If your answer to Question No. 5 was "yes" or "no," follow the instructions in Question No. 6.

**(6)    Before you go any further, you must review your answers to the preceding questions.**

If you answered "yes" to Questions 2, 3, and 4 and/or "yes" to Question No. 5, you should list Global Power and Communications, Inc. in one of the spaces provided in Question No. 20.  You must now answer Question No. 7.

If you did not answer "yes" to Questions 2, 3, and 4, and/or 5, you should not have listed any names in the spaces provided in Question No. 20.  You must now answer Question No. 7.

**(7)    Did Black & Veatch Corporation retain sufficient control over Cruz's actions?**

Answer "yes" or "no."  Answer: _____

If your answer to Question No. 7 was "no," do not answer Question No. 8. Answer Question No. 11.

If your answer to Question No. 7 was "yes," answer Question No. 8.

**(8)    Did Black & Veatch Corporation fail to exercise its control over Cruz's actions with reasonable care?**

Answer "yes" or "no."  Answer: _____

If your answer to Question No. 8 was "no," do not answer Question No. 9. Answer Question No. 11.

However, if your answer to Question No. 8 was "yes," you must now answer Question No. 9.

**(9)    Was Black & Veatch's failure to exercise control with reasonable care a legal cause of injury to the plaintiffs?**

Answer "yes" or "no."  Answer: _____

If your answer to Question No. 9 was "no", answer Question No. 11.

If your answers to Questions Nos. 7, 8 and 9 were "yes", answer Question No. 10.

**(10)    Before you go any further, you must review your answers to the preceding questions.**

If you answered "yes" to Questions 7, 8, and 9 you should list Black & Veatch in one of the spaces provided in Question No. 20.  You must now answer Question No. 11.

If you did not answer "yes" to Questions 7, 8, and 9 you should not have listed any names in the spaces provided in Question No. 20.  You must now answer Question No. 11.

**(11)    Did Dryden and LaRue retain sufficient control over Cruz's actions?**

Answer "yes" or "no."  Answer: _____

If your answer to Question No. 11 was "no," do not answer Question No. 12. Answer Question No. 15.

If your answer to Question No. 11 was "yes," answer Question No. 12.

**(12)    Did Dryden and LaRue fail to exercise its control over Cruz's actions with reasonable care?**

**Answer "yes" or "no."  Answer:** _____

If your answer to Question No. 12 was "no," do not answer Question No. 13. Answer Question No. 15.

However, if your answer to Question No. 12 was "yes," you must now answer Question No. 13.

**(13)    Was Dryden and LaRue's failure to exercise control with reasonable care a legal cause of injury to the plaintiffs?**

**Answer "yes" or "no."  Answer:** _____

If your answer to Question No. 13 was "no", answer Question No. 15.

If your answers to Question Nos. 11, 12, and 13 were "yes", answer Question No. 14.

**(14)    Before you go any further, you must review your answers to the preceding questions.**

If you answered "yes" to Questions 11, 12, and 13 you should list Dryden and LaRue in one of the spaces provided in Question No. 20.  You must now answer Question No. 15.

If you did not answer "yes" to Questions 11, 12, and 13 you should not have listed any names in the spaces provided in Question No. 20.  You must now answer Question No. 15.

**(15)    Did GVEA retain sufficient control over Cruz's actions?**

**Answer "yes" or "no."  Answer:** _____

If your answer to Question No. 15 was "no," do not answer Question No. 16. Answer Question No. 19.

If your answer to Question No. 15 was "yes," answer Question No. 16.

**(16)   Did GVEA fail to exercise its control over Cruz's actions with reasonable care?**

Answer "yes" or "no."  Answer: _____

If your answer to Question No. 16 was "no," do not answer Question No. 17. Answer Question No. 19.

However, if your answer to Question No. 16 was "yes," you must now answer Question No. 17.

**(17)   Was GVEA's failure to exercise control with reasonable care a legal cause of injury to the plaintiffs?**

Answer "yes" or "no."  Answer: _____

If your answer to Question No. 17 was "no", answer Question No. 19.

If your answers to Question Nos. 15, 16, and 17 were "yes", answer Question No. 18.

**(18)   Before you go any further, you must review your answers to the preceding questions.**

If you answered "yes" to Questions 15, 16, and 17 you should list GVEA in one of the spaces provided in Question No. 20.  You must now answer Question No. 19.

If you did not answer "yes" to Questions 15, 16, and 17 you should not have listed any names in the spaces provided in Question No. 20.  You must now answer Question No. 19.

**(19)   The instructions to the previous questions on this form told you to enter names in the spaces in Question No. 20 depending on your answers to certain questions.  What are the total damages, if any, to the plaintiffs that were legally caused by the negligence of all of the persons who you have listed in the spaces provided in Question No. 20?**

TOTAL:                          $_____

If the total amount entered in response to Question No. 19 is $0, do not answer any further questions. The foreperson should date and sign the verdict. However, if you have stated any sum of money in answer to Question No. 19, answer Question No. 20.

**(20)    The instructions to the previous questions on this form told you to enter names in the spaces below, depending on your answers to certain questions. For each name that you entered in one of the spaces below, you must determine the percentage of fault for the damages identified in your response to Question No. 19. The total <u>must</u> be equal to 100%. Do not add any additional names, and do not assign percentages of fault to anyone other than the names you entered below in response to the questions on this form.**

**In determining the percentage of fault for each name on the list, you must consider the nature of their conduct, and the extent of the causal relationship between the conduct and the damages that you have identified in response to Question No. 19.**

| Name | % |
|---|---|
| Name_____ | _____% |
| Name_____ | _____% |
| Name_____ | _____% |
| Name_____ | _____% |
| Name_____ | _____% |
| **TOTAL** | **100%** |

The foreperson should now date and sign the verdict.

**(21)    Did Plaintiffs wrongfully interfere with GVEA and/or its contractor's use and enjoyment of an express right-of-way easement?**

**Answer "yes" or "no." Answer: _____**

If your answer to Question No. 21 was "no," do not answer Question No. 22. Answer Question No. 23.

However, if your answer to Question No. 21 was "yes," you must now answer Question No. 22.

**(22)   Was Plaintiffs' interference with the easement a cause of injury to GVEA and/or its contractors?**

**Answer "yes" or "no."  Answer: _____**

If your answer to Question No. 22 was "no," you must find in favor of Plaintiffs on this claim.  Now answer Question No. 23.

If your answers to both Question No. 21 and Question No. 22 were "yes", you will be asked to calculate damages in Question No. 26.  Now answer Question No. 23.

**(23)   Did Plaintiffs wrongfully interfere with GVEA's fixed price contract for the construction of an ice road?**

**Answer "yes" or "no."  Answer: _____**

If your answer to Question No. 23 was "no," do not answer Question No. 24. Answer question No. 25.

However, if your answer to Question No. 23 was "yes," you must now answer Question No. 24.

**(24)   Was Plaintiffs interference a cause of injury to GVEA?**

**Answer "yes" or "no."  Answer: _____**

If your answer to Question No. 24 was "no," you must find in favor of the Plaintiffs on this claim.  Now answer Question No. 25.

If your answers to both Question No. 23 and Question No. 24 were "yes," answer Question No. 25.

**(25)   Before you go any further, you must review your answers to the preceding questions.**

If you answered "yes" to Questions 21 and 22 and/or 23 and 24 you must now list the total damages, if any, in Question No. 26.

If you did not answer "yes" to Questions 21 and 22 and/or 23 and 24 you do not need to calculate damages.  The foreperson must now sign and date the verdict form.

**(26)  What are the total damages, if any, to GVEA that were legally caused by the Plaintiffs?**

**TOTAL:**                    $_____

If the total amount entered in response to Question No. 26 is $0, do not answer any further questions.  The foreperson should date and sign the verdict. However, if you have stated any sum of money in answer to Question No. 26, then that amount should be awarded to GVEA and the foreperson should date and sign the verdict.

DATED at _____, Alaska, this _____ day of _____, _____.

_____
Foreperson of the Jury

DATED this 8th day of July, 2008, at Fairbanks, Alaska.


s/Cory R. Borgeson
100 Cushman Street, Suite 311
Fairbanks, AK  99701
(907) 452-1666
Fax:  (907) 456-5055
Email:  cborgeson@bnblaw.com
ABA # 8405009


Certificate of Service

I hereby certify that on the 8th day of
July, a copy of the foregoing document
was served electronically on:

Michael Walleri